**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, ROBERT KOREMANS, and MICHAEL DERKACZ<br><br>Defendants. | Case No.  2:20-cv-04660-JD |

**MENORAH AND CLAL'S RESPONSE TO NOTICE OF WITHDRAWAL OF FARIS AL KOOHEJI FROM PARTICIPATION IN THE INVESTOR GROUP (DKT. NO. 48)**

Lead Plaintiff Movants Menorah[1] and Clal hereby respond to the Notice of Withdrawal of Faris Al Kooheji from Participation in the Investor Group, filed on March 11, 2021 (the "Withdrawal Notice") (Dkt. No. 48).

## ARGUMENT

As Menorah and Clal have argued throughout this litigation, the Investor Group's conduct with respect to its now-former member Al Kooheji has been characterized by a troubling lack of transparency, apparently in order to obscure the fact that the highly complex structured notes that Al Kooheji purchased during the Class Period render him inadequate and atypical within the meaning of Rule 23, as well as subject to unique defenses—facts sufficient to disqualify not only Al Kooheji, but also the entire Investor Group, from serving as Lead Plaintiff in this Action, because the Investor Group's members "moved for lead plaintiff as a group and will be evaluated as such." *Tsirekidze v. Syntax-Brillian Corp.*, CV-07-2204-PHX-FJM *et al.*, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 4, 2008).

Then, barely one week after the Investor Group's counsel continued to defend Al Kooheji and the group's fitness to serve as Lead Plaintiff at the March 3, 2021 status conference, and just *four days* before the scheduled March 15, 2021 motion hearing, the Investor Group filed the Withdrawal Notice, stating merely that Al Kooheji has "withdraw[n] from participation in the Investor Group[,]" but that "DeKalb County Pension Fund and Gerald Forsythe, as the remaining members of the Investor Group, continue to seek appointment of the Investor Group to serve as lead plaintiff in this Action[.]" Dkt. No. 48 at 1.

Menorah and Clal respectfully submit that the Withdrawal Notice is entirely consistent with the Investor Group's lack of transparency and cohesiveness throughout this litigation. Just

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in Menorah and Clal's prior briefing. *See* Dkt. Nos. 9-1, 11, 29, 34.

1

as the group attempted to conceal the details of Al Kooheji's Class Period purchases of securities, the group has offered no explanation for Al Kooheji's abrupt withdrawal practically on the eve of the motion hearing.  In the absence of any explanation by the Investor Group, the most reasonable inference is that the Investor Group concluded that Al Kooheji's continued participation was more likely to hurt the group's lead plaintiff motion than help it and jettisoned him from the group in a last-ditch effort to improve the group's chances.  Indeed, Menorah and Clal consistently questioned whether Al Kooheji's undisclosed transactions in unstructured notes rendered him profits sufficient to represent an overall gain on his Teva securities transactions.  *See* Dkt. No. 34 at 9.  Al Kooheji and his counsel refused to answer or even address that question.  One can only infer that Al Kooheji's abrupt withdrawal is a concession that he indeed enjoyed a gain on his overall transactions in Teva securities, rendering him incapable of serving the Class as Lead Plaintiff.

Yet Al Kooheji's eleventh-hour departure cannot salvage the group's motion, for the following reasons:

*First*, the fact remains that Menorah and Clal are the presumptive "most adequate plaintiffs"—*i.e.*, the presumptive Lead Plaintiffs—pursuant to the PSLRA.  They are the movants with the largest financial interest in the outcome of the litigation by a significant margin, having incurred losses of *$436,573,220* on a FIFO basis or *$372,627,348* on a LIFO basis as a result of their purchases and sales of Teva securities during the Class Period; and they have also made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23, having demonstrated that they possess the competence and motivation to prosecute the claims of the Class with vigor, and that their claims in this litigation are typical of the claims of the absent class members that they seek to represent.  *See generally* Dkt. No. 9-1.  Having satisfied both of the statutory criteria, Menorah and Clal are plainly entitled to the presumption that they are the "most adequate plaintiffs" of the Class and, thus, should be appointed as Lead Plaintiffs.  Indeed, the

retainer agreements executed by Menorah and Clal show that they negotiated a far more competitive and thoughtful fee agreement with their counsel than the boilerplate and contradictory retainer agreements executed by the members of the Investor Group, as discussed below.

