# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD., Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, ROBERT KOREMANS, and MICHAEL DERKACZ,<br><br>     Defendants. | Case No. 2:20-cv-04660-KSM<br><br><u>CLASS ACTION</u> |

**THE INVESTOR GROUP'S RESPONSE TO MENORAH & CLAL'S RESPONSE TO THE WITHDRAWAL OF FARIS AL KOOHEJI'S PARTICIPATION IN THE INVESTOR GROUP**

**TABLE OF CONTENTS**

I.      THE COURT MAY APPOINT THE INVESTOR GROUP WITHOUT
        MR. KOOHEJI ................................................................................................ 1

II.     THE MENORAH & CLAL GROUP ARE DISQUALIFIED BECAUSE EACH
        GROUP MEMBER IMPROPERLY CONCEALED THEIR AGREEMENT WITH
        TWO ISRAELI LAW FIRMS THAT WOULD ALLOW THEM TO "JOINTLY
        PROSECUTE THE LITIGATION" AS UNVETTED SECRET LEAD COUNSEL
        WITH THEIR PUBLICLY PROPOSED LEAD COUNSEL ........................................... 6

III.    THE MENORAH & CLAL GROUP STILL HAVE FAILED TO RESPOND TO THE
        INVESTOR GROUP'S SPECIFIC ARGUMENTS AND DETAILED
        EXPLANATION OF WHY THERE IS AN INEXTRICABLE CONFLICT OF
        INTEREST WITH THE CONNECTICUT ACTION ......................................................... 9

IV.     DEKALB'S SALE OF TEVA STOCK PRIOR TO THE CLASS PERIOD-ENDING
        DISCLOSURE DOES NOT DISQUALIFY IT BECAUSE THE AMENDED
        COMPLAINT MAY ADDRESS PARTIAL DISCLOSURES
        PRIOR TO DEKALB'S TEVA STOCK SALE .............................................................. 10

V.      THE INVESTOR GROUP'S RETAINER AGREEMENTS ARE NOT
        CONTRADICTORY ............................................................................................... 11

VI.     AS THE INVESTOR GROUP HAS STATED BEFORE, MR. GERALD
        FORSYTHE HAS PARTICIPATED IN THIS CASE, HAS NO ISSUES
        PERTAINING HIS ADEQUACY AND MAY SERVE AS LEAD PLAINTIFF ........... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 216 (2d Cir. 1987)..................................................................................................8

*Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*,
    No. CV 20-200, 2020 WL 815136 (E.D. Pa. Feb. 19, 2020)........................................2

*In re Allergan PLC Sec. Litig.*,
    Case No. 18 Civ. 12089 (CM), 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) ........7, 8, 10, 11

*Ark. Teacher Ret. Sys. v. State Street Bank and Trust Co.*,
    No. 11-cv-10230-MLW,
    2018 WL 11026335 (D. Mass. June 28, 2018) ...........................................................8

*Borteanu v. Nikola Corp.*,
    No. 2:20-cv-02374-SPL, 2020 WL 7392795 (D. Ariz. Dec. 15, 2020)........................6

*Burke v. Ruttenberg*,
    102 F. Supp. 2d 1280 (N.D. Ala. 2000).....................................................................3

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005)..........................................................................1, 2

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..................................................................................2, 4

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)........................3

*In re Flight Safety Techs., Inc. Sec. Litig*,
    231 F.R.D. 124 (D. Conn. 2005).................................................................................3

*Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*,
    354 F. Supp. 2d 18 (D. Mass. 2000) ..........................................................................9

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*,
    No. 00–3605 (DRD), 2000 WL 33173017 (D.N.J. Nov. 16, 2000) ..........................2, 3

*McDermid v. Inovio Pharmaceuticals., Inc.*,
    467 F. Supp. 3d 270 (E.D. Pa. 2020) .........................................................................5

*In re Milestone Sci. Sec. Litig.*,
    187 F.R.D. 165 (D.N.J. 1999).....................................................................................9

