```
                     UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


HALMAN ALDUBI PROVIDENT AND    )      20-CV-4660
PENSION FUNDS LTD.             )
                               )
                   Plaintiff   )
        vs.                    )
                               )
TEVA PHARMACEUTICAL INDUSTRIES )
LIMITED, ET AL.                )
                               )      Philadelphia, PA
                               )      March 22, 2022
                   Defendant   )      11:07 a.m.


                     MOTION TO DISMISS HEARING
            BEFORE THE HONORABLE KAREN S. MARSTON
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:


For the Movant:            ROBERT W. KILLORIN, ESQUIRE
                           JAMES MILLIGAN WILSON, JR, ESQUIRE
                           TIMOTHY JOHN PETER, ESQUIRE
                           FARUQI & FARUQI, LLP
                           3975 Roswell Road, Suite A
                           Atlanta, GA  30342
                           404-847-0617




For the Defendant:         JAMES P. SMITH, III, ESQUIRE
                           GABRIELA B. WOLK, ESQUIRE
                           WINSTON & STRAWN, LLP
                           200 Park Avenue
                           New York, NY  10166
                           212-294-4633


                SHANNAN GAGLIARDI, RDR, CRR
                   OFFICIAL COURT REPORTER
           U.S. DISTRICT COURT, EASTERN DISTRICT OF PA
                601 Market Street, Room 2609
                   Philadelphia, PA  19106
                        (267)299-7254
```

APPEARANCES CONT'D:


For the Defendant:              MATHIEU J. SHAPIRO, ESQUIRE
                                MELISSA M. BLANCO, ESQUIRE
                                OBERMAYER REBMANN MAXWELL & HIPPEL
                                1500 Market Street, Suite 3400
                                Philadelphia, PA  19102
                                215-665-3014

THE DEPUTY CLERK:  All rise.

(Clerk opens court at 11:07 a.m.)

THE COURT:  Have a seat.  Give me a minute here to set up.  Okay.  We all know I have a wonderful time pronouncing the plaintiff's first name.  Halman Aldubi Provident and Pension Funds Limited versus Teva Pharmaceutical Industries Limited, et al.

Will counsel please state their names for the record.  It's Civil Docket 20-4660.

MR. KILLORIN:  Robert Killorin for lead plaintiff, Your Honor.  Good morning.

MR. WILSON:  James Wilson from Faruqi & Faruqi for the plaintiff, Your Honor.  Good morning.

MR. PETER:  Timothy Peter on behalf of plaintiff.

THE COURT:  Nice to see you.  Thank you all for being here.

Did I do all right with the plaintiff's name?

MR. KILLORIN:  Perfect, Your Honor.

THE COURT:  Good answer.

MR. SHAPIRO:  Good morning, Your Honor, Mathieu Shapiro, Obermayer Rebmann Maxwell & Hippel, for the defendants, and Melissa Blanco is also with me from Obermayer.

MS. BLANCO:  Good morning, Your Honor.

THE COURT:  She's welcome at the table if you would like her to be.

MR. SMITH:  Good morning, Your Honor, James Smith, Winston & Strawn, and with me is my colleague, Gabby Wolk.

THE COURT:  Okay.  Good morning to all of you.  Thank you all for being here.  We are here on the pending motion to dismiss, so seeing that it's defendant's motion, you may begin.  And you can do whatever.  If you want to stand from the table there, you're certainly welcome to, or you're allowed to use the podium.  It's up to you.

MR. SMITH:  I'll go to the podium, actually, until I start dropping all my papers.

THE COURT:  Isn't there a shelf underneath too?

MR. SMITH:  Yes.  I'm making use of that as we speak.

Good morning, Your Honor.  James Smith, Winston & Strawn, on behalf of the defendants.  As Your Honor noted, we're here today on the defendant's motion to dismiss the corrected amended complaint in this case.

I know Your Honor has been studying up and you have been deluged with a great deal of materials.  The briefing is short, but the submissions are extensive.  And what I'd like to do -- I'm happy to proceed however Your Honor thinks is most expeditious, but what I'd like to do for Your Honor is to see if I can try to simplify this down to what does matter and what doesn't matter and what is at issue and what isn't at issue.  And obviously I'll be happy to answer the Court's questions as we go.

First and foremost, I think it's important to bear in mind in considering the motion that this is not a case about whether Teva violated the False Claims Act or the Anti-Kickback Statute, notwithstanding a lot of allegations that might suggest otherwise. That is not what this case is about.

This is not a case that alleges that Teva made any false statements.

THE COURT: No. It's about material misrepresentations.

MR. SMITH: It's about, Your Honor, respectfully, it's about material omissions.

THE COURT: Okay.

MR. SMITH: And I make that distinction because I think it's important in the following respect. Your Honor can go through the entire complaint, and there are enumerable undifferentiated allegations of supposedly misleading statements. There's not a single one of those that's alleged to be false or factually inaccurate.

The entire theory of the case is that virtually everything that Teva said publicly about its performance for a five-year period was misleading because of what it failed to disclose. And, in fact, the overwhelming majority of those allegedly misleading statements are actually factual recitations of past earnings.

And the Third Circuit has said, Your Honor, in the

Advanta case, that factual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b).  And that is the overwhelming majority of what plaintiffs have alleged are false or misleading statements.

The case is also not about what facts the individual defendants were aware of with respect to Teva's charitable donations.  Teva made charitable donations to charitable patient assistance programs, or PAPs as they're called, including two that go by the acronyms CDF, that's the Chronic Disease Fund, and TAF, which is The Assistance Fund.  CDF and TAF had multiple sclerosis charitable funds.  And the drug at issue in this case, as Your Honor knows, is Copaxone, which is Teva's specialty multiple sclerosis drug.

So the PAPs -- and this is an alphabet soup of acronyms, Your Honor.  I apologize.  It is actually easier than going through all the names.  But they had multiple sclerosis funds that contributed to copays for Medicare Part D patients for the many multiple sclerosis drugs that are on the market. Teva also contracted with an entity called Advanced Care Scripts, or ACS, to which it referred Copaxone patients for patient support services.

And it was known to the federal Government and more broadly that pharmaceutical companies were at least partially funding these PAP charities, including CDF and TAF, and that CDF and TAF were providing copay assistance to Part D patients.

Those aren't issues in the case.

It's also not a case about whether we were obligated to disclose the details of the charitable assistance program. Now, plaintiff's opposition brief, in stark contrast to their complaint, wants to move the bouncing ball and suggest that this is a case about whether we put in play the details of our donations to charitable PAPs because, they say, we talked about our performance and mentioned some things that were contributing to the company's and Copaxone's performance. And this, they claim, kicks in to a line of cases that say if you begin to speak on a subject, you've got to speak fully and completely.

But that line of cases has been limited in the following respect. And this is the Merck case, which is cited in our brief, among others, recognize this. It doesn't mean that every time you report favorable earnings or say anything about why you had favorable earnings, you then have to go down every rabbit hole and disclose every other thing that's not material and may be contributing.

This is important because what plaintiffs claim was undisclosed and material they claim is material only because they allege it was illegal, and accusing yourself of illegal conduct, as we've briefed fairly extensively, is not something that public companies have to do.

So as we discussed at the outset --

THE COURT:  Well, isn't there a fine line there then?

MR. SMITH:  There could be a fine line there.

THE COURT:  Tell me about that because I agree with you that what you have said right there is really an issue.

MR. SMITH:  It really is the crux of the matter, Your Honor, and I think the line here is clear.  I mean, the cases, as Your Honor points out, if, in fact, what is allegedly undisclosed is the illegality of the conduct, the cases, I think, are very clear, that you don't have to go out and accuse yourself, I'm doing something illegal.

THE COURT:  Right.

MR. SMITH:  And the plaintiffs are now arguing no, no, that's not our claim.  But, Your Honor, this is very clearly a case in which the plaintiffs are alleging that it is the illegality of the conduct that was undisclosed and, when revealed, caused plaintiff's losses.

THE COURT:  But clearly your client didn't think they were doing something illegal, so I guess the issue that I have is, is there something more that they should have disclosed, because they thought they were doing something legal, that would have fulfilled this obligation.

MR. SMITH:  Yeah.  And I think that's the right question, Your Honor, and I think the answer to that is no.  And the reason that I say that is, again, the alleged materiality of the undisclosed facts only exist because of

their alleged illegality.

Let me see if I can be a little clearer on this by pointing to the plaintiff's own complaint, Your Honor, because Your Honor's quite right.  There are ways to plead that an undisclosed scheme that was material should have been disclosed.  That's different from simply alleging that you should have disclosed illegality.  This is the latter case.

And if Your Honor goes to the corrected amended complaint, and you can start with paragraph 74, and I'll just read it to you.  This is after the plaintiffs enumerated their first round of allegedly misleading statements.  If you go to paragraph 74 on page 27 and look at 74a, what they say is the statements -- and the people to whom they're attributed here differs as you go through the balance of the complaint, obviously.

But they say they were false and misleading when made because they failed to disclose the following material adverse facts:  A, Teva was engaged in an illegal kickback scheme by using ACF, CDF, and TAF as unlawful conduits to fully cover the copayments incurred by Medicare patients taking Copaxone.

And then the other two things that follow from there in B and C are only relevant because, according to plaintiffs, the conduct was illegal.  And that exact phrasing -- and as Your Honor knows, under the PSLRA and general particularity, you've got to allege with particularity why false statements

were false.  And if Your Honor looks at these paragraphs, you'll see why the misleading statements are alleged to be false.

THE COURT:  What page were you on again?

MR. SMITH:  I'm on page 27 of the corrected amended complaint, Your Honor.  It's paragraph 74.  I'll give you some more cites, and your hand may not keep up.  It's not a big deal.

But that exact statement, every time a series of allegedly misleading statements is enumerated, they're in there in big blocks.  It doesn't really say anything about why they're supposedly misleading.  There's some stuff that's highlighted and bolded, and the cases say that's not good enough to tell you what's false or misleading about it.

And the only thing that the plaintiffs allege that makes all of the statements false or misleading, there are two exceptions, is that exact statement that I just read to you, and it is repeated 20 times throughout the complaint, Your Honor.  It's paragraph 76, 78, 80, 84, 86, 92, 96, 98.  I could go on and on.  Your Honor will see it.  That's the basis on which the complaint alleges that the statements were misleading because of the omission of the illegality and unlawful nature, the alleged unlawful nature, of the charitable donations that we were making, not the details.  So I think that's important.

What the case is about, in addition to whether we had

a duty to disclose illegal conduct, and I think Your Honor's indicated that you're clear on the case law there, it's not about whether we knew about the practice of the donations. What plaintiffs point to in their attempts to establish or plead scienter is that certain defendants allegedly used certain things about how the charitable donation program was working and signed off on donations to the program, et cetera.

But that's not the sort of knowledge that's necessary to state the 10b-5 claim or the knowledge that is relevant for Your Honor to pay attention to on this motion for the following reasons. It's all well and good to say that certain senior executives were aware that the donations were being made. I would suggest that that is consistent with their good faith belief that the charitable donation program was perfectly legal and permissible.

As Your Honor knows from reading the DOJ case, US versus Teva that came down recently out of the District of Massachusetts, Teva has maintained throughout and continues to maintain that it was relying in good faith on the Office of the Inspector General's guidance and various other things in concluding, as it continues to believe, that the conduct it was engaged in is permissible. So as I said before, the fact that the plaintiffs allege that people were aware that the donations were being made and in what amounts is indicative of nothing.

Now, plaintiffs point to the fact that these payments

that some of the defendants signed off on were called Copaxone donation payments, as if that's your hand in the cookie jar. Aha, you knew you were violating the Anti-Kickback Statute.

Your Honor, that's shorthand.  They were giving, as I said before, to charitable PAP funds in the multiple sclerosis space.  Teva had a multiple sclerosis product that was called Copaxone, and so that's how they described the donations.  And that's all they've got, but it's not the relevant knowledge. The relevant knowledge, again, is whether people knew or were reckless in the extreme in disregarding that the conduct was illegal.

THE COURT:  How about Defendant O'Grady?  Because I think he has stated that the company buys the patients' copay down to zero anyway.

MR. SMITH:  Well, yes, that's --

THE COURT:  He's a little bit more in the weeds.

MR. SMITH:  That's in the DOJ complaint.  There's a couple of things on that I would say, Your Honor.  First of all, buying a copay down to zero, there's two programs that are, you know, for Medicare patients where the issues that are being litigated in the DOJ case are relevant, and then there's for regular patients as well.

But beyond that, a couple of things on Mr. O'Grady's statements.  Again, I would say that that statement is no different in terms of its fundamental character.  But it's also

in 2018, and the significance of it being in 2018, Your Honor, is you got a class period that begins in 2015. But what happened in 2017 is that Teva got a subpoena --

THE COURT: Right. So it's after the subpoena.

MR. SMITH: Yeah, which they had publicly announced. So everybody knew this was going on. And the fact that Teva, as alleged in the congressional report in the complaint, if you accept the allegation is true, was continuing to engage in this practice after receiving the subpoena through 2018 is, to me, the exact opposite of consciousness of guilt. It shows that they had the courage of their convictions and were continuing to engage in a practice that they thought was permissible. Again, as I mentioned, to this day they're sitting here and litigating that issue. So I think the couple of statements from Mr. O'Grady in 2018 are really indicative of nothing.

So, you know, the question here, Your Honor, is whether the individual defendants -- from a scienter standpoint, the question is whether the individual defendants knew that the donations were illegal. Now, I know Your Honor has looked at US versus Teva and seen the conclusions that the District of Massachusetts found in that case. I think it's important to emphasize that the standards that were being applied in that case are very different than those that are applicable under the PSLRA in a 10b-5 case, most particularly with respect to alleging scienter or knowledge. As Your Honor

knows, under the Tellabs case -- under 9(b), scienter can be alleged generally, and 9(b) was the standard that was being applied in that case.

Here, on the Supreme Court's decision in Tellabs and under the PSLRA, the plaintiffs were required to state with particularity the facts that give rise to a strong inference of scienter. So it's not just is it reasonable or is it plausible that they acted with scienter. There's got to be cogent and compelling inference from the facts, and it's got to be at least as cogent and compelling as the non-culpable inference.

Again, as I mentioned to Your Honor, here the non-culpable inferences are everywhere: Their reliance on the OIG, the alleged continuation of the practice even after receiving a subpoena, actively litigating the issue to this day. And there are no facts, other than Your Honor mentioned the two O'Grady facts that are alleged, I think it's paragraph 62 and 63, and then these ones about how they styled the payments that were signed off on. Those are facts about, you know, that they knew of the conduct, but there's no facts alleging that they knew it was illegal.

So what did we disclose? I think this is also critically important. We talked briefly about, jumping forward in the timeline, the disclosure of the subpoena when it was received from the federal government. But, Your Honor, well before that and, in fact, beginning before the class period, in

all the company's annual reports, there were extensive risk disclosures.

And what I'd like to do is read to you, with Your Honor's indulgence, the full risk disclosure that's repeated throughout the class period because it's alleged in the complaint that there's some creative ellipses in there, as is not uncommon.  And we've submitted to Your Honor as exhibits to the motion to dismiss the full document so that Your Honor could see it, but I'd just like to read it through.

So, remember, this is beginning in prior to the class period.  And, candidly, I don't know how far back it goes, Your Honor, but I know that it was in -- this is not on the record -- but it was in the Form 20-F, the annual statement that was filed immediately prior to the beginning of the class period or the most recent one prior to the beginning of the class period.

THE COURT:  Where is it?  Do you know where this is on your motions, which exhibit it is?

MR. SMITH:  I do, Your Honor.  You can look at a couple of them, but if you look at Exhibit D, which is the 2016 20-F, and you can go to page 17, you should find the language that I'm referring to.  It's in other places as well, Exhibit I on page 46, because it's in all of the 20-Fs and 10-Ks.  So you can pick one, and I think they're verbatim.

And as I said, the complaint in paragraph 114 and

other places does lay out some of the risk factor language, but here's what I think is critically important given what's alleged here and given the subsequent disclosure of the Government subpoena.

This is a quote: We operate around the world in complex legal and regulatory environments, and any failure to comply with applicable laws, rules, and regulations may result in civil and/or criminal legal proceedings.

Okay. But that's just really the setup for what follows, which is this: As those rules and regulations change or -- and this is important -- as interpretations of those rules and regulations evolve, our prior conduct or that of companies we have acquired may be called into question.

I'm going to go on, but I'll pause there. I would submit to Your Honor that's exactly what occurred here. Teva was providing charitable donations to PAPs based on Office of the Inspector General guidance, which they thought authorized it, and over time the Government took a different view. The interpretation of those rules and regulations evolved, and now their conduct is being called into question. Remember, it hasn't been adjudicated. It's been alleged. It's being litigated. But it hasn't been adjudicated. And that's exactly the risk that ultimately materialized.

They go on to say, and I'm quoting again: In the United States, we are currently responding to federal

investigations into our marketing practices with regard to several of our specialty pharmaceutical products.

And remember, Your Honor, there were several different segments, at the time generics, and specialty is the one that included Copaxone.

Quoting again:  Which could result in civil litigation brought on behalf of the federal government.

And they're now in civil litigation with the federal government.

Quote:  Responding to such investigations is costly and involves a significant diversion of management's attention. Such proceedings are unpredictable and may develop over lengthy periods of time.  Future settlements may involve large cash penalty.

I'm belaboring this piece, Your Honor, because when we get to the last alleged corrective disclosure in the case, which, in the parlance, is, you know, the reveal of the fraud, I want Your Honor to look at the analysts' reaction to the filing of the complaint because it's to this sort of stuff.

I mean, everybody knows, when you get sued by the federal government, it's going to be costly.  It's going to be time consuming.  They could put leverage on it.

I didn't finish it but to continue:  Future settlements may involve large cash penalties.  In addition, government authorities have significant leverage to persuade

pharmaceutical companies to enter into corporate integrity agreements, which can be expensive and disruptive to operations.

And so if the market sees an announcement that that happened, it's going to react negatively.  That's bad news.  We all know that.  It's not fraud.  But I thought it was important to read that to Your Honor because that is, as I mentioned, in every one of the 20-F's and 10-K's.  The company switched from a foreign private issuer over to US filings, so the 20-F is the foreign issuer's equivalent of the 10-K.  At some point, for reasons that I won't belabor and are irrelevant --

THE COURT:  Thank you.

MR. SMITH:  -- they switched.

THE COURT:  I'll take your word on that.  I'll take judicial notice of it.

MR. SMITH:  I could give you a big long footnote on it, if you want, Your Honor, but I don't think that it's going to advance the ball.  But that's in every one.

And so then we get to this question that I alluded to of loss causation.  I've talked a lot with Your Honor about the alleged misleading character of the statements and why the theory there doesn't work, and I've talked a good bit about scienter, which simply isn't alleged.

But the other element of a 10b-5 claim that's at issue here is loss causation, and to satisfy that element, Your

Honor, I'll break it down to really two things.  You've got to have some disclosure that reveals the supposedly concealed fraud, and that disclosure then has to result in a decline in stock price, which is the loss that's alleged in the 10b-5 case.  So here the plaintiffs allege three corrective disclosures.

THE COURT:  Can we maybe agree that -- I mean, not for you to agree but maybe plaintiffs will agree.  It seems to me that the only dip comes with the complaint.

MR. SMITH:  Well, I would agree with that in terms of it being the only dip that has anything to do with the disclosure regarding our charitable donations to PAPs.

THE COURT:  Right.

MR. SMITH:  But I think it's important if we may just hesitate over it for a second, Your Honor, because I think this is telling the way this is pled.

THE COURT:  Sure.

MR. SMITH:  So the first alleged corrective disclosure, the reason this is a corrected amended complaint is that in a prior complaint, in a prior version of the complaint about which we met and conferred, there was an allegation that a May 11, 2017, disclosure didn't have the subpoena, but it did.

And as Your Honor just pointed out, that should have been the big reveal based on the entire theory of the case.  We

weren't disclosing that we were engaged in charitable donation programs to PAPs that was somehow in violation of federal law.

Now, remember those risk disclosures I just read. We told everybody this could happen, interpretations could evolve, and that's what happened. Now we've announced that we've got -- I mean, a subpoena is a Government investigation. We've announced that we've now got a Government investigation, and it's quite specific, Your Honor.

THE COURT: Where is that?

MR. SMITH: So this is Exhibit E to our motion to dismiss on page 34, and what the disclosure says is, I'll quote it: On March 21, 2017, Teva received a subpoena from the U.S. Attorney's Office in Boston, Massachusetts, requesting documents related to Teva's donations to patient assistance programs, and Teva's in the process of responding to that subpoena.

Now, with everything else that was going on at the time, I mean, that's very clear what the nature of the investigation was. And, importantly, the reason that the complaint was corrected is that that disclosure did not cause the stock price to drop. In fact, the stock price went up on that day. I'm not sure for what reason. We need an expert to tell us. But it didn't go down.

THE COURT: Maybe for the honesty of the disclosure.

MR. SMITH: But that's critically important because

on plaintiff's theory of the case, that should have been the day the stock price dropped, and, frankly, that should be the end of the class period.  Since there's no loss, the whole case should be dismissed because what happens after that is simply no longer germane.

What happens after that, now, Your Honor skipped to the punchline, which is the filing of the DOJ case.  But there's an interim alleged partial corrective disclosure in November of 2017, and the interesting thing about that is that it has absolutely nothing to do with the Government investigation into the charitable PAP program.  It continues to contain the exact same disclosure that I just read to Your Honor, but the significance is that the company revised its guidance downward, which, by the way, had been going on for the preceding two quarters.  So this wasn't a stun-the-market event, as the plaintiffs allege.

The revenues, among other things, revenues for Copaxone were declining over the previous two quarters, and for background there, and this is all in the complaint and the documents that it references, but Copaxone for a good long time --

THE COURT:  I'm sorry.  I've got to step out for one second.

MR. SMITH:  Certainly, Your Honor.

(Pause.)

THE COURT:  I apologize for that.  Thank you very much.

MR. SMITH:  No worries, Your Honor.

THE COURT:  I need you to go back two words before I abruptly interrupted.  Sorry.

(The court reporter reads back the requested portion of the record.)

MR. SMITH:  If Your Honor looks at paragraph 121 of the complaint, it serves the disclosure, and the reason for that is given and was well-known, which is the advent of a generic product.

THE COURT:  Right.

MR. SMITH:  I'm sorry.  It's 122, Your Honor.

THE COURT:  Okay.

MR. SMITH:  Because for a long time, if Your Honor remembers, there are two different doses of Copaxone.  The one everybody really liked was the 40-milligram.

