**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD., Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES LIMITED, et al.,<br><br>　　　　　Defendants. | Civil Action No.:  2:20-cv-04660-KSM<br><br>Hon. Karen S. Marston |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY**
**PROCEEDINGS OTHER THAN CLASS CERTIFICATION**
**IN FAVOR OF THE DOJ'S CASE**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT BACKGROUND .............................................................................................. 4

ARGUMENT ......................................................................................................................... 7

I.     ALL PROCEEDINGS OTHER THAN CLASS CERTIFICATION SHOULD BE STAYED IN THIS CASE PENDING THE OUTCOME OF THE EARLIER-FILED, FURTHER ADVANCED DOJ ACTION THAT SPAWNED IT ........................... 9

       A.     The Public Interest Favors a Stay of All Proceedings Other Than Class Certification. ................................................................................................... 9

       B.     The Interests of Teva, the Courts and Nonparties Favor a Stay. ............................ 10

       C.     Plaintiff Will Not Be Prejudiced by the Requested Stay. ...................................... 13

II.    BRIEFING AND DETERMINATION OF CLASS CERTIFICATION, AND ASSOCIATED FACT AND EXPERT DISCOVERY, CAN, SHOULD AND MUST PROCEED NOTWITHSTANDING THE REQUESTED STAY .................................... 15

CONCLUSION ...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bloom v. Gen. Motors LLC*,
2015 WL 140037 (M.D. Pa. Jan. 12, 2015) ...............................................................................14

*Chron. Pub. Co. v. Nat'l Broad. Co.*,
294 F.2d 744 (9th Cir. 1961) ....................................................................................................12

*Credit Suisse Sec. (USA) LLC v. Laver*,
2019 WL 2325609 (S.D.N.Y. May 29, 2019) ...........................................................................11

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*,
87 F.R.D. 53 (E.D. Pa. 1980)............................................................................................ *passim*

*Heraeus Materials Tech. LLC v. Pham*,
2011 WL 13227695 (E.D. Pa. Jun. 29, 2011)...........................................................................14

*Hernandez v. Bridgestone Ams. Tire Operations, LLC*,
2015 WL 12859632 (S.D. Iowa June 18, 2015) ..........................................................................9

*HMT, Inc. v. Bell BCI Co.*,
2007 WL 295328 (W.D.N.Y. Jan. 30, 2007)......................................................................11, 13

*Kaiser v. Stewart*,
1997 WL 66186 (E.D. Pa. Feb. 6, 1997) ..................................................................................10

*Kappel v. Comfort*,
914 F. Supp. 1056 (S.D.N.Y. 1996).............................................................................................7

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936).....................................................................................................................7

*LaSala v. Needham & Co.*,
399 F. Supp. 2d 421 (S.D.N.Y. 2005)........................................................................................11

*Morgenstern v. Fox Television Stations of Philadelphia*,
2010 WL 678113 (E.D. Pa. Feb. 23, 2010) .............................................................................7, 9

*Mortland v. OhioHealth Corp.*,
2007 WL 9728545 (S.D. Ohio Feb. 7, 2007)..............................................................................8

*Readick v. Avis Budget Grp., Inc.*,
2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014)............................................................................13

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018)........................................................................12

*Simms v. Philip Morris*,
2003 WL 27394525 (D.D.C. July 7, 2003)..................................................................7, 12, 14

*Specrite Design, LLC* v. *Elli N.Y. Design Corp.*,
2017 WL 3105859 (S.D.N.Y. July 20, 2017) .......................................................................11

*Texaco, Inc. v. Borda*,
383 F.2d 607 (3d Cir. 1967)......................................................................................................7

*United States v. Teva Pharms. USA, Inc.*,
No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020).........................................................4, 5, 6

*UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*,
2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021) ................................................................ *passim*

*Wehling v. Columbia Broad. Sys.*,
608 F.2d 1084 (5th Cir. 1979) .................................................................................................7

**Statutes, Rules, and Other Authorities**

Fed. R. Civ. P. 23(c)(1)(A) ....................................................................................................15

Local Civ. R. 23.1(c)..........................................................................................................4, 16

OIG Spec. Adv. Bulletin, 70 Fed. Reg. 70623 (Nov. 22, 2005)...........................................9

OIG Supplemental Spec. Adv. Bulletin, 70 Fed. Reg. 70623 (Nov. 22, 2005)................9

iii

Defendants Teva Pharmaceuticals Industries Limited ("Teva"), Erez Vigodman, Eyal Desheh, Robert Koremans, Michael Derkacz, Kare Schultz, Michael McClellan and Brendan O'Grady (jointly, "Defendants")[1] respectfully submit this memorandum in support of their motion to stay all proceedings in this case, with the exception of class certification, pending resolution of an earlier-filed and procedurally advanced enforcement action brought against Teva by the U.S. Attorney's Office for the District of Massachusetts on behalf of the U.S. Department of Justice ("DOJ Action").  Plaintiff's allegations herein are explicitly based upon those in the DOJ Action and, accordingly, will necessarily involve substantially overlapping factual and legal issues.  A limited stay will thus avoid inefficiencies and burdens on the parties and the Court, and the risk of inconsistent adjudications.

