# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, ROBERT KOREMANS, and MICHAEL DERKACZ,<br><br>Defendants. | Case No. 2:20-cv-04660-JD<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Lead Plaintiff Gerald Forsythe ("Plaintiff"), by and through his attorneys, makes these Initial Disclosures.[1]

These disclosures are preliminary in nature and based upon Plaintiff's current knowledge, without the benefit of having completed formal discovery in this action. Plaintiff has made a reasonable and good faith effort to comply with the Rule 26(a)(1) disclosure requirements. Plaintiff reserves the right to supplement these disclosures in accordance with Rule 26(e) as appropriate. Plaintiff makes these disclosures without waiver of attorney-client privilege, work-product protection, or any applicable privilege, protection, or defense against discoverability of any kind. Plaintiff reserves the right to object to the production and introduction into evidence of

---

[1] All capitalized terms herein have the same definitions as those in the Corrected Amended Class Action Complaint (the "AC") filed on August 10, 2021 (ECF No. 64-2), unless otherwise indicated.

1

any document or evidence within the categories described herein or testimony by any of the disclosed witnesses on the basis of privilege, relevance, or otherwise, as appropriate.

## I.    INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Pursuant to Rule 26(a)(1)(A)(i), based on current information, the following entities and individuals are fact witnesses who Plaintiff believes are likely to have discoverable information that Plaintiff may use to support his claims in this action.  Plaintiff reserves the right to identify and to call additional witnesses, including whomever Defendants may designate as their witnesses, representative witnesses appearing pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, rebuttal and impeachment witnesses, and any additional witnesses that may become known as additional facts and issues are identified during the course of Plaintiff's factual investigation and discovery.

### A.    Plaintiff

| Name | Contact Information | Discoverable Information |
|---|---|---|
| Gerald Forsythe | c/o James M. Wilson, Jr. Faruqi & Faruqi, LLP 685 Third Ave., 26th Floor New York, NY 10017 Tel.: (212) 983-9330 | Plaintiff's transactions in Teva securities during the class period. |

### B.    Named Defendants

| Name | Contact Information | Discoverable Information |
|---|---|---|
| Teva Pharmaceuticals Industries Limited | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: <ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |

2

| Erez Vigodman | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: <ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
|---|---|---|
| Eyal Desheh | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: <ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Robert Koremans | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: <ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Michael Derkacz | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: <ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Kåre Schultz | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: <ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Michael McClellan | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP | Information and knowledge regarding: <ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li></ul> |

3

| | 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |
|---|---|---|
| Brendan O'Grady | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |

### C.    Current and Former Employees of Teva

| Name | Contact Information | Discoverable Information |
|---|---|---|
| Jennifer Clark | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |
| Yitzahk Peterburg | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |
| Denise Lynch | Unknown | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |

4

| | | |
|---|---|---|
| Jan Jones | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Larry Downey | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| David Loughery | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Ryan Sloss | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| John Hassler | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Barry Oberkrom | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product; |

| | 200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | • Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
|---|---|---|
| Dipankar Bhattacharjee | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Michael Hayden | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Chris Gumbs | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Katie Hiett | c/o James P. Smith III and Kerry C. Donovan<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Jenny Jackson | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; |

| | | |
|---|---|---|
| | | <ul><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Barb Ross | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding:<ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Alejandro Castro | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding:<ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Mildred Spencer | Unknown | Information and knowledge regarding:<ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Lisa Holmes | Unknown | Information and knowledge regarding:<ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li><li>Teva's reports to and communications with regulatory agencies.</li></ul> |
| Jay Simpson | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding:<ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations;</li><li>Teva's commercial and marketing strategies; and</li></ul> |

| | | |
|---|---|---|
| | | • Teva's reports to and communications with regulatory agencies. |
| Laurence Fowler | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |
| Mike Sheehy | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |
| Yossi Gilgun-Sherki | Unknown | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |
| Todd Kunkel | Unknown | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |
| Teresa Hale | Unknown | Information and knowledge regarding: • Teva's business operations; • Teva's Copaxone product; • Teva's donations to Charitable Foundations; • Teva's commercial and marketing strategies; and • Teva's reports to and communications with regulatory agencies. |

| Machelle Henks | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
|---|---|---|
| Michael McCartin | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Robert Diver | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Anna Khais | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Rachel Svaty | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Vince Loucks | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product; |

| | | |
|---|---|---|
| | | • Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Dustin Leach | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Reena Singh | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Mark Murtaugh | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Tom Dimitropoulos | c/o James P. Smith III and Kerry C. Donovan Winston & Strawn LLP 200 Park Avenue New York, NY 10166 Tel.: (212) 294-6700 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Laurie Thibodeau | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; |

| | | |
|---|---|---|
| | | • Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Confidential Witness ("CW 1"), former Director of Marketing | | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Confidential Witness ("CW 2"), former Associate Director of Treasury | | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Charles Friede | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Lynn Dumas | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Jonathan Kashub | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and |

| | | |
|---|---|---|
| | | • Teva's reports to and communications with regulatory agencies. |
| Tom Gawlick | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Cindy French | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Jon Congleton | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |

### D.    Third Parties

| Name | Contact Information | Discoverable Information |
|---|---|---|
| Charles Schwab & Co. Inc. | 300 Schwab Way Westlake, TX 76262 | Plaintiff's transactions in Teva securities during the class period. |
| United States Department of Justice | 950 Pennsylvania Avenue, NW Washington, DC 20530-0001 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Internal Revenue Service | 1111 Constitution Ave, NW | Information and knowledge regarding: |

12

| | Washington, DC 20224 | • Teva's donations to Charitable Foundations; and<br>• Teva's financial condition and reporting. |
|---|---|---|
| Centers for Medicare & Medicaid Services | 7500 Security Boulevard Baltimore, MD 21244-1850 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations;<br>• Teva's commercial and marketing strategies; and<br>• Teva's reports to and communications with regulatory agencies. |
| Advance Care Scripts, Inc. ("ACS") | 6251 Chancellor Drive, Suite 101 Orlando, FL 32809 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Chronic Disease Fund, Inc. d/b/a Good Days ("CDF") | 2611 Internet Blvd., Suite 105 Frisco, TX 75034 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| The Assistance Fund ("TAF") | 4700 Millenia Blvd., Suite 410 Orlando, FL 32839 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| AssistRx | 4700 Millenia Blvd., Suite 500 Orlando, FL 32839 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Humana Inc. | 500 W. Main St. Louisville, KY 40202 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Edward Hensley, Co-founder ACS, TAF, and AssistRx | c/o AssistRx 4700 Millenia Blvd., Suite 500 Orlando, FL 32839 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product; |

| | | |
|---|---|---|
| | | • Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Jeffrey Spafford,<br>Co-founder TAF and AssistRx | c/o AssistRx<br>4700 Millenia Blvd.,<br>Suite 500<br>Orlando, FL 32839 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Michael Banigan,<br>Former President, CDF | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Melissa Ayles,<br>Former CDF Employee | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Clorinda Walley,<br>CDF Executive Director | c/o Chronic Disease Fund<br>2611 Internet Blvd.,<br>Suite 105<br>Frisco, TX 75034 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Adam Stotts,<br>EVP, Business Strategy, AssistRX;<br>Former ACS Director of Business Strategy | c/o AssistRx<br>4700 Millenia Blvd.,<br>Suite 500<br>Orlando, FL 32839 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Lilliana Wysocki,<br>Former ACS Employee | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| David Blanc,<br>ACS Vice President,<br>Patient Care and Client Services | c/o Advanced Care Scripts<br>6251 Chancellor Drive,<br>Suite 101<br>Orlando, FL 32809 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and |

