## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD., Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TEVA PHARMACEUTICALS INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, ROBERT KOREMANS, and MICHAEL DERKACZ, <br><br> Defendants. | Case No. 2:20-cv-04660-KSM <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS OTHER THAN CLASS CERTIFICATION IN FAVOR OF THE DOJ'S CASE**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 4

ARGUMENT ...................................................................................................................... 5

I.      DEFENDANTS' MOTION FOR A STAY SHOULD BE DENIED................................ 5

        A.      Standard .......................................................................................................... 5

        B.      A Stay Pending The Resolution Of The DOJ Case Will Be Indefinite And
                Will Prejudice Plaintiff And The Class ................................................................ 7

        C.      Defendants Have Not Established That Proceeding With This Action Would
                Be Unduly Burdensome..................................................................................... 9

        D.      Defendants Have Not Established That The Convenience Of The Courts Or
                The Interests Of Nonparties Favor A Stay........................................................ 11

        E.      Defendants Have Not Established That The Public Interest Favors A Stay......... 12

II.     DEFENDANTS' REQUEST TO BIFURCATE THIS CASE IS UNWARRANTED
        AND EXTREMELY PREJUDICIAL TO PLAINTIFF AND THE CLASS AND
        SHOULD BE REJECTED.......................................................................................... 12

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*In re Allstate Corp. Sec. Litig.*,
   966 F.3d 595 (7th Cir. 2010) ...................................................................................................14

*Bost. Ret. Sys. v. Alexion Pharms., Inc.*,
   556 F. Supp. 3d 100 (D. Conn. 2021) .......................................................................................8

*Clinton v. Jones*,
   520 U.S. 681 (1997) ..................................................................................................................5

*Cooper Notification, Inc. v. Twitter, Inc.*,
   No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) .............................................8, 9

*Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Ins. Co.*,
   319 F.R.D. 209 (E.D. Pa. 2017).............................................................................................13

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   No. MDL-1446, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) ...........................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011).............................................................................................................13, 14

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*,
   87 F.R.D. 53 (E.D. Pa. 1980)...............................................................................5, 10, 11, 16

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
   141 S.Ct. 1951 (2021).............................................................................................................14

*In re Groupon, Inc. Sec. Litig.*,
   No. 12 C 2450, 2014 WL 12746902 (N.D. Ill. Feb. 24, 2014)...............................................14

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
   No. 2:20-cv-04660-KSM,
   Memorandum Granting in Part and Denying in Part Defs.' Mot. to Dismiss
   (E.D. Pa. Mar. 25, 2022), Doc. No. 74 .............................................................. *passim*

*HMT, Inc. v. Bell BCI Co.*,
   No. 06-CV-6193T, 2007 WL 295328 (W.D.N.Y. Jan. 30, 2007) ...........................................11

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).................................................................................................................5

*LaSala v. Needham & Co.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005)......................................................................................8

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016)................................................................................16

*Mortland v. OhioHealth Corp.*,
No. 2:06-cv-534, 2007 WL 9728545 (S.D. Ohio Feb. 7, 2007) ................................7

*In re Plastics Additives Antitrust Litig.*,
No. Civ.A. 03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004)...................................13, 14

*Readick v. Avis Budget Group, Inc.*,
No. 12 Civ. 3988(PGG), 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014) ................................12

*In re Semgroup Energy Partners, L.P., Sec. Litig.*,
No. 08-MD-1989-GKF-FHM, 2010 WL 5376262 (N.D. Okla. Dec. 21, 2010) .....................14

*Simms v. Philip Morris, Inc.*,
No. 01-1107 (GK), 2003 WL 27394525 (D.D.C. July 7, 2003)................................6

*Singer v. Nicor, Inc.*,
No. 02 C 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ................................10

*Specrite Design, LLC v. Elli N.Y. Design Corp.*,
No. 16 Civ. 6154 (ER), 2017 WL 3105859 (S.D.N.Y. July 20, 2017)..............................11, 12

*Stoneridge Inv. Partners, LLC v. Sci.–Atlanta*,
552 U.S. 148 (2008)................................................................................8

*Texaco, Inc. v. Borda*,
383 F.2d 607 (3d Cir. 1967)................................................................................6

*UnitedHealthcare Ins. Co. v. Regeneron Pharmaceuticals, Inc.*,
No. 20 CV 10664(VB), 2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021).......................... *passim*