This presumption in Menorah and Clal's favor can *only* be rebutted by *proof* that the movant with the largest financial interest is atypical or inadequate, or subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  In an effort to rebut the presumption, the Investor Group has adduced only a fallacious argument that Menorah and Clal and their counsel face supposedly "irreconcilable" conflicts arising from their participation in one of the 19 Direct Actions against Teva in the District of Connecticut.  For the reasons set forth at length in Menorah and Clal's Reply Brief (Dkt. No. 29 at 4-9), there is no merit whatsoever to the Investor Group's conflicts argument, and the presumption in favor of Menorah and Clal's appointment remains unrebutted.

*Second*, Al Kooheji's removal does not cure the Investor Group's disqualifying adequacy issues—rather, it only further illustrates the group's inadequacy.  As Menorah and Clal have previously argued, the Investor Group has always been inadequate because, among other reasons, it was never anything more than a group of unrelated investors—two individuals (now one) and one county pension fund—with no evident relationship, cobbled together by counsel in hopes of assembling the largest aggregate loss in this litigation.  *See* Dkt. No. 11 at 19-20.  Courts in the Third Circuit routinely deny motions by such groups, finding them inadequate within the meaning of Rule 23.  *See*, *e.g.*, *Takata v. Riot Blockchain, Inc.*, No. 18-2293 (FLW) (TJB), 2018 U.S. Dist. LEXIS 189585, at *12-*16 (D.N.J. Nov. 6, 2018) (denying motion by a "loose, attorney-driven group of investors," finding it of "particular concern" that the group may have "'been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel'") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir.)); *McDermid v. Inovio Pharms., Inc.*, No. 20-01402, 2020 U.S. Dist. LEXIS 106766, at *13-*14 (E.D. Pa. June 18, 2020) (denying motion by

3

movant group, finding "that lawyers created the [g]roup or at least partly assembled its members."). The Investor Group's readiness to abruptly expel Al Kooheji when it became clear that his continued inclusion was detrimental to the group's appointment only underscores the group's lack of cohesion and that its existence is due only to "the efforts of lawyers hoping to ensure their eventual appointment as lead counsel[.]" *Id.*

In addition, excising Al Kooheji at this stage cannot salvage the group's adequacy because the group "moved for lead plaintiff as a group and will be evaluated as such." *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15. *See also In re Petrobras Secs. Litig.*, 104 F. Supp. 3d 618, 624 n.4 (S.D.N.Y. 2015). To hold otherwise would reward gamesmanship by counsel, setting a precedent that would do nothing to discourage plaintiff's counsel from assembling unrelated investor groups for the sole purpose of aggregating the largest financial interest, with the assurance that they could subsequently cure disqualifying issues identified by competing lead plaintiff movants during briefing by simply jettisoning members from the group at leisure to the extent that their continued participation proved inconvenient.

For the same reason, even if the Court were not to consider Al Kooheji's disqualifying issues in evaluating the new iteration of the Investor Group—now consisting only of DeKalb County and Forsythe—the new Investor Group's motion likewise fails because of DeKalb County's own disqualifying issues. As Menorah and Clal discussed at length in their Opposition Brief (*see* Dkt. No. 11 at 22-25), DeKalb County held no Teva securities on the date that the Defendants' alleged fraud was disclosed to the market, therefore incurred no injury traceable to Defendants' malfeasance—a fact that DeKalb County's counsel conceded at the March 3, 2021 status conference—and thus lacks standing to pursue fraud claims in this litigation. *See, e.g., Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548

4

(2016). Evaluating the fitness of the new reduced Investor Group's members as a group, as the Court should, DeKalb County's standing issues are fatal to the group's motion.