*Newman v. Eagle Building Techn.*,
 209 F.R.D. 499 (S.D. Fla. 2002)......................................................................................3

*In re Petrobas Securities Litigation*,
 104 F. Supp. 3d 618 (S.D.N.Y. 2015)..............................................................................1

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
 275 F.R.D. 187 (S.D.N.Y. 2011) .....................................................................................1

*In re Razorfish, Inc. Sec. Litig.*,
 143 F. Supp. 2d 304 (S.D.N.Y. 2001)..............................................................................3

*In re Regions Morgan Keegan Closed-End Fund Litig*,
 No. 07-02830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ....................................3

*Schonfield v. Dendreon Corp.*,
 No. C07-800MJP, 2007 WL 2916533 (W.D. Wash. Oct. 4, 2007)..................................3

*Sklar v. Bank of Am. Corp.*,
 No. 109CV01434, 2009 WL 1633188 (S.D.N.Y. Apr. 6, 2009) .....................................9

*Takata v. Riot Blockchain, Inc.*,
 No. 18-2293 (FLW) (TJB), 2018 WL 5801379 (D.N.J. Nov. 6, 2018)...........................4

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
 589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................3

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ...............................................................2, 3

**Statutes**

15 U.S.C. § 78u-4(a)(2) ............................................................................................................7, 8

**Other Authorities**

*Moore's Federal Practice,* § 23.192[I][a] (3d ed. 2007)...............................................................8

The Investor Group (comprised of Gerald Forsythe and DeKalb County Pension Fund) hereby responds to the Menorah & Clal's Response To Notice Of Withdrawal Of Faris Al Kooheji From Participation In The Investor Group ("Response Brief"). Doc. No. 49.

## I. THE COURT MAY APPOINT THE INVESTOR GROUP WITHOUT MR. KOOHEJI

The Menorah & Clal Group argue that Mr. Kooheji's withdrawal from the Investor Group reflects a lack of transparency, that he should continue to be considered a member of the Investor Group, and that his membership is disqualifying. Response Brief 4. The Menorah & Clal Group rely on a single case from outside this district for the proposition that Mr. Kooheji should continue to be considered a member of the group. *See* Response Brief at 1 and 4 citing *Tsirekidze v. Syntax-Brillian Corp.*, CV-07-2204-PHX-FJM *et al.*, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 4, 2008).[1]

In fact, the vast majority of courts recognize that the PSLRA lead plaintiff may be selected from a movant group. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) ("The movant with the next-largest LIFO loss is PSERS. Although PSERS initially filed for lead plaintiff status in conjunction with AP1, a Swedish fund manager, AP1 has withdrawn from consideration. Thus, PSERS's motion for appointment as lead plaintiff is not subject to the same hurdles as the Funds Group . . . . **Courts routinely select individual members of a proposed lead plaintiff group to serve as lead plaintiff**.") (emphasis added); *see also In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298,

---

[1] The Menorah & Clal Group also cite to *In re Petrobas Securities Litigation,* 104 F. Supp. 3d 618, 624 n.4 (S.D.N.Y. 2015), but that case does not support their position. In fact, the court in *Petrobas* noted only that had the group member with the largest loss sought to serve as lead plaintiff individually, the court would have denied the application due to that member's unique defense that defendants would have raised at class certification stage. *Id.* Indeed, a fair reading of note 4 is that the court would have appointed that group member in its individual capacity were it not for that unique defense.

308 (S.D. Ohio 2005) ("**A group vying for lead plaintiff status does not necessarily rise and fall as a group. Segmentation is a viable remedy and finds support in case law.**") (emphasis added).