THE COURT:  They liked the one that you only have to do, like, three times a week.

MR. SMITH:  Only three times a week, exactly.  So they were transitioning off the 20-milligram, which was every day, because people didn't love it.  The only generic competition that they had, until 2017, was in the 20-milligram space.  And then all of a sudden, in 2017, somebody showed up in 40-milligram of the generic, and that's what really hammered

and that's what happened here.

And as I mentioned to Your Honor, this had been happening before the November disclosure. If Your Honor looks at paragraphs 99 and 101 of the complaint, you'll see the May and August 2017 releases, which talk about the fact that Copaxone sales are down significantly. In fact, in August, I think they were down 10 percent globally and 12 percent in the US already.

THE COURT: I mean, long before the generic comes on the scene, they know the generic's coming. You know when that date is.

MR. SMITH: People know it's coming, exactly, yeah. That's why I say, Your Honor, that you can see that trajectory, and that's what accounts for, you know, the November stock drop, or at least apparently just because, as I said, there's no new news in November in relation to the PAP donation issue. And, you know, I would just observe, I mean, I think Your Honor appreciates that it's the pressure of the generic that's affecting the stock price.

But it actually can't be the prior disclosure of the subpoena that's affecting it because, again, according to their allegations, we were still doing it until 2018, you know, the allegedly illegal practice. According to the allegations, that was ongoing, so it wouldn't have added downward pressure on the price even if it weren't for the generic explanation.

That I think, Your Honor, takes us to the end of the class period, and that is two years later.  Now, here's another question that Your Honor should ask yourself.  In November of 2017, subpoena was disclosed, and so the market knew that we were under investigation.

THE COURT:  You mean May?

MR. SMITH:  May.  I'm sorry.  Yeah.  Thank you for the correction, Your Honor.  In May, the subpoena was disclosed, and it's disclosed in conjunction with all those other risk factors that I mentioned to Your Honor warning people about what might happen if we were investigated by the federal government and all the parade of horribles.

So at that point, the class period nevertheless marches on until 2020.  What were we supposed to have disclosed at that point?  People knew we were involved in the practice, they knew the Government was investigating us for the practice, and we continued to disclose in our public filings that we had that subpoena and we were responding to the subpoena.  At one point I think the sentence that says we were responding to the subpoena changes to we're cooperating in response to the subpoena.  But what else were we supposed to say at that point?  Why do we have a class period that goes on for two more years?

But anyway, I would submit that the answer is that the disclosure that caused the stock drop was in 2020, but it was disclosure of a government complaint.  It's still unproven

allegations. And so it's the fact of a government lawsuit that the market doesn't like as opposed to the revelation of the allegedly concealed practices, which is plaintiff's entire theory, that accounts for the only arguable corrective disclosure in the case.

And I think with that, Your Honor, I may have said my piece, although I'm obviously happy to respond to any questions Your Honor has. And I would like, if I have a chance, I know I've been going on at some length, to have a little rebuttal, but otherwise I'll turn it over to my learned friends on the other side of the bar here.

THE COURT: Okay. Just give me one second.

MR. SMITH: Sure.

THE COURT: I guess it would be helpful if you were to just show me how you're distinguishing this case from Allergan.

MR. SMITH: I'm sorry. Which one, Your Honor?

THE COURT: Allergan, A-L-L-E-R-G-A-N. It's the District of New Jersey case in 2019, which held that a pharmaceutical company's failure to disclose the true source of its product success in a competitive conduct was misleading because it attributed the product's success to a strong supply chain, a diverse portfolio, and the uniqueness of its pipeline and product line.

MR. SMITH: Yeah. And I think the distinction there,

Your Honor, is severalfold.  One is that the allegation here, as I mentioned, is that the real reason for the success, supposedly, is illegal conduct.  So there's really nothing else to disclose other than supposed illegality here that would be material on plaintiff's theory of the case.

I keep coming back to this.  The only reason the additional things that they would like us to say make any difference is if we're revealing the supposed illegality of the conduct.  Because otherwise, Your Honor, it's more good stuff.

In other words, if you want to say, you know, say more, say more, you need more detail and more detail about everything that you're doing to support the product, it's going to be, you know, we're doing additional things that are causing the product to do better.  It's not negative news.  So, you know, this is, I think, a theory that is somewhat unique in the sense that it really reduces down to the alleged illegality that they want us to disclose.

I know cases like the one Your Honor's citing and others, and there are a number of them in the plaintiff's brief, that talk about, you know, you've dipped your toe in the water about attributing reasons to the success of the product, and, therefore, you know, you have to go further.  That's if you've got something negative to say that you're not saying.  So cases where you're, you know, paying direct kickbacks to doctors, which I think maybe the Holwill case that they cite,

you know, things that are obviously bad, not that you didn't know that they were illegal, or just negative facts, negative factors that cut against the positive spin that you're putting on something.

The other thing that I should point out, Your Honor, just to go back to the actual statements themselves, again, most of them are just numbers. And in the instances where we do say more to explain the numbers, most of the statements, again, there's no specific indication as to why any of the alleged misstatements is misleading other than that paragraph repeated 20 times that I read to Your Honor, 76A and all the ones that follow it. That's the only allegation as to why anything's misleading.

But, you know, the other statements that aren't purely historical performance are, as we've argued in our brief, largely puffery, you know, saying we do great stuff and it's helping our product. There's not a heck of a lot of additional factual detail around those statements that you could even argue is getting so specific that you left something undisclosed. I don't know if that's responsive to Your Honor's question.

THE COURT: All right. What about statements that are forward-looking? Can you identify any such statements?

MR. SMITH: There are a few. There's a handful, Your Honor. They're enumerated in our brief. There aren't a ton of

them.  The plaintiffs have argued that some of those appear in the same disclosure that has statements of present fact that they've alleged are false.  I would submit that the handful of forward-looking statements that we've identified are easily separable from the factual statements, which also are not alleged were false and should benefit from the safe harbor.

I would say that, in looking at it, I'm not going to latch myself to the mast on paragraphs 110 and 111 as being forward-looking, which we have argued and I think they are arguably forward-looking.  But for all the reasons that I've discussed at length, Your Honor, there's a lot of independent reasons why those statements ought to be dismissed as well.

THE COURT:  All right.  And do you concede that Copaxone is one of Teva's core operations?

MR. SMITH:  Not necessarily, Your Honor.  I mean, I can give you some statistics on that.  I think at its height it probably represented something like 20 percent or 25 percent of revenues, which is not insignificant, obviously.  But, you know, this is a company that does $20 billion of business globally a year, or was at least at the height of the class period.

And if you compare the Copaxone revenues to that, it may be even more importantly the percentage of Copaxone revenues that are attributable to Medicare Part D.  The numbers, while not small in absolute terms, in relative terms,

you know, are fairly interesting.

For example, you know, I think it's alleged that in one year of the class period, the potentially lost revenue, if we stopped the patient assistance program, would be, you know, somewhere in the order of $200 million, which is not a small sum of money.  But when you compare it to overall Copaxone revenues -- which I've actually got a chart of it someplace that I can provide the Court, and maybe when I stand up again I'll give you some more numbers on it.  But that's against I think in that year maybe 5 billion in Copaxone sales and against 19 or 20 billion total revenue for the company in that year.

So it's an important product, I'm not going to dispute that, but whether it hits the bogey for the core operations doctrine, you know, I don't think it's the product that the company had.  And as we discussed --

THE COURT:  It's a major part of their revenue.

MR. SMITH:  It's a significant part of their revenue. It's certainly not the predominant.  If you look at some of the cases, that's what they talk about.  Off the top, I don't remember which of plaintiff's case it is, but it was significant that it was the majority, if not a super majority of their revenues were attributable to the product versus here where, at its height, it's going down again for reasons that we discussed over the class period, but, you know, 22 percent or

thereabouts is not insignificant.

THE COURT:  You mentioned something.  In terms of the Medicare Part D, you said something about if they lost the PAP -- is that the right acronym?

MR. SMITH:  Yeah, the PAP donations, the charitable PAP donations.

THE COURT:  How many drugs were in that, I guess, that's what I want to know, for Teva?

MR. SMITH:  Well, I'm only talking about the Copaxone.

THE COURT:  I know.  But are you talking about, like, 200 million, if they lost that, are you talking about 200 million for that drug?

MR. SMITH:  I think that plugs to Copaxone, Your Honor.  I want to check that for Your Honor because I don't want to just shoot from the hip, but since Your Honor asked the question, I figured I would raise that.  I can check it, and when I come back to speak to you again, I'll give you the specifics.  But that comes from allegations in the DOJ complaint and possibly the congressional reports where those numbers are coming from.  So I'm not saying that those are necessarily accurate, but that's what's alleged in the complaint by virtue of having incorporated those documents.

THE COURT:  But I would think there's a number of drugs that make up whatever amount of revenue that they get

from Medicare Part D, right?

MR. SMITH:  Oh, yeah, I see what Your Honor was asking.

THE COURT:  Well, I think I'm a little bit in between the two, I guess.

MR. SMITH:  Yeah.  I think when I made that point before, I was talking about the percentage of Copaxone.  The 200 odd million number is a different issue.

THE COURT:  200 million, you're saying, is only if they lost the Copaxone.

MR. SMITH:  I think the allegation is, if they stopped making the charitable contributions to the PAPs for the Copaxone copay, it could potentially result in the loss of up to, I forget, 270 million or something like that for a given year.

THE COURT:  I'm going to ask a question that maybe you shouldn't answer.

MR. SMITH:  Maybe I shouldn't have even raised it.

THE COURT:  I'm not trying to get anyone to admit anything they shouldn't admit.  But what they were doing regarding the donations with Copaxone, I mean, was that similar conduct that they were doing regarding other drugs that they were contributing to the donations?  I don't know if you should answer the question.

MR. SMITH:  I'm going to be able to tell Your Honor

in good conscience I don't know.

THE COURT:  All right.  And you understand why I'm saying what I've said.

MR. SMITH:  I do.

THE COURT:  I think we're good for now.

MR. SMITH:  Thank you, Your Honor.

THE COURT:  Thank you.

Hello, sir, how are you?

MR. KILLORIN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. KILLORIN:  Bob Killorin for the lead plaintiff.  There's a lot to respond to.  I'm going to do my best to work through it.  I think that I would like to start with this whole notion of illegality.

THE COURT:  That sounds like a good idea.

MR. KILLORIN:  Yeah.  In our opinion, the only reasonable reading of the complaint -- frankly, in this argument and the argument they're making, it never even occurred to us.  If you look at the first 19 times, and you can do this on Adobe hitting the search for the word "scheme," if you get on Adobe and start searching the word "scheme," in the first 19 times we use that term, there is no mention of illegality, except once where we did throw in the adjective "unlawful."  But the other 18 times, there's no mention of illegality.

Also part of that 18 times is our entire description of the illegal kickback scheme, and I can't help but call it illegal kickback scheme.  However, that's just natural because we believe it was an illegal kickback scheme.  We do think we've adequately pled that it was an illegal kickback scheme.  We've attached the Department of Justice complaint, which has recently survived a motion to dismiss.  So we're on pretty good ground saying there's solid allegations that withstand a motion to dismiss that it was an illegal kickback scheme.  But that's not our allegation.

THE COURT:  Okay.  So what you're saying is if -- let's pretend, and I know there's other issues, kind of go down this hypothetical path, let's say there was never, which I'm sure they wish, there was never a complaint that was brought. I know that's going to affect other issues we have to address here.  We're going to leave those to the side.

If there was never a complaint that was brought, so never even the possibility that somebody decides this is illegal, you believe that whatever scheme was in place related to these donations still needed to be disclosed in some other form or fashion than they have done.

MR. KILLORIN:  Yes, Your Honor.  We believe all the statements they were making about the success of Copaxone were completely misleading because they hadn't disclosed a bunch of what I would just have to characterize as terrible things to

defraud the federal government of hundreds of millions of dollars with the kickback scheme that's described in detail, which is setting things up in sort of a dirty little operation with two pharmacies where all the money that Teva gave them, virtually all the money, would come right back to Teva, in violation of its own policies that they cannot give to charities where the money flows right back to them, in violation of the federal Anti-Kickback Statute, and in violation of the False Statements Act.  And that's all detailed in the pleadings that that was part of the scheme.

So when they said, oh, Copaxone is doing very well because of strong customer demand, Copaxone is doing very well because of our efficient marketing or our efficient productions, that is false by omission.  They are, in our opinion, playing word games when they say we don't allege they make any false statements.  That is only technically true.

But if you look at the statute we filed this case under, which is 10b, Rule 10b promulgated by the Securities and Exchange Commission, it's unlawful to employ any device, scheme, or artifice to defraud; to make any untrue statement of a material fact; or -- and this is the part of the statute, the illegality from the statute that we care about -- it is illegal to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

So, yeah, we're not alleging the first part of the sentence that they made an untrue statement.  The statements they made were true, but there were omissions.  There were material omissions.  Any investor clearly would have wanted to know what was going on at Teva regarding Copaxone.  These omissions were clearly material, and they clearly made the statements that Teva issued regarding Copaxone false by way of omission.

THE COURT:  Okay.  I'm going to have to do the same thing.  I'm sorry about this.

(Pause.)

THE COURT:  You were talking about material omissions.

MR. KILLORIN:  Yes, I am.  So it doesn't matter that they didn't make an untrue statement.  Yes, everything they said about their financials we are not challenging.  What we're challenging is all the glowing statements they said about Copaxone.  20 percent or 25 percent, as he said, of $20 billion, that would be a 4- or 5 billion-dollar revenue stream.  Whether or not it's core, it's hugely significant to the company, which explains why we're dealing with the huge numbers that we're dealing with, you know, a total of over $300 million in contributions to these charities that, according to the allegations, Teva knew was going to come right back to itself and ensure that Teva made hundreds of millions

of dollars more money from the sale of Copaxone at inflated prices.

They used that scheme to make copayments for the poorest of the poor so they could keep raising the prices, and all the poor people out there paying for Copaxone that weren't on Medicare Part D were going to have to be paying all those hefty increases in copays themselves.  Under that guise, they ran the price of Copaxone up, I forget if it was 11 or 19 times the inflation rate.  Hundreds of millions of dollars that they profited because of this scheme.  And it was clearly a scheme. I mean, there's no other way to characterize our allegations, which must be taken as true, and the implications from them. It was a scheme.

Now, is it hard to avoid throwing in the adjective "illegal" because the DOJ has pled that and that complaint has been --

THE COURT:  But you agree that they do not have to disclose illegal.

MR. KILLORIN:  100 percent, Your Honor, and I'm glad you raised that point.  There are two cases that I would direct the Court to.  The first is a Fourth Circuit Court of Appeals case which is -- pardon me.

THE COURT:  Not in your brief or in your brief?

MR. KILLORIN:  It's in the brief.  Oh, it's in the brief.  Let me find it.  I apologize.  It's not readily

available.  It is the Singer versus Reali case, and in that case, which was also a False Claims Act regarding defrauding Medicare, the Court said the company conjured up a scheme to help surgeons defraud government-funded health care and insurance payers.

The district court dismissed that 10(b) securities fraud complaint.  The Fourth Circuit reversed.  But in reversing, the Fourth Circuit said this.  And if you'll indulge me, I'm just going to read it:  At bottom, the complaint is sufficient to establish that, by choosing to speak about its reimbursement practices, the company possessed a duty to disclose its alleged illegal conduct.  The company violated that duty and acted deceptively by way of false statements and statements that were misleading because they omitted the fraudulent reimbursement scheme.  Furthermore, the facts of that scheme were material, in that a reasonable investor would have considered the scheme important in deciding whether to buy or sell TransS1 stock, and would have viewed the total mix of information made available to be significantly altered by the scheme.  We are, therefore, satisfied that the complaint squarely alleges a material element of the Section 10(b) claim.

Now, most importantly in that case, the Fourth Circuit said:  At bottom, the complaint is sufficient to establish that the company possessed a duty to disclose its alleged illegal conduct.

The Fourth Circuit was happy to describe the conduct as illegal. It hadn't been proved. Illegality usually is never proved because these cases settle. Everybody knows that. They properly point that out. We know that. When you throw in something like that, it needs to be based in fact. You need to have a foundation, like we do in the DOJ complaint. But we are not at all -- I can't imagine somebody interpreting our complaint as saying you have to use specific language when you disclose the scheme. It's the scheme that investors want to know about.

THE COURT: All right. Well, what about this heightened standard in terms of have you met that?

MR. KILLORIN: Absolutely. This is a case where we have the benefit of hundreds of pages of a DOJ investigation. We have two high-level confidential witnesses. We have a congressional report on this matter. And so we have pled with ultimate particularity the details of our alleged scheme.

So, you know, like I say, we describe the scheme completely without using any reference to legality or illegality. If you look at paragraph 74A, they didn't point you to 74B where we talk about the kickback scheme without using the term "illegality." It honestly is something that just flows naturally because it's been properly alleged and there's a substantive foundation, but it's absolutely a gratuitous adjective to describe the scheme.

THE COURT:  So you should be willing to strike all the illegals?

MR. KILLORIN:  I'm happy to.

THE COURT:  There you go.

Does that resolve this issue?

MR. KILLORIN:  If we were to replead, which I think would be a complete waste of time, we'd certainly strike the word "illegal."  But there's no need for that because it's clearly just a gratuitous adjective that, like I said, was not even used when laying out the bare-bones details of the scheme in paragraph 31 to 68 of the complaint.

And, clearly, when we said the illegal scheme in that paragraph 74, and that block, of course, is repeated throughout when we talk about reasons for falsity, yeah, we shouldn't have used the word "unlawful" just because it gives them this argument.  But it's not there.  It's not a good argument.

THE COURT:  Well, why don't we talk a little bit about the disclosure because he obviously read the disclosure that talks about the fact that something like what happened could happen, might happen.

MR. KILLORIN:  Sure.  Absolutely.

THE COURT:  Did happen.

MR. KILLORIN:  Absolutely.  So boilerplate safe harbor disclosures are absolutely insufficient to protect a company of specific known wrongdoing.  And we think, as the

Supreme Court in Tellabs says, for scienter, you know, the culpable mental state, you look at a complaint holistically, all four corners.  And given the magnitude of Copaxone's percentage of Teva's business, given the unbelievable details of this situation where they set it up where virtually all the money was flowing in an illegal kickback scheme --

THE COURT:  No, no.

MR. KILLORIN:  Thank you.  Kickback scheme.

And by the way, if you look in Merriam-Webster dictionary --

THE COURT:  Scheme is defined as?

MR. KILLORIN:  Scheme is defined as a program of action that is often secretive, but it does not use anything about illegality.  It's just a general generic term for a program of action, if I follow Merriam-Webster.

So this scheme -- and you don't have to call it a scheme.  We can start calling it a program of action, or we can start calling it the plan to pay insurance companies to provide only reimbursement for Copaxone because the patients are channeled to the right insurance company and the right charity so that the money all comes back to Teva.  You could call it that if you wanted to, instead of a scheme.  Scheme is so much more convenient, but it's hard to resist throwing in the unlawful like we did.  Like I said, we didn't the first 18 times we used it out of 19, and we didn't when we laid out the

bare bones of the scheme.

And if you look at --

THE COURT:  So you're saying holistically...

MR. KILLORIN:  Holistically, you look at the complaint for evidence of scienter, and this case is bristling with it.  You look at the fact that they made arrangements with Advanced Care Scripts, the pharmaceutical company that was the only one, apparently, according to the allegations, that Shared Solutions.

Shared Solutions was Teva's help-the-patient program, and I think Shared Solutions actually did some good things. But the thing they did for Copaxone, the thing they did was the first step in a scheme that we believe should have been disclosed, is they took any Copaxone patient that had been prescribed and funneled them to a very specific pharmacy.  That pharmacy was Advanced Care Scripts.

And Advanced Care Scripts had an arrangement where it would then, along with Shared Solutions, get anyone that needed Medicare Part D onto Medicare Part D.  And then they would be eligible for copayments to be made by two specific charities, both of which were in cahoots with Teva.  They would provide them data on how much money they needed to fund all of the Copaxone Medicare Part D patients that had been funneled to them by Shared Solutions and Advanced Care Scripts.

And they simply had this big circular money flow

going that then allowed them to, under the cover of copayments being made for the most needy people, under cover of darkness, they exceptionally increased the price of Copaxone nationwide over the course of a number of years and, according to the DOJ, defrauded the federal government out of hundreds of millions of dollars.

THE COURT:  Tell me a minute about the increase.

MR. KILLORIN:  Okay.

THE COURT:  How are you tying that in?

MR. KILLORIN:  Well, we're simply saying that it's inescapable.

THE COURT:  Because of this money coming in, you think it brings it up?

MR. KILLORIN:  Yes, because there would not be a human cry.  There would not be consumer complaints.  The people that needed the copayments, needed assistance, people would still be able to be on Copaxone and not start lobbying efforts, not start public ground swell to keep the price of Copaxone under control.

In other words, it removed a huge political pressure because we are dealing with multiple sclerosis patients whose health -- apparently, Copaxone is a wonderful drug.  People do need it.  It does change lives.  But Teva just set up a system where the poorest of poor could keep getting their copayments made and then start marching the price up, and we think it was

simply to take care of the people that might become noisy or cause problems with price increases so that they could do that.

If you don't mind, I want to jump back just to one more case that they cite going back to the illegality theme. They talk about, you know, they love in their brief this case of Pelletier versus Endo International because the judge there said, oh, I'm going to dismiss your claim of illegal price fixing because you haven't pled it adequately.

Well, that case is completely distinguishable from our case because we haven't tried to plead a violation of the kickback statute and make that a basis for our claim of recovery. And in that very case, the judge lets the claims that are not based on the illegality of their action, but their actual actions that partly formed that illegal price fixing, that part of the 10(b) claim survived because they didn't disclose the parts, their action that contributed to the price fixing claim that plaintiffs failed to allege under the antitrust statutes, which is a fairly high technical burden. So they failed to allege antitrust violations, but the 10(b) case survived anyway because they didn't reveal the underlying facts that were part of that price fixing scheme. So that case is totally distinguishable.

Here, we're not trying to prove a violation of Anti-Kickback Statutes. We're just saying that all of those ugly underlying facts would have been completely material to an

investor and should have been disclosed.

And to say, oh, Teva lost 15 percent of its stock value when the DOJ complaint was released because everybody knows DOJ complaints are a nuisance. That's just not true. Every time there's some kind of DOJ complaint against Teva or any other company, they don't necessarily go down 15 percent. What happens is the market analyzes every part of it, and in the case of Teva, we contend that the nuts and bolts, the 800 pages of the DOJ complaint and the scheme that Teva had been involved in, is what was material to the market and all the supporting evidence.