**PRELIMINARY STATEMENT**

Plaintiff concedes, as he must, that this case inextricably overlaps with the earlier-filed and procedurally advanced DOJ Action, admitting that it raises common issues of fact and, indeed, that "[t]he facts supporting Plaintiff's claims arise … from the DOJ[] Complaint and corresponding exhibits."  Joint Rule 26(f) Report at 4-5 (Jun. 7, 2022) (the "Rule 26(f) Report").[2]  The United States District Court for the Southern District of New York recently stayed private litigation in favor of a substantially similar case brought by the DOJ against another pharmaceutical company, Regeneron Pharmaceuticals, Inc., for these exact reasons.  *See UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, 2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021).  As the Southern District found there, "the degree of overlap between these cases and the DOJ Action means that a resolution in the DOJ Action would greatly simplify, if not completely resolve, these cases" (*id.* at \*5), and

---

[1] By this Court's order of March 25, 2022, on Defendants' motion to dismiss, Eli Kalif was dismissed as a defendant.  Dkt. 75.

[2] A copy of the Rule 26(f) Report is attached hereto as Exhibit A.

the public interest would best be served by letting the Government litigate its case first.  So too here.

The DOJ Action has been in active litigation for the better part of a year now and is, as a result, far more advanced than this one.  Among other things, in the DOJ Action, hundreds of thousands of documents have already been produced, depositions will start in a matter of weeks and the fact discovery cutoff is a mere three months away.  Allowing this private "piggyback" litigation, which is based on **the exact same underlying facts** and raises numerous closely related legal issues, to begin tramping the same ground would impose significant unnecessary burden and cost on Teva, the unnecessary expenditure of resources by numerous third parties and this Court and, ultimately, run the risk of inconsistent adjudications.  As but one example, at least 21 of the current and former Teva employees recently identified by Plaintiff as potential witnesses in this case (as well as several nonparties) are also potential witnesses in the DOJ Action.[3]

On the other hand, Plaintiff will not be prejudiced by a stay.  Rather, Plaintiff's only argument against a stay appears to be that the outcome of the DOJ Action will not fully dispose of this case.  That misses the mark.  Regardless of the outcome, resolution of the DOJ Action on the merits will significantly narrow any issues remaining to be litigated in this case because it will determine *huge swaths of the underlying disputed facts*.  In other words, the lion's share of Plaintiff's allegations will be proven or disproven in the DOJ Action.  And, while the parties may differ on how a determination in the DOJ Action that Teva is not liable under either the Anti-Kickback Statute (AKS) or the False Claims Act (FCA) would impact the continued viability of Plaintiff's federal securities fraud claims in this case, such a determination would clearly materially affect Plaintiff's proofs with respect to such critical elements as materiality, scienter and loss

---

[3] *See* Pl's. Initial Disclosures at 4-12, a copy of which is attached hereto as Exhibit B.

causation.

Indeed, the Complaint makes clear that Plaintiff seeks to prove that Teva's patient assistance program ("PAP") donations to two charitable foundations violated the AKS and FCA, meaning that this Court will inevitably be asked to decide whether the donations were legal (*see, e.g.*, Compl. ¶¶ 2, 3) – ***the exact same issues that will be tried in the DOJ case***.  Accordingly, the ultimate resolution of the DOJ Action will substantially narrow, if not obviate, the need for discovery or the taking of evidence in this case.

Moreover, allowing this case to proceed simultaneously with the DOJ Action would needlessly foist complex challenges and significant inefficiencies on the parties and the courts in both cases in terms of coordination.  While Plaintiff asserts that this case should "be coordinated with discovery" in the DOJ Action (Rule 26(f) Report at 6), he offers no proposal for how that could be accomplished in a reasonable, practicable or efficient manner,[4] particularly in light of the fact that the DOJ Action is just weeks away from depositions.