14

|  |  |  |
|---|---|---|
|  |  | • Teva's commercial and marketing strategies. |
| Megan Oliveira,<br>ACS Director, Specialty Implementation | c/o Advanced Care Scripts<br>6251 Chancellor Drive, Suite 101<br>Orlando, FL 32809 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Tawny Elwess,<br>ACS Project Manager | c/o Advanced Care Scripts<br>6251 Chancellor Drive, Suite 101<br>Orlando, FL 32809 | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Niki Dixon,<br>TAF Operations Manager | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Mark Evangelist,<br>Former CDF Treasurer | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Zach Gammage,<br>ACS Program Liaison | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Maureen Boyd,<br>Former TAF Vice President of Operations | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| James McGuire,<br>Former ACS Employee | Unknown | Information and knowledge regarding:<br>• Teva's business operations;<br>• Teva's Copaxone product;<br>• Teva's donations to Charitable Foundations; and<br>• Teva's commercial and marketing strategies. |
| Tami Hoffman,<br>Former ACS Director of | Unknown | Information and knowledge regarding:<br>• Teva's business operations; |

| Reimbursement | | <ul><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations; and</li><li>Teva's commercial and marketing strategies.</li></ul> |
|---|---|---|
| Tami Stowe, Former CDF Employee | Unknown | Information and knowledge regarding:<ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations; and</li><li>Teva's commercial and marketing strategies.</li></ul> |
| Cindi Keys, Former CDF Call Center Manager | Unknown | Information and knowledge regarding:<ul><li>Teva's business operations;</li><li>Teva's Copaxone product;</li><li>Teva's donations to Charitable Foundations; and</li><li>Teva's commercial and marketing strategies.</li></ul> |

## II.   DOCUMENTS

Pursuant to Rule 26(a)(1)(A)(ii), the following are documents, electronically stored information, data compilations, and tangible things that are or may be in the possession, custody, or control of Plaintiff that Plaintiff currently and reasonably believes he may use to support his claims.  Plaintiff reserves the right to produce additional materials, or to identify or rely upon additional documents as they are located and as additional facts and issues are identified during the course of investigation, discovery, and trial preparation.

1. Lead Plaintiff's trading records for his investments in Teva securities;

2. Documents reflecting Defendants' statements;

3. Documents referenced in the AC;

4. Documents that will be obtained during discovery but are presently in the possession, custody, or control of Defendants or other non-party entities and/or persons whether presently known or who may become known through discovery;

5. Documents in support of Plaintiff's claim, on behalf of Class Members under Fed. R. Civ. P. 23, that Defendants violated Section 10(b) of the Exchange Act and

16

SEC Rule 10b-5; and

6. Documents in support of Plaintiff's claim, on behalf of Class Members under Fed.
R. Civ. P. 23, that Defendants violated Section 20(a) of the Exchange Act.

## III.    DAMAGES COMPUTATION

Pursuant to Rule 26(a)(1)(A)(iii), Plaintiff, on behalf of the putative Class, states that it will seek an award for monetary damages for the injuries caused by Defendants' alleged violations of the federal securities laws, in addition to Plaintiff's costs and attorneys' fees.  The computation of the putative Class's damages is premature at this stage of the litigation and will ultimately require expert testimony.  Plaintiff will disclose information with respect to the computation of its damages consistent with the timetable set by the Court and the Federal Rules of Civil Procedure for the disclosure of expert opinions.

## IV.    INSURANCE

Pursuant to Rule 26(a)(1)(A)(iv), Plaintiff currently has no knowledge of the existence of any insurance agreements under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

* * *

Plaintiff reserves the right to supplement and correct these initial disclosures to include information hereafter acquired based upon further clarification of Defendants' defenses, discovery, trial preparation, and analysis.

Dated: June 2, 2022

By: *s/James M. Wilson, Jr.*
James M. Wilson, Jr.
FARUQI & FARUQI, LLP

17

685 Third Avenue, 26th Floor
New York, NY 10017
Tel.: 212-983-9330
Email: jwilson@faruqilaw.com

Timothy John Peter
FARUQI & FARUQI, LLP
1617 John F. Kennedy Boulevard
Suite 1550
Philadelphia, PA 19103
Tel.: 215-277-5770
Fax: 215-277-5771
Email: tpeter@faruqilaw.com

Robert W. Killorin
FARUQI & FARUQI, LLP
3975 Roswell Rd Suite A
Atlanta, GA 30342
Tel.: 404-847-0617
Email: rkillorin@faruqilaw.com

*Counsel for Lead Plaintiff Gerald Forsythe*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, I served the foregoing via e-mail on the following:

**WINSTON & STRAWN LLP**
Daniel M. Blouin
Linda T. Coberly
35 West Wacker Drive, Suite 4700
Chicago, IL 60601
dblouin@winston.com
lcoberly@winston.com

James P. Smith III
Kerry C. Donovan
200 Park Avenue
New York, NY 10166
jpsmith@winston.com
kcdonovan@winston.com

John S. Tschirgi
333 South Grand Ave.
Los Angeles, CA 90071
jtschirgi@winston.com

**OBERMAYER REBMANN
MAXWELL & HIPPEL LLP**
Mathieu J. Shapiro
Melissa M. Blanco
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
mathieu.shapiro@obermayer.com
melissa.blanco@obermayer.com

*Attorneys for Defendants*

/s/ James M. Wilson, Jr.
James M. Wilson, Jr.

19

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD., Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    *v.*<br><br>TEVA PHARMACEUTICALS INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, ROBERT KOREMANS, and MICHAEL DERKACZ,<br><br>    Defendants. | **CIVIL ACTION**<br><br>**NO. 20-04660-KSM**<br><br>**JOINT RULE 26(f) REPORT** |

Following a fulsome discussion, as contemplated by Fed. R. Civ. P. 26(f), the Parties aver

as follows:

**I.    Counsel**

      **A.  Lead counsel for Plaintiff(s)**:    Robert W. Killorin, James M. Wilson, Jr., Faruqi & Faruqi, LLP

      **B.  Lead counsel for Defendant(s)**:  James P. Smith III, Linda Coberly, Kerry Donovan, Winston & Strawn LLP

      **C.  Counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s)**:

      Robert W. Killorin
      James M. Wilson, Jr.

      **D.  Counsel who participated in Rule 26(f) conference on behalf of Defendant(s)**:

      James P. Smith III

## II.    Description of Claims and Defenses

**The Parties should assume that the Court has read the Complaint and is familiar with the claims.  However, the Court does not know all of the facts supporting those claims, nor the factual bases for the defenses.  Therefore, counsel shall summarize the primary facts and threshold legal issues.  <u>Counsel should not merely parrot their pleadings.</u>  In addition, the Parties should attach critical documents to this report for the Court to review, if not attached to the pleadings already (e.g., in a contract case, the document(s) comprising the contract; in a personal injury case, photographs of the scene, etc.).**

<u>Plaintiff</u>: This is a federal securities class action suit alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act  of 1934 (15 U.S.C. §78j(b)), and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder, against Teva Pharmaceuticals Industries Limited ("Teva") and all remaining Individual Defendants.[1] Plaintiff alleges that Defendants made false and/or misleading statements during the Class Period (October 29, 2015 – August 18, 2020) regarding the financial results and market demand for one of Teva's core products, the multiple sclerosis ("MS") drug Copaxone®, and about Teva's Shared Solutions Program. Specifically, Plaintiff alleges that Defendants claimed that Copaxone's success was due to presumably lawful and sustainable reasons like its safety, efficacy, and patient outreach efforts through Teva's Shared Solutions Program that generated "brand loyalty."  Unbeknownst to investors, however, Copaxone's success arose from a kickback

---

[1]    The remaining Individual Defendants are as follows: Erez Vigodman ("Vigodman"), Eyal Desheh ("Desheh"), Robert Koremans ("Koremans"), Michael M. Derkacz ("Derkacz"), Kåre Schultz ("Schultz"), Michael McClellan ("McClellan"), and Brendan O'Grady ("O'Grady").  The Court dismissed Defendant Eli Kalif from the action in the March 25, 2022 order on the motion to dismiss ("MTD Order"). ECF Nos. 74, 75.  The Court also found that statements concerning Teva's compliance with federal law were not actionable, and that only the August 18, 2020 filing of the DOJ complaint served as a loss causation event.

scheme Defendants had with Advanced Care Scripts, Inc. ("ACS"), a specialty pharmacy, whereby Teva "donated" hundreds of millions of dollars to two Charitable Patient Assistance Programs ("CPAPs"), the Chronic Disease Fund ("CDF") and The Assistance Fund ("TAF"). Teva's "donations" were made on the condition that its money would only go towards paying Copaxone patients' Medicare co-pay obligations, as opposed to the co-pay obligations for all of the charities' beneficiaries regardless of what company's MS drug they were on, as the law requires. Through this scheme, Medicare Copaxone patients had their co-pays fully covered by Teva, and Medicare (and, by extension, the American taxpayer) covered the remaining cost. As a result, Teva was able to raise the price of Copaxone to over 19 times the rate of inflation, artificially increase the price of Teva's securities, inflate Teva's revenues, and seize control of a larger market share for MS treatments despite the availability of lower cost generics.