*In re Universal Health Servs., Inc., Derivative Litig.*,
No. 17-2187, 2018 WL 8758704 (E.D. Pa. Dec. 10, 2018)........................................9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................13

*Wehling v. Columbia Broadcasting System*,
608 F.2d 1084 (5th Cir. 1979) ................................................................6

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B)................................................................................7

**Other Authorities**

Rule 23(b)(3)................................................................................13

Fed. R. Civ. P. 23(c)(1)(A) ................................................................................................16

Fed. R. Civ. P. 26(c)(1)....................................................................................................11

Judge Marston's Policies and Procedures, § II.C.2 ........................................................11

Local Rule 23.1(c) ...........................................................................................................13

Local Rule 26.1(f)............................................................................................................11

Lead Plaintiff Gerald Forsythe ("Lead Plaintiff") respectfully submits this memorandum of law in opposition to Defendants'[1] Motion to Stay Proceedings Other Than Class Certification in Favor of the DOJ's Case ("Motion").  Doc. No. 83.[2]

**INTRODUCTION**

Defendants premise their Motion on their incorrect understatement of the duration of the proposed stay and their incorrect overstatement of the overlap of this securities case with the DOJ Case.  Even a cursory review of their Motion reveals these fallacies.  Their Motion should be denied entirely.

First, Defendants claim that they seek a "limited-duration" stay that will not prejudice Plaintiff or the Class.  *See* Mem. of Law in Supp. of Defs.' Mot. to Stay Proceedings Other Than Class Certification in Favor of the DOJ's Case ("Defs' MTS") 1 and 18, Doc. No. 83-1.  **This is obviously wrong**.  Defendants seek an indefinite stay of this case pending a resolution of the DOJ Case, which resolution could take many years to reach.  This securities case was already stayed under the Private Securities Litigation Reform Act ("PSLRA") pending the resolution of Defendants' motion to dismiss, and to accede to Defendants' request for an indefinite continued delay would unfairly prejudice Plaintiff and other class members' ability to prosecute the securities fraud claims asserted in this Action.

Furthermore, there is no basis to grant Defendants' extraordinary open-ended stay - this case does not "inextricably overlap" with the DOJ Case and there is no risk of inconsistent

---

[1]    "Defendants" are Teva Pharmaceuticals Industries Limited ("Teva"), Erez Vigodman ("Vigodman"), Eyal Desheh ("Desheh"), Robert Koremans ("Koremans"), Michael Derkacz ("Derkacz"), Kare Schultz ("Schultz"), Michael McClellan ("McClellan"), and Brendan O'Grady ("O'Grady" together with Vigodman, Desheh, Koremans, Derkacz, Schultz, and McClellan, the "Individual Defendants").  Unless otherwise noted, all emphases are added and all internal citations and quotations are omitted.

[2]    The "DOJ Case" or "DOJ Action" is *United States v. Teva Pharms. USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass.).

adjudications.  As they did in their motion to dismiss, Defendants miscast this securities fraud

case as "seek[ing] to prove that Teva's patient assistance program ("PAP") donations to two

charitable foundations violated the AKS and FCA, meaning that this Court will inevitably be

asked to decide whether the donations were legal . . . ."  Defs' MTS 1, 3.  **This too is obviously**

**wrong**.  As Plaintiff has consistently argued, his Section 10(b) securities fraud claims do not

depend on whether Teva's actions violated the Anti-Kickback Statute (the "AKS") or the False

Claims Act (the "FCA").  This Court also already rejected this argument in its Motion to Dismiss

Memorandum:

> And as the case law discussed above demonstrates, it is largely immaterial whether
> Teva's actions were illegal because Plaintiff does not argue that Teva was required
> to disclose this scheme merely because it may have been illegal; rather, Plaintiff
> argues that Teva was required to disclose this scheme *because it is what made*
> *Copaxone so successful*.

Memorandum Granting in Part and Denying in Part Defs.' Mot. to Dismiss 20 (Mar. 25,

2022) (the "Motion to Dismiss Memorandum" or "MTD Mem."), Doc. No. 74.

Yet, Defendants press on with this rejected argument out of bare necessity to try to force

their untenable position into alignment with the very narrow facts of *UnitedHealthcare Ins. Co.*

*v. Regeneron Pharmaceuticals, Inc.*, No. 20 CV 10664(VB), 2021 WL 6137097 (S.D.N.Y. Dec.