At the status conference held by the Court on March 3, 2021, the Investor Group's counsel conceded that DeKalb County could not allege loss causation but speculated that some event *might* occur in the future which *might* give it standing to pursue this litigation. That is hardly a credible argument and only highlights that DeKalb County has no incentive to pursue this litigation as currently pleaded. In a last-ditch effort to save its ill-conceived Lead Plaintiff motion, the Investor Group argues that at the very least Forsythe is adequate to serve as a lead plaintiff. Yet Forsythe's utter inadequacy is on full display. He has passively allowed counsel to join him in a group with two movants who were wholly inadequate to serve as Lead Plaintiffs. There are only two plausible inferences from Forsythe's actions: either (1) Forsythe was well aware of Al Kooheji's atypical transactions and DeKalb County's lack of standing yet agreed to proceed to seek appointment with them jointly as Co-Lead Plaintiffs anyhow; or (2) Forsythe was simply unaware of these movants' utter incapacity to lead the Class. Neither scenario speaks well of Forsythe's ability to protect the interests of the putative Class. *See*, *e.g.*, *Petrobras*, 104 F. Supp. 3d at 622 (denying lead plaintiff motion where members of movant group demonstrated "little inclination to take a firm hand in their dealings with counsel").

Further dooming its motion, the utterly contradictory retainer agreements executed by the Investor Group's members demonstrates their inability or simply lack of interest in coordinating this litigation with one another. One of the prime responsibilities of a Lead Plaintiff is to oversee its counsel and set its fees at a competitive rate in order to protect the interests of the Class. *See id.* (denying motion by movant that "simply accepted [counsel's] proposed retainer agreement and fee arrangement without negotiation[,]" finding that the "consequences of [movant's] hands-off attitude . . . permitted its counsel to seek" excessive fees). Here, the boilerplate retainer agreement

5

signed by Forsythe and Al Kooheji failed to do just that. Those retainers do not set *any* maximum fee for counsel in this litigation. While DeKalb County did set a fee percentage in its retainer, there is no explanation as to why it failed to ensure that Forsythe and Kooheji abided by the same terms. It would appear that, in the highly likely scenario that DeKalb County is dismissed from this Action due to lack of standing, Forsythe will not be bound by the fee percentage agreed to by DeKalb and there will be no limit whatsoever on the fees that could be sought by Forsythe's counsel. Again, both Forsythe and DeKalb County have demonstrated a stunning inability to oversee their counsel and coordinate this action amongst themselves. *See Petrobras*, 104 F. Supp. 3d at 622 (denying motion by "lawyer-driven artificial grouping," finding that its members had not "demonstrate[d] their ability to function as a cohesive and independent unit to protect the interests of the class" and whose lack of "inclination to take a firm hand in their dealings with counsel" had permitted their counsel to seek excessive fees).

In stark contrast, Menorah and Clal both executed competitive fee agreements with their counsel providing for a staggered percentage based upon the size of recovery. Unlike the retainer agreements of the Investor Group, the terms of their fee agreements are uniform. Moreover, the percentage of fees provided even at the highest level is *far lower* than what is allowed for in this Circuit and of that negotiated by DeKalb County. As such, Menorah and Clal have easily demonstrated their ability to coordinate this action with one another and to adequately oversee counsel in the best interests of the class.

## CONCLUSION

For the foregoing reasons, Al Kooheji's belated and unexplained withdrawal from this litigation notwithstanding, Menorah and Clal respectfully request that the Court grant their motion in all respects and deny the Investor Group's motion,

Dated:  March 12, 2021

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice application forthcoming*)
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Menorah Mivtachim Insurance, Ltd.,*
*Menorah Mivtachim Pension & Gemel, Ltd., Menorah*
*Mivtachim and the Federation of Engineers Provident*
*Fund Management Ltd., Clal Insurance Company Ltd.,*
*and Clal Pension & Provident Ltd. and Proposed Lead*
*Counsel for the Class*

D. Seamus Kaskela (204351)
**KASKELA LAW LLC**
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
Telephone: (888) 715-1740
skaskela@kaskelalaw.com

*Counsel for Menorah Mivtachim Insurance, Ltd.,*
*Menorah Mivtachim Pension & Gemel, Ltd., Menorah*
*Mivtachim and the Federation of Engineers Provident*
*Fund Management Ltd., Clal Insurance Company Ltd.,*
*and Clal Pension & Provident Ltd. and Proposed*
*Liaison Counsel for the Class*

7