The Menorah & Clal Group's claim that even without Mr. Kooheji's participation, the Investor Group is disqualified because its members are unrelated and have been "cobbled" together is utterly disingenuous and not pertinent. Response Brief 3. First, that is not the criteria applied by courts. Courts consider a groups' ability to fairly and adequately protect the interests of the class. *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001); *see also Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*, No. CV 20-200, 2020 WL 815136, at *4 (E.D. Pa. Feb. 19, 2020) (in appointing a group of unrelated institutional funds the court observed "the *Cendant* Court made clear that it 'disagree[s] with those courts that have held that the [PSLRA] invariably precludes a group of unrelated individuals from serving as a lead plaintiff.'" (quoting *Cendant*, 264 F.3d at 266). It went on to emphasize that the "statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" (quoting *Cendant*, 264 F.3d at 266). The opinion certainly allows for district courts to examine prior relationships between the members of a group, among making other considerations, before selecting the lead plaintiff. But it could not have been clearer that the key question remained "whether that group would fairly and adequately protect the interests of the class." (quoting *Cendant*, 264 F.3d at 266-67);[2] *Local 144 Nursing Home Pension Fund v.*

---

[2]    The court in *Energy Transfer* further observed: "*Cendant*'s progeny make doubly clear that composite groups that lack pre-existing relationships can be chosen as lead plaintiff, and serve in that function well. In *West Palm Beach*, the Court observed that '[t]he Third Circuit issued a clear pronouncement in *Cendant* that a group of unrelated investors can serve as lead

2

*Honeywell Int'l, Inc.*, No. 00–3605 (DRD), 2000 WL 33173017, at *4 (D.N.J. Nov. 16, 2000) (proposed group submitted declarations advising of members' sophistication, involvement in the litigation thus far, and plans for future meetings and protocol to determine activity in the event of disagreement among group members).

Even in cases that found that a group had not demonstrated its ability to work cohesively, the court has appointed an individual group member with the largest loss to serve as lead plaintiff. *See e.g., Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) (court considered losses of group member with largest losses); *Eichenholtz v. Verifone Holdings, Inc*., No. C 07-06140 MHP, 2008 WL 3925289, at *10-11 (N.D. Cal. Aug. 22, 2008) (court considered individual entity); *Schonfield v. Dendreon Corp.*, No. C07-800MJP, 2007 WL 2916533, at *2, *5 (W.D. Wash. Oct. 4, 2007) (court appointed a group member with the largest loss); *In re Flight Safety Techs., Inc. Sec. Litig*, 231 F.R.D. 124, 130-32 (D. Conn. 2005) (declining to appoint entire group, but appointing two of its members); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 306 (S.D.N.Y. 2001) (selecting single member of proposed group to serve as lead plaintiff); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1327-30 (N.D. Ala. 2000) (summarizing with approval numerous cases in which courts have considered and accepted groups as lead plaintiffs but have stricken some members according to a "rule of reason");  *In re Regions Morgan Keegan Closed-End Fund Litig*, No. 07-02830, 2010 WL 5173851, at *7-13 (W.D. Tenn. Dec. 15, 2010) (striking one disqualified member from the proposed moving group, but nonetheless appointing the remaining members as lead plaintiffs); *Newman v. Eagle Building Techn.*, 209 F.R.D. 499, 505-06 (S.D. Fla. 2002) (same).

---

plaintiff.' *West Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 WL 1395059, at *7 (E.D. Pa. Apr. 10, 2014)". *Id.*

3

The Menorah & Clal Group's cases are distinguishable and have no bearing on the two-party, one-law firm Investor Group's ability to fairly, cohesively and effectively serve as lead plaintiff. In *Takata v. Riot Blockchain, Inc.*, No. 18-2293 (FLW) (TJB), 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018), cited in Menorah & Clal Group's Response Brief at 3, a group was not appointed lead plaintiff when it failed to submit a joint declaration with its opening motion establishing its cohesiveness and independence from counsel and did so only later after it became evident that the members had not even communicated with each other prior to their counsel submitting a joint motion on their behalf. *Id.* ("In fact, the joint declaration seems to confirm that the members of the group had never communicated before their counsel submitted the joint motion on their behalf, merely stating that the members 'were aware of each other' prior to the motion.")). Indeed, the Third Circuit in *In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001), cited in Menorah & Clal Group's Response Brief at 3, noted:

> The statute contains no requirement mandating that the members of a proper group be "related" in some manner; it requires only that any such group "fairly and adequately protect the interests of the class." We do not intimate that the extent of the prior relationships and/or connection between the members of a movant group should not properly enter into the calculus of whether that group would "fairly and adequately protect the interests of the class," but it is this test, not one of relatedness, with which courts should be concerned.