An analyst on the data came out August 18, 2020, for The Motley Fool and said, "How many red flags can investors overlook? Investors should also ask themselves if they want to own a company with what appears to be a morally bankrupt culture."

Now, that's way beyond what you would get from just your typical DOJ complaint being filed against a company. That is the kind of material revelation of wrongdoing that caused the price to drop 15 percent on the day the DOJ complaint was filed.

Likewise, an analyst for Jefferies said, "Applying treble damages plus interest could make this suit a major liability for Teva on top of its current balance sheet challenges."

People were looking at the details of the DOJ complaint.  That's what was material.  That's what had not been disclosed to investors.  That's what should have been disclosed to investors.

THE COURT:  All right.  While we're talking about what should have been disclosed, have you identified any misleading statements by Defendant Kalif?

MR. KILLORIN:  Good question.

THE COURT:  I don't think so, but if I missed it -- did you say the DOJ complaint is 800 pages?

MR. KILLORIN:  I think with exhibits -- no, the complaint itself is, I think, more like under 200, maybe in the neighborhood of a hundred, with its wealth of exhibits.

THE COURT:  We're at, I guess, 684 with our wealth of exhibits.

MR. KILLORIN:  That's true.  That's true.  We came to play.

THE COURT:  I just wanted to feel a little better about my nighttime reading.

MR. KILLORIN:  So if you'll give me just a minute, I'll check my notes on Defendant Kalif.  I don't have any affirmative misstatements by him.  Although he would have had to approve payments of -- well, I guess I do have affirmative statements.  He was in a position of control over everything that Teva said as an executive vice president and CFO.  So he

actually would have had control liability for all false statements Teva made, we allege.

Also, he would have had to approve 25 million-dollar-and-up payments that were made to the illicit charities. He also signed stock certifications. But as far as anything that is attributed to him individually, no, I don't have anything.

THE COURT: Okay. Is it your position that statements that they made after they disclosed the subpoena are misleading?

MR. KILLORIN: Oh, yes. Yes, Your Honor, completely. Oh, yeah. That's a good point. The subpoena did nothing. The subpoena was generic. They just disclosed its existence and the high-level topics that it involved. The DOJ is looking into our contributions to charitable foundations, something like that. Completely kept all the details of the scheme or course of action undisclosed from investors.

No, that whole load of information was completely withheld by Teva, and their announcement of the subpoenas is virtually meaningless because they didn't tell what the topics were, they didn't tell what they knew about it.

Internally, because this was huge dollars, huge chunk of their business, they were probably very concerned. But externally, they didn't show that concern. They just said, oh, we got some subpoenas regarding these issues. They kept all

those secrets that we talked about, the funneling scheme of patients to two charities that were improper, they kept all of that quiet to themselves.

Also, a number of years earlier, Teva, I guess for tax reasons, analyzed the situation, and they actually themselves said we can't deduct this money to these charities, because it's marketing.  It's in the nature of marketing.  So they had actually quit deducting these donations as hundreds of millions of dollars going to charities years earlier because they knew that it wasn't a genuine deductible charitable contribution.  It was part of the scheme.  They did not disclose that to the market either.  That all came out as part of the DOJ complaint.

So, no, the 2017 announcement of the subpoenas was the tip of the iceberg.  The whole iceberg stayed under water until it burst forth with the DOJ complaint and was fully exposed.  I guess we better say the sea level dropped, but that's what happened there.

THE COURT:  Well, when we looked at these individual defendants that are all, I think, high-level executives, why should they be presumed to know about the day-to-day operations of this particular drug?

MR. KILLORIN:  Right.  Because, Your Honor, we think that well over $300 million in payments for this drug is not day-to-day.  In fact, we've got charts on the hierarchy of

check writing. And so these payments, these large, high-level payments, including, I think, a $40 million was budgeted one year, with a number of checks that went over various levels to these high level executives.

They would have known very well the amount of these checks, they had to approve these checks, and you've got to assume a certain amount of diligence that they understand what these huge 25 million-dollar checks they're writing are going to. Either that or there's severe recklessness, which also gives rise to liability, a willful disregard.

And then we feel like, you know, other than this sort of semantic argument that they're making that we shouldn't have used the word "unlawful" in certain places to characterize the scheme, which, like I say, the courts do it themselves, and we did not use that word when we actually described the nuts and bolts of the scheme and all the things that were material that should have been disclosed.

But defendants make other arguments that are equally unfounded in reality. They say that defendant cannot state a claim under section B by simply saying the defendant is the subject of a government investigation or claim. That is exactly what plaintiff hopes to do here.

That's just totally wrong. Our complaint is not about being a subject of a government investigation. It's about all the underlying facts that were disclosed. But that's

just, you know, I don't know what that is.  It's just very wrong.

And then plaintiffs have not pleaded, this is a quote from their motion to dismiss, page 1, plaintiffs have not pleaded that defendants made any statement that was false or misleading.  Well, again, that's just playing word games with Rule 10(b) from the Securities Exchange Commission.  We have pleaded that the statements were actionable and materially misleading.

And then plaintiff has not identified -- I'm sorry.  The quote I meant to read was plaintiff has not identified a single statement to shareholders that was false or misleading when made.  Again, that's just not correct.  The whole complaint is full of that.

THE COURT:  Or omissions maybe.

MR. KILLORIN:  That is correct, right.  It was false and misleading by way of omission.

And then they say plaintiffs do not identify -- I'm sorry.  They say a number of statements are either puffery statements of opinion or prediction of future performance.  But they don't even put in a footnote to list which of the statements they're challenging, and that's because they don't have good challenges to it.  They're trying to, I guess, put the work on the court to try to just take the argument and go pick those out and dismiss them, but that's not the way it

works.  And the reason they don't bother is because it's not a strong argument.  That is a makeweight argument.

There are a number of points made, and I just want to make sure -- I'm about done, Your Honor.  I want to make sure that I'm addressing --

THE COURT:  I want to talk about loss causation.

Are you ready to go there?

MR. KILLORIN:  I'm ready, Your Honor.

THE COURT:  Well, you heard their arguments in terms of, obviously, when the disclosure of the subpoena comes out, we don't have any loss.

You agree with me there, right?

MR. KILLORIN:  Let's see.  That is correct, Your Honor, yeah, yes, yes.

THE COURT:  Okay.  So wouldn't that defeat loss causation as to that disclosure?

MR. KILLORIN:  I'm sorry?

THE COURT:  Wouldn't that defeat loss causation as to that disclosure?

MR. KILLORIN:  No, it would not, Your Honor, because to have loss causation you have to have a revelation of truth, and as we have said, those subpoenas didn't reveal the truth. They didn't reveal the underlying scheme that was going on. That was not revealed until the details of the DOJ complaint were made public.  In other words, people just knew there was a

subpoena, but that's simply not enough.

And by the way, the correction, that correction of the complaint that we made was not because of lack of loss causation. We had a meet and confer with defendants, and they properly pointed out that we had the date wrong for that disclosure. They also said there was no loss causation, but we had the date wrong on that disclosure. They were correct, and so we made our own motion to strike with their consent to just fix an obvious error in the complaint on the date of disclosure.

THE COURT:  Okay.  Well, then to the extent you're relying on November 2, are you saying that that constitutes a corrective disclosure?

MR. KILLORIN:  Yes, if you're talking about the --

THE COURT:  Adjusting the forecast downward?

MR. KILLORIN:  Yes.  Now, we do allege that's a corrective disclosure, and that is a less obvious corrective disclosure.  But we think that that was done because they brought in new management because of the subpoena and because of problems with the whole Copaxone program.  It's our allegation that they had to bring in new management to start cleaning up the problem, change projections downward, and that itself constituted a partial revelation of the scheme.

THE COURT:  Well, did it reveal anything about the scheme?

MR. KILLORIN:  It did not.  It did not, Your Honor. There are revelations, partial revelations of fraud that are sometimes called leakage, where the market can glean that there is a problem going on regarding the underlying fraud, but it's not specifically revealed.  And that is the basis of that particular partial disclosure, and I'll readily admit that is not as well-supported as the 15 percent drop at the end of the class period.

THE COURT:  All right.  Well, what about, I mean, are you then saying that the disclosure of the subpoena on May 11 is not a corrective disclosure?

MR. KILLORIN:  That is correct.  We are not alleging that.  That is correct, right.

THE COURT:  If I were to find that you failed to state a claim as to any individual defendant under Section 10(b) and Rule 10b-5, does that preclude liability under Section 20A as to that individual defendant?

MR. KILLORIN:  Could you please restate that one for me?

THE COURT:  Yeah.  If there's an individual defendant that I find that you have not stated a claim under Section 10(b) or Rule 10b-5, does that then preclude liability under Section 20A.

MR. KILLORIN:  Yes, for that individual.  Yes, Your Honor, I believe that's true.

THE COURT:  All right.  Thank you.

MR. KILLORIN:  Thank you.

THE COURT:  Counsel, how long do you think you have?  I'm not trying to rush you.

MR. SMITH:  About 10 minutes.

THE COURT:  Because I have a call with some attorneys that are in the middle of trial at 12:45.  Because I know you have some more, and my call should take 5 minutes.  I never know if these clocks are right.  It's 12:35.

MR. SMITH:  If Your Honor would prefer to break, we can do that.  It all depends on --

THE COURT:  Why don't you go ahead and start.  Just know that at 12:45 I'm going to have to break.  I am going to want to come back in a minute after that, I assume, because you may take 5 or 10 minutes.  I want to talk to my law clerk briefly, and then I'll come back and talk to both of you.  If you get it in, great.  If not, we'll take a break.  And the call should be less than 5 minutes.

MR. SMITH:  Sounds good, Your Honor.  I'll try not to speed talk for the reporter's sake.

So really just a couple of points, Your Honor.  I heard a couple of things that were of interest, in addition to the plaintiff's willingness to strip the word illegality and unlawfulness.

THE COURT:  You like that, right?

MR. SMITH:  I welcome that.  I also heard a concession that the statements that were made were true, so I think that is undisputed.

THE COURT:  I think he agrees with you that it's omissions.

MR. SMITH:  Correct, Your Honor, but I think it's not insignificant that none of the statements are inaccurate.  The claim is they're misleading exclusively because of the failure to disclose the alleged illegal conduct.

I also heard --

THE COURT:  I think we're now at failure to disclose scheme.

MR. SMITH:  Well, I will address that in just a second, Your Honor, as you may have anticipated.  Before I get to that, I also heard a concession that there's a hundred percent agreement that we don't have to disclose illegality.

THE COURT:  Right.  I actually think he may actually say that in his brief.

MR. SMITH:  I think it's quite clear, but I think that is fundamentally problematic for the plaintiff's theory of the case.

Now, to get to scheme, Your Honor, I suggested to Your Honor at the outset of my initial presentation you really have to keep your eye on the ball in this case because it's very easy to slipstream between what's happening with the DOJ

case and a 10b-5 claim. And the word "scheme" as used in 10b-5 is a scheme to mislead investors in the stock market. The scheme that my friends on the other side here are talking about is an alleged Anti-Kickback scheme. That's a very different thing.

And all of the details that they would have liked disclosed -- this is important because, as I said before, the alleged illegality is the materiality of the information. Everything they allege, if it wasn't illegal, I think Your Honor posed it as if no DOJ complaint had ever been filed, but what they're trying to say is if it wasn't illegal, all of that is positive information, that we were engaging in conduct, according to the allegations, that was increasing our revenues.

By the way, there's no dispute that it was allowing needy patients to get their copays paid and get Copaxone. So the scheme, as it's called, is only problematic if it's illegal.

THE COURT: So what you're saying is if they had said, look, we got this great program that we've partnered with ACS, and so anybody who needs Copaxone, you know, Medicare Part D, they'll set them up on Medicare Part D. Then we give a certain amount of money for the donations that takes care of that, and we are ensured that we get all those copays.

MR. SMITH: Yeah, I mean --

THE COURT: Very simplified.

MR. SMITH:  Right.  I was going to say.

THE COURT:  We've come up with this great partnership and it works great.  The investors would all be very happy with that.

MR. SMITH:  Well, yes.  I mean, let's put aside the characterization of conduct.  Let's put aside, you know, what really happened or even what's alleged.  The point is, if none of that conduct was illegal, yes, the investors would be happy with it because plaintiff's own theory is it's causing us to increase our revenues.  And the only reason in their allegation, their view of the world, the bottom falls out, that is because we get sued by the Justice Department.  I think it's very important to keep those two things distinct because it's a critical point for the case.

I heard reference to a Fourth Circuit case in terms of whether this sort of pleading plaintiffs have engaged in here passes muster or not.  I would ask Your Honor to take a look at the Galati case that we cite in our brief.  It's a Third Circuit opinion, but it's non-precedential.  So it's persuasive.  I suggest to Your Honor it's a short case.  You can read it pretty quickly.  It is highly persuasive in this case.

I would just highlight one aspect of it, which is -- I pointed Your Honor to paragraph 76A, et seq., all those other paragraphs where the only thing they allege about what was

fundamentally undisclosed. In the Galati case, here's what was alleged. It was dismissed. Here plaintiffs allege that, quote, defendants made several statements that were rendered false or misleading by virtue of their failure to speak fully and accurately about the illegal bid rigging and kickback scheme.

So that's what the plaintiffs are alleging here, that we failed to speak about an illegal quote/unquote scheme as they refer to it.

I'll just touch very briefly on subparts B and C of their constantly repeated allegation about what was allegedly undisclosed because there was some suggestion that those are untethered to the alleged illegality. I think the only fair reading of those repeated allegations is that B and C flow directly from the allegation in sub A of all those paragraphs that there was illegal conduct going on.

The risk disclosures he referred to as boilerplate. I read them to Your Honor. They're anything but boilerplate. They're exactly the risk that ultimately materialized here, exactly the risk that materialized.

I just want to come back to Your Honor was quite correctly focused on the allegations as they relate to individual defendants, and I think it's important again to distinguish when we're talking about different elements of the claim. And I want to continue to focus the court on the

scienter element and the heightened pleading standard and the need to state particularized facts that give rise to the strong inference of scienter on the part of each of the defendants, and they're just not there, Your Honor.  They're just not there.

Getting, I think, to the end and hopefully within Your Honor's time frame, Your Honor asked about the May 11, 2017 disclosure of the subpoena.  My adversary said that the subpoena was nothing, and I think he said that because, as we all know, the subpoena resulted in no stock drop.  So the subpoena was nothing from a loss causation standpoint.

THE COURT:  I think what he meant was, at least the way I interpreted what he was saying, maybe I shouldn't call him out, but that the discovery regarding the subpoena really didn't give anything.

MR. SMITH:  Right.  But what I would suggest to Your Honor is that it gave everything when read in conjunction with the risk disclosures that I previously mentioned.  The subpoena was the materialization of the risk of the government investigation.  And it was very clearly -- because the other thing was there was a little bit of a paraphrasing of exactly what was in that disclosure, and it's important how it was worded because, remember, this was happening market-wide at this point.  The DOJ was on a tear.  So people knew exactly what these words meant when it was disclosed, and it was

related to Teva's donations to patient assistance programs.  So that's what was disclosed.  That's what was then known.  It was --

THE COURT:  Actually, doesn't it go on?  I had that up here a minute ago.

What exhibit did you say that was again?

MR. SMITH:  That was Exhibit E on page 34, Your Honor, to the motion to dismiss.

THE COURT:  Well, when you say they were on a tear, who else got the same subpoena?

MR. SMITH:  A number of other companies had announced subpoenas.  I think this was all in our briefing, Your Honor. And the DOJ at some point, I'm not sure whether it was before or after the subpoena was issued, brought cases.  So it was known what it was about, but it was also tied directly to the risk disclosures that I read to Your Honor that had been out there since the beginning of the class period and were continued and repeated in the same documents that now disclose the subpoena.  So it's not rocket science to put those two things together and understand exactly what's going to happen.

And that gets me to one of my last couple of points, which is paragraph 172 of the plaintiff's complaint.  You were referred to one analyst's reaction here from The Motley Fool. The other analysts, and there were two, if you look at what they were saying, it's exactly what the risk disclosure said.

I think I alluded to this in my initial presentation to Your Honor.

But what the Jefferies analysts didn't like is that this sort of litigation represents a major risk because applying treble damages plus interest could make the suit a major liability.  I mean, yeah, that's the point, that these were treble damages cases, and they carry risk with them.  And that's why the market doesn't like them when they're filed.

I do actually have some of the actual numbers that I was quoting to Your Honor earlier, and it warrants a little bit of correction perhaps in terms of how all these numbers match up and you follow the bouncing ball.

The US sales for not just Copaxone but total, only 5 percent of US sales were Medicare or Medicaid sales, which includes not only Part D but even more broadly.  So that's one order of magnitude to consider.

I think the other numbers that we talked about and marched through, I'm going to use the example of 2018 because it's the only one that has the alleged potential loss in sales. 2018 global revenues were 18.85 billion.  Now, this had gone down significantly from the beginning of the class period, but total global Copaxone sales were 2.37 billion.  The alleged potential loss if the program was stopped was 280 million.

THE COURT:  Just as to Copaxone?

MR. SMITH:  As to Copaxone.  The alleged donations,

this is the theory about signing off on these huge numbers, et cetera, the alleged donations in that year were for Copaxone donations, as plaintiffs call them.  This is, you know, the donations to the charitable PAPs for MS.  The donations to charitable PAPs were 23 million.  So it gives you some order of magnitude about how those numbers compare with one another, and I think Your Honor had questions about that from a core operations doctrine standpoint.

THE COURT:  Okay.  All right.  Great.  If you all will just take a brief recess, hopefully I'll be back no later than 1:00.  Thank you.

(Recess taken from 12:48 p.m. to 12:58 p.m.)

THE COURT:  Okay.  Thank you all.  You may be seated.

All right.  So does anybody have anything more?  I don't think I have any more questions for anybody.

MR. KILLORIN:  Can I have one minute?

THE COURT:  With that invitation, he wants it.

MR. KILLORIN:  You bet, Your Honor.  Can I have a one-minute response?

THE COURT:  You can have a minute response.

MR. KILLORIN:  I think we're getting close to the nut, and I'll be as fast as I can.  Thank you.

He said the scheme is only problematic if it's illegal.  That is not true at all.  As we pointed out earlier

and I think as everybody knows, illegality is a matter of final adjudication by a court after all appeals are exhausted.  We rarely get an answer to whether conduct is ultimately illegal or not.  It's always a matter of subjective adjectives describing the conduct or suspected problems with the conduct.

What made this scheme material was not whether or not it was illegal in a technical sense because nobody can know that.  What made this material to investors is because everything about it smelled bad.  It looked illegal.  It looked like it would lead to huge liabilities.  It's not whether or not it's illegal, and that's not what our complaint says.

What's important is what was actually going on, which was a plan -- and I'm going to use Merriam-Webster's term -- a plan or program of action to boost Copaxone's sales through the payment of huge millions of dollars to charities that were prearranged to use the money for Copaxone payments that went back to Teva's balance sheet, and the company categorized the contributions to those charities as marketing expense.

That looks terrible.  That is what's material to investors.  And it may never be adjudicated legal or illegal because they may plead out with any possible prosecution or they may settle any civil liabilities.  But it looks illegal. It's material.  Investors had a right to know about it.  In law school I was taught that if you have gambling income from illegal gambling, you still have to report that on your taxes.

THE COURT:  You pay taxes on it.

MR. KILLORIN:  That's right.  Well, their argument is, if you have extra income from a securities scheme that is illegal, you don't have to report it to investors because nobody should have to admit to an illegal scheme.

That's just not consistent with the way the law works.  You may not have to categorize it as illegal, but you still have to report it on your SEC filings.  You have to report what you're doing.  You have to report the procedure.  That's what our argument is.  Just like you have to pay taxes on illegal gambling money, which, again, technically, who knows if it was really ultimately illegal or not.  But whether or not it is is not the point.  The point is it was income to you, and you have to report it.

In this situation, the point is the scheme was bad and it needed to be -- or shall we say odd, different, and needed to be reported to investors, and investors were not warned about it.  All the disclosures, the warnings, the safe harbors they're talking about had to do with marketing, but the investors were never told that these contributions to charities were marketing.  They were told -- they would assume that they were just simple charitable contributions, and what could be the risk there.

But that was a secret part of the scheme that it was actually a marketing expense which triggered those warnings.

Investors had no way of knowing that until the DOJ complaint was filed.  There was tremendous -- everything about the scheme should have been revealed to investors and was not.  That's the nut of the matter.  Thank you, Your Honor.

THE COURT:  Thank you.

Do you need a minute?

MR. SMITH:  I don't think so, Your Honor, I think we can continue to belabor the issue ad nauseam, but I think Your Honor gets it.

THE COURT:  I appreciate it.  Thank you.  All right.  Thank you all.  I really appreciate all of your arguments here this morning.  Thank you for being flexible with me on those two telephone calls.  I greatly appreciate it.  And we will hopefully have something out to you in the near future.  Safe travels.

(Proceedings adjourned at 1:03 p.m.)