All of that said, one aspect of this case can, should and, indeed, must proceed while the DOJ Action is being litigated.  Moving forward with relevant fact and expert discovery, briefing and a hearing on the threshold issue of class certification, which could prove case dispositive as a practical matter, will materially advance these proceedings while the remainder of the case is stayed, positioning it to move swiftly toward final disposition once the DOJ Action is resolved.  This can be done in an efficient, streamlined manner and will further mitigate any even arguable prejudice to Plaintiff resulting from a stay, providing him with discovery, much of which, as he points out, will serve double duty as discovery on the merits.  What's more, both the Federal Rules

---

[4] Plaintiff, in his recently served document demands, simply requests that Defendants turn over to him every document produced to the DOJ.  *See* Lead Pl.'s Req. for Prod. of Docs. at 7 (Req. No. 1) ("Pl.'s RFPs"), a copy of which is attached hereto as Exhibit C.

of Civil Procure and this Court's Local Rules mandate that class certification be addressed at the earliest practicable opportunity.

Accordingly, in the interests of efficiency, judicial economy, the avoidance of undue burden, expense and potentially inconsistent adjudications, and the public interest in allowing the Government to litigate its case ahead of, and unencumbered by, follow-on private litigants (whose interests will be protected in the meantime), Defendants respectfully submit that the Court should (i) exercise its discretion to stay all proceedings in this case pending resolution of the DOJ Action, other than class certification, and (ii) issue the order entering a prompt class certification discovery and briefing schedule that is required by Local Civil Rule 23.1(c).

**RELEVANT BACKGROUND**

On August 18, 2020, the DOJ filed a civil complaint against Teva in the District of Massachusetts alleging that the Company violated the AKS and FCA by virtue of its donations to charitable foundations  for multiple sclerosis ("MS") drugs, which allegedly were specifically earmarked only for patients of Teva's MS drug, Copaxone. *See generally* Complaint, *United States v. Teva Pharms. USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020), ECF No. 1.  The DOJ Action followed a three-year U.S. Attorney's Office investigation during which Teva produced over 123,000 documents and the DOJ conducted over a dozen interviews of Teva witnesses.

Over a month after the commencement of the DOJ Action, Plaintiff brought piggyback private securities litigation in this Court alleging that Teva and the other Defendants violated Sections 10(b)(5) and 20(a) of the Exchange Act by falsely suggesting in SEC filings and other public statements that the success of Copaxone "was due to presumably lawful and sustainable reasons" (Rule 26(f) Report at 3)  when, in fact, the real, undisclosed reason for Copaxone's

4

success was an illegal "kickback scheme" whereby Teva's donations to charitable foundations were specifically earmarked for Copaxone patients instead of being available to any patient regardless of which MS drug they took, "as the law requires." *Id.* at 4, 8. In other words, precisely what was alleged, and being actively litigated, by the Government in the DOJ Action.

Plaintiff has admitted, as he must, that "[t]he facts supporting Plaintiff's claims arise … from the DOJ[] Complaint and corresponding exhibits." *Id.* at 4-5. Indeed, the Government's complaint in the DOJ Action, with all of its exhibits, is literally "Exhibit A" to the Complaint in this case, and virtually the entire Complaint is either copied verbatim or paraphrased from the DOJ's complaint. *See* Answer ¶¶ 31-34, 41-59, 64-65, 68-69, 168-70, 194-95. All in, Plaintiff's Complaint herein refers to the DOJ's complaint and accompanying exhibits ***over one hundred times***.

Given the automatic stay of discovery pursuant to the Private Securities Litigation Reform Act while Defendants' motion to dismiss was pending, there has been no discovery in this action to date apart from the exchange of initial disclosures and service of written discovery.[5] Discovery in the DOJ Action, on the other hand, has been proceeding apace: Teva's deadline for substantial completion of document production is July 15; depositions are anticipated to commence as early as this July, with at least one nonparty deposition already scheduled; and fact discovery is set to close by the end of September. *See, e.g.*, Joint Status Report at 1-2, *United States v. Teva Pharms. USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020), ECF No. 50 ("Joint Status Report"); Clerk's Notes, *United States v. Teva Pharms. USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020), ECF No. 61.

---

[5] Teva's responses and objections to Lead Plaintiff's Request for the Production of Documents were served yesterday.

Meanwhile, Plaintiff's very first request for the production of documents from Teva in this case was for "[a]ll Documents You produced to plaintiff in *United States v. Teva Pharmaceuticals USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020)." *See* Pl.'s RFPs at 7 (Req. No. 1). The other three document requests he has promulgated to date seek documents that likewise cover the same territory as the DOJ Action, e.g., documents relating to the marketing of Copaxone and "[d]onations to [patient assistance programs] such as CDF and TAF."[6] *See generally* Pl.'s RFPs at 7. In his initial disclosures, Plaintiff identified over 50 current and former Teva employees as likely having discoverable information relating to the same conduct at issue in the DOJ Action. Pl.'s Initial Disclosures at 4-12. Not surprisingly, at least 21 of them are already involved in discovery in the DOJ Action. Likewise, Plaintiff identified over 20 nonparties as likely to have such information, including CDF, TAF, ACS and AssistRX, a number of which have been or are likely to be subpoenaed in the DOJ Action. In fact, Plaintiff has actually identified *the DOJ itself*, as well as other governmental agencies such as IRS and the Centers for Medicare & Medicaid Services (CMS), as being subject to discovery in this case. Pl.'s Initial Disclosures at 12-13.