Teva statements were materially false and/or misleading because, inter alia, defendants failed to disclose the aforementioned scheme. On August 18, 2020, the scheme was finally revealed when the U.S. Department of Justice ("DOJ")[2] filed a complaint detailing the scheme and alleging that Teva's actions violated the anti-kickback statute (42 U.S. § 1320a-7b(b)) and the False Claims Act (31 U.S.C. § 3729). On this news, Teva's stock price—artificially inflated by Defendants' misrepresentations during the Class Period—dropped by approximately 15%.

The facts supporting Plaintiff's claims arise from the sources specified in the Corrected Amended Class Action Complaint ("AC") (ECF No. 64-2), including Defendants' own public statements, which were made in, *inter alia*, SEC filings, conferences, and press releases; two

---

[2]    The DOJ case is *United States v. Teva Pharmaceutics USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020). Like the instant action, the motion to dismiss in the DOJ case was by and large unsuccessful, as the majority of the claims therein remain. *See United States v. Teva Pharms. USA, Inc.*, No. 20-11548-NMG, 2021 WL 4132592 (D. Mass. Sept. 9, 2021).

confidential witnesses—a former Director of Marketing and former Associate Director of Treasury; and the DOJ's Complaint and corresponding exhibits.  The DOJ's Complaint and its exhibits were submitted as Exhibit A to the AC.

The threshold legal issues in this case are:

- whether Defendants' statements during the Class Period contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 10(b) and/or Rule 10b-5;

- whether and to what extent Defendants' material untrue statements and/or omissions of material fact caused the market price of Teva's securities to be artificially inflated during the Class Period;

- whether Defendants acted with the requisite level of scienter in omitting and/or misrepresenting material facts;

- whether Defendants were control persons of Teva under the meaning of Section 20(a);

- whether reliance may be presumed pursuant to the fraud-on-the-market doctrine;

- whether Class members have sustained damages, and if so, the proper method of calculating damages; and

- whether this action is maintainable as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

Plaintiff opposes Defendants' proposal to stay merits discovery and to proceed solely with class certification discovery, a proposal that effectively bifurcates discovery. Defendants argue that merits discovery should be stayed pending the outcome of the DOJ case because the

DOJ case against Teva for claims under the False Claims Act will determine the outcome of this Section 10(b) securities fraud case, citing to the recent *Regeneron* decision as support for a stay. However, unlike United Healthcare's claims in *Regeneron*, Plaintiff's claims for securities fraud under Section 10(b) do not hinge on an adjudication that Teva engaged in an illegal kickback scheme.  As has been argued extensively, Plaintiff's claims hinge on the falsity and materiality of Defendants' statements, not necessarily the illegality of their actions.  Moreover, unlike the situation in *Regeneron* where the defendants were the same in the cases, the DOJ has asserted no claims against any of the individual defendants in this case and therefore the DOJ case will not resolve Plaintiff's securities claims against those individuals.  Indeed, rather than staying this case, this case's discovery should proceed immediately and be coordinated with discovery in the DOJ case since both this case and the DOJ case involve certain common issues of fact, and there would be significant efficiencies in coordinating discovery of the cases for purposes of discovery only.  *See, e.g., Geddes v. United Fin. Grp.,* 559 F.2d 557, 561 (9th Cir. 1977).

While Defendants will move to stay merits discovery in this case, which Plaintiff will vigorously oppose, they nevertheless claim that class certification discovery should proceed. The bifurcation of discovery between class certification and merits discovery that is advocated by Defendants is not the norm and generally rejected by courts. A defendant seeking bifurcation bears the burden of proving that bifurcation is warranted.  *Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Insurance Co.*, 319 F.R.D. 209, 211 (E.D. Pa. 2017). The bifurcation of discovery in this case would be extremely prejudicial to Plaintiff because class certification issues and merits issues may overlap. *Goldman Sachs Grp, Inc. v. Ark. Teacher Ret. Sys.*, 141 S.Ct. 1951 (2021).  The distinction between class and merits discovery is "often blurry, if not

spurious." *In re Plastics Additives Antitrust Litig.*, No. Civ. A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004) (declining to bifurcate class and merits discovery).

Finally, Defendant's complaint that initial disclosures were not exchanged (by both sides) until June 2 strikes Plaintiff as somewhat disingenuous. Defendants did not announce that they were "ready" to exchange initial disclosures until 5:17 PM on the Friday before Memorial Day Weekend, May 27, 2022. The current Court-mandated deadline for the exchange is now set for June 16, 2022. *See* ECF No. 81 (Order dated May 24, 2022). Defendants can claim no prejudice from the timing of the exchange, which occurred at the mutually agreed upon time of 6:00 PM on June 2, 2022. Plaintiff notes that while he provided Defendants with a draft Joint Rule 26(f) Report on April 13, 2022, Defendants did not provide their written response until Sunday, June 5, 2022, despite repeated prodding from Plaintiff. Defendants did no prodding regarding the delay beginning on Memorial Day Weekend, of the exchange of initial disclosures.

**Defendants' Statement:** This case is inextricably linked with a prior lawsuit by the Department of Justice. There is no reason to proceed with merits discovery in this case while that suit is still being litigated—and many reasons not to do so. In the interests of efficiency, judicial economy, and the avoidance of undue burden, expense and potentially inconsistent adjudications, Defendants intend to move to stay merits discovery while proceeding with class certification discovery and briefing.

The MTD Order[3] significantly narrowed the scope of this case. In addition to dismissing Defendant Kalif altogether, the MTD Order held that two of the three alleged corrective disclosures did not qualify as such and thus could not support loss causation, and that, as a matter

---

[3] For convenience and unless otherwise stated, all abbreviations have the same meaning as defined by Plaintiff.

of law, neither Teva's risk disclosures (styled "compliance with law" statements by Plaintiff) nor its accurate statements of historical financial performance are actionable. *See* Compl. ¶¶ 72-103, 125, 127, 129-32, 134-37, 139-44, 146, 148, 150-59, 232, 234.

The gist of Plaintiff's federal securities fraud claim is that Defendants falsely asserted in their public statements that the success of Teva's multiple sclerosis ("MS") drug Copaxone "was due to presumably lawful and sustainable reasons," when in fact, according to Plaintiffs, the real and undisclosed reason for Copaxone's success was an illegal "kickback scheme" whereby Teva's donations to MS-focused patient assistance programs were specifically earmarked for Copaxone patients only, rather than being available to any patient regardless of what MS drug they were taking, "as the law requires."