29, 2021), which upheld a stay in favor of the DOJ's case against Regeneron.  Defendants claim

that if Teva is found not liable for AKS or FCA violations in the DOJ Case, such a determination

would "clearly materially impact Plaintiff's proofs with respect to such critical elements as

materiality, scienter and loss causation."  Defs' MTS 2-3.  However, unlike the *Regeneron* case

where the plaintiffs' allegations "hinged" on Regeneron's violations of the AKS and FCA, as did

the DOJ's case, and thus Regeneron's case would clearly be impacted by the liability

determinations in the DOJ's case against Regeneron, Defendants do not explain (because there is

no plausible explanation) how a not-liable determination in the DOJ Case here would materially impact the elements in Plaintiff's securities fraud case.  Further, here Plaintiff also asserts securities fraud claims asserted against Teva's officers who are not a part of the DOJ Action. Plaintiff agrees with Defendants that his securities case shares certain underlying facts with the DOJ Case.  Defs' MTS 2.  But rather than favor a stay of this case, those shared facts support the immediate coordination with the DOJ Case because such coordination will streamline and expedite the discovery process in this case.  Plaintiff has proposed that Defendants provide Plaintiff the underlying documents produced in the DOJ case, and work out a plan for coordinating depositions.  Defendants have made no concrete proposal, and their actions suggest that they have little interest in meaningful coordination at this point.

Perhaps recognizing the overreach of a request to stay this entire case, Defendants offer an "olive branch" by proposing to proceed only with class certification discovery.  Defs' MTS 3-4. Such one-sided discovery would be wasteful and prejudicial to Plaintiff.  The bifurcation of discovery between class certification discovery and merits discovery is generally rejected by courts and Defendants bear the burden of showing that such bifurcation is warranted, which they have not done. The bifurcation of discovery in this securities case would be particularly prejudicial to Plaintiff because class certification issues and merits issues may overlap.  The issue of what evidence constitutes class certification discovery versus what would be reserved for later merits discovery would almost certainly lead to additional motion practice that would not be necessary if there is no such bifurcated discovery.

Defendants cannot carry their burden to impose an open-ended stay that could potentially last years.  Consequently, Defendants' Motion should be denied in its entirety and full discovery in this Action should proceed.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2020, the DOJ filed a civil complaint against Defendant Teva in the District of Massachusetts.  *See* Doc. No. 64-2 at 101-527 ("DOJ Complaint").  The DOJ Action alleges that Teva violated the AKS and the FCA by engaging in a scheme to cover the Medicare co-pay obligations for patients using Teva's multiple sclerosis drug, Copaxone.  *Id*.

Thereafter, on September 23, 2020, the instant action was filed in this Court alleging that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  *See* Doc. No. 1.  On March 26, 2021, the Court appointed Gerald Forsythe Lead Plaintiff and appointed Faruqi & Faruqi, LLP lead counsel for the putative class.  *See* Doc. No. 56.  Lead Plaintiff filed the operative complaint in this action—the Corrected Amended Class Action Complaint ("AC")—on August 10, 2021.  *See* Doc. Nos. 64, 65.  The AC alleges that Defendants made false and/or misleading statements during the Class Period regarding the financial results and market demand for one of Teva's core products, the multiple sclerosis drug Copaxone®, and about Teva's shared solutions program.  *See* Doc. No. 83-2 (Joint Rule 26(f) Report) at 3 (hereinafter, the "Rule 26(f) Report").  Specifically, the AC alleges that Defendants claimed Copaxone's success was due to presumably lawful and sustainable reasons, when in reality and unbeknownst to investors, Copaxone's success arose from a kickback scheme that Defendants had with certain charities.  *Id*. at 3-4.  The AC alleges that Defendants' statements were false and/or misleading because Defendants failed to disclose the underlying scheme supporting the success of Copaxone.  *Id*. at 4.

Defendants filed their motion to dismiss the AC on August 23, 2021.  *See* Doc. No. 66. After extensive briefing and oral argument, this Court denied the majority of Defendants' motion to dismiss.  *See* MTD Mem., Doc. No. 74.