*Id.* at 266-67. Based on the Third Circuit's decision in *Cendant*, the Menorah & Clal Group clearly should be found inadequate because they entered into secret fee-sharing agreements with undisclosed co-counsel, filed PSLRA certifications that did not disclose this agreement or their relationship with these firms, and sought to have these firms work on this case without being vetted by this Court. Clearly, the Menorah & Clal Group cannot be relied on to fairly and adequately protect the interests of the class in the case, which is the primary concern of the court.

4

Finally, and contrary to the cases relied on by the Menorah & Clal Group, the Investor Group has chosen **one law** firm as proposed lead counsel in stark contrast to those loosely structured groups of multiple law firm that have been disfavored by certain limited number of courts. In *McDermid v. Inovio Pharmaceuticals., Inc.*, 467 F. Supp. 3d 270 (E.D. Pa. 2020), cited in Menorah & Clal Group's Response Brief at 3, the court found a group inadequate when it became apparent due to the due diligence of another movant, that four law firms had collaborated to put together an unaffiliated group of shareholders:

> Though the Inovio Group is presumptively the most adequate lead plaintiff, Williams rebuts that presumption. He asserts that four law firms colluded to create the Inovio Group. Williams points out that, according to the Group's own declaration, three firms participated in the conference call during which the Group was formed. A fourth firm then appeared on the Group's Motion as proposed local counsel for the class. **Conspicuously absent from the Group's papers, Williams adds, is any "explanation what role two of [these] law firms . . . played in the formation of the group." Alerted to this curiosity, the Court pressed for an explanation at oral argument. The proposed lead counsel responded that his firm came to represent at least two of the group members through referrals from the two other law firms.** To be sure, nothing prohibits lawyers from introducing group members to each other or to the proposed lead counsel. *See* 15 U.S.C. § 78u-4(a)(3); *Cendant*, 264 F.3d at 262–70. **But that so many law firms midwifed the Inovio Group gives the impression that lawyers created the Group or at least partly assembled its members**. *See id.* at 267 (noting that a group may be inadequate if the court believes that lawyers created the group).

*Id.* at 278-79 (emphasis added) (citations omitted).

The Menorah & Clal Group's chosen counsel is familiar with such issues as it frequently has moved for lead plaintiff with groups of unrelated individual investors that have been cobbled together by multiple law firms who then seek to act as counsel for the class. *See e.g., Valdes v. Kandi Tech. Grp., Inc.*, No. 2:20-cv-06042, Doc. No. 18 (E.D.N.Y. Feb. 9, 2021) (Sanjay Matneja, Hoang Tran, and Leonel Valdés moved together as the "Kandi Investor Group" and proposed two law firms to act on behalf of class); *Lawless v. Aurora Cannabis Inc.*, No. 1:20-cv-13819-RMB-KMW, Doc. No. 16 (D.N.J. Dec. 1, 2020) (Anthony Weiland, Steven H.

Dunkleberger, and Piergiorgio Piga moved to be appointed lead plaintiff as a group and proposed two law firms to act as co-lead counsel). Indeed, in *Salem v. Nikola Corp.*, No. 2:20-cv-02374-SPL, Doc. No. 26 (D. Ariz. Nov. 16, 2020), the Menorah & Clal Group's counsel moved for lead plaintiff for three individuals, George Mersho, Vincent (Vi Kinh) Chau, and Stanley Karcynski as the "Nikola Investor Group" and proposed two law firms to act as co-lead counsel and when their group was not appointed because in part it was comprised of unrelated investors (2020 WL 7392795, at \*5), it filed a writ of mandamus with the Ninth Circuit Court of Appeals to force the district court to appoint its group lead plaintiff and it lead counsel. *Borteanu v. Nikola Corp.*, No. 2:20-cv-02374-SPL, 2020 WL 7392795, at \*5 (D. Ariz. Dec. 15, 2020), *writ of mandamus docketed in George Mersho, et al. v. USDC-AZP*, No. 20-73819 (9th Cir. Dec. 30, 2020).