CERTIFICATE


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/Shannan Gagliardi   3/25/22

Shannan Gagliardi

MR. KILLORIN: [42] 3/10 3/18 32/9 32/11 32/16 33/22 35/14 36/19 36/24 38/13 39/3 39/6 39/21 39/23 40/8 40/12 41/4 42/8 42/10 42/14 45/8 45/11 45/16 45/20 46/11 47/23 49/16 50/8 50/13 50/17 50/20 51/14 51/16 52/1 52/12 52/18 52/24 53/2 61/17 61/19 61/22 63/2
MR. PETER: [1] 3/14
MR. SHAPIRO: [1] 3/20
MR. SMITH: [60] 4/1 4/9 4/12 5/10 5/13 8/2 8/5 8/12 8/22 10/5 12/15 12/17 13/5 15/19 18/13 18/16 19/10 19/14 19/18 20/10 20/25 21/24 22/3 22/8 22/13 22/15 22/20 23/12 24/7 25/13 25/17 25/25 27/24 28/15 29/18 30/5 30/9 30/14 31/2 31/6 31/11 31/18 31/25 32/4 32/6 53/5 53/10 53/19 54/1 54/6 54/13 54/19 55/24 56/1 56/5 58/16 59/7 59/11 60/25 64/7
MR. WILSON: [1] 3/12
MS. BLANCO: [1] 3/23
THE COURT: [106]
THE DEPUTY CLERK: [1] 2/7

## $

$20 [2] 28/19 35/19
$20 billion [2] 28/19 35/19
$200 [1] 29/5
$200 million [1] 29/5
$300 [2] 35/23 47/24
$300 million [2] 35/23 47/24
$40 [1] 48/2
$40 million [1] 48/2

## /

/s/Shannan [1] 64/23

## 0

0617 [1] 1/16

## 1

10 [10] 6/3 37/6 37/21 43/15 43/19 49/7 52/16 52/22 53/5 53/15
10 percent [1] 23/7
10-K [1] 18/10
10-K's [1] 18/8
10-Ks [1] 15/23
100 percent [1] 36/19
101 [1] 23/4
10166 [1] 1/20
10b [2] 34/18 34/18
10b-5 [8] 11/9 13/24 18/24 19/4 52/16 52/22 55/1 55/1
11 [4] 19/22 36/8 52/10 58/7
110 [1] 28/8
111 [1] 28/8
114 [1] 15/25
11:07 [2] 1/8 3/2
12 percent [1] 23/7
121 [1] 22/8
122 [1] 22/13
12:35 [1] 53/9
12:45 [2] 53/7 53/13
12:48 [1] 61/12
12:58 [1] 61/12
15 percent [4] 44/2 44/6 44/20 52/7
1500 [1] 2/4
17 [1] 15/21

## 1

74 [1] 9/22
18 [4] 32/24 33/1 40/24 44/12
18.85 billion [1] 60/20
19 [5] 29/11 32/19 32/22 36/8 40/25
19102 [1] 2/5
19106 [1] 1/24
1:00 [1] 61/11
1:03 [1] 64/16

## 2

2.37 billion [1] 60/22
20 [2] 10/18 27/11
20 billion [1] 29/11
20 percent [2] 28/17 35/18
20-4660 [1] 3/9
20-CV-4660 [1] 1/3
20-F [3] 15/13 15/21 18/9
20-F's [1] 18/8
20-Fs [1] 15/23
20-milligram [2] 22/21 22/23
200 [3] 1/20 31/8 45/12
200 million [3] 30/12 30/13 31/9
2015 [1] 13/2
2016 [1] 15/20
2017 [10] 13/3 19/22 20/12 21/9 22/23 22/24 23/5 24/4 47/14 58/8
2018 [7] 13/1 13/1 13/9 13/15 23/22 60/18 60/20
2019 [1] 25/19
2020 [3] 24/14 24/24 44/12
2022 [1] 1/7
20A [2] 52/17 52/23
21 [1] 20/12
212-294-4633 [1] 1/21
215-665-3014 [1] 2/5
22 [2] 1/7 64/23
22 percent [1] 29/25
23 million [1] 61/5
25 million-dollar [1] 48/8
25 percent [2] 28/17 35/18
2609 [1] 1/24
267 [1] 1/25
27 [2] 9/12 10/5
270 million [1] 31/14
280 million [1] 60/23
299-7254 [1] 1/25

## 3

3/25/22 [1] 64/23
3014 [1] 2/5
30342 [1] 1/15
31 [1] 39/11
34 [2] 20/11 59/7
3400 [1] 2/4
3975 [1] 1/15

## 4

40-milligram [2] 22/17 22/25
404-847-0617 [1] 1/16
46 [1] 15/23
4633 [1] 1/21
4660 [2] 1/3 3/9

## 5

5 billion [1] 29/10
5 billion-dollar [1] 35/19
5 percent [1] 60/14

## 6

601 [1] 1/24
62 [1] 14/17
63 [1] 14/17
68 [1] 39/11
684 [1] 45/14

## 7

7254 [1] 1/25
74 [4] 9/9 9/12 10/6 39/13
74a [2] 9/12 38/20
74B [1] 38/21
76 [1] 10/19
76A [2] 27/11 56/24
78 [1] 10/19

## 8

80 [1] 10/19
800 [2] 44/8 45/10
84 [1] 10/19
86 [1] 10/19

## 9

92 [1] 10/19
96 [1] 10/19
98 [1] 10/19
99 [1] 23/4

## A

a.m [2] 1/8 3/2
able [2] 31/25 42/17
about [84]
above [1] 64/21
above-entitled [1] 64/21
abruptly [1] 22/5
absolute [1] 28/25
absolutely [6] 21/10 38/13 38/24 39/21 39/23 39/24
accept [1] 13/8
according [7] 9/22 23/21 23/23 35/24 41/8 42/4 55/13
accounts [2] 23/14 25/4
accurate [2] 6/2 30/22
accurately [1] 57/5
accuse [1] 8/9
accusing [1] 7/22
ACF [1] 9/19
acquired [1] 16/13
acronym [1] 30/4
acronyms [2] 6/9 6/15
ACS [2] 6/20 55/20
Act [3] 5/3 34/9 37/2
acted [2] 14/8 37/13
action [7] 40/13 40/15 40/17 43/13 43/16 46/17 62/14
actionable [1] 49/8
actions [1] 43/14
actively [1] 14/14
actual [3] 27/6 43/14 60/9
actually [16] 4/9 5/23 6/15 23/20 29/7 41/11 46/1 47/5 47/8 48/15 54/17 54/17 59/4 60/9 62/12 63/25
ad [1] 64/8
added [1] 23/24
addition [3] 10/25 17/24 53/22
additional [3] 26/7 26/13 27/18
address [2] 33/15 54/13
addressing [1] 50/5

## A

**adequately [2]** 33/5 43/8
**adjective [4]** 32/23 36/14 38/25 39/9
**adjectives [1]** 62/4
**adjourned [1]** 64/16
**adjudicated [3]** 16/21 16/22 62/20
**adjudication [1]** 62/2
**Adjusting [1]** 51/15
**admit [4]** 31/19 31/20 52/6 63/5
**Adobe [2]** 32/20 32/21
**advance [1]** 18/18
**Advanced [5]** 6/19 41/7 41/16 41/17 41/24
**Advanta [1]** 6/1
**advent [1]** 22/10
**adversary [1]** 58/8
**adverse [1]** 9/17
**affect [1]** 33/15
**affecting [2]** 23/19 23/21
**affirmative [2]** 45/22 45/23
**after [10]** 9/10 13/4 13/9 14/13 21/4 21/6 46/9 53/14 59/14 62/2
**again [19]** 8/24 10/4 12/9 12/24 13/13 14/11 16/24 17/6 23/21 27/6 27/9 29/8 29/24 30/18 49/6 49/13 57/23 59/6 63/11
**against [5]** 27/3 29/9 29/11 44/5 44/18
**ago [1]** 59/5
**agree [7]** 8/3 19/7 19/8 19/8 19/10 36/17 50/12
**agreement [1]** 54/16
**agreements [1]** 18/2
**agrees [1]** 54/4
**Aha [1]** 12/3
**ahead [1]** 53/12
**al [2]** 1/6 3/7
**ALDUBI [2]** 1/3 3/5
**all [71]**
**allegation [10]** 13/8 19/21 26/1 27/12 31/11 33/10 51/21 56/11 57/11 57/15
**allegations [13]** 5/4 5/16 23/22 23/23 25/1 30/19 33/8 35/24 36/11 41/8 55/13 57/14 57/22
**allege [14]** 7/22 9/25 10/15 11/23 19/5 21/16 34/15 43/17 43/19 46/2 51/16 55/9 56/25 57/2
**alleged [39]** 5/17 6/4 8/24 9/1 10/2 10/23 13/7 14/2 14/13 14/16 15/5 16/3 16/21 17/16 18/21 18/23 19/4 19/18 21/8 26/16 27/10 28/3 28/6 29/2 30/22 37/12 37/25 38/17 38/23 54/9 55/4 55/8 56/7 57/2 57/13 60/19 60/22 60/25 61/2
**allegedly [8]** 5/23 8/7 9/11 10/10 11/5 23/23 25/3 57/11
**alleges [3]** 5/6 10/21 37/21
**alleging [7]** 8/14 9/6 13/25 14/20 35/1 52/12 57/7
**Allergan [2]** 25/16 25/18
**allowed [2]** 4/7 42/1
**allowing [1]** 55/14
**alluded [2]** 18/19 60/1
**along [1]** 41/18
**alphabet [1]** 6/14
**already [1]** 23/8
**also [19]** 3/22 6/5 6/19 7/2 12/25 14/21 28/5 33/1 37/2 44/14 46/3 46/5 47/4 48/9 51/6 54/1 54/10 54/15 59/15
**altered [1]** 37/19
**although [2]** 25/7 45/22
**always [1]** 62/4

**amended [4]** 4/16 9/8 10/5 19/19
**among [2]** 7/15 21/17
**amount [4]** 30/25 48/5 48/7 55/22
**amounts [1]** 11/24
**analyst [2]** 44/12 44/22
**analyst's [1]** 59/23
**analysts [2]** 59/24 60/3
**analysts' [1]** 17/18
**analyzed [1]** 47/5
**analyzes [1]** 44/7
**announced [4]** 13/5 20/5 20/7 59/11
**announcement [3]** 18/4 46/19 47/14
**annual [2]** 15/1 15/13
**another [2]** 24/2 61/6
**answer [7]** 3/19 4/24 8/23 24/23 31/17 31/24 62/3
**Anti [5]** 5/3 12/3 34/8 43/24 55/4
**Anti-Kickback [5]** 5/3 12/3 34/8 43/24 55/4
**anticipated [1]** 54/14
**antitrust [2]** 43/18 43/19
**any [21]** 5/6 16/6 25/7 26/7 27/9 27/23 34/16 34/19 34/20 35/4 38/19 41/14 44/6 45/6 45/21 49/5 50/11 52/15 61/16 62/21 62/22
**anybody [3]** 55/20 61/15 61/16
**anyone [2]** 31/19 41/18
**anything [11]** 7/16 10/11 19/11 31/20 40/13 46/6 46/7 51/24 57/18 58/15 61/15
**anything's [1]** 27/13
**anyway [3]** 12/14 24/23 43/20
**apologize [3]** 6/15 22/1 36/25
**apparently [3]** 23/15 41/8 42/22
**appeals [2]** 36/21 62/2
**appear [1]** 28/1
**APPEARANCES [2]** 1/11 2/1
**appears [1]** 44/15
**applicable [2]** 13/24 16/7
**applied [2]** 13/23 14/3
**applying [2]** 44/22 60/5
**appreciate [3]** 64/10 64/11 64/13
**appreciates [1]** 23/18
**approve [3]** 45/23 46/3 48/6
**are [79]**
**aren't [3]** 7/1 27/14 27/25
**arguable [1]** 25/4
**arguably [1]** 28/10
**argue [1]** 27/19
**argued [3]** 27/15 28/1 28/9
**arguing [1]** 8/12
**argument [10]** 32/18 32/18 39/16 39/16 48/12 49/24 50/2 50/2 63/2 63/10
**arguments [3]** 48/18 50/9 64/11
**around [2]** 16/5 27/18
**arrangement [1]** 41/17
**arrangements [1]** 41/6
**artifice [1]** 34/20
**as [81]**
**aside [2]** 56/5 56/6
**ask [4]** 24/3 31/16 44/14 56/17
**asked [2]** 30/16 58/7
**asking [1]** 31/3
**aspect [1]** 56/23
**assistance [8]** 6/8 6/10 6/25 7/3 20/14 29/4 42/16 59/1
**assume [3]** 48/7 53/14 63/21
**Atlanta [1]** 1/15
**attached [1]** 33/6
**attempts [1]** 11/4
**attention [2]** 11/10 17/11

**attorneys [1]** 53/6
**attributable [2]** 28/24 29/23
**attributed [3]** 9/13 25/22 46/6
**attributing [1]** 26/21
**August [3]** 23/5 23/6 44/12
**August 18 [1]** 44/12
**August 2017 [1]** 23/5
**authorities [1]** 17/25
**authorized [1]** 16/17
**available [2]** 37/1 37/19
**Avenue [1]** 1/20
**avoid [1]** 36/14
**aware [3]** 6/6 11/12 11/23

## B

**back [17]** 15/11 22/4 22/6 26/6 27/6 30/18 34/5 34/7 35/25 40/21 43/3 43/4 53/14 53/16 57/21 61/10 62/17
**background [1]** 21/19
**bad [4]** 18/5 27/1 62/9 63/15
**balance [3]** 9/14 44/24 62/17
**ball [4]** 7/5 18/18 54/24 60/12
**bankrupt [1]** 44/15
**bar [1]** 25/11
**bare [2]** 39/10 41/1
**bare-bones [1]** 39/10
**based [4]** 16/16 19/25 38/5 43/13
**basis [3]** 10/20 43/11 52/5
**be [50]** 3/25 4/24 5/18 7/19 8/2 9/2 10/2 14/1 14/8 14/9 16/13 17/21 17/21 18/2 21/2 21/4 23/20 25/14 26/4 26/13 28/12 28/23 29/4 31/25 33/20 35/19 36/6 36/12 37/19 38/5 39/1 39/7 41/19 41/20 42/14 42/15 42/17 42/17 44/15 47/21 53/18 56/3 56/8 61/10 61/14 61/23 62/20 63/16 63/17 63/22
**bear [1]** 5/1
**because [81]**
**become [1]** 43/1
**been [28]** 4/17 4/18 7/13 9/5 16/21 16/21 16/22 19/25 21/1 21/14 23/2 25/9 36/16 38/2 38/23 41/13 41/14 41/23 43/25 44/1 44/9 45/2 45/3 45/6 48/17 55/10 59/16 64/3
**before [12]** 1/10 11/22 12/5 14/25 14/25 22/4 23/3 23/9 31/7 54/14 55/7 59/13
**begin [2]** 4/5 7/11
**beginning [6]** 14/25 15/10 15/14 15/15 59/17 60/21
**begins [1]** 13/2
**behalf [3]** 3/14 4/14 17/7
**being [16]** 3/15 4/4 11/12 11/24 12/21 13/1 13/22 14/2 16/20 16/21 19/11 28/8 42/2 44/18 48/24 64/12
**belabor [2]** 18/11 64/8
**belaboring [1]** 17/15
**belief [1]** 11/14
**believe [6]** 11/21 33/4 33/19 33/22 41/13 52/25
**benefit [2]** 28/6 38/14
**best [1]** 32/12
**bet [1]** 61/19
**better [3]** 26/14 45/18 47/17
**between [2]** 31/4 54/25
**beyond [2]** 12/23 44/17
**bid [1]** 57/5
**big [5]** 10/7 10/11 18/16 19/25 41/25
**billion [7]** 28/19 29/10 29/11 35/19 35/19 60/20 60/22
**bit [6]** 12/16 18/22 31/4 39/17 58/21 60/10

**B**

**BLANCO [2]** 2/3 3/22
**block [1]** 39/13
**blocks [1]** 10/11
**Bob [1]** 32/11
**bogey [1]** 29/14
**boilerplate [3]** 39/23 57/17 57/18
**bolded [1]** 10/13
**bolts [2]** 44/8 48/16
**bones [2]** 39/10 41/1
**boost [1]** 62/14
**Boston [1]** 20/13
**both [2]** 41/21 53/16
**bother [1]** 50/1
**bottom [3]** 37/9 37/23 56/11
**bouncing [2]** 7/5 60/12
**break [4]** 19/1 53/10 53/13 53/17
**brief [13]** 7/4 7/15 26/20 27/16 27/25 36/23 36/23 36/24 36/25 43/5 54/18 56/18 61/10
**briefed [1]** 7/23
**briefing [2]** 4/18 59/12
**briefly [3]** 14/22 53/16 57/10
**bring [1]** 51/21
**brings [1]** 42/13
**bristling [1]** 41/5
**broadly [2]** 6/23 60/15
**brought [5]** 17/7 33/14 33/17 51/19 59/14
**budgeted [1]** 48/2
**bunch [1]** 33/24
**burden [1]** 43/18
**burst [1]** 47/16
**business [3]** 28/19 40/4 46/23
**buy [1]** 37/17
**buying [1]** 12/19
**buys [1]** 12/13

**C**

**cahoots [1]** 41/21
**call [8]** 33/2 40/16 40/21 53/6 53/8 53/18 58/13 61/3
**called [8]** 6/8 6/19 12/1 12/6 16/13 16/20 52/3 55/16
**calling [2]** 40/17 40/18
**calls [1]** 64/13
**came [4]** 11/17 44/12 45/16 47/12
**can [29]** 4/6 4/22 5/14 9/2 9/9 14/1 15/19 15/21 15/24 18/2 19/7 23/13 27/23 28/16 29/8 30/17 32/19 40/17 40/17 44/13 52/3 53/11 56/21 61/17 61/19 61/21 61/23 62/7 64/8
**can't [4]** 23/20 33/2 38/7 47/6
**candidly [1]** 15/11
**cannot [2]** 34/6 48/19
**care [9]** 6/19 34/22 37/4 41/7 41/16 41/17 41/24 43/1 55/22
**carry [1]** 60/7
**case [59]** 4/16 5/2 5/5 5/6 5/19 6/1 6/5 6/12 7/1 7/2 7/6 7/14 8/14 9/7 10/25 11/2 11/16 12/21 13/21 13/23 13/24 14/1 14/3 17/16 19/5 19/25 21/1 21/3 21/7 25/5 25/15 25/19 26/5 26/25 29/21 34/17 36/22 37/1 37/2 37/22 38/13 41/5 43/4 43/5 43/9 43/10 43/12 43/20 43/21 44/8 54/21 54/24 55/1 56/14 56/15 56/18 56/20 56/22 57/1
**cases [12]** 7/10 7/13 8/6 8/8 10/13 26/18 26/24 29/20 36/20 38/3 59/14 60/7
**cash [2]** 17/13 17/24
**categorize [1]** 63/7

**categorized [1]** 62/17
**causation [9]** 18/20 18/25 50/6 50/16 50/18 50/21 51/4 51/6 58/11
**cause [2]** 20/20 43/2
**caused [3]** 8/16 24/24 44/19
**causing [2]** 26/13 56/9
**CDF [5]** 6/9 6/10 6/24 6/25 9/19
**certain [6]** 11/5 11/6 11/11 48/7 48/13 55/22
**certainly [4]** 4/7 21/24 29/19 39/7
**CERTIFICATE [1]** 64/18
**certifications [1]** 46/5
**certify [1]** 64/20
**cetera [2]** 11/7 61/2
**CFO [1]** 45/25
**chain [1]** 25/23
**challenges [2]** 44/25 49/23
**challenging [3]** 35/16 35/17 49/22
**chance [1]** 25/8
**change [3]** 16/10 42/23 51/22
**changes [1]** 24/20
**channeled [1]** 40/20
**character [2]** 12/25 18/21
**characterization [1]** 56/6
**characterize [3]** 33/25 36/11 48/13
**charitable [21]** 6/6 6/7 6/7 6/11 7/3 7/7 10/23 11/6 11/14 12/5 16/16 19/12 20/1 21/11 30/5 31/12 46/15 47/10 61/4 61/5 63/22
**charities [11]** 6/24 34/7 35/23 41/20 46/5 47/2 47/6 47/9 62/15 62/18 63/20
**charity [1]** 40/20
**chart [1]** 29/7
**charts [1]** 47/25
**check [4]** 30/15 30/17 45/21 48/1
**checks [4]** 48/3 48/6 48/6 48/8
**choosing [1]** 37/10
**Chronic [1]** 6/9
**chunk [1]** 46/22
**Circuit [8]** 5/25 36/21 37/7 37/8 37/23 38/1 56/15 56/19
**circular [1]** 41/25
**circumstances [1]** 34/24
**cite [3]** 26/25 43/4 56/18
**cited [1]** 7/14
**cites [1]** 10/7
**citing [1]** 26/18
**civil [5]** 3/9 16/8 17/6 17/8 62/22
**claim [18]** 7/10 7/20 7/21 8/13 11/9 18/24 37/21 43/7 43/11 43/15 43/17 48/20 48/21 52/15 52/21 54/8 55/1 57/25
**claims [3]** 5/3 37/2 43/12
**class [16]** 13/2 14/25 15/5 15/10 15/14 15/16 21/3 24/2 24/13 24/22 28/20 29/3 29/25 52/8 59/17 60/21
**cleaning [1]** 51/22
**clear [5]** 8/6 8/9 11/2 20/18 54/19
**clearer [1]** 9/2
**clearly [9]** 8/14 8/17 35/4 35/6 35/6 36/10 39/9 39/12 58/20
**clerk [2]** 3/2 53/15
**client [1]** 8/17
**clocks [1]** 53/9
**close [1]** 61/22
**cogent [2]** 14/8 14/10
**colleague [1]** 4/2
**come [7]** 30/18 34/5 35/24 53/14 53/16 56/2 57/21
**comes [5]** 19/9 23/9 30/19 40/21 50/10
**coming [5]** 23/10 23/12 26/6 30/21 42/12

**commission [2]** 47/10 49/7
**companies [6]** 6/23 7/24 16/13 18/1 40/18 59/11
**company [18]** 12/13 18/8 21/13 28/19 29/11 29/16 35/21 37/3 37/11 37/12 37/24 39/25 40/20 41/7 44/6 44/15 44/18 62/17
**company's [3]** 7/9 15/1 25/20
**compare [3]** 28/22 29/6 61/6
**compelling [2]** 14/9 14/10
**competition [1]** 22/23
**competitive [1]** 25/21
**complaint [58]** 4/16 5/15 7/5 9/3 9/9 9/14 10/6 10/18 10/21 12/17 13/7 15/6 15/25 17/19 19/9 19/19 19/20 19/20 20/20 21/19 22/9 23/4 24/25 30/20 30/23 32/17 33/6 33/14 33/17 36/15 37/7 37/9 37/20 37/23 38/6 38/8 39/11 40/2 41/5 44/3 44/5 44/9 44/18 44/20 45/2 45/10 45/12 47/13 47/16 48/23 49/14 50/24 51/3 51/9 55/10 59/22 62/11 64/1
**complaints [2]** 42/15 44/4
**complete [1]** 39/7
**completely [8]** 7/12 33/24 38/19 43/9 43/25 46/11 46/16 46/18
**complex [1]** 16/6
**comply [1]** 16/7
**concealed [2]** 19/2 25/3
**concede [1]** 28/13
**concern [1]** 46/24
**concerned [1]** 46/23
**concession [2]** 54/2 54/15
**concluding [1]** 11/21
**conclusions [1]** 13/20
**conduct [25]** 7/23 8/8 8/15 9/23 11/1 11/21 12/10 14/19 16/12 16/20 25/21 26/3 26/9 31/22 37/12 37/25 38/1 54/9 55/12 56/6 56/8 57/16 62/3 62/5 62/5
**conduits [1]** 9/19
**confer [1]** 51/4
**conferred [1]** 19/21
**confidential [1]** 38/15
**congressional [3]** 13/7 30/20 38/16
**conjunction [2]** 24/9 58/17
**conjured [1]** 37/3
**conscience [1]** 32/1
**consciousness [1]** 13/10
**consent [1]** 51/8
**consider [1]** 60/16
**considered [1]** 37/17
**considering [1]** 5/2
**consistent [2]** 11/13 63/6
**constantly [1]** 57/11
**constituted [1]** 51/23
**constitutes [1]** 51/12
**consumer [1]** 42/15
**consuming [1]** 17/22
**CONT'D [1]** 2/1
**contain [1]** 21/12
**contend [1]** 44/8
**continuation [1]** 14/13
**continue [3]** 17/23 57/25 64/8
**continued [2]** 24/17 59/18
**continues [3]** 11/18 11/21 21/11
**continuing [2]** 13/8 13/11
**contracted [1]** 6/19
**contrast [1]** 7/4
**contributed [2]** 6/17 43/16
**contributing [3]** 7/9 7/19 31/23
**contribution [1]** 47/11