In light of the admitted and pervasive overlap between the two cases, during the Rule 26(f) process and lead-up to the recent Rule 16 conference in this case, Defendants proposed staying most proceedings herein pending the outcome of the DOJ Action, while allowing fact and expert discovery relevant to class certification, as well as briefing, hearing and determination of class certification, to proceed in the interim. Defendants also indicated that they would be prepared to consider a specific proposal for attempting to coordinate document discovery, depositions and other proceedings in this case with the DOJ Action in some reasonable, practicable and efficient

---

[6] CDF and TAF are Chronic Disease Fund and The Assistance Fund, the involved charitable foundations to which Teva donated.

manner.    Plaintiff rejected those proposals.    Indeed, to date, all he has proffered by way of

"coordination" with the DOJ Action is that Defendants simply turn over to him all documents

provided to the Government.

### ARGUMENT

This Court has inherent authority to "control the disposition of the [cases] on its docket

with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299

U.S. 248, 254 (1936).  In considering a motion to stay, courts in this Circuit balance

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending … [private] and … [governmental] litigation.

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa.

1980);[7] *see also Morgenstern v. Fox Television Stations of Philadelphia*, 2010 WL 678113, at *1

(E.D. Pa. Feb. 23, 2010) (granting stay); *accord Kappel v. Comfort*, 914 F. Supp. 1056, 1058

(S.D.N.Y. 1996).

Courts routinely issue stays in favor of earlier-filed parallel actions to avoid wasteful

duplication, particularly where, as here, the prior parallel litigation was brought by the government.

*E.g.*, *Regeneron*, 2021 WL 6137097 (staying discovery for duration of parallel DOJ civil suit

alleging improper donations to patient assistance programs); *Texaco, Inc. v. Borda*, 383 F.2d 607,

608 (3d Cir. 1967); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1089 (5th Cir. 1979); *Simms*

*v. Philip Morris*, 2003 WL 27394525, at *1-2 (D.D.C. July 7, 2003) (staying civil suit based on

---

[7] With respect to the fifth factor, while *Golden Quality* involved a private civil case piggybacking on a criminal proceeding, the same policy considerations apply where, as here, the first case is a civil governmental enforcement action.  *Regeneron,* 2021 WL 6137097, at *1, 5.

allegations in pending DOJ case due to "substantial overlap of both factual and legal issues").

In fact, the Southern District of New York recently issued such a stay in *Regeneron*, a case on all fours with this one. Specifically, the DOJ has brought a virtually identical lawsuit against Regeneron Pharmaceuticals in the District of Massachusetts, in which it asserts that Regeneron's "coordinated donations" to one of the same charitable foundations at issue in the DOJ Action (CDF) violated the FCA and AKS. Thereafter, two insurance companies initiated separate lawsuits against Regeneron, asserting a number of different claims, including fraud, RICO, and unjust enrichment, based on the same conduct. There, as here, discovery had yet to commence in the private litigation, while discovery in the DOJ action was ongoing. Regeneron moved to stay the private lawsuits pending resolution of the DOJ's case.

The court granted the motion, finding that "any prejudice to plaintiffs resulting from a stay will be minimal, and because of the risk of inconsistent judgments, the interests of Regeneron, the courts, and the public weigh in favor of a stay." *Regeneron*, 2021 WL 6137097, at *5. The court further highlighted that "judicial efficiency is in the interest of the courts and the public, and the degree of overlap between these cases and the DOJ Action means that a resolution in the DOJ Action would greatly simplify, if not completely resolve, these cases." *Id.*; *see also Mortland v. OhioHealth Corp.*, 2007 WL 9728545, at *2 (S.D. Ohio Feb. 7, 2007) (granting stay where "[m]uch if not all of the remaining discovery and expert contributions will be wholly duplicative, and the DOJ investigation is further along than discovery in this case, which is still much in its preliminary stages," and noting that a stay would permit "a substantial clarification if not simplification of the issues for trial"). So too here.[8]

---

[8] Moreover, while the court in *Regeneron* observed that issuing the stay was a "close question" in part because "the DOJ may not conclude for years" (2021 WL 6137097, at *5), here, there is already a September 2023 trial date set in the DOJ Action.