As Plaintiff recognizes, the only alleged "corrective disclosure" of that "scheme" remaining in this case is the August 18, 2020 filing of a civil complaint against Teva by the DOJ that allegedly "detail[s] the scheme and alleg[es] that Teva's actions violated the anti-kickback statute (42 U.S. § 1320a-7b(b)) and the False Claims Act (31 U.S.C. § 3729)." *Supra* at § II, Plaintiff's Statement. As Plaintiff admits, "[t]he facts supporting Plaintiff's claims arise … from … the DOJ[] Complaint and corresponding exhibits."[4] Indeed, as set forth in Defendants' Answer, virtually the entire operative complaint is either copied verbatim or paraphrased from the DOJ complaint. *See* Compl. ¶¶ 31-34, 41-59, 64-65, 68-69, 168-70, 194-95.[5] The allegations in the DOJ complaint remain precisely that—unproven allegations.

---

[4] Similarly, in the course of meeting and conferring, Plaintiff's counsel has repeatedly recognized that "the DOJ case and [this] case involve common issues of fact" and that "there is overlap of the facts in the DOJ case and our securities case."

[5] The primary exception is the lengthy block quotes from Teva's SEC filings and earnings calls during the alleged class period.

In the Answer, Defendants have denied the material allegations of the operative complaint—and the DOJ complaint—and asserted nineteen defenses, including, among others, that the remaining alleged misstatements or omissions were not material, false, or misleading when made and/or were not made with the requisite scienter.  Defendants further assert that the alleged statements were not the proximate cause of Plaintiff's purported loss, and that the information allegedly omitted or misrepresented was (i) publicly available and widely known to shareholders and the investing community and/or (ii) immaterial because, among other things, Teva's alleged conduct did not violate any laws.  Moreover, in order to prevail under the MTD Order, Plaintiff would have to prove, among other things, that the alleged "kickback scheme"— meaning Teva's donations to Chronic Disease Fund and The Assistance Fund—were the true reason/real source for Copaxone's success, which they will be unable to do.  Defendants Vigodman, Desheh, Koremans, Derkacz, Schultz, McClellan and O'Grady also aver that they cannot be held liable under Section 20(a) because, among other things, Plaintiff cannot show that any of these individuals had control over the alleged misstatements made by others or culpably participated in the alleged fraud.

The DOJ case is ongoing, well ahead of this one and already into discovery.  To be clear, Defendants are not arguing (as Plaintiff asserts) that the DOJ case "will determine the outcome" of this case.  But its ultimate resolution <u>will</u> have a significant impact on the claims and defenses in this case and will substantially narrow, if not completely obviate, the need for discovery or the taking of evidence in this case.  Moreover, allowing the two cases to proceed simultaneously would present complex challenges for the parties and the Court in terms of coordination and give rise to significant inefficiencies.  Plaintiff has offered no workable solution to address these inefficiencies, particularly in light of the procedurally advanced stage of the DOJ case.  Indeed,

in these circumstances, it is sensible for follow-on private litigation to be stayed in deference to litigation by the government.  In fact, the Southern District of New York recently stayed a civil case based on a substantially similar case brought by the DOJ against another pharmaceutical company, Regeneron Pharmaceuticals, Inc., for these exact reasons.[6]  *See* Opinion on Motion to Stay, ECF No. 42, *United Healthcare Ins. Co. v. Regeneron Pharms. Inc.*, Civil Action No. 20-CV-10664 (Dec. 29, 2021) (attached hereto as Exhibit A).  Defendants intend to move promptly for such relief.

That said, there is another threshold legal issue that can—and by rule must—be decided at an early stage and can be resolved promptly regardless of whether the balance of the action is stayed:  whether the case can proceed as a class action.  *See* Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").  To be clear, this is not a circumstance in which Defendants are seeking to defer merits discovery on the grounds that class certification should be determined first; to the contrary, Defendants believe that the entire case can and should be stayed pending the outcome of the DOJ case, but that class certification can and should proceed efficiently notwithstanding that, which, among other things, will provide Plaintiff with discovery relevant to both class certification and merits issues sooner than if the entire case were stayed.[7] Plaintiff does not provide an actual reason why class certification

---

[6]  Plaintiff and Defendants disagree on the applicability of *Regeneron*, but Defendants believe that the proper forum for that is the briefing on their upcoming stay motion, not a Rule 26(f) report.

[7]  Unlike antitrust class actions like the case to which Plaintiff cites, *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *4 (E.D. Pa. Nov. 29, 2004), in which class certification typically comes after the close of fact discovery, in Section 10(b) class actions such as this one, class certification is almost always determined as the first order of business after some part of the case survives a motion to dismiss and is decided well before significant merits discovery has commended, let alone concluded.

should not proceed immediately.  And, based on the impact of the MTD Order and otherwise, Defendants believe that Plaintiff will be unable to sustain its burden to prove that class certification is appropriate here.  If the Court agrees, that will be case dispositive as a practical matter.  Accordingly, a class certification discovery schedule, briefing schedule, and evidentiary hearing date should be set now.

### III.    Anticipated Scope of Discovery

**A. Summarize with specificity those issues on which the Parties will need to conduct discovery.  Identify categories of information each Party needs in discovery and why.**

**Plaintiff's Position:** Plaintiff will seek discovery with respect to the elements of the claims asserted in the complaint, including, but not limited to:

*Information to prove the elements of his claims under Section 10(b), such as*:

i.    All of the mechanics of the scheme as alleged in the AC whereby Teva "donated" hundreds of millions of dollars to CPAPs to cover the co-pays of only those Medicare patients who took Copaxone. This includes (but is not limited to) the process whereby patients who were eligible for Medicare Part D were referred to specialty pharmacies so that specialty pharmacies could assist them in enrolling in Medicare Part D and in applying for assistance with a CPAP; specialty pharmacies communicating to Teva the number of Copaxone patients who were awaiting Medicare co-pay assistance; and any other documents relating to Teva's scheme with specialty pharmacies to provide CPAPs with "Copaxone donations" to cover the Medicare co-pays of those patients taking Copaxone.  This information is relevant to, *inter alia*, establishing the elements of falsity and scienter.

11

ii.   All internal and external communications about the scheme whereby Teva "donated" hundreds of millions of dollars to CPAPs to cover the co-pays of only those Medicare patients who took Copaxone. This information is relevant to, *inter alia*, establishing the elements of falsity and scienter.

iii.   All communications with government agencies, including, but not limited to, the Centers for Medicare and Medicaid Services, the DOJ and the Internal Revenue Service ("IRS") regarding Teva's donations to CPAPs, and all internal communications about the same.  This information is relevant to, *inter alia*, establishing the elements of falsity and scienter.

iv.   Information related to the process for reviewing and approving the company's written public statements, as well as information related to preparing for and speaking at conferences and earnings calls.  This information is relevant to, *inter alia*, establishing the element of scienter.

v.   Information concerning Defendants' trading in Teva securities.  This information is relevant to, *inter alia*, establishing the element of scienter.

vi.   Information relevant to class certification, such as shareholder lists to establish numerosity, as well as internal communications regarding the impact that certain information would have or had on Teva's stock price.  This information is relevant to, *inter alia*, certifying the class, as well as the elements of scienter and loss causation.

vii.   Other information relevant to loss causation and damages.

*Information to prove claim under Section 20(a), such as:*

i.   Information concerning each Individual Defendant's role with respect to the scheme at issue as well as their involvement in the review and approval of Teva's statements

12

that are alleged to be false and/or misleading.  This information is relevant to establishing whether a particular Individual Defendant is a "control person" for the purposes of Section 20(a).

**Defendants' Position:** Defendants agree that, regardless of the disposition of their intended stay motion, discovery will be necessary regarding information relevant to class certification, including depositions of and document production by Lead Plaintiff (adequacy, typicality, predominance (e.g., unique defenses)), as well as document production and expert discovery relating to market efficiency, price impact and/or class-wide damages (among other potential issues).

As noted above in Sect. II (Defendants' Statement), merits discovery (along with all other proceedings apart from class certification) should be stayed pending the outcome of the DOJ case, which will narrow or obviate the need for many of the categories of discovery identified by Plaintiff above.