Thereafter, the parties held their Rule 26(f) conference and drafted the Rule 26(f) Report,

which outlined, *inter alia*, their respective positions on Defendants' desired stay.  Following the Rule 16 conference on June 14, 2022, Doc. No. 82, Defendants filed their Motion to Stay, reiterating many of the same arguments they made in the Rule 26(f) Report and during the conference.

**ARGUMENT**

**I.      DEFENDANTS' MOTION FOR A STAY SHOULD BE DENIED**

      **A.      Standard**

There is no dispute that a district court has broad discretion to stay proceedings as an incident to its power to control its own docket.  *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  However, the party seeking a stay "bears the burden of establishing its need."  *Clinton*, 520 U.S. at 708.  If there is a "fair possibility" the opposing party may be damaged if a stay is granted, the movant "must make out a clear case of hardship or inequity in being required to go forward."  *Landis*, 299 U.S. at 255.  Defendants have not carried their burden here.

As Defendants point out (Defs' MTS 7), courts in this Circuit balance five principal factors when determining whether to stay a civil action in favor of a parallel ***criminal*** action: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases; and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending ***civil and criminal litigation***."  *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980).  Despite the wording of the fifth factor, Defendants claim that the

5

same policy considerations apply[3] where the pending government action is a ***civil*** enforcement action, but they cite no authority that supports that proposition.  Even assuming, *arguendo*, that is the case, Defendants have not met their burden of showing that a stay is warranted.

Although Defendants assert that courts routinely issue stays in favor of parallel government actions, purportedly to avoid wasteful duplication, Defendants are unable to cite any authority for the proposition that a class action alleging violation of the federal securities laws should be stayed in favor of a government civil action that must prove wholly different claims. *See generally* Defs' MTS.  Instead, they rely almost exclusively on a non-securities case from another jurisdiction, *UnitedHealthcare Ins. Co. v. Regeneron Pharms. Inc.*, No. 20 CV 10664(VB), 2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021), which is highly distinguishable.[4]

In *Regeneron*, two insurance companies sued Regeneron Pharmaceuticals ("Regeneron") for fraud, civil RICO, unjust enrichment, and violations of state consumer-protection laws alleging that Regeneron had violated the federal anti-kickback statute.  *Regeneron*, 2021 WL 6137097, at *1-2.  Before the insurance companies' suits were filed, the DOJ sued Regeneron, also alleging that it engaged in an illegal kickback scheme to promote one of its drugs in violation of the False Claims Act.  *Id*. at *2.  Regeneron's motion to stay the two private suits

---

3       Defs' MTS 7 n.7.
4       The other caselaw cited by Defendants on this point are also distinguishable.  In *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967), the trial court stayed all proceedings pending determination of a parallel ***criminal*** action.  Defs' MTS 7.  Likewise, *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir. 1979), involved a stay of the civil case until the expiration of the applicable criminal statute of limitations.  Defs' MTS 7.  Again, the instant matter does not involve any parallel criminal conduct and thus the same considerations are not present.  Finally, *Simms v. Philip Morris, Inc.*, No. 01-1107 (GK), 2003 WL 27394525, at *1-2 (D.D.C. July 7, 2003), concerned a failed class action which near-perfectly overlapped with a case brought by the DOJ *years* prior.  Defs' MTS 7-8.  The court found that in the absence of the stay, the civil litigation would cause "***substantial interference***" with the DOJ case.  *Id.* at *2. Here, the instant matter does not perfectly overlap with the DOJ Action, and Defendants have not articulated how the instant matter could possibly interfere with it.

pending the outcome of the DOJ action was granted because the court found that the claims in the DOJ action and the private actions "hinge[] on an adjudication that Regeneron engaged in an illegal kickback scheme[,]" and proceeding with both cases would therefore risk inconsistent judgments. *Id*. at *4.

The crux of Defendants' reliance on the *Regeneron* case is that Plaintiff would not be able to prove his claims under the Exchange Act if the DOJ does not prove that Teva's actions were illegal under the False Claims Act. As this Court has already found, however, "it is largely immaterial whether Teva's actions were illegal because . . . Plaintiff argues that Teva was required to disclose this scheme ***because it is what made Copaxone*** so successful." MTD Mem. 20.[5] For this reason and those explained more fully below, Defendants have failed to carry their burden of establishing the need for a stay.