**II.   THE MENORAH & CLAL GROUP ARE DISQUALIFIED BECAUSE EACH GROUP MEMBER IMPROPERLY CONCEALED THEIR AGREEMENT WITH TWO ISRAELI LAW FIRMS THAT WOULD ALLOW THEM TO "JOINTLY PROSECUTE THE LITIGATION" AS UNVETTED SECRET LEAD COUNSEL WITH THEIR PUBLICLY PROPOSED LEAD COUNSEL**

Further, to claim that Mr. Kooheji's withdrawal is characteristic of the Investor Group's lack of transparency is remarkably disingenuous. Response Brief 1. It was only after this Court ordered the Menorah & Clal Group to disclose its retainer agreements with its chosen proposed lead counsel that the Court and, the Investor Group were informed that the Menorah & Clal Group had retained two undisclosed Israeli law firms to secretly "jointly prosecute" this action for nearly one quarter of the fee obtained. It appears that Menorah & Clal Group wanted to circumvent the requirement that Lead Counsel be vetted and approved by the Court. **This is second time that Menorah & Clal Group's counsel have attempted to do this in recent months. The last time, it exploded on them and the Pomerantz Firm and its client were**

**uncerementously removed as Lead Counsel and Lead Plaintiff**.[3] That same sort of conduct should not be rewarded in this case. The Menorah & Clal Group's motion for lead plaintiff failed to disclose this fee-sharing arrangement and there has been no disclosure whatsoever of these other law firms' experience or qualifications to act on behalf of the class in a securities fraud case in the U.S. This alone violates the mandate of the PSLRA that the Menorah & Clal Group confirm in their certifications that they did not purchase their Teva securities at the direction of these firms (15 U.S.C. § 78u-4(a)(2)(A)(ii)) and reflects and attempt to avoid the requirement

---

[3] *In re Allergan PLC Sec. Litig.*, Case No. 18 Civ. 12089 (CM) (GWG), 2020 WL 5796763, at *6 (S.D.N.Y. Sept. 29, 2020) (attached as Ex. A):

> When I appointed BRS as lead plaintiff, I gave an explicit instruction that there was to be one and only one law firm serving as lead counsel. It is this court's experience (and I have quite a bit of it) that the involvement of multiple firms tends to inflate legal fees to the detriment of the other class members. This is a result I am particularly anxious to avoid. (*See* Lead Plaintiff Order at 5.) So I directed that BRS select one law firm to serve as lead counsel. BRS selected Pomerantz to act as lead counsel. I expected BRS to do the work of lead counsel. And I expected it to do all of the work of lead counsel.
>
> I have now learned that Thornton has not only remained involved in this litigation, albeit under the rubric of "additional counsel," but that it has effectively played the role of co-lead counsel – to the point that BRS' corporate representative has testified under oath that Thornton's responsibilities did not change *at all* in response to the lead plaintiff order.
>
> ***
>
> Moreover, I have learned, in connection with the prosecution of this motion, that the Pomerantz and Thornton firms have entered into an agreement to split any fee earned from the prosecution of this lawsuit almost down the middle. The agreement calls for the fee earned by lead counsel to be split with 55% going to Pomerantz and 45% to Thornton – a division that is so close to the firms' original agreement of a 50-50 split, reached at a time when they anticipated being appointed co-lead counsel as to be a rather transparent substitute for co-lead counsel status. (*See* Declaration of Anna F. Connolly, July 28, 2020, Dkt. No. 129 ("Connolly Decl.), Ex. 45; Connolly Decl. Ex. 44.) This amended agreement between the two firms was dated six days after BRS designated Pomerantz as lead counsel. (*See id.*) The court was not informed about this arrangement, by BRS or anyone else.