**C**

**contributions [6]** 31/12 35/23 46/15 62/18 63/20 63/22
**control [3]** 42/19 45/24 46/1
**convenient [1]** 40/23
**convictions [1]** 13/11
**cookie [1]** 12/2
**cooperating [1]** 24/20
**Copaxone [47]** 6/12 6/20 9/20 12/1 12/7 17/5 21/18 21/20 22/16 23/6 28/14 28/22 28/23 29/6 29/10 30/10 30/14 31/7 31/10 31/13 31/21 33/23 34/11 34/12 35/5 35/7 35/18 36/1 36/5 36/8 40/19 41/12 41/14 41/23 42/3 42/17 42/18 42/22 51/20 55/15 55/20 60/13 60/22 60/24 60/25 61/2 62/16
**Copaxone's [3]** 7/9 40/3 62/14
**copay [4]** 6/25 12/13 12/19 31/13
**copayments [6]** 9/20 36/3 41/20 42/1 42/16 42/24
**copays [4]** 6/17 36/7 55/15 55/23
**core [4]** 28/14 29/14 35/20 61/7
**corners [1]** 40/3
**corporate [1]** 18/1
**correct [8]** 49/13 49/16 50/13 51/7 52/12 52/13 54/6 64/20
**corrected [5]** 4/16 9/8 10/5 19/19 20/20
**correction [4]** 24/8 51/2 51/2 60/11
**corrective [9]** 17/16 19/5 19/18 21/8 25/4 51/13 51/17 51/17 52/11
**correctly [1]** 57/22
**costly [2]** 17/10 17/21
**could [19]** 8/2 10/19 15/9 17/6 17/22 18/16 20/4 20/4 27/19 31/13 36/4 39/20 40/21 42/24 43/2 44/23 52/18 60/5 63/22
**counsel [2]** 3/8 53/3
**couple [7]** 12/18 12/23 13/14 15/20 53/21 53/22 59/21
**courage [1]** 13/11
**course [3]** 39/13 42/4 46/17
**court [14]** 1/1 1/23 1/23 3/2 22/6 29/8 36/21 36/21 37/3 37/6 40/1 49/24 57/25 62/2
**Court's [2]** 4/24 14/4
**courts [1]** 48/14
**cover [3]** 9/19 42/1 42/2
**create [1]** 6/2
**creative [1]** 15/6
**criminal [1]** 16/8
**critical [1]** 56/14
**critically [3]** 14/22 16/2 20/25
**CRR [1]** 1/22
**crux [1]** 8/5
**cry [1]** 42/15
**culpable [3]** 14/10 14/12 40/2
**culture [1]** 44/16
**current [1]** 44/24
**currently [1]** 16/25
**customer [1]** 34/12
**cut [1]** 27/3
**CV [1]** 1/3

**D**

**damages [3]** 44/23 60/5 60/7
**darkness [1]** 42/2
**data [2]** 41/22 44/12
**date [4]** 23/11 51/5 51/7 51/9
**day [10]** 13/13 14/15 20/22 21/2 22/22 44/20 47/21 47/21 47/25 47/25
**deal [2]** 4/18 10/8

**deceptively [1]** 37/13
**decides [1]** 33/18
**deciding [1]** 37/17
**decision [1]** 14/4
**decline [1]** 19/3
**declining [1]** 21/18
**deduct [1]** 47/6
**deductible [1]** 47/10
**deducting [1]** 47/8
**defeat [2]** 50/15 50/18
**defendant [11]** 1/8 1/18 2/3 12/12 45/7 45/21 48/19 48/20 52/15 52/17 52/20
**defendant's [2]** 4/5 4/15
**defendants [14]** 3/22 4/14 6/6 11/5 12/1 13/17 13/18 47/20 48/18 49/5 51/4 57/3 57/23 58/3
**defined [2]** 40/11 40/12
**defraud [3]** 34/1 34/20 37/4
**defrauded [1]** 42/5
**defrauding [1]** 37/2
**deluged [1]** 4/18
**demand [1]** 34/12
**Department [2]** 33/6 56/12
**depends [1]** 53/11
**describe [3]** 38/1 38/18 38/25
**described [3]** 12/7 34/2 48/15
**describing [1]** 62/5
**description [1]** 33/1
**detail [4]** 26/11 26/11 27/18 34/2
**detailed [1]** 34/9
**details [10]** 7/3 7/6 10/24 38/17 39/10 40/4 45/1 46/16 50/24 55/6
**develop [1]** 17/12
**device [1]** 34/19
**dictionary [1]** 40/10
**did [18]** 3/17 14/21 19/23 20/20 32/23 39/22 40/24 41/11 41/12 41/12 45/10 46/12 47/11 48/15 51/24 52/1 52/1 59/6
**didn't [19]** 8/17 17/23 19/22 20/23 22/22 27/1 35/15 38/20 40/24 40/25 43/15 43/20 46/20 46/21 46/24 50/22 50/23 58/15 60/3
**difference [1]** 26/8
**different [10]** 9/6 12/25 13/23 16/18 17/4 22/16 31/8 55/4 57/24 63/16
**differs [1]** 9/14
**diligence [1]** 48/7
**dip [2]** 19/9 19/11
**dipped [1]** 26/20
**direct [2]** 26/24 36/20
**directly [2]** 57/15 59/15
**dirty [1]** 34/3
**disclose [20]** 5/22 7/3 7/18 9/17 11/1 14/21 24/17 25/20 26/4 26/17 36/18 37/12 37/24 38/9 43/16 47/12 54/9 54/11 54/16 59/18
**disclosed [21]** 8/19 9/6 9/7 24/4 24/9 24/9 24/14 33/20 33/24 41/14 44/1 45/3 45/3 45/6 46/9 46/13 48/17 48/25 55/7 58/25 59/2
**disclosing [1]** 20/1
**disclosure [38]** 14/23 15/4 16/3 17/16 19/2 19/3 19/12 19/19 19/22 20/11 20/20 20/24 21/8 21/12 22/9 23/3 23/20 24/24 24/25 25/5 28/2 39/18 39/18 50/10 50/16 50/19 51/6 51/7 51/10 51/13 51/17 51/18 52/6 52/10 52/11 58/8 58/22 59/25
**disclosures [8]** 15/2 19/6 20/3 39/24 57/17 58/18 59/16 63/18
**discovery [1]** 58/14
**discussed [4]** 7/25 28/11 29/16 29/25

**dismiss [11]** 1/9 4/5 4/15 15/8 20/11 33/7 33/9 43/7 49/4 49/25 59/8
**dismissed [4]** 21/4 28/12 37/6 57/2
**dispute [2]** 29/14 55/14
**disregard [1]** 48/10
**disregarding [1]** 12/10
**disruptive [1]** 18/2
**distinct [1]** 56/13
**distinction [2]** 5/13 25/25
**distinguish [1]** 57/24
**distinguishable [2]** 43/9 43/22
**distinguishing [1]** 25/15
**district [9]** 1/1 1/1 1/10 1/23 1/23 11/17 13/21 25/19 37/6
**diverse [1]** 25/23
**diversion [1]** 17/11
**do [36]** 3/17 4/6 4/20 4/21 6/2 7/24 15/3 15/17 15/19 19/11 21/10 22/19 24/22 26/14 27/8 27/16 28/13 32/4 32/12 32/20 33/4 35/9 36/17 38/6 42/22 43/2 45/23 48/14 48/22 49/18 51/16 53/3 53/11 60/9 63/19 64/6
**Docket [1]** 3/9
**doctors [1]** 26/25
**doctrine [2]** 29/15 61/8
**document [1]** 15/8
**documents [4]** 20/14 21/20 30/23 59/18
**does [9]** 4/22 16/1 28/19 39/5 40/13 42/23 52/16 52/22 61/15
**doesn't [8]** 4/23 7/15 10/11 18/22 25/2 35/14 59/4 60/8
**doing [11]** 8/10 8/18 8/20 23/22 26/12 26/13 31/20 31/22 34/11 34/12 63/9
**DOJ [26]** 11/16 12/17 12/21 21/7 30/19 36/15 38/6 38/14 42/4 44/3 44/4 44/5 44/9 44/18 44/20 45/1 45/10 46/14 47/13 47/16 50/24 54/25 55/10 58/24 59/13 64/1
**dollar [3]** 35/19 46/4 48/8
**dollars [7]** 34/2 36/1 36/9 42/6 46/22 47/9 62/15
**don't [27]** 8/9 15/11 18/17 27/20 29/15 29/20 30/15 31/23 32/1 34/15 39/17 40/16 43/3 44/6 45/9 45/21 46/6 49/1 49/21 49/22 50/1 50/11 53/12 54/16 61/16 63/4 64/7
**donation [5]** 11/6 11/14 12/2 20/1 23/16
**donations [26]** 6/7 6/7 7/7 10/23 11/3 11/7 11/12 11/23 12/7 13/19 16/16 19/12 20/14 30/5 30/6 31/21 31/23 33/20 47/8 55/22 59/1 60/25 61/2 61/3 61/4 61/4
**donations to [1]** 6/7
**done [3]** 33/21 50/4 51/18
**doses [1]** 22/16
**down [14]** 4/22 7/17 11/17 12/14 12/19 19/1 20/23 23/6 23/7 26/16 29/24 33/12 44/6 60/21
**downward [4]** 21/14 23/24 51/15 51/22
**drop [6]** 20/21 23/15 24/24 44/20 52/7 58/10
**dropped [2]** 21/2 47/17
**dropping [1]** 4/10
**drug [6]** 6/11 6/13 30/13 42/22 47/22 47/24
**drugs [4]** 6/18 30/7 30/25 31/22
**duty [4]** 11/1 37/11 37/13 37/24

**E**

**each [1]** 58/3
**earlier [4]** 47/4 47/9 60/10 61/25
**earnings [4]** 5/24 6/1 7/16 7/17
**easier [1]** 6/15
**easily [1]** 28/4

**E**

**EASTERN [2]** 1/1 1/23
**easy [1]** 54/25
**efficient [2]** 34/13 34/13
**efforts [1]** 42/17
**either [3]** 47/12 48/9 49/19
**element [4]** 18/24 18/25 37/21 58/1
**elements [1]** 57/24
**eligible [1]** 41/20
**ellipses [1]** 15/6
**else [4]** 20/17 24/21 26/3 59/10
**emphasize [1]** 13/22
**employ [1]** 34/19
**end [4]** 21/3 24/1 52/7 58/6
**Endo [1]** 43/6
**engage [2]** 13/8 13/12
**engaged [4]** 9/18 11/22 20/1 56/16
**engaging [1]** 55/12
**enough [2]** 10/14 51/1
**ensure [1]** 35/25
**ensured [1]** 55/23
**enter [1]** 18/1
**entire [5]** 5/15 5/19 19/25 25/3 33/1
**entitled [1]** 64/21
**entity [1]** 6/19
**enumerable [1]** 5/15
**enumerated [3]** 9/10 10/10 27/25
**environments [1]** 16/6
**equally [1]** 48/18
**equivalent [1]** 18/10
**error [1]** 51/9
**ESQUIRE [7]** 1/13 1/13 1/14 1/18 1/19 2/3 2/3
**establish [3]** 11/4 37/10 37/24
**et [5]** 1/6 3/7 11/7 56/24 61/1
**even [11]** 14/13 23/25 27/19 28/23 31/18 32/18 33/18 39/10 49/21 56/7 60/15
**event [1]** 21/16
**ever [1]** 55/10
**every [9]** 7/16 7/18 7/18 10/9 18/8 18/18 22/21 44/5 44/7
**everybody [7]** 13/6 17/20 20/4 22/17 38/3 44/3 62/1
**everything [9]** 5/20 20/17 26/12 35/15 45/24 55/9 58/17 62/9 64/2
**everywhere [1]** 14/12
**evidence [2]** 41/5 44/11
**evolve [2]** 16/12 20/4
**evolved [1]** 16/19
**exact [5]** 9/23 10/9 10/17 13/10 21/12
**exactly [11]** 16/15 16/22 22/20 23/12 48/22 57/19 57/20 58/21 58/24 59/20 59/25
**example [2]** 29/2 60/18
**except [1]** 32/23
**exceptionally [1]** 42/3
**exceptions [1]** 10/17
**Exchange [2]** 34/19 49/7
**exclusively [1]** 54/8
**executive [1]** 45/25
**executives [3]** 11/12 47/20 48/4
**exhausted [1]** 62/2
**exhibit [6]** 15/18 15/20 15/22 20/10 59/6 59/7
**exhibits [4]** 15/7 45/11 45/13 45/15
**exist [1]** 8/25
**existence [1]** 46/13
**expeditious [1]** 4/21
**expense [2]** 62/18 63/25

**expensive [1]** 18/2
**expert [1]** 20/22
**explain [1]** 27/8
**explains [1]** 35/21
**explanation [1]** 23/25
**exposed [1]** 47/17
**extensive [2]** 4/19 15/1
**extensively [1]** 7/23
**extent [1]** 51/11
**externally [1]** 46/24
**extra [1]** 63/3
**extreme [1]** 12/10
**eye [1]** 54/24

**F**

**F's [1]** 18/8
**fact [17]** 5/22 8/7 11/22 11/25 13/6 14/25 20/21 23/5 23/6 25/1 28/2 34/21 34/23 38/5 39/19 41/6 47/25
**factor [1]** 16/1
**factors [2]** 24/10 27/3
**facts [15]** 6/5 8/25 9/18 14/6 14/9 14/15 14/16 14/18 14/19 27/2 37/15 43/21 43/25 48/25 58/2
**factual [4]** 5/23 6/1 27/18 28/5
**factually [1]** 5/18
**failed [6]** 5/21 9/17 43/17 43/19 52/14 57/8
**failure [5]** 16/6 25/20 54/8 54/11 57/4
**fair [1]** 57/13
**fairly [3]** 7/23 29/1 43/18
**faith [2]** 11/13 11/19
**falls [1]** 56/11
**false [23]** 5/3 5/7 5/18 6/4 9/16 9/25 10/1 10/3 10/14 10/16 28/3 28/6 34/9 34/14 34/16 35/7 37/2 37/13 46/1 49/5 49/12 49/16 57/4
**falsity [1]** 39/14
**far [2]** 15/11 46/5
**FARUQI [4]** 1/14 1/14 3/12 3/12
**fashion [1]** 33/21
**fast [1]** 61/23
**favorable [2]** 7/16 7/17
**federal [11]** 6/22 14/24 16/25 17/7 17/8 17/21 20/2 24/12 34/1 34/8 42/5
**feel [2]** 45/18 48/11
**few [1]** 27/24
**figured [1]** 30/17
**filed [7]** 15/14 34/17 44/18 44/21 55/10 60/8 64/2
**filing [2]** 17/19 21/7
**filings [3]** 18/9 24/17 63/8
**final [1]** 62/1
**financials [1]** 35/16
**find [4]** 15/21 36/25 52/14 52/21
**fine [2]** 8/1 8/2
**finish [1]** 17/23
**first [11]** 3/5 5/1 9/11 12/18 19/18 32/19 32/22 35/1 36/21 40/24 41/13
**five [1]** 5/21
**five-year [1]** 5/21
**fix [1]** 51/9
**fixing [4]** 43/8 43/14 43/17 43/21
**flags [1]** 44/13
**flexible [1]** 64/12
**flow [2]** 41/25 57/14
**flowing [1]** 40/6
**flows [2]** 34/7 38/23
**focus [1]** 57/25
**focused [1]** 57/22
**follow [4]** 9/21 27/12 40/15 60/12

**follows [1]** 16/10
**Fool [2]** 44/13 59/23
**footnote [2]** 18/16 49/21
**forecast [1]** 51/15
**foregoing [1]** 64/20
**foreign [2]** 18/9 18/10
**foremost [1]** 5/1
**forget [2]** 31/14 36/8
**form [2]** 15/13 33/21
**formed [1]** 43/14
**forth [1]** 47/16
**forward [5]** 14/22 27/23 28/4 28/9 28/10
**forward-looking [4]** 27/23 28/4 28/9 28/10
**found [1]** 13/21
**foundation [2]** 38/6 38/24
**foundations [1]** 46/15
**four [1]** 40/3
**Fourth [6]** 36/21 37/7 37/8 37/22 38/1 56/15
**frame [1]** 58/7
**frankly [2]** 21/2 32/17
**fraud [6]** 17/17 18/6 19/3 37/7 52/2 52/4
**fraudulent [1]** 37/15
**friends [2]** 25/10 55/3
**Fs [1]** 15/23
**fulfilled [1]** 8/21
**full [3]** 15/4 15/8 49/14
**fully [4]** 7/11 9/19 47/16 57/4
**fund [3]** 6/10 6/10 41/22
**fundamental [1]** 12/25
**fundamentally [2]** 54/20 57/1
**funded [1]** 37/4
**funding [1]** 6/24
**funds [5]** 1/3 3/6 6/11 6/17 12/5
**funneled [2]** 41/15 41/23
**funneling [1]** 47/1
**further [1]** 26/22
**Furthermore [1]** 37/15
**future [4]** 17/13 17/23 49/20 64/14

**G**

**GA [1]** 1/15
**Gabby [1]** 4/2
**GABRIELA [1]** 1/19
**GAGLIARDI [3]** 1/22 64/23 64/24
**Galati [2]** 56/18 57/1
**gambling [3]** 62/24 62/25 63/11
**games [2]** 34/15 49/6
**gave [2]** 34/4 58/17
**general [3]** 9/24 16/17 40/14
**General's [1]** 11/20
**generally [1]** 14/2
**generic [8]** 22/11 22/22 22/25 23/9 23/18 23/25 40/14 46/13
**generic's [1]** 23/10
**generics [1]** 17/4
**genuine [1]** 47/10
**germane [1]** 21/5
**get [16]** 17/16 17/20 18/19 30/25 31/19 32/21 41/18 44/17 53/17 54/14 54/22 55/15 55/15 55/23 56/12 62/3
**gets [2]** 59/21 64/9
**getting [4]** 27/19 42/24 58/6 61/22
**give [13]** 3/3 10/6 14/6 18/16 25/12 28/16 29/9 30/18 34/6 45/20 55/21 58/2 58/15
**given [6]** 16/2 16/3 22/10 31/14 40/3 40/4
**gives [3]** 39/15 48/10 61/5
**giving [1]** 12/4
**glad [1]** 36/19

## G

**glean [1]** 52/3
**global [2]** 60/20 60/22
**globally [2]** 23/7 28/20
**glowing [1]** 35/17
**go [23]** 4/9 4/25 5/15 6/9 7/17 8/9 9/11 9/14 10/20 15/21 16/14 16/24 20/23 22/4 26/22 27/6 33/12 39/4 44/6 49/24 50/7 53/12 59/4
**goes [3]** 9/8 15/11 24/2
**going [39]** 6/16 13/6 16/14 17/21 17/21 18/5 18/17 20/17 21/14 25/9 26/12 28/7 29/13 29/24 31/16 31/25 32/12 33/15 33/16 35/5 35/9 35/24 36/6 37/9 42/1 43/4 43/7 47/9 48/8 50/23 52/4 53/13 53/13 56/1 57/16 59/20 60/18 62/12 62/13
**gone [1]** 60/20
**good [27]** 3/11 3/13 3/19 3/20 3/23 4/1 4/3 4/13 10/13 11/11 11/13 11/19 18/22 21/20 26/9 32/1 32/5 32/9 32/10 32/15 33/7 39/16 41/11 45/8 46/12 49/23 53/19
**got [18]** 7/11 9/25 12/8 13/2 13/3 14/8 14/9 19/1 20/6 20/7 21/22 26/23 29/7 46/25 47/25 48/6 55/19 59/10
**government [21]** 6/22 14/24 16/4 16/18 17/7 17/9 17/21 17/25 20/6 20/7 21/10 24/12 24/16 24/25 25/1 34/1 37/4 42/5 48/21 48/24 58/19
**government-funded [1]** 37/4
**gratuitous [2]** 38/25 39/9
**great [7]** 4/18 27/16 53/17 55/19 56/2 56/3 61/9
**greatly [1]** 64/13
**ground [2]** 33/8 42/18
**guess [9]** 8/18 25/14 30/7 31/5 45/14 45/23 47/4 47/17 49/23
**guidance [3]** 11/20 16/17 21/14
**guilt [1]** 13/10
**guise [1]** 36/7

## H

**had [37]** 6/11 6/16 7/17 10/25 12/6 13/5 13/11 21/14 22/23 23/2 24/17 29/16 41/14 41/17 41/23 41/25 44/9 45/2 45/22 46/1 46/3 47/8 48/6 51/4 51/5 51/7 51/21 55/10 55/18 59/4 59/11 59/16 60/20 61/7 62/23 63/19 64/1
**hadn't [2]** 33/24 38/2
**HALMAN [2]** 1/3 3/5
**hammered [1]** 22/25
**hand [2]** 10/7 12/2
**handful [2]** 27/24 28/3
**happen [6]** 20/4 24/11 39/20 39/20 39/22 59/20
**happened [7]** 13/3 18/5 20/5 23/1 39/19 47/18 56/7
**happening [3]** 23/3 54/25 58/23
**happens [3]** 21/4 21/6 44/7
**happy [7]** 4/20 4/24 25/7 38/1 39/3 56/3 56/8
**harbor [2]** 28/6 39/24
**harbors [1]** 63/19
**hard [2]** 36/14 40/23
**has [17]** 4/17 5/25 7/13 11/18 12/13 13/20 19/3 19/11 21/10 25/8 28/2 33/6 36/15 36/15 49/10 49/11 60/19
**hasn't [2]** 16/21 16/22
**have [101]**
**have one [1]** 61/17
**haven't [2]** 43/8 43/10