I.      **ALL PROCEEDINGS OTHER THAN CLASS CERTIFICATION SHOULD BE STAYED IN THIS CASE PENDING THE OUTCOME OF THE EARLIER-FILED, FURTHER ADVANCED DOJ ACTION THAT SPAWNED IT**

As demonstrated below, all of the factors identified by the Southern District of New York in *Regeneron*, and by this Court in *Morgenstern* and *Golden Quality Ice Cream*, strongly militate in favor of a stay.

A.      **The Public Interest Favors a Stay of All Proceedings Other Than Class Certification.**

As the *Regeneron* court explained in functionally identical circumstances, the public's interest – including the interest of the private plaintiff in a later-filed case – is served and protected by prioritizing "a civil enforcement proceeding brought by the government, which represents the public interest," above overlapping, subsequently filed private litigation. 2021 WL 6137097, at *5. Moreover, "the public interest is served 'by promoting the efficient use of judicial resources and minimizing the possibility of conflicts between different courts.'" *Id.* (quoting *Nuccio v. Duve*, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015)). Here, the DOJ Action will, among other things, determine whether, in the face of changed and ambiguous guidance from the Government,[9] Teva's charitable donations were lawful and proper. *See, e.g.*, *Hernandez v. Bridgestone Ams. Tire Operations, LLC*, 2015 WL 12859632, at *3 (S.D. Iowa June 18, 2015) (the "public interest weighs in favor of resolving [a] legal issue"). By contrast, duplicative litigation on this point in this Court threatens to undermine the public interest by producing divergent results and further confusion.

---

[9] *See* OIG Spec. Adv. Bulletin, 70 Fed. Reg. 70623, 70624 (Nov. 22, 2005) ("pharmaceutical manufacturers can effectively contribute to the pharmaceutical safety net by making cash donations to independent, bona fide charitable assistance programs") (guidance in effect at time of Teva's challenged conduct); OIG Supplemental Spec. Adv. Bulletin, 70 Fed. Reg. 31120, 31123 (May 30, 2014) ("when we have issued favorable advisory opinions regarding Independent Charity PAPs, the focus has been on the charities that requested the opinions – not the donors").

**B.      The Interests of Teva, the Courts and Nonparties Favor a Stay.**

In both the DOJ Action and this case, the plaintiffs – the U.S. Attorney's Office and Plaintiff, respectively – will be required to prove the exact same set of underlying facts, i.e., Teva's involvement in the alleged "underlying scheme involving the Copaxone donations to PAPs." Mem. Op. on Mot. to Dismiss at 22, ECF No. 74. Indeed, as shown above, based on his initial disclosures and Rule 26 report, Plaintiff intends to cast a wide discovery net, encompassing both Teva and numerous nonparties, that relates to the same conduct at issue in the DOJ Action and, concomitantly, is largely duplicative of the discovery already being actively pursued by the Government in that case.[10]

Litigating the two cases in parallel would thus inevitably involve either substantial duplication of effort or substantial efforts to avoid it; either way, it would needlessly and exponentially multiply costs and impose unreasonable and avoidable additional burden on Teva, nonparties and both courts. *See Kaiser v. Stewart*, 1997 WL 66186, at *3 (E.D. Pa. Feb. 6, 1997) (finding the burden on nonparties "significant" because both cases "involve literally thousands of documents"); *Golden Quality Ice Cream Co.*, 87 F.R.D. at 56 (broad discovery during a parallel case is unduly burdensome on defendant where it would, among other things, "spread thin the time of certain key individuals in … the defendant corporation[] who, besides conducting their normal managerial responsibilities, must at this time be preoccupied with [the parallel action]").

Additionally, this Court and the District of Massachusetts would be required to undertake

---

[10] The "clone" discovery Plaintiff seeks in his first Request for Production could prove extremely onerous, potentially requiring Teva to engage in substantial sifting of documents produced in the DOJ Action for, among other things, personal health information and other third-party documents not implicated in this case. It could also potentially lead to the Government intervening in this case to object to proposed discovery that it may believe is incompatible with its prosecution of the DOJ case, which would further multiply the Court's and the parties' workload.