B. **Anticipated number of interrogatories per Party**:      *Plaintiff's Position*:  Thirty-five (35); *Defendants' Position*:  As with the overall scope of necessary discovery in this case, it is premature to assess the appropriate number of interrogatories prior to the outcome of the DOJ case.  That said, under no circumstance would there be a need for more than twenty-five (25) interrogatories.

C. **Anticipated number of depositions per Party**:      *Plaintiff's Position*:  Thirty-five (35); *Defendants' Position*:  As with the overall scope of necessary discovery in this case, it is premature to assess the appropriate number of depositions prior to the outcome of the DOJ case.

D. **To the extent either Party proposes to exceed the presumptive limits in the Federal Rules of Civil Procedure for discovery, explain the basis for that proposal.**

**Plaintiff's Position:** Due to the complex nature of this federal securities class action, and exceedingly large amount of damages alleged to have been incurred by investors worldwide, Plaintiff respectfully requests to exceed the presumptive limits in the Federal Rules of Civil

13

Procedure to ensure that discovery is adequately conducted. This action includes eight individual defendants and numerous alleged false or misleading statements[8] spanning the course of a 57-month Class Period (October 29, 2015 – August 18, 2020), causing the loss of well over one billion dollars of market capitalization to investors, all of which was  set forth in a nearly 100-page Corrected Amended Complaint (ECF No. 64-2) that included over 500 pages of exhibits. Expert discovery also will be necessary for class certification, damages, and loss causation, if not other issues, which will necessitate multiple expert reports and depositions. Plaintiff will also have to engage in significant third-party discovery, which he anticipates will require numerous depositions. Indeed, the kickback scheme that forms the basis of Plaintiff's claims involves at least four entities besides Teva—AssistRx, ACS, CDF, and TAF.

**Defendants' Position:**  As with the overall scope of necessary discovery in this case, it is premature to assess whether there would be good cause for discovery in this case to exceed any of the presumptive limits set forth in the Federal Rules of Civil Procedure prior to the outcome of the DOJ case.  Indeed, the overwhelming majority of the "nearly 100-page Corrected Amended Complaint … [and] over 500 pages of exhibits" on which Plaintiff relies were lifted directly from the DOJ complaint. That said, Defendants (a) submit that the amount of alleged lost market capitalization does not impact the issue, but (b) agree that there may be a need for multiple expert reports, first on class certification and potentially later on merits issues once the scope of the remaining legal and factual issues becomes known following determination of the DOJ case.

---

[8]     These include over 20 statements regarding Copaxone's market share (MTD Order, ECF No. 74 at 16) and 7 statements regarding Teva's Shared Solutions Program (*id*. at 23), two categories of statements which the Court upheld in the MTD Order. The Court dismissed the alleged false and/or misleading statements that concerned Teva's compliance with federal law. *Id*. at 24-25.

14

**E. Do the Parties anticipate the need for any third-party discovery?  If so, identify the likely third-parties and the discovery to be sought.**

**Plaintiff's Position:** Plaintiff anticipates the need for third-party discovery, including, but not limited to, the issuance of Rule 45 subpoenas duces tecum and Rule 45 subpoenas ad testificandum to ACS, CDF, the DOJ, AssistRX, TAF, IRS, and Medicare.

**Defendants' Position:**  As with the overall scope of necessary discovery in this case, it is premature to assess the need for and reasonable scope of third-party discovery prior to the outcome of the DOJ case.

That said, certain non-duplicative third-party discovery will likely be necessary in connection with class certification, including documents and/or depositions of any investment advisor or similar professionals that provided services to Lead Plaintiff in connection with its Teva investment decisions and/or related investment strategies (adequacy, typicality, predominance (e.g., unique defenses)).

**F. Do the Parties anticipate the need for experts?  If so, identify the subjects on which the expert(s) may opine.**

**Plaintiff's Position:** Plaintiff anticipates relying on experts for class certification, determination of damages, loss causation, and other liability issues, the names and reports of which will be disclosed in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

**Defendants' Position:**  As noted above (*see* Sect. III.A., Defendants' Position), Defendants anticipate that expert discovery will be required on issues relevant to class certification, including market efficiency, price impact and/or class wide damages (among other potential issues).  As further noted in Sect. III.D., Defendants agree that there may be a need for

15

multiple expert reports, first on class certification and potentially later on merits issues, once the scope of the remaining legal and factual issues becomes known following determination of the DOJ case.

## IV.    Status of Discovery

**The Parties must summarize the status of discovery to-date.  If nothing has been done in terms of discovery, the Parties should explain why.    In general, the Court prefers the parties to begin discovery prior to the Rule 16 conference.**

**Plaintiff's Position:** Pursuant to the Private Securities Litigation Reform Act, discovery was stayed during the pendency of Defendants' motion to dismiss. *See* 15 U.S.C. § 78u-4(b)(3)(B). Upon the entering of the MTD Order, the parties have met and conferred pursuant to Rule 26(f) to discuss *inter alia* fact and expert discovery and a proposed schedule for all pre-trial deadlines.

**Defendants' Position:**   Defendants agree, but further note that:

(a) Pursuant to the parties' meet-and-confers, Defendants understood that initial disclosures were to be exchanged on May 27, 2022.  Defendants stood ready to do so and so indicated to Plaintiff.  However, despite Defendants' inquiry, Plaintiff did not confirm that it was prepared to provide its initial disclosures until June 2.  Instead, on May 27, Plaintiff served a broad-gauge, all-encompassing set of document requests on Defendants.  Further demonstrating the degree to which this case is inextricably intertwined with the prior-filed, further advanced DOJ case, one of those requests was for "[a]ll Documents You produced to plaintiff in *United States v. Teva Pharmaceuticals USA*, Inc., No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020)." And when Plaintiff finally did provide its initial disclosures, they further highlighted

the extensive overlap with the DOJ case, with a significant number of the ***over 50***
current and former Teva employees Plaintiff named being involved in some capacity
in discovery in the DOJ case.

(b) During the parties' meet-and-confers, they discussed Defendants' view that merits
discovery and other proceedings should be stayed pending the outcome of the DOJ
case, but that class certification could and should proceed in the meantime.
Defendants requested that Plaintiff agree to such a stay, with a carve-out for class
certification discovery and briefing.  Defendants also indicated, in response to
Plaintiff's inquiry, that they would be prepared to consider a proposal for
coordinating dual-tracked discovery and other proceedings with the DOJ case,
notwithstanding Defendants' view that there is no workable way of doing so in a
manner that would not result in needless inefficiencies, burden, cost and risk of
duplicative or inconsistent adjudications.  Plaintiff declined to agree to any stay or
even a schedule for class certification, notwithstanding that class certification will
have to be determined at an early practicable stage regardless of whether or not other
aspects of the case are stayed.  Plaintiff's only proposal for "coordination" with the
DOJ case was, essentially verbatim, the document request quoted in subsection (b),
above.

(c) Defendants anticipate issuing written discovery relating to class certification in short
order.

**V.     Proposed Case Management Deadlines**

When completing this section, the Parties should presume that the Court will **not** bifurcate fact and expert discovery.  Therefore, the Parties should propose dates that take that presumption into account.

A. **Deadline to serve initial disclosures under Rule 26(a)(1) (\*must be exchanged at least one (1) business day before Rule 16 conference):       May 27, 2022[9]**

B. **Deadline to amend pleadings to add claims or Parties (\*must be as early as practicable to avoid prejudice or unnecessary delays):**

    i.  **Plaintiff's Position:  February 24, 2023**

    ii.  **Defendants' Position:**  For the reasons discussed above, the time to amend pleadings should be keyed to a final determination in the DOJ case, when the scope of any remaining legal and factual issues will become known.  In the event the Court were to deny Defendants' forthcoming stay motion, Defendants would propose **10 months from the date of such ruling**.