> ### B. A Stay Pending The Resolution Of The DOJ Case Will Be Indefinite And Will Prejudice Plaintiff And The Class

Discovery in this action has already been delayed for over a year due to the PSLRA, which stayed discovery while Defendants' motion to dismiss was pending. *See* 15 U.S.C. § 78u-4(b)(3)(B). While Defendants contend that the requested stay at issue would not be "indefinite," because trial in the DOJ Action is scheduled for September 2023, this assertion is based on pure speculation that the DOJ Action will proceed as outlined in a Joint Status Report filed more than six months ago and also ignores completely the prospect of an appeal. *See* Defs' MTS 5. In fact, aside from the Joint Status Report, Plaintiff has no information regarding the status of discovery in the DOJ Action other than Defendants' bald assertion that discovery in that action "has been

---

[5]     Defendants' citation to *Mortland v. OhioHealth Corp.*, No. 2:06-cv-534, 2007 WL 9728545, at *2 (S.D. Ohio Feb. 7, 2007) is similarly misplaced. Defs' MTS 8. The *Mortland* case involved a parallel investigation by the DOJ that was initiated by the plaintiff in the civil suit and sought the exact same relief. *Mortland*, 2007 WL 9728545, at *1. Here, neither of those conditions is present.

proceeding apace[.]" Defs' MTS 5.  Even if trial commences as scheduled, resolution of any post-trial appeals could take years.  "Courts are generally reluctant to stay proceedings because they are concerned with vindicating the plaintiff's right to proceed with its case." *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005).

Additionally, Defendants' claims that allowing the DOJ Action to proceed would provide Plaintiff with relevant factual findings and legal determinations assumes that Plaintiff's claims and the DOJ's claims contain all of the same elements, which they do not.  Unlike the DOJ, under Section 10(b), plaintiffs must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta*, 552 U.S. 148, 157 (2008).

And if the DOJ Action settles at some point, Plaintiff will have very little to show for the extended wait, as such a settlement would likely avoid any findings of fact on the record or any admission of wrongdoing by Teva.  *See, e.g.*, *Bost. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 114-15 (D. Conn. 2021) (noting that Alexion reached a settlement agreement with the U.S. Attorney in Massachusetts for alleged violations of the Anti-Kickback Statute, which "did not contain any admission of wrongdoing by Alexion or its executives.").

Given these facts, a stay would interfere with Plaintiff's right to pursue his case expeditiously, for himself and for the benefit of the class for which he serves as a fiduciary. Such stay would prejudice Plaintiff, and by extension the class, as deponents' memories fade, key witnesses leave the Company or potentially pass away, and evidence is potentially lost or grows stale.  *See Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351,

at *4 (D. Del. Dec. 13, 2010) ("Resuming this litigation after a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents.").

While Defendants claim that evidence would be preserved in the DOJ Action, there is no way to ensure that evidence relevant to this securities class action will be adequately explored, much less preserved for later use by Plaintiff, given the differences between the claims. After all, the DOJ has asserted no claims against any of the individual defendants in this action, so their memories of the relevant events are unlikely to be preserved through testimony in the DOJ action. *Compare* AC ¶¶ 17-24 (Plaintiff's complaint, listing the parties as Teva, Vigodman, Desheh, Koremans, Derkacz, Schultz, McClellan, and O'Grady), *with* DOJ Complaint ¶ 1 (listing the defendants as Teva and Teva Neuroscience, Inc.). And even if they are deposed by the DOJ, their testimony will be unlikely to include information relevant to Plaintiff's claims that are not relevant to the DOJ's action. *See In re Universal Health Servs., Inc., Derivative Litig.*, No. 17-2187, 2018 WL 8758704, at *1 n.1 (E.D. Pa. Dec. 10, 2018) (declining to stay a shareholder derivative action until a federal securities action and government investigation were resolved, explaining that discovery in the federal securities action would not satisfy the concerns of lost memories, etc., because, "[a]lthough there will be significant overlap in witnesses in the two cases, not all witnesses will be the same and those witnesses that are in fact the same may not be asked questions in the securities class action that Plaintiffs would ask in the derivative litigation").