(citations omitted).

that the selection of these foreign law firms be approved by the Court (15 U.S.C. § 78u-4(a)(3)(B)(v)).

The Chief Judge for the Southern District of New York previously stated in *In re Allergan PLC Securities Litigation*, Case No. 18 Civ. 12089 (CM**)** (GWG), **that undisclosed arrangements between two law firms "is the quintessential example of a 'lawyer driven' arrangement**." 2020 WL 5796763, at *7 (emphasis added). Indeed, courts require that in class actions counsel must inform the court in advance of all fee sharing agreements at the time it is formulated, not later in the case, to avoid conflicts from arising. *See e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 226 (2d Cir. 1987), *cert. denied by Newton B. Schwartz, P.C. v. Dean*, 484 U.S. 926 (1987) ("in all future class actions counsel must inform the *court* of the existence of a fee sharing agreement at the time it is formulated. This holding may well diminish many of the dangers posed to the rights of the class. Only by reviewing the agreement prospectively will the district courts be able to prevent potential conflicts from arising, either by disapproving improper agreements or by reshaping them with the assistance of counsel to conform more closely with the principles of *Grinnell I* and *Grinnell II*.") (emphasis added); *see also Ark. Teacher Ret. Sys. v. State Street Bank and Trust Co.*, No. 11-cv-10230-MLW, 2018 WL 11026335, at *61 n.118 (D. Mass. June 28, 2018), *adopted in part and rejected in part on other grounds by* 2020 WL 949885 (D. Mass. Feb. 27, 2020) ("Agent Orange is the leading case in the area of judicial scrutiny of fee-sharing agreements among class action plaintiffs' attorneys.").

Finally, this complex structure for class counsel created by the Menorah & Clal Group, even if it had been disclosed voluntarily, is disfavored by the courts in favor of the selection of a single firm. *See Moore's Federal Practice*, § 23.192[I][a] (3d ed. 2007) ("In exercising their

8

authority to approve class counsel, the courts have taken an active role and have generally disapproved complex counsel structures in favor of selection of a single firm."). The likelihood of duplicative services and increased attorneys' fees weighs against approving multiple lead counsel, especially where counsel proffer no explanation why numerous counsel on behalf of different lead plaintiffs should be appointed co-lead counsel. *See e.g., Sklar v. Bank of Am. Corp.*, No. 109CV01434, 2009 WL 1633188 (S.D.N.Y. Apr. 6, 2009); *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F. Supp. 2d 18, 25 (D. Mass. 2000); *see also In re Milestone Sci. Sec. Litig.*, 187 F.R.D. 165, 176 (D.N.J. 1999).

**III.  THE MENORAH & CLAL GROUP STILL HAVE FAILED TO RESPOND TO THE INVESTOR GROUP'S SPECIFIC ARGUMENTS AND DETAILED EXPLANATION OF WHY THERE IS AN INEXTRICABLE CONFLICT OF INTEREST WITH THE CONNECTICUT ACTION**

The Investor Group has demonstrated the basis for the conflict of interest (in addition to the conflicts arising from the previously undisclosed fee-sharing agreements with multiple undisclosed law firms) that arises from Menorah & Clal Group's and their chosen, publicly disclosed counsel's prosecution of claims in the Connecticut action against Teva. *See* The Investor Grp.'s Mem. Of Law In Opp'n To Competing Mots. For Appointment As Lead Plaintiff And Approval Of Lead Counsel, Doc. No. 12:

> Menorah & Clal cannot adequately represent absent class members in this Action because Pomerantz, arguing on Menorah & Clal's behalf, has already made arguments that are antagonistic to the interests of the proposed Class in this Action. Menorah & Clal's consolidated amended complaint against Teva . . . alleges . . . violations of Sections 10(b) and 20(a) of the Exchange Act for allegedly false and misleading statements relating to Teva's generic drug business during February 6, 2014 to May 30, 2019. The relevant period in the Menorah & Clal Complaint is February 6, 2014 to May 30, 2019, and contains a substantial overlap with the Class Period in this Action which is October 29, 2015 to August 18, 2020. The Menorah & Clal Complaint contains numerous disclosures that also appear in the Complaint for this Action, but are cited to advance completely different arguments.