**he [16]** 12/13 35/18 39/18 45/22 45/24 45/25 46/3 46/5 54/4 54/17 57/17 58/9 58/12 58/13 61/18 61/24
**He's [1]** 12/16
**health [2]** 37/4 42/22
**heard [6]** 50/9 53/22 54/1 54/10 54/15 56/15
**HEARING [1]** 1/9
**heck [1]** 27/17
**hefty [1]** 36/7
**height [3]** 28/16 28/20 29/24
**heightened [2]** 38/12 58/1
**held [1]** 25/19
**Hello [1]** 32/8
**help [3]** 33/2 37/4 41/10
**helpful [1]** 25/14
**helping [1]** 27/17
**her [1]** 3/25
**here [31]** 3/3 3/16 4/4 4/4 4/15 8/6 9/13 13/13 13/16 14/4 14/11 16/3 16/15 18/25 19/5 23/1 25/11 26/1 26/4 29/23 33/16 43/23 48/22 55/3 56/17 57/2 57/7 57/19 59/5 59/23 64/11
**here's [3]** 16/2 24/2 57/1
**hesitate [1]** 19/15
**hierarchy [1]** 47/25
**high [6]** 38/15 43/18 46/14 47/20 48/1 48/4
**high-level [4]** 38/15 46/14 47/20 48/1
**highlight [1]** 56/23
**highlighted [1]** 10/13
**highly [1]** 56/21
**him [3]** 45/22 46/6 58/14
**hip [1]** 30/16
**HIPPEL [2]** 2/4 3/21
**his [1]** 54/18
**historical [1]** 27/15
**hits [1]** 29/14
**hitting [1]** 32/20
**hole [1]** 7/18
**holistically [3]** 40/2 41/3 41/4
**Holwill [1]** 26/25
**honestly [1]** 38/22
**honesty [1]** 20/24
**Honor [121]**
**Honor's [6]** 9/4 11/1 15/4 26/18 27/20 58/7
**HONORABLE [1]** 1/10
**hopefully [3]** 58/6 61/10 64/14
**hopes [1]** 48/22
**horribles [1]** 24/12
**how [15]** 11/6 12/7 12/12 14/17 15/11 25/15 30/7 32/8 41/22 42/9 44/13 53/3 58/22 60/11 61/6
**however [2]** 4/20 33/3
**huge [8]** 35/21 42/20 46/22 46/22 48/8 61/1 62/10 62/15
**hugely [1]** 35/20
**human [1]** 42/15
**hundred [2]** 45/13 54/15
**hundreds [6]** 34/1 35/25 36/9 38/14 42/5 47/8
**hypothetical [1]** 33/13

## I

**I'd [4]** 4/19 4/21 15/3 15/9
**I'll [19]** 4/9 4/24 9/9 10/6 16/14 18/14 18/14 19/1 20/11 25/10 29/9 30/18 45/21 52/6 53/16 53/19 57/10 61/10 61/23
**I'm [42]** 4/12 4/20 8/10 10/5 15/22 16/14 16/24 17/15 20/22 21/22 22/13 24/7 25/7

**I'll [23]** 31/19 31/25 32/2 32/12 33/13 35/9 35/10 36/19 37/9 39/3 43/7 49/10 49/18 50/4 50/5 50/8 50/17 53/4 53/13 59/13 60/18 62/13
**I've [7]** 18/20 18/22 21/22 25/9 28/10 29/7 32/3
**iceberg [2]** 47/15 47/15
**idea [1]** 32/15
**identified [4]** 28/4 45/6 49/10 49/11
**identify [2]** 27/23 49/18
**III [1]** 1/18
**illegal [51]** 7/22 7/22 8/10 8/18 9/18 9/23 11/1 12/11 13/19 14/20 23/23 26/3 27/2 33/2 33/3 33/4 33/5 33/9 33/19 34/22 36/15 36/18 37/12 37/25 38/2 39/8 39/12 40/6 43/7 43/14 54/9 55/9 55/11 55/17 56/8 57/5 57/8 57/16 61/25 62/3 62/7 62/9 62/11 62/20 62/22 62/25 63/4 63/5 63/7 63/11 63/12
**illegality [23]** 8/8 8/15 9/1 9/7 10/22 26/4 26/8 26/16 32/14 32/23 32/25 34/22 38/2 38/20 38/22 40/14 43/4 43/13 53/23 54/16 55/8 57/13 62/1
**illegals [1]** 39/2
**illicit [1]** 46/4
**imagine [1]** 38/7
**immediately [1]** 15/14
**implications [1]** 36/12
**important [18]** 5/1 5/14 7/20 10/24 13/22 14/22 16/2 16/11 18/6 19/14 20/25 29/13 37/17 55/7 56/13 57/23 58/22 62/12
**importantly [3]** 20/19 28/23 37/22
**improper [1]** 47/2
**inaccurate [2]** 5/18 54/7
**included [1]** 17/5
**includes [1]** 60/15
**including [3]** 6/9 6/24 48/2
**income [3]** 62/24 63/3 63/13
**incorporated [1]** 30/23
**increase [2]** 42/7 56/10
**increased [1]** 42/3
**increases [2]** 36/7 43/2
**increasing [1]** 55/13
**incurred [1]** 9/20
**independent [1]** 28/11
**indicated [1]** 11/2
**indication [1]** 27/9
**indicative [2]** 11/24 13/15
**individual [9]** 6/5 13/17 13/18 47/19 52/15 52/17 52/20 52/24 57/23
**individually [1]** 46/6
**indulge [1]** 37/8
**indulgence [1]** 15/4
**INDUSTRIES [2]** 1/6 3/6
**inescapable [1]** 42/11
**inference [4]** 14/6 14/9 14/10 58/3
**inferences [1]** 14/12
**inferences are [1]** 14/12
**inflated [1]** 36/1
**inflation [1]** 36/9
**information [4]** 37/19 46/18 55/8 55/12
**initial [2]** 54/23 60/1
**insignificant [3]** 28/18 30/1 54/7
**Inspector [2]** 11/20 16/17
**instances [1]** 27/7
**instead [1]** 40/22
**insufficient [1]** 39/24
**insurance [3]** 37/5 40/18 40/20
**integrity [1]** 18/1
**interest [3]** 44/23 53/22 60/5

**I**

**interesting [2]** 21/9 29/1
**interim [1]** 21/8
**Internally [1]** 46/22
**International [1]** 43/6
**interpretation [1]** 16/19
**interpretations [2]** 16/11 20/4
**interpreted [1]** 58/13
**interpreting [1]** 38/7
**interrupted [1]** 22/5
**investigated [1]** 24/11
**investigating [1]** 24/16
**investigation [9]** 20/6 20/7 20/19 21/11 24/5 38/14 48/21 48/24 58/20
**investigations [2]** 17/1 17/10
**investor [3]** 35/4 37/16 44/1
**investors [18]** 38/9 44/13 44/14 45/3 45/4 46/17 55/2 56/3 56/8 62/8 62/20 62/23 63/4 63/17 63/17 63/20 64/1 64/3
**invitation [1]** 61/18
**involve [2]** 17/13 17/24
**involved [3]** 24/15 44/10 46/14
**involves [1]** 17/11
**irrelevant [1]** 18/11
**is [214]**
**isn't [4]** 4/11 4/23 8/1 18/23
**issue [12]** 4/23 4/23 6/12 8/4 8/18 13/14 14/14 18/25 23/16 31/8 39/5 64/8
**issued [2]** 35/7 59/14
**issuer [1]** 18/9
**issuer's [1]** 18/10
**issues [5]** 7/1 12/20 33/12 33/15 46/25
**it [173]**
**it's [98]**
**its [15]** 5/20 12/25 21/13 25/21 25/23 28/16 29/24 34/6 37/10 37/12 37/24 44/2 44/24 45/13 46/13
**itself [3]** 35/25 45/12 51/23

**J**

**JAMES [5]** 1/13 1/18 3/12 4/1 4/13
**jar [1]** 12/2
**Jefferies [2]** 44/22 60/3
**Jersey [1]** 25/19
**JOHN [1]** 1/14
**JR [1]** 1/13
**judge [3]** 1/10 43/6 43/12
**judicial [1]** 18/15
**jump [1]** 43/3
**jumping [1]** 14/22
**just [56]** 9/9 10/17 14/7 15/9 16/9 19/14 19/24 20/3 21/12 23/15 23/17 25/12 25/15 27/2 27/6 27/7 30/16 33/3 33/25 37/9 38/23 39/9 39/15 40/14 42/23 43/3 43/24 44/4 44/17 45/18 45/20 46/13 46/24 48/23 49/1 49/1 49/6 49/13 49/24 50/3 50/25 51/8 53/12 53/21 54/13 56/23 57/10 57/21 58/4 58/4 60/13 60/24 61/10 63/6 63/10 63/22
**Justice [2]** 33/6 56/12

**K**

**K's [1]** 18/8
**Kalif [2]** 45/7 45/21
**KAREN [1]** 1/10
**keep [7]** 10/7 26/6 36/4 42/18 42/24 54/24 56/13
**kept [3]** 46/16 46/25 47/2
**kickback [17]** 5/3 9/18 12/3 33/2 33/3 33/4

43/24 55/4 57/5
**kickbacks [1]** 26/24
**kicks [1]** 7/10
**KILLORIN [3]** 1/13 3/10 32/11
**kind [3]** 33/12 44/5 44/19
**knew [15]** 11/3 12/3 12/9 13/6 13/19 14/19 14/20 24/4 24/15 24/16 35/24 46/21 47/10 50/25 58/24
**know [62]** 3/4 4/17 12/20 13/16 13/19 14/19 15/11 15/12 15/17 17/17 18/6 23/10 23/10 23/12 23/14 23/17 23/22 25/8 26/10 26/13 26/15 26/18 26/20 26/22 26/24 27/1 27/2 27/14 27/16 27/20 28/19 29/1 29/2 29/4 29/15 29/25 30/8 30/11 31/23 32/1 33/12 33/15 35/5 35/22 38/4 38/10 38/18 40/1 43/5 47/21 48/11 49/1 49/1 53/7 53/9 53/13 55/20 56/6 58/10 61/3 62/7 62/23
**knowing [1]** 64/1
**knowledge [5]** 11/8 11/9 12/8 12/9 13/25
**known [6]** 6/22 22/10 39/25 48/5 59/2 59/15
**knows [9]** 6/12 9/24 11/16 14/1 17/20 38/3 44/4 62/1 63/11
**Ks [1]** 15/23

**L**

**lack [1]** 51/3
**laid [1]** 40/25
**language [3]** 15/21 16/1 38/8
**large [3]** 17/13 17/24 48/1
**largely [1]** 27/16
**last [2]** 17/16 59/21
**latch [1]** 28/8
**later [2]** 24/2 61/10
**latter [1]** 9/7
**law [5]** 11/2 20/2 53/15 62/23 63/6
**laws [1]** 16/7
**lawsuit [1]** 25/1
**lay [1]** 16/1
**laying [1]** 39/10
**lead [3]** 3/10 32/11 62/10
**leakage [1]** 52/3
**learned [1]** 25/10
**least [5]** 6/23 14/10 23/15 28/20 58/12
**leave [1]** 33/16
**left [1]** 27/19
**legal [5]** 8/20 11/14 16/6 16/8 62/20
**legality [1]** 38/19
**length [2]** 25/9 28/11
**lengthy [1]** 17/12
**less [2]** 51/17 53/18
**Let [2]** 9/2 36/25
**let's [5]** 33/12 33/13 50/13 56/5 56/6
**lets [1]** 43/12
**level [6]** 38/15 46/14 47/17 47/20 48/1 48/4
**levels [1]** 48/3
**leverage [2]** 17/22 17/25
**liabilities [2]** 62/10 62/22
**liability [7]** 6/2 44/24 46/1 48/10 52/16 52/22 60/6
**light [1]** 34/24
**like [31]** 3/25 4/19 4/21 15/3 15/9 22/19 25/2 25/8 26/7 26/18 28/17 30/11 31/14 32/13 32/15 38/5 38/6 38/18 39/9 39/19 40/24 40/24 45/12 46/16 48/11 48/14 53/25 60/3 60/8 62/10 63/10
**liked [3]** 22/17 22/18 55/6
**Likewise [1]** 44/22
**limited [4]** 1/6 3/6 3/7 7/13

**list [1]** 49/21
**litigated [2]** 12/21 16/22
**litigating [2]** 13/14 14/14
**litigation [3]** 17/7 17/8 60/4
**little [9]** 9/2 12/16 25/9 31/4 34/3 39/17 45/18 58/21 60/10
**lives [1]** 42/23
**LLP [2]** 1/14 1/19
**load [1]** 46/18
**lobbying [1]** 42/17
**long [6]** 6/2 18/16 21/20 22/15 23/9 53/3
**longer [1]** 21/5
**look [16]** 9/12 15/19 15/20 17/18 29/19 32/19 34/17 38/20 40/2 40/9 41/2 41/4 41/6 55/19 56/18 59/24
**looked [4]** 13/20 47/19 62/9 62/9
**looking [7]** 27/23 28/4 28/7 28/9 28/10 45/1 46/14
**looks [5]** 10/1 22/8 23/3 62/19 62/22
**loss [15]** 18/20 18/25 19/4 21/3 31/13 50/6 50/11 50/15 50/18 50/21 51/3 51/6 58/11 60/19 60/23
**losses [1]** 8/16
**lost [5]** 29/3 30/3 30/12 31/10 44/2
**lot [5]** 5/4 18/20 27/17 28/11 32/12
**love [2]** 22/22 43/5
**LTD [1]** 1/3

**M**

**made [30]** 5/6 6/7 9/16 11/12 11/24 31/6 34/24 34/25 35/2 35/3 35/6 35/25 37/19 41/6 41/20 42/2 42/25 46/2 46/4 46/9 49/5 49/13 50/3 50/25 51/3 51/8 54/2 57/3 62/6 62/8
**magnitude [3]** 40/3 60/16 61/6
**maintain [1]** 11/19
**maintained [1]** 11/18
**major [4]** 29/17 44/23 60/4 60/6
**majority [4]** 5/22 6/3 29/22 29/22
**make [14]** 5/13 26/7 30/25 34/16 34/20 34/23 35/15 36/3 43/11 44/23 48/18 50/4 50/4 60/5
**makes [1]** 10/16
**makeweight [1]** 50/2
**making [6]** 4/12 10/24 31/12 32/18 33/23 48/12
**management [2]** 51/19 51/21
**management's [1]** 17/11
**many [3]** 6/18 30/7 44/13
**March [2]** 1/7 20/12
**March 21 [1]** 20/12
**marched [1]** 60/18
**marches [1]** 24/14
**marching [1]** 42/25
**market [14]** 1/24 2/4 6/18 18/4 21/15 24/4 25/2 44/7 44/10 47/12 52/3 55/2 58/23 60/8
**market-wide [1]** 58/23
**marketing [8]** 17/1 34/13 47/7 47/7 62/18 63/19 63/21 63/25
**MARSTON [1]** 1/10
**Massachusetts [3]** 11/18 13/21 20/13
**mast [1]** 28/8
**match [1]** 60/11
**material [24]** 5/8 5/11 7/19 7/21 7/21 9/5 9/17 26/5 34/21 34/23 35/4 35/6 35/12 37/16 37/21 43/25 44/10 44/19 45/2 48/16 62/6 62/8 62/19 62/23
**materiality [2]** 8/25 55/8
**materialization [1]** 58/19

# M

**materialized [3]** 16/23 57/19 57/20
**materially [1]** 49/8
**materials [1]** 4/18
**MATHIEU [2]** 2/3 3/20
**matter [9]** 4/22 4/23 8/5 35/14 38/16 62/1 62/4 64/4 64/21
**MAXWELL [2]** 2/4 3/21
**may [26]** 4/5 7/19 10/7 16/7 16/13 17/12 17/13 17/24 19/14 19/22 23/4 24/6 24/7 24/8 25/6 28/23 52/10 53/15 54/14 54/17 58/7 61/14 62/20 62/21 62/22 63/7
**May 11 [2]** 52/10 58/7
**maybe [11]** 19/7 19/8 20/24 26/25 29/8 29/10 31/16 31/18 45/12 49/15 58/13
**me [18]** 3/3 3/22 4/2 8/3 9/2 13/9 19/9 25/12 25/15 36/22 36/25 37/9 42/7 45/20 50/12 52/19 59/21 64/12
**mean [16]** 7/15 8/6 17/20 19/7 20/6 20/18 23/9 23/17 24/6 28/15 31/21 36/11 52/9 55/24 56/5 60/6
**meaningless [1]** 46/20
**meant [3]** 49/11 58/12 58/25
**Medicaid [1]** 60/14
**Medicare [14]** 6/17 9/20 12/20 28/24 30/3 31/1 36/6 37/3 41/19 41/19 41/23 55/20 55/21 60/14
**meet [1]** 51/4
**MELISSA [2]** 2/3 3/22
**mental [1]** 40/2
**mention [2]** 32/22 32/24
**mentioned [10]** 7/8 13/13 14/11 14/15 18/7 23/2 24/10 26/2 30/2 58/18
**Merck [1]** 7/14
**Merriam [3]** 40/9 40/15 62/13
**Merriam-Webster [2]** 40/9 40/15
**Merriam-Webster's [1]** 62/13
**met [2]** 19/21 38/12
**middle [1]** 53/7
**might [4]** 5/4 24/11 39/20 43/1
**MILLIGAN [1]** 1/13
**milligram [4]** 22/17 22/21 22/23 22/25
**million [13]** 29/5 30/12 30/13 31/8 31/9 31/14 35/23 46/4 47/24 48/2 48/8 60/23 61/5
**millions [6]** 34/1 35/25 36/9 42/5 47/9 62/15
**mind [2]** 5/2 43/3
**minute [9]** 3/3 42/7 45/20 53/14 59/5 61/17 61/20 61/21 64/6
**minutes [4]** 53/5 53/8 53/15 53/18
**mislead [1]** 55/2
**misleading [27]** 5/16 5/21 5/23 6/4 9/11 9/16 10/2 10/10 10/12 10/14 10/16 10/21 18/21 25/21 27/10 27/13 33/24 34/25 37/14 45/7 46/10 49/6 49/9 49/12 49/17 54/8 57/4
**misrepresentations [1]** 5/9
**missed [1]** 45/9
**misstatements [2]** 27/10 45/22
**mix [1]** 37/18
**money [14]** 29/6 34/4 34/5 34/7 36/1 40/6 40/21 41/22 41/25 42/12 47/6 55/22 62/16 63/11
**morally [1]** 44/15
**more [21]** 6/22 8/19 10/7 12/16 24/22 26/9 26/11 26/11 26/11 26/11 27/8 28/23 29/9 36/1 40/23 43/4 45/12 53/8 60/15 61/15 61/16
**morning [10]** 3/11 3/13 3/20 3/23 4/1 4/3 4/13 32/9 32/10 64/12

missed [1] 45/9
**mission [1]** 42/2
**motion [13]** 1/9 4/4 4/5 4/15 5/2 11/10 15/8 20/10 33/7 33/8 49/4 51/8 59/8
**motions [1]** 15/18
**Motley [2]** 44/13 59/23
**Movant [1]** 1/13
**move [1]** 7/5
**Mr. [2]** 12/23 13/15
**Mr. O'Grady [1]** 13/15
**Mr. O'Grady's [1]** 12/23
**MS [1]** 61/4
**much [3]** 22/2 40/22 41/22
**multiple [7]** 6/11 6/13 6/16 6/18 12/5 12/6 42/21
**must [1]** 36/12
**muster [1]** 56/17
**my [14]** 4/2 4/10 25/6 25/10 32/12 45/19 45/21 53/8 53/15 54/23 55/3 58/8 59/21 60/1
**myself [1]** 28/8

# N

**name [2]** 3/5 3/17
**names [2]** 3/8 6/16
**nationwide [1]** 42/3
**natural [1]** 33/3
**naturally [1]** 38/23
**nature [4]** 10/22 10/23 20/18 47/7
**nauseam [1]** 64/8
**near [1]** 64/14
**necessarily [3]** 28/15 30/22 44/6
**necessary [2]** 11/8 34/23
**need [8]** 20/22 22/4 26/11 38/5 39/8 42/23 58/2 64/6
**needed [7]** 33/20 41/18 41/22 42/16 42/16 63/16 63/17
**needs [2]** 38/5 55/20
**needy [2]** 42/2 55/15
**negative [4]** 26/14 26/23 27/2 27/2
**negatively [1]** 18/5
**neighborhood [1]** 45/13
**never [9]** 32/18 33/13 33/14 33/17 33/18 38/3 53/8 62/20 63/20
**nevertheless [1]** 24/13
**new [5]** 1/20 23/16 25/19 51/19 51/21
**news [3]** 18/5 23/16 26/14
**Nice [1]** 3/15
**nighttime [1]** 45/19
**no [29]** 5/8 8/12 8/13 8/23 12/24 14/15 14/19 21/3 21/5 22/3 23/16 27/9 32/22 32/24 36/11 39/8 40/7 40/7 45/11 46/6 46/18 47/14 50/20 51/6 55/10 55/14 58/10 61/10 64/1
**nobody [2]** 62/7 63/5
**noisy [1]** 43/1
**non [3]** 14/10 14/12 56/19
**non-culpable [2]** 14/10 14/12
**non-precedential [1]** 56/19
**none [2]** 54/7 56/7
**not [109]**
**noted [1]** 4/14
**notes [1]** 45/21
**nothing [7]** 11/24 13/15 21/10 26/3 46/12 58/9 58/11
**notice [1]** 18/15
**notion [1]** 32/14
**notwithstanding [1]** 5/4
**November [6]** 21/9 23/3 23/14 23/16 24/3 51/12
**November 2 [1]** 51/12

much [3]
**most [4]** 20/3 20/5 20/7 20/17 21/6 24/2 32/5 36/14 37/22 44/17 51/16 54/11 54/22 59/18 60/20
**nuisance [1]** 44/4
**number [9]** 26/19 30/24 31/8 42/4 47/4 48/3 49/19 50/3 59/11
**numbers [11]** 27/7 27/8 28/25 29/9 30/21 35/22 60/9 60/11 60/17 61/1 61/6
**nut [2]** 61/23 64/4
**nuts [2]** 44/8 48/15
**NY [1]** 1/20