virtually identical analyses concerning the legality or legitimacy of Teva's charitable donations.[11] As the *Regeneron* court explained, under such circumstances, if both cases were to proceed simultaneously, Teva "could be subject to inconsistent judgments in th[is] case[] and the DOJ Action if all proceed concurrently." 2021 WL 6137097, at *3; *HMT, Inc. v. Bell BCI Co.*, 2007 WL 295328, at *2 (W.D.N.Y. Jan. 30, 2007) (burden on defendant is significant where, as here, a defendant is subjected to "unnecessary piecemeal litigation of similar issues, which could lead to inconsistent results"). Correspondingly, "[s]taying this action 'will best serve the interests of the courts by promoting judicial efficiency and minimizing the possibility of conflict between different courts.'" *Credit Suisse Sec. (USA) LLC v. Laver*, 2019 WL 2325609, at *3 (S.D.N.Y. May 29, 2019) (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009)); *see also Regeneron*, 2021 WL 6137097, at *5 (finding that the interests of the courts weighed in favor of a stay "in light of the disfavored nature of duplicative litigation") (citing cases); *Specrite Design, LLC* v. *Elli N.Y. Design Corp.*, 2017 WL 3105859, at *6 (S.D.N.Y. July 20, 2017) ("Courts grant stays where judicial efficiency will be promoted or the possibility of conflicts between different courts will be minimized.").

Accordingly, granting a stay will also narrow the issues in controversy, thus further advancing the interests of judicial economy and saving the parties and nonparties alike "from a needless or duplicative expenditure of resources." *HMT*, 2007 WL 295328, at *2-3; *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) ("[A] court might, in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even

---

[11] While Plaintiff has argued that the legality of the donations does not matter for purposes of pleading a misstatement, Plaintiff has never said that the legality or legitimacy of these donations do not matter for his claims here. Indeed, Plaintiff will inevitably ask this Court to make such a finding in order to establish scienter and/or loss causation in this Action.

if such proceedings are not necessarily controlling of the action that is to be stayed."); *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 3849840, at \*3 (S.D.N.Y. Aug. 10, 2018) ("[T]he Court finds that a stay of proceedings pending resolution of the underlying litigation is the more efficient way to sequence resolution of these two related actions, and may be necessary to avoid unnecessary determinations."). As this Court emphasized in *Golden Quality Ice Cream*, "the likelihood of at least some duplicative judicial effort" between two cases "which overlap in a significant way" means that "a substantial amount of the court's work, if undertaken now, may shortly prove to have been unnecessary." 87 F.R.D. at 57. The Court then approvingly quoted the Ninth Circuit in its finding that such a situation "cries out for the elimination of wasteful duplication of effort," which "is not, of course, borne by the courts alone. It is borne as well by the litigants and their counsel." *Id.* (quoting *Chron. Pub. Co. v. Nat'l Broad. Co.*, 294 F.2d 744, 747-48 (9th Cir. 1961)).

For example, in *Simms*, as here, the plaintiffs brought a suit based on a pending DOJ civil case and "whole portions of Plaintiffs' sixty-eight page Complaint [were] virtually identical to the Government's Complaint in the DOJ case." 2003 WL 27394525, at \*1. The court entered a stay, noting that the "substantial overlap of both factual and legal issues between the two cases" meant that "the rulings in the DOJ case are virtually certain to illuminate or resolve many issues which will arise in *Simms*." *Id.*; *see also Regeneron*, 2021 WL 6137097, at \*5 (stay issued where resolution of parallel DOJ case "would greatly simply, if not completely resolve, these cases"). Or, as another court has explained:

> Unless a stay is granted, [the defendant] will be forced to engage in potentially duplicative and costly discovery. To the extent [the other pending action] disposes of some or all of Plaintiff's claims, discovery in [this action] will serve little or no purpose.

*Readick v. Avis Budget Grp., Inc.*, 2014 WL 1683799, at \*5 (S.D.N.Y. Apr. 28, 2014).

12

Here, even assuming that an outcome in favor of Teva in the DOJ Action would not dispose of this case in its entirety (as either a legal or a practical matter),[12] at most, only a very limited set of facts and issues would remain to be litigated following a resolution of the DOJ Action on the merits, regardless of the outcome. Thus, even if not completely obviated, any further discovery and the taking of evidence in this case will be substantially narrowed. Thus, for the efficiency of this Court's docket, economy of time and effort and the avoidance of inconsistent adjudications, a stay of this action makes eminent good sense.

### C.      Plaintiff Will Not Be Prejudiced by the Requested Stay.

On the other side of the ledger, not only will Plaintiff suffer no prejudice from the requested stay, but he in fact will also benefit from the development of the record in the DOJ Action by the Government. Here, as in *Regeneron*, "no discovery has yet to be taken … , meaning plaintiffs will not be prejudiced by the suspension of any discovery efforts." 2021 WL 6137097, at *3 (citing *HMT, Inc. v. Bell BCI Co.*, 2007 WL 295328, at *2 (W.D.N.Y. Jan. 30, 2007) (stay of second action would not prejudice plaintiff when second action "is in its very early stages of preparation" but, in the first action, "substantial amounts of time and expense have been invested in preparation by the parties and the Court")). And, as in *Regeneron*, because Teva "has been participating in discovery in the DOJ Action for months on the same issues in dispute here, … relevant evidence is already being preserved." *Id.*

Moreover, if this case is stayed pending resolution of the DOJ Action, Plaintiff will not only have the benefit of a developed discovery record (without having to expend any of his own resources), he will also have the benefit of key factual findings and legal determinations on which to build, significantly simplifying his presentation of evidence and proofs at trial. Indeed, all of

---

[12] Defendants maintain that it would.