C. **Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any):**

    i.  **Plaintiff's Position:  March 17, 2023**

    ii.  **Defendants' Position:**  For the reasons discussed above, the deadline for affirmative expert reports (on merits issues, as opposed to class certification) should be keyed to a final determination in the DOJ case, when the scope of any remaining legal and factual issues will become known.  In the event the

---

[9]     As noted, while this was the date to which Defendants understood Plaintiff had agreed, Plaintiff did not indicate that it was prepared to provide its initial disclosures, and thus initial disclosures were not exchanged, until June 2, 2022.

Court were to deny their forthcoming stay motion, Defendants would propose **12 months from the date of such ruling**.

D. **Deadline for rebuttal expert reports (if any)**:

     i. **Plaintiff's Position: April 28, 2023**[10]

     ii.     **Defendants' Position:  1 ½ months from affirmative expert reports**.[11]

E. **Deadline to complete discovery**:

**Plaintiff's Position:** Documents shall be produced on a rolling basis. Production responsive to document requests that are served by May 27, 2022 shall be substantially completed by **October 7, 2022**.

All fact discovery (including depositions) shall be concluded by **February 17, 2023**.

**Defendants' Position:** For the reasons discussed above, the deadline to complete merits discovery should be keyed to a final determination in the DOJ case, when the scope of any remaining legal and factual issues will become known.  In the event the Court were to deny their forthcoming stay motion, Defendants would propose **10 months from such ruling**.

F. **If any Party seeks more than 120 days for fact discovery, explain why**.

**Plaintiff's Position:** As discussed in Section III.D above, this Action is a complex securities class action that involves complex factual issues and in addition to fact discovery between the parties, Plaintiff will seek non-party fact discovery through Rule 45. Moreover, this case will involve the exchange of multiple expert reports, and expert depositions. Plaintiff's

---

[10]     Plaintiff also proposes that expert reply reports be permitted for exchange, as is typical in complex securities class actions, on **May 19, 2023,** and that all expert discovery (including expert depositions) be completed by **June 30, 2023.**

[11] Defendants agree that expert reply reports should be permitted and propose that they be exchanged **1 month from rebuttal expert reports**, with all expert discovery closed **1 month after the service of reply expert reports**.

19

position is that a 90-120 day schedule will not allow Plaintiff sufficient time to conduct effective

discovery to prepare for trial. In addition to the expert discovery and third-party discovery noted

above, Plaintiff also anticipates that there may be witnesses who are current and/or former Teva

employees residing in Israel where the company is based and who Plaintiff will seek to depose.

Accordingly, the parties are seeking a fact discovery deadline of **February 17, 2023.**  Further,

the amount of time Plaintiff is requesting is reasonable for a federal securities class action suit, as

evident by the number of other securities class action suits that have a similar timeline for

discovery.

**Defendants' Position:**  As noted above, Defendants' position is that merits discovery in

this case should be stayed pending the outcome of the DOJ case, which will narrow or obviate

the need for many of the categories of discovery identified by Plaintiff above.  This could result

in substantially less than 120 days from the date of a final determination in the DOJ case being

needed to complete fact discovery herein.

    **G. Deadline to file motion for summary judgment**:

        i. **Plaintiff's Position:  August 11,  2023**[12]

        ii. **Defendants' Position:**  For the reasons discussed above, the discovery

            deadline should be keyed to a final determination in the DOJ case, when the

            scope of any remaining legal and factual issues will become known, and the

            deadline to file summary judgment motions should be keyed to the close of

---

[12]    Plaintiff also proposes, due to the complexities of the facts and issues in this Action, that the briefing schedule for Motions for Summary (and *Daubert* motions, as discussed below), as provided in Local Rule 7.1(c) be modified to allow opposition briefs to be served 45 days after service of the opening motion and brief, or on **September 25, 2023,** and that the Parties be permitted to serve reply briefs within 45 days of service of the opposition briefs, or on **November 9, 2023**.

discovery.  In the event the Court were to deny their forthcoming stay motion, Defendants would propose **7 months after the close of fact discovery and/or 1 ½ months after the close of expert discovery**.   Defendants agree with Plaintiff's proposal for opposition briefs to be served 45 days after moving briefs, and reply briefs to be served 45 days after opposition briefs.

## VI.    Deposition Scheduling

**The Court expects the Parties to meet and confer as soon as practicable to set aside dates to hold open for depositions before the close of discovery.  If the Parties have not already done so, the Court will order the Parties to do so within two weeks of the Rule 16 conference.**

**Have the Parties set aside dates for deposition?  ___ Yes  __X_ No**

**If yes, what are those dates?**

_____

**If no, when do the parties intend to confer, and how many dates do they intend to set aside?**

**Plaintiff's Position:**  The parties intend to work cooperatively to agree on deposition dates as soon as practicable. Most of the depositions will be scheduled for after substantial completion of document production, although there will be depositions of class certification experts and the Lead Plaintiff that will occur prior to the close of class certification briefing.

**Defendants' Position:**  Defendants agree, but note that they have proposed deadlines for depositions of Lead Plaintiff and class certification experts as part of an overall schedule for class certification discovery, briefing and hearing that Plaintiff has rejected.  That schedule is as follows:

| Motion for Class Certification | August 5, 2022 |
|---|---|
| Deadline for Defendants to Request Documents from Lead Plaintiff in Connection with Class Certification | August 15, 2022 |
| Completion of Document Production from Lead Plaintiff in Connection with Class Certification | August 29, 2022 |
| Completion of Depositions of Lead Plaintiff and any Plaintiff Expert(s) in Connection with Class Certification | September 28, 2022 |
| Opposition to Motion for Class Certification | October 12, 2022 |
| Deadline for Lead Plaintiff to Request Documents from Defendants in Connection with Class Certification | October 19, 2022 |
| Completion of Document Production from Defendants in Connection with Class Certification | November 1, 2022 |
| Completion of Depositions of any Defendants Expert(s) in Connection with Class Certification | November 15, 2022 |
| Reply in Further Support of Motion for Class Certification | November 29, 2022 |
| Evidentiary Hearing | To be set by the Court |

## VII.    Electronic Discovery

**Prior to the Rule 16 conference**, **the Court expects the Parties to have a thorough discussion about electronic discovery, including but not limited to 1) the need for electronically stored information ("ESI"), 2) sources of ESI, 3) the anticipated scope of electronic discovery, 4) the identity of potential custodians, 5) whether search terms will be necessary and, if so, any limitations thereto, 6) the respective burdens of collecting, reviewing, and producing ESI, including any claims for cost-shifting under the Federal Rules of Civil Procedure, and 7) any anticipated problems with electronic discovery.  The**

22

**Parties should summarize their discussion on these issues here.  The Court expects counsel who attends the Rule 16 conference to be familiar with and able to discuss any ESI-related issues that might arise.**

**In addition, the Parties should state whether they have agreed to an ESI stipulation. If so, <u>the Parties should submit the stipulation to the Court in advance of the Rule 16 conference</u>.  If not, the Parties should identify what issues need to be resolved to finalize the stipulation**.

The Parties agree that an ESI stipulation is appropriate for this case and are in the process of negotiating the terms of an ESI stipulation to be submitted to the Court in advance of the Rule 16 conference.  It is Defendants' position, however, that certain of the ESI-related categories enumerated for discussion should abide the outcome of the DOJ case.