### C.    Defendants Have Not Established That Proceeding With This Action Would Be Unduly Burdensome

Defendants attempt to show that proceeding with this action would be burdensome by claiming that much of the discovery sought by Plaintiff is duplicative of the discovery being pursued and produced in the DOJ Action. This factor actually weighs ***against*** granting a stay

9

and commencing immediately to coordinate discovery between the two cases.[6]  Defendants have

not articulated how producing documents that have already been compiled and sorted would be

unduly burdensome, or why exactly the DOJ would seek to intervene in this action.  Notably,

Teva has been defending a civil RICO claim brought by Humana, Inc. in the Middle District of

Florida arising out of the same conduct at issue in the DOJ Action and the instant matter.  *See*

*generally* Complaint, *Humana, Inc. v. Teva Pharmaceuticals USA, Inc.*, No. 6:21-cv-00072

(M.D. Fla. Jan. 8, 2021), Doc. No. 1.  The fact that Teva did not seek a similar stay of all

proceedings in that action pending the resolution of the DOJ Action undercuts their arguments

about the burden of producing discovery in both actions here.

In any event, courts often reject arguments that producing discovery previously produced

in other actions is burdensome.  *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, No.

MDL-1446, 2002 WL 31845114, at *2 (S.D. Tex. Aug. 16, 2002) (lifting the PSLRA's

discovery stay and ordering defendants to produce documents already produced to government

entities and others because the burden on Enron "would be slight" where it "already found,

reviewed, and organized the documents"); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL

22013905, at *1-2 (N.D. Ill. Apr. 23, 2003) (partially lifting the PSLRA's discovery stay after

finding plaintiffs would be disadvantaged if they lacked access to documents previously

produced to the government and other agencies).  Defendants' own authority is not to the

contrary.  In *Deerfield*, the court held that production of documents to the plaintiff in a civil

action that had previously been given to a grand jury during a criminal investigation was

warranted because "the documents in question [had] already been identified and sorted[.]"  87

---

[6]    Plaintiff has attempted to discuss coordination of the cases with Defendants.  Plaintiff also has served his opening discovery demands seeking the documents that were produced in the DOJ Case.

F.R.D. at 59.

Furthermore, Defendants have alternative avenues for seeking relief from discovery they deem unduly burdensome short of a stay of the litigation. For example, they can meet and confer with Plaintiff to discuss the need to narrow discovery requests or request additional time to respond. *See* Local Rule 26.1(f) (providing that counsel must make a "reasonable effort" to resolve discovery disputes before filing any discovery motions); Judge Marston's Policies and Procedures, § II.C.2 (requiring counsel to have discussions to try and resolve any discovery disputes). They can also seek a protective order pursuant to Fed. R. Civ. P. 26(c)(1). Thus, a motion to stay is not necessary for Defendants to avoid any burdens that responding to discovery in both actions might cause.

**D.      Defendants Have Not Established That The Convenience Of The Courts Or The Interests Of Nonparties Favor A Stay**

Defendants argue that this Court and the District of Massachusetts court presiding over the DOJ Action would be required to undertake overlapping and nearly identical analyses regarding the legality of Teva's charitable donation scheme, resulting in a waste of judicial resources. As explained above, this misapprehends the claims at issue in this action, as well as the parties. To reiterate, Plaintiff's claims here do not hinge on a finding of illegality vis-à-vis the charitable donation scheme. *See* MTD Mem. 20. This fact contrasts sharply with the cases, including *Regeneron*, cited by Defendants in support of this argument, which generally involve nearly completely overlapping defendants and claims, and in which the resolution of one case would resolve or directly impact the respective rights of the parties in the other action.[7] Aside

---

[7]      For example, *HMT, Inc. v. Bell BCI Co.*, No. 06-CV-6193T, 2007 WL 295328, at *2 (W.D.N.Y. Jan. 30, 2007) involved claims related to the same contract in which the resolution of the first-filed action would directly impact the respective rights of the parties in the second action. *Specrite Design, LLC v. Elli N.Y. Design Corp.*, No. 16 Civ. 6154 (ER), 2017 WL

11

from a determination of the legality of the charitable donation scheme, Defendants have not provided any insight into what issues in controversy would be narrowed or disposed of by allowing only the DOJ Action to proceed.