*Id.* at 7-8.

As demonstrated by the chart below, there are at least four dates on which Menorah & Clal allege in their Direct Connecticut Action that public statements by Teva caused deflation of the Company's stock price for the day. However, in this Action, the plaintiff alleges that statements and/or omission made by Teva were inflationary and caused additional inflation or maintained inflation already in the stock price for the day.

*Id.* at 9.

The Menorah & Clal Group have effectively admitted that there is a complete conflict of interest with the Connecticut case by never meaningfully responding to these arguments. Indeed, rather than address the specific disclosure dates identified by the Investor Group that represent a conflict, the Menorah & Clal Group attempted to defer and deflect with a meaningless hypothetical fact scenario and then acknowledged the Investor Group's point that a damages expert would be required to disentangle the impact of overlapping conflicting statements and separate out the effects of each. *See* Reply Mem. Of Points And Authorities: (1) In Further Supp. Of Mot. Of Menorah Mivtachim Ins., Ltd., Menorah Mivtachim Pension & Gemel, Ltd., Menorah Mivtachim And The Federation Of Engineers Provident Fund Mgmt. Ltd., Clal Ins. Co. Ltd., And Clal Pension & Provident Ltd. For Appointment As Lead Plaintiff And Approval Of Selection Of Counsel; And (2) In Opp'n To Competing Mots., Doc. No. 29 at 6-8.

## IV. DEKALB'S SALE OF TEVA STOCK PRIOR TO THE CLASS PERIOD-ENDING DISCLOSURE DOES NOT DISQUALIFY IT BECAUSE THE AMENDED COMPLAINT MAY ADDRESS PARTIAL DISCLOSURES PRIOR TO DEKALB'S TEVA STOCK SALE

The Menorah & Clal Group argue that DeKalb held no Teva securities on the date that Defendants' alleged fraud was disclosed to the market, therefore incurred no injury traceable to Defendants' malfeasance—a fact that DeKalb's counsel conceded at the March 3, 2021 status conference—and thus lacks standing to pursue fraud claims in this litigation. Response Brief 4.

However, the Menorah & Clal Group's publicly disclosed chosen counsel has previously recognized in *In re Allergan plc Securities Litigation*:

The Lead Plaintiff ultimately appointed by the Court will file a Consolidated Amended Complaint, which will be based upon, *inter alia*, an in-depth review of all corrective disclosures and partial corrective disclosures regarding a link between breast implants to ALCL—for example, reports to and by the FDA and other regulators, the publication of scientific studies, and conference presentations. Considering that Allergan's stock price plummeted by a total of $40.42 between the start of the Class Period and September 30, 2017, and by a total of $108.81 across the entire Class Period, as hundreds of reports reached the FDA linking breast implants to ALCL, for DeKalb County to categorically assert at this early stage of this litigation that "no movant or investor could possibly have suffered *Dura* eligible losses in excess of $10.20 per share" (Dkt. No. 35 at 9) is to ask the Court to disregard the ample evidence to the contrary, and instead to simply "guess about the effect of . . . as-yet-unknown factors in selecting a lead plaintiff", *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at 15 n.6—which, again, is not the holding of *Dura*. Boston respectfully submits that the Court should decline this invitation **and simply assess financial interest in terms of the competing movants' losses calculated on a LIFO basis . . . .**

*In re Allergan PLC Sec. Litig.*, No 18-12089 (CM) (GWG), Doc. No. 42 at 7-8 (S.D.N.Y. Mar. 11, 2019) (emphasis added).

In this case, Teva made at least one potential partial disclosure regarding Copaxone drug prior to DeKalb's sale of its Teva stock soon after a new CEO was appointed that caused a sudden and unexpected stock drop that appears to constitute leakage of information indicating the fraudulent nature of Teva's previous claims about the robust nature of sales of Copaxone.