# O

**O'Grady [3]** 12/12 13/15 14/16
**O'Grady's [1]** 12/23
**OBERMAYER [3]** 2/4 3/21 3/22
**obligated [1]** 7/2
**obligation [1]** 8/21
**observe [1]** 23/17
**obvious [2]** 51/9 51/17
**obviously [7]** 4/24 9/15 25/7 27/1 28/18 39/18 50/10
**occurred [2]** 16/15 32/19
**odd [2]** 31/8 63/16
**off [6]** 11/7 12/1 14/18 22/21 29/20 61/1
**Office [3]** 11/19 16/16 20/13
**OFFICIAL [1]** 1/23
**often [1]** 40/13
**oh [8]** 31/2 34/11 36/24 43/7 44/2 46/11 46/12 46/24
**OIG [1]** 14/13
**Okay [14]** 3/4 4/3 5/12 16/9 22/14 25/12 33/11 35/9 42/8 46/8 50/15 51/11 61/9 61/14
**omission [4]** 10/22 34/14 35/8 49/17
**omissions [7]** 5/11 35/3 35/4 35/6 35/13 49/15 54/5
**omit [1]** 34/23
**omitted [1]** 37/14
**once [1]** 32/23
**one [28]** 5/17 15/15 15/24 17/5 18/8 18/18 21/22 22/16 22/18 24/18 25/12 25/17 26/1 26/18 28/14 29/3 41/8 43/3 48/2 52/18 56/23 59/21 59/23 60/15 60/19 61/6 61/17 61/20
**one-minute [1]** 61/20
**ones [2]** 14/17 27/12
**ongoing [1]** 23/24
**only [26]** 7/21 8/25 9/22 10/15 19/9 19/11 22/18 22/20 22/22 25/4 26/6 27/12 30/9 31/9 32/16 34/16 40/19 41/8 55/16 56/10 56/25 57/13 60/13 60/15 60/19 61/24
**opens [1]** 3/2
**operate [1]** 16/5
**operation [1]** 34/3
**operations [5]** 18/3 28/14 29/15 47/21 61/8
**opinion [4]** 32/16 34/15 49/20 56/19
**opposed [1]** 25/2
**opposite [1]** 13/10
**opposition [1]** 7/4
**order [4]** 29/5 34/23 60/16 61/5
**other [32]** 7/18 9/21 11/20 14/15 15/22 16/1 18/24 21/17 24/10 25/11 26/4 26/10 27/5 27/10 27/14 31/22 32/24 33/12 33/15 33/20 36/11 42/20 44/6 48/11 48/18 50/25 55/3 56/24 58/20 59/11 59/24 60/17
**others [2]** 7/15 26/19
**otherwise [3]** 5/5 25/10 26/9
**ought [1]** 28/12
**our [35]** 7/6 7/8 7/15 8/13 16/12 17/1 17/2 19/12 20/10 24/17 27/15 27/17 27/25 32/16

O [1] 73/13

with [1] 73/13

pages [1] 73/14

73

**O**

**our...  [21]**  33/1 33/10 34/13 34/13 34/14 36/11 38/7 38/17 43/10 43/11 45/14 46/15 48/23 51/8 51/20 55/13 56/10 56/18 59/12 62/11 63/10
**out [24]**  8/7 8/9 11/17 16/1 19/24 21/22 27/5 36/5 38/4 39/10 40/25 40/25 42/5 44/12 47/12 49/25 50/10 51/5 56/11 58/14 59/16 61/25 62/21 64/14
**outset [2]**  7/25 54/23
**over [12]**  16/18 17/12 18/9 19/15 21/18 25/10 29/25 35/22 42/4 45/24 47/24 48/3
**overall [1]**  29/6
**overlook [1]**  44/14
**overwhelming [2]**  5/22 6/3
**own [5]**  9/3 34/6 44/15 51/8 56/9

**P**

**p.m [3]**  61/12 61/13 64/16
**PA [4]**  1/7 1/23 1/24 2/5
**page [8]**  9/12 10/4 10/5 15/21 15/23 20/11 49/4 59/7
**page 1 [1]**  49/4
**page 17 [1]**  15/21
**page 27 [2]**  9/12 10/5
**page 34 [2]**  20/11 59/7
**page 46 [1]**  15/23
**pages [3]**  38/14 44/9 45/10
**paid [1]**  55/15
**PAP [7]**  6/24 12/5 21/11 23/16 30/4 30/5 30/6
**papers [1]**  4/10
**PAPs [9]**  6/8 6/14 7/7 16/16 19/12 20/2 31/12 61/4 61/5
**parade [1]**  24/12
**paragraph [13]**  9/9 9/12 10/6 10/19 14/17 15/25 22/8 27/10 38/20 39/11 39/13 56/24 59/22
**paragraph 114 [1]**  15/25
**paragraph 121 [1]**  22/8
**paragraph 172 [1]**  59/22
**paragraph 31 [1]**  39/11
**paragraph 62 [1]**  14/17
**paragraph 74 [4]**  9/9 9/12 10/6 39/13
**paragraph 74A [1]**  38/20
**paragraph 76 [1]**  10/19
**paragraph 76A [1]**  56/24
**paragraphs [5]**  10/1 23/4 28/8 56/25 57/15
**paraphrasing [1]**  58/21
**pardon [1]**  36/22
**Park [1]**  1/20
**parlance [1]**  17/17
**part [25]**  6/17 6/25 28/24 29/17 29/18 30/3 31/1 33/1 34/10 34/21 35/1 36/6 41/19 41/19 41/23 43/15 43/21 44/7 47/11 47/12 55/20 55/21 58/3 60/15 63/24
**partial [4]**  21/8 51/23 52/2 52/6
**partially [1]**  6/23
**particular [2]**  47/22 52/6
**particularity [4]**  9/24 9/25 14/6 38/17
**particularized [1]**  58/2
**particularly [1]**  13/24
**partly [1]**  43/14
**partnered [1]**  55/19
**partnership [1]**  56/2
**parts [1]**  43/16
**passes [1]**  56/17
**past [2]**  5/24 6/1

**patient [7]**  6/8 6/21 20/14 29/4 41/10 41/14 59/1
**patients [11]**  6/17 6/20 6/25 9/20 12/20 12/22 40/19 41/23 42/21 47/2 55/15
**patients' [1]**  12/13
**pause [3]**  16/14 21/25 35/11
**pay [4]**  11/10 40/18 63/1 63/10
**payers [1]**  37/5
**paying [3]**  26/24 36/5 36/6
**payment [1]**  62/15
**payments [9]**  11/25 12/2 14/18 45/23 46/4 47/24 48/1 48/2 62/16
**Pelletier [1]**  43/6
**penalties [1]**  17/24
**penalty [1]**  17/14
**pending [1]**  4/4
**PENNSYLVANIA [1]**  1/1
**PENSION [2]**  1/3 3/6
**people [16]**  9/13 11/23 12/9 22/22 23/12 24/11 24/15 36/5 42/2 42/15 42/16 42/22 43/1 45/1 50/25 58/24
**percent [14]**  23/7 23/7 28/17 28/17 29/25 35/18 35/18 36/19 44/2 44/6 44/20 52/7 54/16 60/14
**percentage [3]**  28/23 31/7 40/4
**Perfect [1]**  3/18
**perfectly [1]**  11/14
**performance [5]**  5/20 7/8 7/9 27/15 49/20
**perhaps [1]**  60/11
**period [17]**  5/21 13/2 14/25 15/5 15/11 15/15 15/16 21/3 24/2 24/13 24/22 28/21 29/3 29/25 52/8 59/17 60/21
**periods [1]**  17/13
**permissible [3]**  11/15 11/22 13/12
**persuade [1]**  17/25
**persuasive [2]**  56/20 56/21
**PETER [2]**  1/14 3/14
**pharmaceutical [7]**  1/6 3/6 6/23 17/2 18/1 25/20 41/7
**pharmacies [1]**  34/4
**pharmacy [2]**  41/15 41/16
**Philadelphia [3]**  1/7 1/24 2/5
**phrasing [1]**  9/23
**pick [2]**  15/24 49/25
**piece [2]**  17/15 25/7
**pipeline [1]**  25/23
**place [1]**  33/19
**places [3]**  15/22 16/1 48/13
**places to [1]**  48/13
**plaintiff [8]**  1/4 3/10 3/13 3/14 32/11 48/22 49/10 49/11
**plaintiff's [14]**  3/5 3/17 7/4 8/16 9/3 21/1 25/3 26/5 26/19 29/21 53/23 54/20 56/9 59/22
**plaintiffs [23]**  6/4 7/20 8/12 8/14 9/10 9/22 10/15 11/4 11/23 11/25 14/5 19/5 19/8 21/16 28/1 43/17 49/3 49/4 49/18 56/16 57/2 57/7 61/3
**plan [3]**  40/18 62/13 62/14
**plausible [1]**  14/7
**play [2]**  7/6 45/17
**playing [2]**  34/15 49/6
**plead [4]**  9/4 11/5 43/10 62/21
**pleaded [3]**  49/3 49/5 49/8
**pleading [2]**  56/16 58/1
**pleadings [1]**  34/10
**please [2]**  3/8 52/18
**pled [5]**  19/16 33/5 36/15 38/16 43/8

**plus [2]**  44/23 60/5
**podium [2]**  4/8 4/9
**point [21]**  11/4 11/25 18/10 24/13 24/15 24/19 24/21 27/5 31/6 36/20 38/4 38/20 46/12 56/7 56/14 58/24 59/13 60/6 63/13 63/13 63/15
**pointed [4]**  19/24 51/5 56/24 61/25
**pointing [1]**  9/3
**points [4]**  8/7 50/3 53/21 59/21
**policies [1]**  34/6
**political [1]**  42/20
**poor [3]**  36/4 36/5 42/24
**poorest [2]**  36/4 42/24
**portfolio [1]**  25/23
**portion [1]**  22/7
**posed [1]**  55/10
**position [2]**  45/24 46/8
**positive [2]**  27/3 55/12
**possessed [2]**  37/11 37/24
**possibility [1]**  33/18
**possible [1]**  62/21
**possibly [1]**  30/20
**potential [2]**  60/19 60/23
**potentially [2]**  29/3 31/13
**practice [7]**  11/3 13/9 13/12 14/13 23/23 24/15 24/16
**practices [3]**  17/1 25/3 37/11
**prearranged [1]**  62/16
**precedential [1]**  56/19
**preceding [1]**  21/15
**preclude [2]**  52/16 52/22
**prediction [1]**  49/20
**predominant [1]**  29/19
**prefer [1]**  53/10
**prescribed [1]**  41/15
**present [1]**  28/2
**presentation [2]**  54/23 60/1
**president [1]**  45/25
**pressure [3]**  23/18 23/24 42/20
**presumed [1]**  47/21
**pretend [1]**  33/12
**pretty [2]**  33/7 56/21
**previous [1]**  21/18
**previously [1]**  58/18
**price [16]**  19/4 20/21 20/21 21/2 23/19 23/25 36/8 42/3 42/18 42/25 43/2 43/7 43/14 43/16 43/21 44/20
**prices [2]**  36/2 36/4
**prior [7]**  15/10 15/14 15/15 16/12 19/20 19/20 23/20
**private [1]**  18/9
**probably [2]**  28/17 46/23
**problem [2]**  51/22 52/4
**problematic [3]**  54/20 55/16 61/24
**problems [3]**  43/2 51/20 62/5
**procedure [1]**  63/9
**proceed [1]**  4/20
**proceedings [4]**  16/8 17/12 64/16 64/21
**process [1]**  20/15
**product [11]**  12/6 22/11 25/21 25/24 26/12 26/14 26/21 27/17 29/13 29/15 29/23
**product's [1]**  25/22
**productions [1]**  34/14
**products [1]**  17/2
**profited [1]**  36/10
**program [14]**  7/3 11/6 11/7 11/14 21/11 29/4 40/12 40/15 40/17 41/10 51/20 55/19 60/23 62/14

**P**

**programs [5]** 6/8 12/19 20/2 20/15 59/1
**projections [1]** 51/22
**promulgated [1]** 34/18
**pronouncing [1]** 3/4
**properly [3]** 38/4 38/23 51/5
**prosecution [1]** 62/21
**protect [1]** 39/24
**prove [1]** 43/23
**proved [2]** 38/2 38/3
**provide [3]** 29/8 40/18 41/21
**PROVIDENT [2]** 1/3 3/5
**providing [2]** 6/25 16/16
**PSLRA [3]** 9/24 13/24 14/5
**public [4]** 7/24 24/17 42/18 50/25
**publicly [2]** 5/20 13/5
**puffery [2]** 27/16 49/19
**punchline [1]** 21/7
**purely [1]** 27/15
**put [7]** 7/6 17/22 49/21 49/23 56/5 56/6 59/19
**putting [1]** 27/3

**Q**

**quarters [2]** 21/15 21/18
**question [12]** 8/23 13/16 13/18 16/13 16/20 18/19 24/3 27/21 30/17 31/16 31/24 45/8
**questions [4]** 4/24 25/7 61/7 61/16
**quickly [1]** 56/21
**quiet [1]** 47/3
**quit [1]** 47/8
**quite [4]** 9/4 20/8 54/19 57/21
**quote [7]** 16/5 17/10 20/11 49/3 49/11 57/3 57/8
**quote/unquote [1]** 57/8
**quoting [3]** 16/24 17/6 60/10

**R**

**rabbit [1]** 7/18
**raise [1]** 30/17
**raised [2]** 31/18 36/20
**raising [1]** 36/4
**ran [1]** 36/8
**rarely [1]** 62/3
**rate [1]** 36/9
**RDR [1]** 1/22
**react [1]** 18/5
**reaction [2]** 17/18 59/23
**read [15]** 9/10 10/17 15/3 15/9 18/7 20/3 21/12 27/11 37/9 39/18 49/11 56/21 57/18 58/17 59/16
**readily [2]** 36/25 52/6
**reading [4]** 11/16 32/17 45/19 57/14
**reads [1]** 22/6
**ready [2]** 50/7 50/8
**real [1]** 26/2
**Reali [1]** 37/1
**reality [1]** 48/19
**really [16]** 8/4 8/5 10/11 13/15 16/9 19/1 22/17 22/25 26/3 26/16 53/21 54/23 56/7 58/14 63/12 64/11
**reason [9]** 8/24 19/19 20/19 20/22 22/9 26/2 26/6 50/1 56/10
**reasonable [3]** 14/7 32/17 37/16
**reasons [8]** 11/11 18/11 26/21 28/10 28/12 29/24 39/14 47/5
**REBMANN [2]** 2/4 3/21
**rebuttal [1]** 25/9

**receiving [2]** 13/9 14/14
**recent [1]** 15/15
**recently [2]** 11/17 33/7
**recess [2]** 61/10 61/12
**recitations [2]** 5/24 6/1
**reckless [1]** 12/10
**recklessness [1]** 48/9
**recognize [1]** 7/15
**record [4]** 3/8 15/13 22/7 64/21
**recovery [1]** 43/12
**red [1]** 44/13
**reduces [1]** 26/16
**refer [1]** 57/9
**reference [2]** 38/19 56/15
**references [1]** 21/20
**referred [3]** 6/20 57/17 59/23
**referring [1]** 15/22
**regard [1]** 17/1
**regarding [9]** 19/12 31/21 31/22 35/5 35/7 37/2 46/25 52/4 58/14
**regular [1]** 12/22
**regulations [4]** 16/7 16/10 16/12 16/19
**regulatory [1]** 16/6
**reimbursement [3]** 37/11 37/15 40/19
**relate [1]** 57/22
**related [3]** 20/14 33/19 59/1
**relation [1]** 23/16
**relative [1]** 28/25
**released [1]** 44/3
**releases [1]** 23/5
**relevant [5]** 9/22 11/9 12/8 12/9 12/21
**reliance [1]** 14/12
**relying [2]** 11/19 51/12
**remember [6]** 15/10 16/20 17/3 20/3 29/21 58/23
**remembers [1]** 22/16
**removed [1]** 42/20
**rendered [1]** 57/3
**repeated [7]** 10/18 15/4 27/11 39/13 57/11 57/14 59/18
**replead [1]** 39/6
**report [9]** 7/16 13/7 38/16 62/25 63/4 63/8 63/9 63/9 63/14
**reported [1]** 63/17
**reporter [2]** 1/23 22/6
**reporter's [1]** 53/20
**reports [2]** 15/1 30/20
**represented [1]** 28/17
**represents [1]** 60/4
**requested [1]** 22/7
**requesting [1]** 20/13
**required [1]** 14/5
**resist [1]** 40/23
**resolve [1]** 39/5
**respect [4]** 5/14 6/6 7/14 13/25
**respectfully [1]** 5/10
**respond [2]** 25/7 32/12
**responding [5]** 16/25 17/10 20/15 24/18 24/19
**response [3]** 24/20 61/20 61/21
**responsive [1]** 27/20
**restate [1]** 52/18
**result [4]** 16/7 17/6 19/3 31/13
**resulted [1]** 58/10
**reveal [6]** 17/17 19/25 43/20 50/22 50/23 51/24
**revealed [4]** 8/16 50/24 52/5 64/3
**revealing [1]** 26/8

**revelation [4]** 25/2 44/19 50/21 51/23
**revelations [2]** 52/2 52/2
**revenue [6]** 29/3 29/11 29/17 29/18 30/25 35/19
**revenues [10]** 21/17 21/17 28/18 28/22 28/24 29/7 29/23 55/13 56/10 60/20
**reversed [1]** 37/7
**reversing [1]** 37/8
**revised [1]** 21/13
**rigging [1]** 57/5
**right [36]** 3/17 8/4 8/11 8/22 9/4 13/4 19/13 22/12 27/22 28/13 30/4 31/1 32/2 34/5 34/7 35/24 38/11 40/20 40/20 45/5 47/23 49/16 50/12 52/9 52/13 53/1 53/9 53/25 54/17 56/1 58/16 61/9 61/15 62/23 63/2 64/10
**rise [4]** 3/1 14/6 48/10 58/2
**risk [16]** 15/1 15/4 16/1 16/23 20/3 24/10 57/17 57/19 57/20 58/18 58/19 59/16 59/25 60/4 60/7 63/23
**Road [1]** 1/15
**ROBERT [2]** 1/13 3/10
**rocket [1]** 59/19
**Room [1]** 1/24
**Roswell [1]** 1/15
**round [1]** 9/11
**Rule [4]** 34/18 49/7 52/16 52/22
**Rule 10 [1]** 49/7
**Rule 10b [1]** 34/18
**rules [4]** 16/7 16/10 16/12 16/19
**rush [1]** 53/4

**S**

**safe [4]** 28/6 39/23 63/18 64/14
**said [34]** 5/20 5/25 8/4 11/22 12/5 15/25 23/15 25/6 30/3 32/3 34/11 35/16 35/17 35/18 37/3 37/8 37/23 39/9 39/12 40/24 43/7 44/13 44/22 45/25 46/24 47/6 50/22 51/6 55/7 55/19 58/8 58/9 59/25 61/24
**sake [1]** 53/20
**sale [1]** 36/1
**sales [8]** 23/6 29/10 60/13 60/14 60/14 60/19 60/22 62/14
**same [5]** 21/12 28/2 35/9 59/10 59/18
**satisfied [1]** 37/20
**satisfy [1]** 18/25
**say [37]** 7/7 7/10 7/16 8/24 9/12 9/16 10/11 10/13 11/11 12/18 12/24 16/24 23/13 24/21 26/7 26/10 26/10 26/11 26/23 27/8 28/7 33/13 34/15 38/18 44/2 45/10 47/17 48/14 48/19 49/18 49/19 54/18 55/11 56/1 59/6 59/9 63/16
**saying [17]** 26/23 27/16 30/21 31/9 32/3 33/8 33/11 38/8 41/3 42/10 43/24 48/20 51/12 52/10 55/18 58/13 59/25
**says [4]** 20/11 24/19 40/1 62/11
**scene [1]** 23/10
**scheme [66]**
**school [1]** 62/24
**science [1]** 59/19
**scienter [11]** 11/5 13/17 13/25 14/1 14/7 14/8 18/23 40/1 41/5 58/1 58/3
**sclerosis [7]** 6/11 6/13 6/16 6/18 12/5 12/6 42/21
**Scripts [5]** 6/20 41/7 41/16 41/17 41/24
**sea [1]** 47/17
**search [1]** 32/20
**searching [1]** 32/21
**seat [1]** 3/3