13

his material factual allegations that overlap with the DOJ complaint will have been proven or disproven.[13]

Nor is this a case where Plaintiff is facing some sort of "indefinite" stay; to the contrary, summary judgment briefing in the DOJ Action will occur in less than nine months and trial is already set to take place in the early fall of 2023 (*see* Joint Status Report at 2). *See, e.g.*, *Bloom v. Gen. Motors LLC*, 2015 WL 140037, at *2 (M.D. Pa. Jan. 12, 2015) ("[B]ecause the stay will not last for an extended period, [plaintiff] will suffer little, if any, prejudice from a stay."); *Simms*, 2003 WL 27394525, at *2 (stay of 14 months, or until the week before trial in parallel DOJ case, was not unduly prejudicial to plaintiffs); *see also Heraeus Materials Tech. LLC v. Pham*, 2011 WL 13227695, at *1 n.1 (E.D. Pa. Jun. 29, 2011) (partial stay during parallel criminal proceedings which lasted more than a year was reasonable); *Golden Quality Ice Cream Co.*, 87 F.R.D. at 56 (stay of six months would not be unduly prejudicial to plaintiff); *Regeneron*, 2021 WL 6137097, at *1, *10 (delay was not unduly prejudicial where fact discovery set to close in two months in earlier-filed DOJ action in and expert discovery in seven months, even though "the DOJ Action may not conclude for years").

Finally, as discussed in the following section, Teva is not seeking a "blanket" or complete stay of the case. Rather, because class certification discovery and briefing can and should commence immediately, Plaintiff will suffer no real delay in prosecuting this case as a result of the stay.

Ultimately, the only arguable prejudice to Plaintiff from the requested stay – a modest delay – is, as demonstrated above, vastly outweighed by the significant burden and potential prejudice

---

[13] As fiduciaries to the putative class, Plaintiff and Lead Counsel should be desirous of limiting their own expenditure of resources, rather than increasing counsel's lodestar, which could contribute to reducing any ultimate recovery for the class.

to Defendants, nonparties and the courts if no stay is granted.  Indeed, granting the stay will conserve the resources of all parties to both actions – including Plaintiff – while promoting judicial efficiency, avoiding inconsistent adjudications and furthering the public interest.

## II.    BRIEFING AND DETERMINATION OF CLASS CERTIFICATION, AND ASSOCIATED FACT AND EXPERT DISCOVERY, CAN, SHOULD AND MUST PROCEED NOTWITHSTANDING THE REQUESTED STAY

Further mitigating the impact of the requested stay, class certification–relevant fact and expert discovery, as well as briefing, hearing, and determination of class certification, can and should be completed during the pendency of the stay – and commence immediately.  Proceeding with class certification now is not only practicable, but will actually increase efficiency and further the interests of judicial economy.  *See, e.g.*, *Golden Quality Ice Cream Co.*, 87 F.R.D. at 60 (allowing plaintiff to proceed with class certification during a broader stay of proceedings and noting that "such early submissions…will give the court a leg up on this first order of business"). Indeed, it could dispose of the entire case.

Among other things, on class certification, Plaintiff will need to prove that he will fairly and adequately protect the interest of the purported class and that his individual claims and defenses are typical of the class.  For their part, Defendants will have an opportunity to show, among other things, that the alleged misstatements did not affect the price of Teva's securities. None of this implicates issues that overlap with the DOJ Action.  Moreover, if the Court ultimately concludes that class certification is inappropriate, that will be case dispositive as a practical matter.

In addition to the practical reasons for proceeding with class certification, Federal Rule of Civil Procedure 23(c)(1)(A) mandates that "[a]t *an early practicably time* … , the court **must** determine by order whether to certify the action as a class action" (emphasis added).  This Court's Local Rule 23.1(c) imposes an even more stringent and detailed requirement:

15

> *As early as practicable*, and after considering the views of counsel, the Court *shall issue an order scheduling all proceedings relating to the filing of the motion for class certification including*, but not limited to, *class and related merits fact discovery, expert witness discovery, the filing of the motion for class certification* and responses, and, if warranted, the convening of any hearing on the class certification motion.