VIII.    **Protective Orders and Confidentiality Agreements**

**The Parties should indicate whether they anticipate the need for a protective order in this case.  If so, the Parties must explain what type of information needs protection from disclosure and why such protection is warranted under governing standards.  In addition, the Parties are directed to Judge Marston's Policies and Procedures concerning Protective Orders and Confidentiality Agreements.**

The Parties anticipate the need for a protective order in this case due to the potentially sensitive nature of certain information that may exist, where otherwise discoverable, including, but not limited to, Plaintiff's financial documents, personally identifiable information of Medicare patients, and confidential and/or proprietary information regarding Copaxone, and other confidential or proprietary information of Teva or the individual Defendants, for which special protection from public disclosure may be warranted. Accordingly, the Parties anticipate

that a motion will be made requesting a protective order in this matter, in accordance with Section II, Subsection D, of Your Honor's Policies and Procedures.

## IX.    Alternative Dispute Resolution

### A.  Have the Parties engaged in any settlement discussions?  If so, set forth the status of those negotiations.  If not, explain why not.

The Parties discussed the prospect of settlement at their Rule 26(f) meet and confer held on May 20, 2022.  The Parties believe it is premature to have meaningful settlement negotiations, but do not foreclose the possibility of settlement at a later date.

### B.  Have the Parties explored or considered other forms of alternative dispute resolution?  If so, summarize those efforts.  If not, state the Parties' positions with respect to ADR, as required under Local Rule of Civil Procedure 53.3.

The Parties discussed other forms of alternative dispute resolution for this Action at the Rule 26(f) meet and confer held on May 20, 2022. The Parties agree that ADR for this securities class action is not appropriate at this time. The Parties agree that at a later date, mediation for possible settlement purposes may be appropriate.

### C.  Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.

For Plaintiff: Robert W. Killorin and James M. Wilson Jr.

For Defendants: James P. Smith III

## X.    Consent to Send Case to a Magistrate Judge

The Parties should indicate whether they consent to have a United States Magistrate Judge conduct any or all proceedings in this case, pursuant to 28 U.S.C. § 636(c).

The Parties do not object to the appointment of a Magistrate Judge to resolve any potential discovery disputes, should the need arise at a later date, but Defendants do not consent to have a Magistrate Judge conduct any proceedings in connection with or decide their intended motion to stay, which they respectfully suggest is most appropriately resolved by Judge Marston.

## XI.    Policies and Procedures

**Judge Marston's Policies and Procedures are available for the Parties to review on the Court's website.  By signing below, counsel for each Party and/or each *pro se* Party represents that he or she has reviewed the Judge's Policies and Procedures and acknowledges the requirements contained therein.  The Parties and their counsel further acknowledge by signing below that Judge Marston will strike pleadings and other submissions that do not comply with her Policies and Procedures.**

## XII.    Other Matters

**The Parties should identify any other issues that have not been addressed above but may require the Court's attention (e.g., anticipated motions, bifurcation, privilege issues, etc.).**

**<u>Motion for Class Certification:</u>**

**<u>Plaintiff's Position:</u>** Plaintiff will file a motion for class certification under Rule 23, which motion will be supported by an expert report. Plaintiff anticipates that Defendants will seek to depose Plaintiff's expert witness for purposes of opposing his motion and submitting their own expert report in opposition. Plaintiff likewise will take the deposition of Defendants' expert prior to filing his reply in further support of class certification. Plaintiff proposes the following briefing schedule for his class certification motion, which schedule includes a

reasonable time for expert depositions to be taken for the narrow purposes of class certification issues only:

     i.     Plaintiff shall move to certify the class by **August 5, 2022**;

     ii.     Defendants shall file their opposition, if any, by **October 12, 2022**; and

     iii.     Plaintiff shall file his reply, if any, by **November 29, 2022**

     iv.     The Parties have agreed that any *Daubert* motions will follow this briefing schedule.

Plaintiff notes that Defendants appear to claim below that they will need "one or more depositions of Lead Plaintiff …" Plaintiff vigorously disagrees that Lead Plaintiff should be deposed more than once in this case. To permit Defendants to take multiple depositions of Plaintiff would be unfair and prejudicial. Defendants should be allowed one deposition of Plaintiff and no more.

**Defendants' Position:** Defendants agree with the above, but state in addition that: (a) they will, as noted above, also need documents from and one or more depositions of Lead Plaintiff[13] and potentially third parties in connection with class certification; (b) that, consistent with the schedule set for above and in Sect. VI (Defendants' Position), deadlines for class certification fact and expert discovery can and should be set now, in conjunction with the briefing schedule and a date for an evidentiary hearing; and (c) all of the foregoing can, should and must proceed forthwith, irrespective of the pendency and ultimate disposition of Defendants

---

[13] When a lead plaintiff is an institution, rather than an individual, it is sometimes necessary for different individuals to cover different 30(b)(6) topics relevant to class certification.

intended motion to stay. Plaintiff's counsel has stated that they would oppose proceeding with class certification in the event the balance of the case is stayed.

**Defendants' Motion to Stay**: Defendants intend promptly to file their motion to stay merits discovery and other proceedings in this case apart from class certification pending the outcome of the DOJ case. As noted above, the parties have met and conferred on this issue and Plaintiff is unwilling to agree to such a stay.

***Daubert* Motions relating to Motions Summary Judgment:** Plaintiff additionally proposes that *Daubert* motions follow the same briefing schedule that applies to motions for summary judgment. As indicated above, Plaintiff proposes that motions for summary judgment be filed by August 11, 2023, and *Daubert* motions will be due on this same date.

Defendants agree that the same schedule should apply for *Daubert* motions related to summary judgment motions as to the underlying summary judgment motions and respectfully refer the Court to their position on the timing of summary judgment motions and briefing set forth in Sect. V.G.ii.

Date: June 7, 2022

By: *s/Robert W. Killorin*
Robert W. Killorin
FARUQI & FARUQI, LLP
3975 Roswell Rd Suite A
Atlanta, GA 30342
404-847-0617
Email: rkillorin@faruqilaw.com

James M. Wilson, Jr.
FARUQI & FARUQI, LLP
685 Third Avenue

By: *s/Linda T. Coberly*
Linda T. Coberly
Daniel M. Blouin
WINSTON & STRAWN LLP
35 West Wacker Drive, Suite 4700
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 (fax)
lcoberly@winston.com
DBlouin@winston.com

27

New York, New York 10017
Phone: 212-983-9330
Fax: 212-983-9331
Email: jwilson@faruqilaw.com

Timothy John Peter
FARUQI & FARUQI, LLP
1617 John F. Kennedy Boulevard
Suite 1550
Philadelphia, PA 19103
215-277-5770
Fax: 215-277-5771
Email: tpeter@faruqilaw.com


Lead Counsel for Lead Plaintiff

James P. Smith III
Kerry C. Donovan
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
(212) 294-4700 (fax)
jpsmith@winston.com
kcdonovan@winston.com

Mathieu J. Shapiro
OBERMAYER, REBMANN, MAXWELL &
HIPPEL, LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
215-665-3014
215-665-3165 (fax)
mathieu.shapiro@obermayer.com

Counsel for Defendants

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HALMAN ALDUBI PROVIDENT AND
PENSION FUNDS LTD., Individually and On
Behalf of All Others Similarly Situated,

        Plaintiff,

   *v.*

TEVA PHARMACEUTICALS INDUSTRIES
LIMITED, EREZ VIGODMAN, EYAL
DESHEH, ROBERT KOREMANS, and
MICHAEL DERKACZ,

        Defendants.

**CIVIL ACTION**

**NO. 2:20-cv-04660-KSM**

## LEAD PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TEVA PHARMACEUTICALS INDUSTRIES LIMITED

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Local Civil Rule 26.3, Lead Plaintiff Gerald Forsythe ("Lead Plaintiff") hereby requests that Teva Pharmaceuticals Industries Limited ("Teva") produce for inspection within thirty (30) days of the date of service hereof at the law offices of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, New York 10017, or at such other location as the parties may agree, all documents described below in accordance with the definitions and instructions that follow.

### DEFINITIONS

1.   "All" and "Each" shall be construed as all and each.

2.   "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document Request all responses that might otherwise be construed to be outside its scope.

3.   "CDF" refers to the Chronic Disease Fund.