> **E.      Defendants Have Not Established That The Public Interest Favors A Stay**

Defendants argue that the public's interest is served and protected by the DOJ Action because the DOJ Action will determine whether Teva's charitable donations were "lawful and proper." Defs' MTS 9. As explained above, the legality of Teva's charitable donations is immaterial to the resolution of this securities class action. *See* MTD Mem. 20. The key issue in the instant matter is Defendants' failure to disclose the charitable donation scheme, regardless of its legality. Consequently, whether the DOJ Action ultimately results in a finding that the charitable donations were legal is of no import and should not be considered as a basis to stay this action pending resolution of that issue.

Tellingly, Defendants provide no other legal or factual questions that would be decided in the DOJ Action that have a bearing on the instant matter. Simply put, there is no public interest that is vindicated by staying this action in favor of the DOJ Action.

## II.     DEFENDANTS' REQUEST TO BIFURCATE THIS CASE IS UNWARRANTED AND EXTREMELY PREJUDICIAL TO PLAINTIFF AND THE CLASS AND SHOULD BE REJECTED

Defendants argue that if the action is stayed pending the outcome of the DOJ's Action, class certification and discovery related thereto should nonetheless go forward. In other words, Defendants are proposing bifurcation of class certification and merits discovery, which courts routinely deny because the distinction between those types of discovery is "often blurry, if not

---

3105859, at *6 (S.D.N.Y. July 20, 2017) involved related parties and issues such that resolution of the first case would determine the rights of the parties in the second case. *Readick v. Avis Budget Group, Inc.*, No. 12 Civ. 3988(PGG), 2014 WL 1683799, at *5 (S.D.N.Y. Apr. 28, 2014) involved overlapping ***plaintiff*** classes.

spurious." *In re Plastics Additives Antitrust Litig.*, No. Civ.A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004) (declining to bifurcate class and merits discovery); *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."). To the extent Local Rule 23.1(c) can be read to encourage bifurcation, Plaintiff notes that the rule directs the court to first consider "the views of counsel," suggesting that such bifurcation is not a one-size-fits-all approach.

In any event, "[a] court's ruling on whether to bifurcate requires balancing . . . several considerations, including the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." *Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Ins. Co.*, 319 F.R.D. 209, 211 (E.D. Pa. 2017). A defendant seeking bifurcation bears the burden of proving that bifurcation is warranted. *Id.* Defendants fail to carry this burden.

Far from promoting convenience and efficiency, bifurcation in this case will serve only to needlessly complicate matters to Plaintiff's detriment. Putative securities class actions like this one are particularly ill-suited for bifurcation because, as Defendants concede, class certification issues and merits issues may overlap. For example, to certify the class, Plaintiff would need to establish that "questions of law or fact common to class members predominate" under Rule 23(b)(3). The predominance inquiry begins with the elements of the claim. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). One of the elements that Plaintiff will have to prove is reliance. *Id.* at 809-10. Due to the unnecessary evidentiary burden that proving direct reliance would place on securities plaintiffs, the Supreme Court has held that plaintiffs can invoke a rebuttable presumption of reliance based on the "fraud-on-the-market" theory. *Id.* at

13

811.  A defendant may rebut this presumption by showing that the misrepresentations at issue did not affect the stock's market price (*i.e.*, that they had no "price impact").  *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S.Ct. 1951, 1962 (2021).  Internal documents that reflect Defendants' or others' opinions on why Teva's stock price moved or whether certain information would have an impact on stock price could be used to rebut Defendants' price impact arguments.  Thus, price impact evidence tends to overlap with other merits issues, and there is no reason to believe that this action will be any different.  *See id.* at 1961 ("On remand, the Second Circuit must take into account *all* record evidence relevant to price impact, ***regardless whether that evidence overlaps with materiality or any other merits issue***."); *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 610 (7th Cir. 2010) ("Given the significant and growing overlap between the evidence at stake at the certification and merits stages, district courts may well choose not to bifurcate discovery at all in putative fraud-on-the-market securities class actions.").

As such, determining what merits discovery, and how much, Plaintiff is entitled to during the "class certification" phase of the action will undoubtedly lead to motion practice, wasting judicial and party resources.  *See Plastics Additives*, 2004 WL 2743591, at *3 ("Bifurcation would also belie principles of judicial economy, as the Court may be forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as compared to 'class' discovery."); *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2014 WL 12746902, at *4 (N.D. Ill. Feb. 24, 2014) ("bifurcation can actually increase the costs of litigation"); *In re Semgroup Energy Partners, L.P., Sec. Litig.*, No. 08-MD-1989-GKF-FHM, 2010 WL 5376262, at *3 (N.D. Okla. Dec. 21, 2010) ("An order restricting discovery to class issues would be impracticable because of the closely linked issues, and inefficient because it would be certain to require ongoing supervision of discovery.").