## V.    THE INVESTOR GROUP'S RETAINER AGREEMENTS ARE NOT CONTRADICTORY

The Menorah & Clal Group argue that the retainer agreements signed by the Investor Group members are contradictory and demonstrate its inability to oversee counsel, based on the fact that only the DeKalb agreement contains a fee cap. Menorah & Clal Group Response Brief 6.  It is true that the Investor Group did not attempt to improve on the lowered cap on attorney's fees previously negotiated by DeKalb, but they did get the benefit of that cap. Moreover, in the event there is a recovery and proposed fee, this Court, after notice to absent class members and opportunity to scrutinize a requested fee, will make the final decision as to the reasonableness of any fee award.

11

**VI.    AS THE INVESTOR GROUP HAS STATED BEFORE, MR. GERALD FORSYTHE HAS PARTICIPATED IN THIS CASE, HAS NO ISSUES PERTAINING HIS ADEQUACY AND MAY SERVE AS LEAD PLAINTIFF**

The Menorah & Clal Group now challenge the fact that Mr. Forsythe, a businessman with over $1 million in losses could not be adequate to serve as a sole lead plaintiff. The Menorah & Clal Group argue that he is not adequate because either he was aware of Mr. Kooheji's transactions and DeKalb's alleged lack of standing and should have conceded to Menorah & Clal's challenges, or he was unaware of Menorah & Clal's alleged deficiencies. Response Brief 5.

These claims are misplaced and untimely.  The Investor Group has previously informed the Court on January 19, 2021 (*see e.g.,* Doc. No. 35 at 1),[4] and during the March 3, 2021 status conference, that Mr. Forsythe alone or with DeKalb could be appointed to serve as lead plaintiff. Despite the opportunity to do so, the Menorah & Clal Group ***never challenged the assertion that that the Investor Group could be appointed lead plaintiff without Mr. Kooheji's participation or Mr. Forsythe's adequacy***. Only now, as part of its improper sur-sur-reply, has it argued for the first time that Mr. Forsythe is inadequate—with absolutely no support from case law because there is none. This Court should reject this claim out of hand.

Mr. Forsythe is a successful entrepreneur who sustained approximately $1 million in losses due to the alleged fraud in this case and conferred with DeKalb and Mr. Kooheji prior to filing for lead plaintiff. *See* Jt. Decl., Doc. No. 8-3. He has continued to follow the developments in this case and was aware of and agreed with Mr. Kooheji's decision to voluntarily withdraw from the

---

[4]    The Investor Grp.'s Sur-Reply Mem. Of Law In Response To The Sur-Reply Filed By The Menorah & Clal Grp. And In Further Supp. Of Its Mot. For Appointment As Lead Pl. And Approval Of Lead Counsel 1 ("MCG also ignores the fact that Investor Group member Gerald Forsythe has no conflicts, has had no challenges asserted to his adequacy, has adequate counsel and suffered approximately $1 million in losses. That single member of the Investment Group alone would be far more adequate to serve as Lead Plaintiff than MCG").

Investor Group. Further, to claim that Mr. Forsythe is inadequate because the Investor Group disputed the Menorah & Clal Group's dubious claims against Mr. Kooheji and incorrect arguments against DeKalb's standing, is absurd. Mr. Forsythe has participated in and agrees with his counsel's zealous advocacy for the Investor Group to be appointed as lead plaintiff.

Dated: March 14, 2021

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:    */s/ Timothy J. Peter*
       Timothy J. Peter

Timothy J. Peter (Pa. Bar No. 306965)
1617 John F Kennedy Blvd Suite 1550
Philadelphia, PA 19103
Ph: (215) 277-5770
Fax: (215) 277-5771
E-mail: tpeter@faruqilaw.com


James M. Wilson, Jr. (*pro hac vice*)
Robert W. Killorin (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com
            rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff and [Proposed] Lead Counsel for the putative Class*

13