**S**

seated **[1]** 61/14
SEC **[1]** 63/8
second **[4]** 19/15 21/23 25/12 54/14
secret **[1]** 63/24
secretive **[1]** 40/13
secrets **[1]** 47/1
section **[7]** 6/3 37/21 48/20 52/15 52/17 52/21 52/23
Section 10 **[2]** 6/3 37/21
Section 20A **[2]** 52/17 52/23
securities **[4]** 34/18 37/6 49/7 63/3
see **[10]** 3/15 4/21 9/2 10/2 10/20 15/9 23/4 23/13 31/2 50/13
seeing **[1]** 4/5
seems **[1]** 19/8
seen **[1]** 13/20
sees **[1]** 18/4
segments **[1]** 17/4
sell **[1]** 37/18
semantic **[1]** 48/12
senior **[1]** 11/11
sense **[2]** 26/16 62/7
sentence **[2]** 24/19 35/2
separable **[1]** 28/5
seq **[1]** 56/24
series **[1]** 10/9
serves **[1]** 22/9
services **[1]** 6/21
set **[4]** 3/4 40/5 42/23 55/21
setting **[1]** 34/3
settle **[2]** 38/3 62/22
settlements **[2]** 17/13 17/24
setup **[1]** 16/9
several **[3]** 17/2 17/3 57/3
severalfold **[1]** 26/1
severe **[1]** 48/9
shall **[1]** 63/16
SHANNAN **[3]** 1/22 64/23 64/24
SHAPIRO **[2]** 2/3 3/21
Shared **[5]** 41/8 41/10 41/11 41/18 41/24
shareholders **[1]** 49/12
She's **[1]** 3/24
sheet **[2]** 44/24 62/17
shelf **[1]** 4/11
shoot **[1]** 30/16
short **[2]** 4/19 56/20
shorthand **[1]** 12/4
should **[24]** 8/19 9/5 9/7 15/21 19/24 21/1 21/2 21/4 24/3 27/5 28/6 31/23 39/1 41/13 44/1 44/14 45/3 45/6 47/21 48/17 53/8 53/18 63/5 64/3
shouldn't **[6]** 31/17 31/18 31/20 39/14 48/12 58/13
show **[2]** 25/15 46/24
showed **[1]** 22/24
shows **[1]** 13/10
side **[3]** 25/11 33/16 55/3
signed **[4]** 11/7 12/1 14/18 46/5
significance **[2]** 13/1 21/13
significant **[5]** 17/11 17/25 29/18 29/22 35/20
significantly **[3]** 23/6 37/19 60/21
signing **[1]** 61/1
similar **[1]** 31/21
simple **[1]** 63/22
simplified **[1]** 55/25
simplify **[1]** 4/22

simply **[3]** 6/6 18/22 27/6
48/20 51/1
since **[3]** 21/3 30/16 59/17
Singer **[1]** 37/1
single **[2]** 5/17 49/12
sir **[1]** 32/8
sitting **[1]** 13/13
situation **[3]** 40/5 47/5 63/15
skipped **[1]** 21/6
slipstream **[1]** 54/25
small **[2]** 28/25 29/5
smelled **[1]** 62/9
SMITH **[3]** 1/18 4/1 4/13
so **[77]**
solid **[1]** 33/8
Solutions **[5]** 41/9 41/10 41/11 41/18 41/24
some **[23]** 7/8 10/6 10/12 12/1 15/6 16/1 18/10 19/2 25/9 28/1 28/16 29/9 29/19 33/20 41/11 44/5 46/25 53/6 53/8 57/12 59/13 60/9 61/5
somebody **[3]** 22/24 33/18 38/7
somehow **[1]** 20/2
someplace **[1]** 29/7
something **[17]** 7/23 8/10 8/18 8/19 8/20 26/23 27/4 27/19 28/17 30/2 30/3 31/14 38/5 38/22 39/19 46/15 64/14
sometimes **[1]** 52/3
somewhat **[1]** 26/15
somewhere **[1]** 29/5
sorry **[9]** 21/22 22/5 22/13 24/7 25/17 35/10 49/10 49/19 50/17
sort **[6]** 11/8 17/19 34/3 48/11 56/16 60/4
sounds **[2]** 32/15 53/19
soup **[1]** 6/14
source **[1]** 25/20
space **[2]** 12/6 22/24
speak **[7]** 4/12 7/11 7/11 30/18 37/10 57/4 57/8
specialty **[3]** 6/13 17/2 17/4
specific **[7]** 20/8 27/9 27/19 38/8 39/25 41/15 41/20
specifically **[1]** 52/5
specifics **[1]** 30/19
speed **[1]** 53/20
spin **[1]** 27/3
squarely **[1]** 37/21
stand **[2]** 4/6 29/8
standard **[3]** 14/2 38/12 58/1
standards **[1]** 13/22
standpoint **[3]** 13/18 58/11 61/8
stark **[1]** 7/4
start **[11]** 4/10 9/9 32/13 32/21 40/17 40/18 42/17 42/18 42/25 51/21 53/12
state **[8]** 3/8 11/9 14/5 34/23 40/2 48/19 52/15 58/2
stated **[2]** 12/13 52/21
statement **[9]** 10/9 10/17 12/24 15/13 34/20 35/2 35/15 49/5 49/12
statements **[44]** 5/7 5/17 5/23 6/4 9/11 9/13 9/25 10/2 10/10 10/16 10/21 12/24 13/14 18/21 27/6 27/8 27/14 27/18 27/22 27/23 28/2 28/4 28/5 28/12 33/23 34/9 34/16 34/24 35/2 35/7 35/17 37/13 37/14 45/7 45/24 46/2 46/9 49/8 49/19 49/20 49/22 54/2 54/7 57/3
STATES **[3]** 1/1 1/10 16/25
statistics **[1]** 28/16
statute **[7]** 5/4 12/3 34/8 34/17 34/21 34/22 43/11
statutes **[2]** 43/18 43/24

stayed **[1]** 47/15
step **[2]** 21/22 41/13
still **[6]** 23/22 24/25 33/20 42/17 62/25 63/8
stock **[12]** 19/4 20/21 20/21 21/2 23/14 23/19 24/24 37/18 44/2 46/5 55/2 58/10
stopped **[3]** 29/4 31/12 60/23
STRAWN **[3]** 1/19 4/2 4/14
stream **[1]** 35/20
Street **[2]** 1/24 2/4
strike **[3]** 39/1 39/7 51/8
strip **[1]** 53/23
strong **[5]** 14/6 25/22 34/12 50/2 58/2
studying **[1]** 4/17
stuff **[4]** 10/12 17/19 26/9 27/16
stun **[1]** 21/15
styled **[1]** 14/17
sub **[1]** 57/15
subject **[3]** 7/11 48/21 48/24
subjective **[1]** 62/4
submissions **[1]** 4/19
submit **[3]** 16/15 24/23 28/3
submitted **[1]** 15/7
subparts **[1]** 57/10
subpoena **[33]** 13/3 13/4 13/9 14/14 14/23 16/4 19/22 20/6 20/12 20/16 23/21 24/4 24/8 24/18 24/18 24/20 24/21 46/9 46/12 46/13 50/10 51/1 51/19 52/10 58/8 58/9 58/10 58/11 58/14 58/18 59/10 59/14 59/19
subpoenas **[5]** 46/19 46/25 47/14 50/22 59/12
subsequent **[1]** 16/3
substantive **[1]** 38/24
success **[5]** 25/21 25/22 26/2 26/21 33/23
such **[3]** 17/10 17/12 27/23
sudden **[1]** 22/24
sued **[2]** 17/20 56/12
sufficient **[2]** 37/10 37/23
suggest **[5]** 5/5 7/5 11/13 56/20 58/16
suggested **[1]** 54/22
suggestion **[1]** 57/12
suit **[2]** 44/23 60/5
Suite **[2]** 1/15 2/4
sum **[1]** 29/6
super **[1]** 29/22
supply **[1]** 25/22
support **[2]** 6/21 26/12
supported **[1]** 52/7
supporting **[1]** 44/11
supposed **[4]** 24/14 24/21 26/4 26/8
supposedly **[4]** 5/16 10/12 19/2 26/3
Supreme **[2]** 14/4 40/1
sure **[8]** 19/17 20/22 25/13 33/14 39/21 50/4 50/4 59/13
surgeons **[1]** 37/4
survived **[3]** 33/7 43/15 43/20
suspected **[1]** 62/5
swell **[1]** 42/18
switched **[2]** 18/8 18/13
switched from **[1]** 18/8
system **[1]** 42/23

**T**

table **[2]** 3/24 4/6
TAF **[5]** 6/10 6/11 6/24 6/25 9/19
take **[9]** 18/14 18/14 43/1 49/24 53/8 53/15 53/17 56/17 61/10
taken **[2]** 36/12 61/12
takes **[2]** 24/1 55/22
taking **[1]** 9/20

**T**

**talk [11]** 23/5 26/20 29/20 38/21 39/14 39/17 43/5 50/6 53/15 53/16 53/20
**talked [6]** 7/7 14/22 18/20 18/22 47/1 60/17
**talking [10]** 30/9 30/11 30/12 31/7 35/12 45/5 51/14 55/3 57/24 63/19
**talks [1]** 39/19
**taught [1]** 62/24
**tax [1]** 47/5
**taxes [3]** 62/25 63/1 63/10
**tear [2]** 58/24 59/9
**technical [2]** 43/18 62/7
**technically [2]** 34/16 63/11
**telephone [1]** 64/13
**tell [7]** 8/3 10/14 20/23 31/25 42/7 46/20 46/21
**Tellabs [3]** 14/1 14/4 40/1
**telling [1]** 19/16
**term [4]** 32/22 38/22 40/14 62/13
**terms [9]** 12/25 19/10 28/25 28/25 30/2 38/12 50/9 56/15 60/11
**terrible [2]** 33/25 62/19
**TEVA [35]** 1/6 3/6 5/3 5/6 5/20 6/7 6/19 9/18 11/17 11/18 12/6 13/3 13/6 13/20 16/15 20/12 30/8 34/4 34/5 35/5 35/7 35/24 35/25 40/21 41/21 42/23 44/2 44/5 44/8 44/9 44/24 45/25 46/2 46/19 47/4
**Teva's [9]** 6/6 6/13 20/14 20/15 28/14 40/4 41/10 59/1 62/17
**than [9]** 6/15 13/23 14/15 26/4 27/10 33/21 48/11 53/18 61/11
**Thank [18]** 3/15 4/3 18/12 22/1 24/7 32/6 32/7 40/8 53/1 53/2 61/11 61/14 61/23 64/4 64/5 64/10 64/11 64/12
**that [476]**
**that's [77]**
**their [30]** 3/8 7/4 9/1 9/10 11/4 11/13 13/11 14/12 16/20 23/21 29/17 29/18 29/23 35/16 42/24 43/5 43/13 43/13 43/16 46/19 46/23 49/4 50/9 51/8 55/15 56/10 56/11 57/4 57/11 63/2
**them [18]** 15/20 26/19 27/7 28/1 34/4 34/7 36/12 39/15 41/15 41/22 41/24 42/1 49/25 55/21 57/18 60/7 60/8 61/3
**theme [1]** 43/4
**themselves [6]** 27/6 36/7 44/14 47/3 47/6 48/14
**then [22]** 7/17 8/1 9/21 12/21 14/17 18/19 19/3 22/24 41/18 41/19 42/1 42/25 48/11 49/3 49/10 49/18 51/11 52/10 52/22 53/16 55/21 59/2
**theory [10]** 5/19 18/22 19/25 21/1 25/4 26/5 26/15 54/20 56/9 61/1
**there [57]** 4/7 4/11 5/15 8/1 8/1 8/2 8/2 8/4 8/19 9/4 9/21 10/10 10/16 11/2 14/15 15/1 15/6 16/14 17/3 18/22 19/21 21/19 22/16 25/25 26/19 27/24 27/25 32/22 33/13 33/14 33/17 35/3 35/3 36/5 36/20 39/4 39/16 42/14 42/15 43/6 47/18 50/3 50/7 50/12 50/25 51/6 52/2 52/3 57/12 57/16 58/4 58/5 58/21 59/17 59/24 63/23 64/2
**there's [29]** 5/17 10/12 12/17 12/19 12/21 14/8 14/19 15/6 21/3 21/8 23/15 26/3 27/9 27/17 27/24 28/11 30/24 32/12 32/24 33/8 33/12 36/11 38/24 39/8 44/5 48/9 52/20 54/15 55/14
**thereabouts [1]** 30/1
**therefore [2]** 26/22 37/20

35/23 38/3 46/25 47/6 47/8 47/19 48/1 48/1 48/4 48/5 48/6 48/8 53/9 58/25 60/6 60/11 61/1 63/20
**they [136]**
**they'll [1]** 55/21
**they're [21]** 6/8 9/13 10/10 10/12 13/13 15/24 17/8 27/25 32/18 48/8 48/12 49/22 49/23 54/8 55/11 57/18 57/19 58/4 58/4 60/8 63/19
**they've [2]** 12/8 28/3
**thing [10]** 7/18 10/15 21/9 27/5 35/10 41/12 41/12 55/5 56/25 58/21
**things [18]** 7/8 9/21 11/6 11/20 12/18 12/23 19/1 21/17 26/7 26/13 27/1 33/25 34/3 41/11 48/16 53/22 56/13 59/20
**think [77]**
**thinks [1]** 4/20
**Third [2]** 5/25 56/19
**this [90]**
**those [33]** 5/17 5/22 7/1 13/23 14/18 16/10 16/11 16/19 20/3 24/9 27/18 28/1 28/12 30/20 30/21 30/23 33/16 36/6 43/24 47/1 49/25 50/22 55/23 56/13 56/24 57/12 57/14 57/15 59/19 61/6 62/18 63/25 64/12
**thought [4]** 8/20 13/12 16/17 18/6
**three [3]** 19/5 22/19 22/20
**through [8]** 5/15 6/16 9/14 13/9 15/9 32/13 60/18 62/14
**throughout [4]** 10/18 11/18 15/5 39/13
**throw [2]** 32/23 38/4
**throwing [2]** 36/14 40/23
**tied [1]** 59/15
**time [13]** 3/4 7/16 10/9 16/18 17/4 17/13 17/22 20/18 21/21 22/15 39/7 44/5 58/7
**timeline [1]** 14/23
**times [10]** 10/18 22/19 22/20 27/11 32/19 32/22 32/24 33/1 36/8 40/25
**TIMOTHY [2]** 1/14 3/14
**tip [1]** 47/15
**today [1]** 4/15
**toe [1]** 26/20
**together [1]** 59/20
**told [3]** 20/4 63/20 63/21
**ton [1]** 27/25
**too [1]** 4/11
**took [2]** 16/18 41/14
**top [2]** 29/20 44/24
**topics [2]** 46/14 46/20
**total [5]** 29/11 35/22 37/18 60/13 60/22
**totally [2]** 43/22 48/23
**touch [1]** 57/10
**trajectory [1]** 23/13
**transcript [1]** 64/20
**transitioning [1]** 22/21
**TransS1 [1]** 37/18
**travels [1]** 64/15
**treble [3]** 44/23 60/5 60/7
**tremendous [1]** 64/2
**trial [1]** 53/7
**tried [1]** 43/10
**triggered [1]** 63/25
**true [11]** 13/8 25/20 34/16 35/3 36/12 44/4 45/16 45/16 52/25 54/2 61/25
**truth [2]** 50/21 50/22
**try [3]** 4/22 49/24 53/19
**trying [5]** 31/19 43/23 49/23 53/4 55/11
**turn [1]** 25/10
**two [22]** 6/9 9/21 10/16 12/19 14/16 19/1

36/20 38/15 41/20 47/2 56/13 59/19 59/24 64/13
**tying [1]** 42/9
**typical [1]** 44/18

**U**

**U.S [2]** 1/23 20/12
**ugly [1]** 43/25
**ultimate [1]** 38/17
**ultimately [4]** 16/23 57/19 62/3 63/12
**unbelievable [1]** 40/4
**uncommon [1]** 15/7
**under [21]** 6/2 9/24 13/24 14/1 14/1 14/5 24/5 34/18 34/24 36/7 42/1 42/2 42/19 43/17 45/12 47/15 48/20 52/15 52/16 52/21 52/22
**underlying [5]** 43/20 43/25 48/25 50/23 52/4
**underneath [1]** 4/11
**understand [3]** 32/2 48/7 59/20
**undifferentiated [1]** 5/16
**undisclosed [9]** 7/21 8/8 8/15 8/25 9/5 27/20 46/17 57/1 57/12
**undisputed [1]** 54/3
**unfounded [1]** 48/19
**unique [1]** 26/15
**uniqueness [1]** 25/23
**UNITED [3]** 1/1 1/10 16/25
**unlawful [8]** 9/19 10/22 10/23 32/24 34/19 39/15 40/24 48/13
**unlawfulness [1]** 53/24
**unpredictable [1]** 17/12
**unproven [1]** 24/25
**unquote [1]** 57/8
**untethered [1]** 57/13
**until [7]** 4/9 22/23 23/22 24/14 47/16 50/24 64/1
**untrue [3]** 34/20 35/2 35/15
**up [22]** 3/4 4/8 4/17 10/7 20/21 22/24 29/8 30/25 31/13 34/3 36/8 37/3 40/5 42/13 42/23 42/25 46/4 51/22 55/21 56/2 59/5 60/12
**us [13]** 11/16 13/20 18/9 20/23 23/8 24/1 24/16 26/7 26/17 32/19 56/9 60/13 60/14
**use [9]** 4/7 4/12 32/22 38/8 40/13 48/15 60/18 62/13 62/16
**used [7]** 11/5 36/3 39/10 39/15 40/25 48/13 55/1
**using [3]** 9/19 38/19 38/22
**usually [1]** 38/2

**V**

**value [1]** 44/3
**various [2]** 11/20 48/3
**verbatim [1]** 15/24
**version [1]** 19/20
**versus [6]** 3/6 11/17 13/20 29/23 37/1 43/6
**very [19]** 8/9 8/13 13/23 20/18 22/1 34/11 34/12 41/15 43/12 46/23 48/5 49/1 54/25 55/4 55/25 56/3 56/13 57/10 58/20
**vice [1]** 45/25
**view [2]** 16/18 56/11
**viewed [1]** 37/18
**violated [2]** 5/3 37/12
**violating [1]** 12/3
**violation [6]** 20/2 34/6 34/8 34/9 43/10 43/23
**violations [1]** 43/19
**virtually [4]** 5/19 34/5 40/5 46/20
**virtue [2]** 30/23 57/4
**vs [1]** 1/5

# W

**want [18]** 4/6 17/18 18/17 26/10 26/17 30/8 30/15 30/16 38/9 43/3 44/14 50/3 50/4 50/6 53/14 53/15 57/21 57/25
**wanted [3]** 35/4 40/22 45/18
**wants [2]** 7/5 61/18
**warned [1]** 63/18
**warning [1]** 24/10
**warnings [2]** 63/18 63/25
**warrants [1]** 60/10
**was [146]**
**wasn't [4]** 21/15 47/10 55/9 55/11
**waste [1]** 39/7
**water [2]** 26/21 47/15
**way [14]** 19/16 21/14 35/7 36/11 37/13 40/9 44/17 49/17 49/25 51/2 55/14 58/13 63/6 64/1
**ways [1]** 9/4
**we [121]**
**we'd [1]** 39/7
**we'll [1]** 53/17
**we're [19]** 4/15 24/20 26/8 26/13 32/5 33/7 33/16 35/1 35/16 35/21 35/22 42/10 43/23 43/24 45/5 45/14 54/11 57/24 61/22
**we've [13]** 7/23 15/7 20/5 20/5 20/6 20/7 27/15 28/4 33/5 33/6 47/25 55/19 56/2
**wealth [2]** 45/13 45/14
**Webster [2]** 40/9 40/15
**Webster's [1]** 62/13
**weeds [1]** 12/16
**week [2]** 22/19 22/20
**welcome [3]** 3/24 4/7 54/1
**well [31]** 8/1 11/11 12/15 12/22 14/24 15/22 19/10 22/10 28/12 30/9 31/4 34/11 34/12 38/11 39/17 42/10 43/9 45/23 47/19 47/24 48/5 49/6 50/9 51/11 51/24 52/7 52/9 54/13 56/5 59/9 63/2
**well-known [1]** 22/10
**well-supported [1]** 52/7
**went [3]** 20/21 48/3 62/16
**were [93]**
**weren't [3]** 20/1 23/25 36/5
**what [89]**
**what's [8]** 10/14 16/2 30/22 54/25 56/7 59/20 62/12 62/19
**whatever [3]** 4/6 30/25 33/19
**when [28]** 8/15 9/16 14/23 17/15 17/20 23/10 29/6 29/8 30/18 31/6 34/11 34/15 38/4 38/8 39/10 39/12 39/14 40/25 44/3 47/19 48/15 49/13 50/10 57/24 58/17 58/25 59/9 60/8
**where [19]** 12/20 15/17 15/17 20/9 26/24 27/7 29/24 30/20 32/23 34/4 34/7 38/13 38/21 40/5 40/5 41/17 42/24 52/3 56/25
**whether [17]** 5/3 7/2 7/6 10/25 11/3 12/9 13/17 13/18 29/14 35/20 37/17 56/16 59/13 62/3 62/6 62/10 63/12
**which [53]** 6/10 6/12 6/20 7/14 8/14 10/21 13/5 15/18 15/20 16/10 16/17 17/6 17/17 18/2 18/23 19/4 19/21 21/7 21/14 22/10 22/21 23/5 25/3 25/17 25/19 26/25 28/5 28/9 28/18 29/5 29/7 29/21 33/6 33/13 34/3 34/18 34/24 35/21 36/12 36/22 37/2 39/6 41/21 43/18 48/9 48/14 49/21 56/23 59/22 60/14 62/12 63/11 63/25
**while [2]** 28/25 45/5
**who [3]** 55/20 59/10 63/11
**whole [6]** 21/3 32/13 46/18 47/15 49/13

**whom [1]** 9/13
**whose [1]** 42/21
**why [16]** 7/17 9/25 10/2 10/11 18/21 23/13 24/22 27/9 27/12 28/12 32/2 35/21 39/17 47/20 53/12 60/8
**wide [1]** 58/23
**will [6]** 3/8 10/20 19/8 54/13 61/10 64/13
**willful [1]** 48/10
**willing [1]** 39/1
**willingness [1]** 53/23
**WILSON [2]** 1/13 3/12
**WINSTON [3]** 1/19 4/2 4/13
**wish [1]** 33/14
**withheld [1]** 46/19
**within [1]** 58/6
**without [2]** 38/19 38/21
**withstand [1]** 33/8
**witnesses [1]** 38/15
**WOLK [2]** 1/19 4/2
**won't [1]** 18/11
**wonderful [2]** 3/4 42/22
**word [11]** 18/14 32/20 32/21 34/15 39/8 39/15 48/13 48/15 49/6 53/23 55/1
**worded [1]** 58/23
**words [5]** 22/4 26/10 42/20 50/25 58/25
**work [3]** 18/22 32/12 49/24
**working [1]** 11/7
**works [3]** 50/1 56/3 63/7
**world [2]** 16/5 56/11
**worries [1]** 22/3
**would [49]** 3/24 8/21 11/13 12/18 12/24 16/14 19/10 23/17 24/23 25/8 25/14 26/4 26/7 28/3 28/7 29/4 30/17 30/24 32/13 33/25 34/5 35/4 35/19 36/20 37/16 37/18 39/7 41/18 41/19 41/21 42/14 42/15 42/16 43/25 44/17 45/22 46/1 46/3 48/5 50/20 53/10 55/6 56/3 56/8 56/17 56/23 58/16 62/10 63/21
**wouldn't [3]** 23/24 50/15 50/18
**writing [2]** 48/1 48/8
**wrong [4]** 48/23 49/2 51/5 51/7
**wrongdoing [2]** 39/25 44/19

# Y

**yeah [16]** 8/22 13/5 23/12 24/7 25/25 30/5 31/2 31/6 32/16 35/1 39/14 46/12 50/14 52/20 55/24 60/6
**year [8]** 5/21 28/20 29/3 29/10 29/12 31/15 48/3 61/2
**years [5]** 24/2 24/22 42/4 47/4 47/9
**yes [16]** 4/12 12/15 33/22 35/14 35/15 42/14 46/11 46/11 50/14 50/14 51/14 51/16 52/24 52/24 56/5 56/8
**York [1]** 1/20
**you [195]**
**you'll [4]** 10/2 23/4 37/8 45/20
**you're [15]** 4/7 4/7 11/2 25/15 26/12 26/23 26/24 27/3 31/9 33/11 41/3 51/11 51/14 55/18 63/9
**you've [6]** 7/11 9/25 19/1 26/20 26/23 48/6
**your [142]**
**yourself [3]** 7/22 8/10 24/3

# Z

**zero [2]** 12/14 12/19