(Emphases added.)  Note that Local Rule 23.1(c) expressly recognizes that "class and related merits discovery" may go forward on a separate (and earlier) track than broader merits discovery – and actually appears to mandate it.  This makes perfect sense given the dramatic impact that the class certification decision can have on the future scope (and continuing viability) of the case. Indeed, class certification in Rule 10b-5 cases is almost always decided well before significant merits discovery has commenced (let alone concluded) and can certainly be done here notwithstanding the stay.

Accordingly, Defendants have proposed precisely the sort of class certification schedule that the Local Rule contemplates, including class-related discovery deadlines.[14]  For his part,

---

[14] Specifically, Defendants have proposed the following class schedule:

- Motion for Class Certification – August 5, 2022
- Deadline for Defendants to Request Documents from Lead Plaintiff in Connection with Class Certification – August 15, 2022
- Completion of Document Production from Lead Plaintiff in Connection with Class Certification – August 29, 2022
- Completion of Depositions of Lead Plaintiff and any Plaintiff Expert(s) in Connection with Class Certification – September 28, 2022
- Opposition to Motion for Class Certification – October 12, 2022
- Deadline for Lead Plaintiff to Request Documents from Defendants in Connection with Class Certification – October 19, 2022
- Completion of Document Production from Defendants in Connection with Class Certification – November 1, 2022
- Completion of Depositions of any Defendants Expert(s) in Connection with Class Certification – November 15, 2022
- Reply in Further Support of Motion for Class Certification –November 29, 2022
- Evidentiary Hearing – To be set by the Court

16

Plaintiff has agreed to the same class certification briefing schedule proposed by Defendants, but has taken the curious position that following the dictates of Local Rule 23.1(c) would constitute some sort of improper "bifurcation" that would "be extremely prejudicial to Plaintiff because class certification issues and merits issues may overlap." Rule 26(f) Report at 6. The opposite is true. Precisely because class certification and merits issues may overlap, to the extent class certification implicates such issues here, Plaintiff would actually be getting the benefit of some merits-related discovery *during the pendency of the stay* (whereas, if the entire matter was stayed without the carve-out for class certification proposed by Defendants, he would get nothing until the stay was lifted). Moreover, Plaintiff's deposition would be taken now on both class certification and merits issues, preserving his testimony and eliminating any risk of fading memories and the like.[15] In other words, Defendants are not proposing a blanket or complete stay, but one reasonably tailored to take account of the interests of all affected parties and this Court.

## CONCLUSION

While the claims involved in this case and the DOJ Action are not identical, and a decision in the DOJ Action may not be entirely dispositive here, the pervasive overlap between the two cases ensures that a resolution on the merits in the DOJ Action will significantly impact the claims and defenses, remaining open factual issues, scope of discovery and presentation of evidence in this case. Meanwhile, allowing class certification to commence immediately mitigates against any delay that Plaintiff may suffer, comports with the mandates of the Federal Rules and the Local Rules of this Court and could be outcome determinative.

---

*See* Rule 26(f) Report at 21-22. Plaintiff, for his part, has agreed to this briefing schedule (*id.* at 25-26), but, in direct contradiction of Local Rule 23.1(c), opposed the setting of deadlines for class certification discovery.

[15] Contrary to Plaintiff's suggestion during the Rule 16 conference, absent exceptional circumstances, Defendants would not seek to depose Plaintiff a second time on merits issues.

In short, absent the requested stay, the burden, costs and risks associated with embroiling Defendants, nonparties and the courts in duplicative litigation are high, whereas any prejudice to Plaintiff as the result of a limited-duration stay is low.  Staying all proceedings while the DOJ Action remains pending, with the exception of class certification, yields the most efficient and pragmatic path forward.  For these reasons, Defendants respectfully request that the Court (i) stay all proceedings until the conclusion of the DOJ Action, except (ii) enter a schedule for the prompt briefing, hearing and determination of class certification, including class and any related merits discovery.

Respectfully submitted,

Dated:  June 28, 2022

By:  /s/ Linda T. Coberly
Linda T. Coberly
Daniel M. Blouin
35 West Wacker Drive, Suite 4700
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 (fax)
dblouin@winston.com
lcoberly@winston.com

James P. Smith III
Kerry C. Donovan
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
(212) 294-4700 (fax)
jpsmith@winston.com
kcdonovan@winston.com

Mathieu J. Shapiro
Melissa Blanco
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
215-665-3014

18

215-665-3165 (fax)
mathieu.shapiro@obermayer.com
melissa.blanco@obermayer.com

*Attorneys for Defendants*

19