1

4.　"Copaxone" or "the Drug" refers to Teva's multiple sclerosis drug (glatiramer acetate injection).

5.　"CPAP" refers to Charitable Patient Assistance Program.

6.　"Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term. The term "document" further includes, but is not limited to, any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, revisions, and markups of drafts, and all files, documents, databases, e-mails, and other data maintained in computer-readable form. The term "document" specifically includes, but is not limited to: working papers, communications, including intra-company communications; minutes and records of meetings; letters; facsimile transmissions; telegrams; telephone bills and records; cables; records; books; summaries or records of personal conversations or interviews; legal pleadings; affidavits; deposition transcripts; trial transcripts; forecasts; statistical statements; accountants' work papers; brochures; pamphlets; circulars; press releases; agreements; contracts; telephone messages, slips and logs; diary entries; electronic mail and messages of every kind; calendars; reports; evaluations; assessments; analyses; test results; correspondence; memoranda; notes; video recordings of every kind; audio recordings of every kind; electronic recordings of every kind; drawings; graphics; graphs; maps; diagrams; charts; photographs; tables; indices; recordings; tapes; microfilms; reports of investigations; opinions or reports of consultants; data processing and computer printouts, tapes, disks, and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to

2

utilize or retrieve such data or information; all other mechanical or electronic means of storing or recording data or information; and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.

7. "Donation" refers to the payments Teva made to Charitable Patient Assistance Programs (or "CPAPs").

8. "TAF" refers to "The Assistance Fund."

9. "Teva" or the "Company" means Teva Pharmaceuticals Industries Limited and all of its present and former officers, directors, committees, employees, partners, corporate partners, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing.

10. "To identify," when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

11. "To identify," when referring to Documents, means to give, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

12. "You" or "Your" refers to the party responding to this demand for production and any present and former officers, directors, committees, employees, partners, corporate parents, predecessors, successors, assigns, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing.

**INSTRUCTIONS**

1. This demand for production requires You to produce all responsive Documents in

3

your possession, custody, or control, or in the possession, custody or control of any of Your agents, representatives, employees, accountants or attorneys, wherever those documents might be located.

2.      All Documents that exist in electronic format are to be produced in their native format, or in another mutually agreeable format that provides Plaintiff with all metadata associated with such electronic documents and allows Plaintiff to search and organize such electronic documents in a manner that is effective and as efficient as that enjoyed by the producing party.

3.      All Documents that exist only in paper or other hard-copy format are to be produced as they are or were kept in the usual course of business so that Plaintiff can ascertain the files in which they were located, their relative order in such files, and how such files were maintained.

4.      All Documents produced must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container unless it is not possible to do so.  Whenever a Document or group of Documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the Document.

5.      If any Document was, but is no longer, in Your possession or subject to Your control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred; voluntarily or involuntarily, to others; or (d) has been otherwise disposed of, and in each instance explain the circumstances of such disposition, and state the approximate date thereof.

6.      If no Documents exist which are responsive to a particular request, state this assertion in writing.

7.    In the case of any Document relating in any way to any meeting or conversation, all participants in the meeting or conversation are to be identified.

8.    You shall respond to this demand for production completely, based upon information that is known or reasonably obtainable upon investigation at the time that Your responses are served. When You do not know or cannot recall whether particular responsive Documents exist, You shall state what efforts were made to ascertain their existence.

9.    Each request should be read so as not to include Documents or things subject to an evidentiary privilege or immunity from discovery, if necessary to permit the production of Documents or things otherwise responsive to this command for production. To the extent that a request calls for the production of Documents or things subject to a privilege or immunity from discovery, the written response to that request should so indicate, but You should produce the balance of the documents or things not subject to a claim or privilege, which fall within the scope of the request. Additionally, to the extent information subject to an evidentiary privilege or immunity from discovery is contained within responsive Documents or things that also contain discoverable information, You should produce a redacted version of the Document or thing containing the discoverable information with a notation on the produced Document or thing indicating that it is being produced in redacted form.

10.    Notwithstanding a claim that a Document is protected from disclosure, any Document so withheld must be produced with the portion claimed to be protected, redacted or excised.

11.    Wherever You assert that a Document is properly withheld from production for inspection or copying on the grounds of evidentiary privilege or immunity from discovery, You shall designate the type of Document (*i.e.*, letter, report book, brochure, email, etc.) and

5

state:

     a)     information sufficient to enable Lead Plaintiff to identify the Document, including: (i) the title or subject heading; (ii) date; (iii) name(s) and address(es) of the author or signer(s); (iv) recipients; and (v) person(s) copied;

     b)     the general subject matter dealt with in the Document with reasonable specificity; and

     c)     an explanation of the privilege asserted.

12.     Wherever You are asked to produce a Document which was formerly in Your possession, custody or control but has been lost or destroyed, You shall designate the type of Document, (*i.e.*, letter, report book, brochure, email, etc.) and state:

     a)     information sufficient to enable Lead Plaintiff to identify the Document, including: (i) the title or subject heading; (ii) date; (iii) name(s) and address(es) of the author or signer(s); (iv) recipients; and (v) person(s) copied;

     b)     the substance or content of the Document;

     c)     the last known location of the Document;

     d)     the date on which the Document was lost or destroyed; and

     e)     if destroyed, the circumstances of or reason for such destruction and the persons requesting and performing such destruction.

13.     Wherever You object that a request is overly broad, burdensome or oppressive, You shall state all facts demonstrating the nature of the burden.

14.     The singular shall be construed to include the plural, and the plural shall be

construed to include the singular, as necessary, to bring within the scope of this demand for production any Documents that might otherwise be construed to be outside their scope.

15.    The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense, as necessary, to bring within the scope of this demand for production any Documents that might otherwise be construed as outside their scope.

16.    These Document Requests are continuing, and to the extent that at any time after the production of documents called for by this Document Request, You become aware of or acquire additional documents responsive to this Document Request, such Documents shall be produced promptly up to the final resolution of this action, whether by trial or otherwise.

## RELEVANT TIME PERIOD

Unless otherwise indicated, the relevant period of each Request shall be from October 29, 2012, through the present, and shall include all Documents and information, which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior or subsequent to that period.

## DOCUMENT REQUESTS

1.    All Documents You produced to plaintiff in *United States v. Teva Pharmaceuticals USA*, Inc., No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020).

2.    All Documents concerning the marketing of Copaxone.

3.    All Documents concerning any charitable activity concerning the sale or distribution of Copaxone, including Donations to CPAPs such as CDF and TAF.

4.    All board meeting minutes which contain any information regarding the marketing of Copaxone or any charitable activity concerning the sale or distribution of

7

Copaxone, including Donations to CPAPs such as CDF and TAF.

DATED: May 27, 2022

/s/ James M. Wilson, Jr.
    James M. Wilson, Jr.


**FARUQI & FARUQI, LLP**
Robert W. Killorin
James M. Wilson, Jr.
Timothy Peter
685 Third Avenue, 26th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331
Email:
    rkillorin@faruqilaw.com
    jwilson@faruqilaw.com
    tpeter@faruqilaw.com

*Lead Counsel for Lead Plaintiff and the Putative Class*

8

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, I served the foregoing via e-mail on the following:

**WINSTON & STRAWN LLP**
Daniel M. Blouin
Linda T. Coberly
35 West Wacker Drive, Suite 4700
Chicago, IL 60601
dblouin@winston.com
lcoberly@winston.com

James P. Smith III
Kerry C. Donovan
200 Park Avenue
New York, NY 10166
jpsmith@winston.com
kcdonovan@winston.com

**OBERMAYER REBMANN
MAXWELL & HIPPEL LLP**
Mathieu J. Shapiro
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
mathieu.shapiro@obermayer.com

*Attorneys for Defendants*

/s/ James M. Wilson, Jr.
James M. Wilson, Jr.

9