14

Defendants attempt to spin their bifurcation proposal as some kind of a consolation prize for Plaintiff should Defendants be granted the stay, arguing that "because class certification and merits issues may overlap, . . . Plaintiff would actually be getting the benefit of some merits-related discovery during the pendency of the stay[.]" Defs' MTS 17. This argument, however, only underscores why such bifurcation would needlessly waste resources and prejudice Plaintiff. That is, Plaintiff would have to engage in merits discovery for class certification, stop until the DOJ case concludes, and then resume discovery years later.[8] The time lag would undoubtedly require Plaintiff to re-review documents and restart avenues of investigation into the merits whenever the DOJ action is resolved, which is inefficient and will lead to further delays as Plaintiff tries to get the litigation back on track.

Defendants' argument that bifurcation will allow them to take Plaintiff's deposition while the rest of the case is stayed, "preserving his testimony and eliminating any risk of fading memories and the like[,]" conveniently ignores that the converse will be true for Plaintiff, who will be doubly inconvenienced and prejudiced by this arrangement. Defs' MTS 17. That is, Plaintiff will have to sit for a deposition and produce discovery for class certification, but will be prevented from securing critical merits discovery due to the stay as crucial evidence will be lost to time. *See* Section I.B, *supra.*

Furthermore, nothing in Federal Rule of Civil Procedure 23 or Local Rule 23.1 suggests that class certification should go forward ***while the rest of the action is stayed***. The rules' directives that class certification should be decided "early" do not lend support to Defendants' novel approach to litigating this action. Indeed, Rule 23's directive that a class certification

---

[8] Trial is currently scheduled for September 2023 in the DOJ action, or about 10 months from the end of class certification-related discovery in this action under Defendants' proposed schedule. *See* Defs' MTS 8 n.8, 16 n.14. If the trial is delayed or the losing party appeals the verdict, it could be years before Plaintiff is able to resume discovery in this action.

15

decision be made "[a]t an early practicable time" replaced the more urgent language of the pre-2003 amendments "in order to discourage premature certification determinations." Fed. R. Civ. P. 23(c)(1)(A).[9] *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 255 (3d Cir. 2016); *cf.* 3 Newberg on Class Actions § 7:8 (6th ed. June 2022 Update) ("[T]he trend in the federal courts over the past few decades has been to push the certification decision later into the case and hence to decide dispositive motions prior to the certification motion.").

Accordingly, allowing class certification to go forward while the rest of the action is stayed pending resolution of the DOJ's action will serve only to inconvenience the parties, prejudice Plaintiff, and waste judicial resources.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Stay be denied.

Dated: July 12, 2022                                Respectfully submitted,

                                                    **FARUQI & FARUQI, LLP**

                                                    By:     *s/ Timothy J. Peter*
                                                            Timothy J. Peter

                                                    Timothy J. Peter (# 306965)
                                                    1617 John F Kennedy Blvd #1550
                                                    Philadelphia, PA 19103
                                                    Telephone: 215-277-5770
                                                    Facsimile: 215-277-5771
                                                    Email: tpeter@faruqilaw.com

                                                    James M. Wilson, Jr. (admitted *pro hac vice*)
                                                    Robert W. Killorin (admitted *pro hac vice*)
                                                    **FARUQI & FARUQI, LLP**
                                                    685 Third Avenue, 26th Floor

---

[9]    The only authority Defendants cite in favor of bifurcation here, *Deerfield*, 87 F.R.D. at 60, was decided well before this amendment to Rule 23. In any event, that case is inapposite because there, the **plaintiffs wanted** to move forward with class certification while the action was otherwise stayed in favor of a parallel criminal action. *Id.* at 59.

New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com
         rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiff and Lead
Counsel for the putative Class*

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 12, 2022, the foregoing document has been filed electronically and is available for viewing and downloading from the ECF system and that I caused true and correct copies of the foregoing to be served on all counsel of record via CM/ECF.

Dated: July 12, 2022                              By: s/ *Timothy J. Peter*
                                                          Timothy J. Peter

18