**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD., Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br>  v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES LIMITED, et al.,<br><br>       Defendants. | Civil Action No.:  2:20-cv-04660-KSM<br><br>Hon. Karen S. Marston |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO STAY PROCEEDINGS OTHER THAN**
**<u>CLASS CERTIFICATION IN FAVOR OF THE DOJ'S CASE</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

    I.      ALL OF THE *GOLDEN QUALITY ICE CREAM* FACTORS FAVOR A
           STAY ......................................................................................................... 2

    II.     CLASS CERTIFICATION SHOULD BE LITIGATED AND DECIDED
           WHILE OTHER PROCEEDINGS AWAIT THE OUTCOME OF THE
           RAPIDLY ADVANCING DOJ ACTION............................................................ 6

CONCLUSION.......................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*,
    87 F.R.D. 53 (E.D. Pa. 1980)........................................................................................1, 2, 6

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
    141 S.Ct. 1951 (2021).......................................................................................................9

*Goro v. Flowers Foods, Inc.*,
    2019 WL 6252499 (S.D. Cal. Nov. 22, 2019) ..................................................................5

*In re Groupon, Inc. Sec. Litig.*,
    2014 WL 12746902 (N.D. Ill. Feb. 24, 2014) ..................................................................9

*Humana, Inc. v. Teva Pharmaceuticals USA, Inc.*,
    No. 6:21-cv-00072 (M.D. Fla. Jan. 8, 2021)....................................................................8

*Kaiser v. Stewart*,
    1997 WL 66186 (E.D. Pa. Feb. 6, 1997) ..........................................................................8

*Morgenstern v. Fox Television Stations of Philadelphia*,
    2010 WL 678113 (E.D. Pa. Feb. 23, 2010) ...........................................................1, 2, 6

*Nuccio v. Duve*,
    2015 WL 1189617 (N.D.N.Y. Mar. 16, 2015) .................................................................4

*In re Plastics Additives Antitrust Litig.*,
    2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ....................................................................9

*In re Semgroup Energy Partners, L.P., Sec. Litig.*,
    2010 WL 5376262 (N.D. Okla. Dec. 21, 2010).................................................................9

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)..........................................................................................................3

*United States v. Teva Pharmaceuticals USA, Inc.*,
    No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020).............................................4, 5, 7

*UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*,
    2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021) ......................................................1, 2, 6

**Statutes, Rules, and Other Authorities**

Private Securities Litigation Reform Act, 15 U.S.C.A. § 78u-4...................................................9

Federal Rule 23(c)(1)(A) ..............................................................................................................9

Local Rule of Civil Procedure 23.1(c)............................................................................................9

**INTRODUCTION**

Plaintiff's opposition to Defendants' motion for a partial limited-duration stay of proceedings in this action (the "Motion") is built on a fiction.  As if mere repetition could make it so, Plaintiff's opposition repeatedly denies the self-evident: that the overwhelming majority of substantive allegations in his Complaint are taken, lock-stock-and-barrel, from the earlier-filed DOJ Action.  Indeed, as the accompanying appendix graphically illustrates, the Complaint contains *over one hundred* paraphrasings, direct and unattributed quotations, citations or other references to the DOJ's complaint.  Accordingly, as the *Regeneron* court made clear, and consistent with the factors applied by this Court in *Golden Quality Ice Cream* and *Morgenstern*, the Government's earlier-filed enforcement action should be allowed to proceed, streamlining discovery and potentially narrowing the issues for determination in this case.

Defendants' proposal offers a reasonable and efficient path forward while avoiding the burden that would inevitably result from Plaintiff attempting to either insinuate himself into or flat-out duplicate the already advanced discovery in the DOJ Action.  The parties should proceed in the first instance with the threshold issue of class certification, which is potentially case dispositive, while allowing the DOJ Action to develop the factual record, reducing costs for all parties (including keeping Plaintiff's counsel "lodestar" down for the benefit of the absent class members they seek to represent in the event of any eventual recovery for the shareholders) and avoiding the need for this Court to deal with potential motion practice regarding coordination and/or duplicative discovery.  This approach is not only consistent with the Federal Rules of Civil Procedure (and, in terms of a prompt class certification schedule, mandated by this Court's Local Rules), but also provides substantial benefits to the parties and the Court by avoiding undue burden, expense and inconsistent rulings, and conserving judicial resources.

1

**ARGUMENT**

**I.    ALL OF THE *GOLDEN QUALITY ICE CREAM* FACTORS FAVOR A STAY**

As shown in the Motion, all of the factors identified by this Court in *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980), and reiterated in *Morgenstern v. Fox Television Stations of Philadelphia*, 2010 WL 678113 (E.D. Pa. Feb. 23, 2010), favor a stay under the circumstances here.  Plaintiff's arguments to the contrary fail.

*First*, Plaintiff observes that this case "does not ***perfectly overlap*** with the DOJ action." Opp. at 6 n.4.[1]  But that is not the standard for a stay.  None of the cases Plaintiff cites requires "perfect overlap" between parallel proceedings.  It is enough that, as in *UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, 2021 WL 6137097, at *5 (S.D.N.Y. Dec. 29, 2021), the overlap between the two cases "means that a resolution in the DOJ Action would greatly simplify" the later case.  Here, for all of the reasons set forth in the Motion and below, it would.

Plaintiff's further suggestion that, in order for two cases to have sufficiently overlapping factual and/or legal issues to warrant a stay, the claims asserted in both actions must "contain all of the same elements" (*see* Opp. at 8) is just a variation on the same theme, since that would mean, in effect, that the claims themselves must be ***identical***.  Again, that is not the law.  It certainly was not the case in *Regeneron*, where, as here, the insurance company plaintiffs' claims were not for violations of the Anti-Kickback Statute ("AKS") or False Claims Act ("FCA"),[2] but instead "rel[ied] on the same ***premise***" as the DOJ Action—the alleged impropriety and economic contribution of the charitable PAP donations.  *Regeneron*, 2021 WL 6137097, at *4.  The salient point is not, as Plaintiff suggests, that the claims asserted by the private plaintiffs in *Regeneron*

---

[1] Unless indicated otherwise, all emphases are added.

[2] They were for fraud, violation of state consumer protection laws, civil RICO and unjust enrichment, all of which share elements similar to a federal securities fraud claim and ***different*** from an AKS claim.

2

were not federal securities fraud claims; rather, it's that, like the securities fraud claim here, those claims were not for AKS violations, but were nevertheless stayed in favor of the Government AKS case on which they were based.

Plaintiff contends that Defendants have not explained "how a not-liable determination in the DOJ Case here would materially impact the elements in Plaintiff's securities fraud case." Opp. at 2-3. To be clear, here's how Plaintiff himself summarizes the thesis of his Complaint *in his opposition brief*:

> [T]he [Complaint] alleges that Defendant claimed Copaxone's success was due to presumably lawful and sustainable reasons, when in reality unbeknownst to investors, Copaxone's success arose from a kickback scheme that Defendants had with charities.

Opp. at 4. Here is one example of how a "not-liable determination" could impact the elements of a securities fraud claim premised on that theory: such a determination would preclude Plaintiff from ever establishing the elements of falsity and materiality. If the alleged charitable donation "scheme" is held to be legal and permissible in the DOJ Action, then the failure to disclose its details could not have "significantly altered 'the total mix' of information made available" to investors in making their investment decision (*see TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)), since that "scheme," if perfectly legal, would be permitted to continue unabated and contribute to legitimate Copaxone sales in precisely the same manner it always had. In other words, Copaxone's success would, indeed, be "due to … lawful and sustainable reasons." Opp. at 4. Moreover, with respect to the critical element of scienter, if the scheme was, in fact, "lawful and sustainable," then it would be impossible for Plaintiff to establish that Defendants intended to "mislead" anyone by failing to disclose it. Allowing the first-filed DOJ Action to resolve the lawfulness of the alleged "scheme" under the AKS and FCA, and thus its sustainability, before

this case proceeds will serve the public interest by conserving substantial court and party resources. *See, e.g.*, *Nuccio v. Duve*, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015).

**Second**, as to Plaintiff's boldfaced contention that the facts of the two cases do not "inextricably overlap" (Opp. at 1) but merely "share[] certain underlying facts" (*id.* at 3), it is actually difficult to overstate the degree of factual overlap between the two cases. Plaintiff's Complaint extensively copies the factual allegations from the DOJ complaint. *See* Answer ¶¶ 31-34, 41-59, 64-65, 68-69, 168-69, 194-95. These are not merely ancillary details but encompass core portions of Plaintiff's case. To illustrate, rather than simply characterize, the degree to which the cases are factually intertwined, Defendant has compiled a chart, attached as Appendix A, which lays the allegations in Plaintiff's Complaint side-by-side with the allegations they borrow from the DOJ complaint. All told, Plaintiff cites, refers to, quotes (with and without attribution), paraphrases or mirrors the DOJ complaint and exhibits more than one hundred times to plead his case here. *See also* Joint Rule 26(f) Report at 4-5 (Jun. 7, 2022) (Plaintiff stating that "[t]he facts supporting Plaintiff's claims arise from … the DOJ[] Complaint and corresponding exhibits.").[3]

Indeed, the very fact that Plaintiff seeks the discovery for which he is currently clamoring – "[a]ll Documents You produced to plaintiff in *United States v. Teva Pharmaceuticals USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020)"[4] – is tacit recognition that establishing the factual predicate for his claims in this case will require him to prove (among other things) ***the exact same things*** that are the subject of ongoing discovery in the DOJ Action.[5]

---

[3] A copy of the Rule 26(f) Report is attached to Defendants' Motion as Exhibit A.

[4] *See* Pl.'s RFPs at 7 (Req. No. 1)), a copy of which is attached to Defendants' Motion as Exhibit C.

[5] In any event, if Plaintiff was correct that the two cases merely "share[] certain underlying facts," this Request, while perhaps facially appealing due to its apparent simplicity, would be categorically improper. "Asking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for. There could be a number of reasons why documents appropriately

4

In an effort to create some daylight between the allegations in the DOJ case and his own, Plaintiff is at pains to define the key issue in this case as whether and to what extent the alleged "kickback scheme" was the true reason for or real source of Copaxone's economic success. Opp. at 4, 7. But, as recent briefing in the DOJ Action makes clear, numerous issues regarding the factors contributing to Copaxone's economic success are squarely at issue, have been the subject of discovery/motion practice, are being actively litigated and, as the case proceeds to dispositive motion practice and trial, will be decided by the trier of fact in the DOJ Action. These include, among others, the relationship between Teva's Copaxone price increases, larger Medicare copay obligations and larger resulting alleged "kickbacks," Teva's alleged profit motive in covering patient copays and allegedly increased damages due Copaxone price increases. *See* Smith Decl. ¶ 8;[6] *see also, e.g.*, The United States' Sur-Reply in Response to Teva's Motion to Compel Medicare Data at 4, *United States v. Teva Pharms. USA, Inc.*, No. 1:20-cv-11548-NMG (D. Mass. Aug. 18, 2020), ECF No. 62 at 4 ("Teva's Copaxone price increases are relevant … and demonstrate Teva's profit motive in covering patient copays.") (quotations omitted). Thus, the DOJ Action is and will be exploring the factors contributing to Copaxone's economic success, including the economic impact of the challenged charitable donation "scheme" – "factual questions that" not only "have a bearing on," but according to Plaintiff's own framing of the issue, will be determinative in "the instant matter." *See* Opp. at 4, 12.[7]

---

requested and provided in another case – even if the subject matter of those cases seem to overlap – would be irrelevant or burdensome to provide in another case." *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, *18 (S.D. Cal. Nov. 22, 2019). Here, however, the overlap is so extensive that a stay is needed.

[6] Declaration of James P. Smith, dated July 18, 2022, and submitted herewith.

[7] Even if there is a resolution in the DOJ Action prior to any findings of fact or conclusions of law that would serve to narrow the issues in this case (*see* Opp. at 8), the stay would still provide substantial benefits to all parties and the Court by, *e.g.*, avoiding unnecessary and duplicative motion practice over coordination and scope and providing Plaintiff with a developed discovery record (at no cost) that will allow any remaining discovery in this case to be substantially streamlined.

***Finally,*** Plaintiff attempts to sidestep one of the critical factors identified by this Court in *Golden Quality Ice Cream* and *Morgenstern* – the relative public interest in the private litigation to be the stayed versus the parallel governmental action – on the grounds that it is only implicated when the governmental action is criminal in nature.  Not so.  The same policy considerations apply where, as here, the first case is a civil governmental enforcement action.  Indeed, in *Morgenstern* itself (cited in the Motion at 7, 9), where the parallel governmental action was civil in nature, Judge O'Neill expressly found "the *Golden Quality* Court's analysis to apply with equal force here." 2010 WL 678113, at *1 n.2 (considering parallel civil litigation).  And, of course, in *Regeneron*, a case which presents a nearly identical set of circumstances (Motion at 8), the court reached the same conclusion when staying the case in favor of parallel civil governmental enforcement proceedings.  2021 WL 6137097, at *2.

## II.    CLASS CERTIFICATION SHOULD BE LITIGATED AND DECIDED WHILE OTHER PROCEEDINGS AWAIT THE OUTCOME OF THE RAPIDLY ADVANCING DOJ ACTION

As shown in the Motion, the stay Defendants seek is neither blanket nor "open-ended" and would avoid near-intractable short-term coordination issues for all parties and the courts in both cases.

The DOJ Action, which has been active since August 18, 2020, is rapidly working its way towards dispositive motion practice.  There, Teva substantially completed document production on July 15, numerous depositions are in the process of being scheduled and will take place over the coming two and a half months, all fact discovery is set to close at the end of September, summary judgment briefing will begin in March 2023, and trial remains set for September 18, 2023.[8]  Smith Decl. at 6; Joint Status Report at 1-2, *United States v. Teva Pharms.*, No. 1:20-cv-

---

[8] In his opposition, Plaintiff raises questions regarding the current status of discovery and other proceedings in the DOJ Action, including whether the case management deadlines set forth in the Joint Status Report

6

11548-NMG, ECF No. 50 ("Joint Status Report"); Clerk's Notes, *United States v. Teva Pharms.*, No. 1:20-cv-11548-NMG, ECF No. 61.  Accordingly, the requested stay will not be "indefinite."

As to "coordination" absent a stay, while he has requested clone document discovery, Plaintiff has yet to explain how he envisions coordinating depositions with the DOJ Action. Plaintiff ignores the fact that at least 21 of the individuals he identified as potential witnesses[9] are already involved with discovery in the DOJ Action, and that a number of these individuals are likely to testify in the next two and a half months.  *See* Smith Decl. ¶ 6(c) (noting that at least six of the potential witnesses identified by Plaintiff have already been requested to be deposed by the DOJ).  Certainly, Plaintiff's counsel has provided no indication that they have been in touch with the DOJ about potential coordination between the two cases, let alone that the DOJ would be prepared to permit them to participate in any way in the depositions in that case.[10]  Plaintiff, it seems, has given little critical thought to these practical hurdles, much less taken any steps to attempt to address them.  Rather, it seems Plaintiff wants dozens of Teva employees and numerous third-party witnesses to bear the burden of preparing and sitting for two different depositions on the same subject matter and Defendants to bear the cost of defending them.

---

filed in the DOJ Action on December 16, 2021, remain operative and are being timely met.  As set forth in the Smith Declaration, counsel for Teva in the DOJ Action has (a) confirmed that the deadlines in the Joint Status Report remain operative, and (b) provided specifics with respect the current advanced state of discovery in the DOJ Action.  *See* Smith Decl. ¶¶ 4-7.

[9] Plaintiff's Initial Disclosures are attached to Defendants' Motion to Stay as Exhibit B.

[10] Plaintiff cites *In re Universal Health Servs., Inc., Derivative Litigation* as an example of a shareholder derivative action which was not stayed in favor of a federal securities class act because the witnesses might not be asked all questions in their depositions in the latter case that might be relevant in the former.  Opp. at 9.  However, in *In re Universal Health*, both cases were "in the beginning stages of litigation," "before the same judge," and thus the parties and the court could easily "coordinate their discovery efforts."  2018 WL 8758704, at *1 n.1 (E.D. Pa. Dec. 10, 2018).  Here, the cases are at vastly different stages and before different judges in different districts, not at all like the situation in *Universal Health*, where "any discovery issues can be resolved in a consistent manner or even consolidated to promote efficiency."  *Id.*

7

These are just some of the thorny logistical issues that would need to be carefully vetted by multiple parties, their counsel and judicial officers during the course of "coordinated" discovery. Staying this case while allowing the DOJ Action to develop the record over the next 10 months, on the other hand, could obviate any need for such a burdensome, expensive and wasteful process. *E.g.*, *Kaiser v. Stewart*, 1997 WL 66186, at *3 (E.D. Pa. Feb. 6, 1997). For example, if Plaintiff identifies relevant information that was not explored with a given witness in the DOJ Action, he can promulgate narrowly tailored written discovery to elicit such information, saving everyone time, money and needless burden.

Moreover, proceeding with this case full-tilt while attempting to coordinate with the DOJ Action would undoubtedly embroil this Court in extensive motion practice. Indeed, the Court need only take a cursory glance at the dockets in the DOJ Action and *Humana, Inc. v. Teva Pharmaceuticals USA, Inc.*, No. 6:21-cv-00072 (M.D. Fla. Jan. 8, 2021), to get a sense for what would await. Such a review reveals that the absence of a stay in *Humana* pending the outcome of the DOJ Action has resulted in, among other things, the filing of two motions to compel by the plaintiff related to its efforts to obtain "clone discovery" from the DOJ Action, one of which Teva successfully opposed and the other of which was successfully opposed by Advanced Care Scripts ("ACS"), a third-party witness in this action. *See* Order Denying Motion to Compel, *Humana*, No. 6:21-cv-00072, ECF No. 68; Order Denying in Part Motion to Compel, *Humana*, No. 6:21-cv-00072, ECF No. 103.

On the other hand, in contrast to the above-described discovery quagmire in the absence of any stay, discerning what categories of merits discovery may be relevant to class certification is not the impossible line-drawing exercise Plaintiff makes it out to be.[11] It would certainly be orders

---

[11] Plaintiff's suggestion that he would require discovery of internal Teva documents on the issue of price impact, for example (Opp. at 14), fails to recognize that defendants, not plaintiffs, have now been held to

of magnitude less complicated – and require decidedly less Court intervention – than the intricate coordination needed if full-blown merits discovery were to proceed in both actions simultaneously.

Defendants' proposed approach is not "bifurcation" (which is what Plaintiff's cases address)[12] and is fully consistent with, if not mandated by, the applicable rules governing class certification. Specifically, Federal Rule 23(c)(1)(A) dictates that "[a]t an early practicable time …, the court must determine by order whether to certify the action as a class action," while Local Rule of Civil Procedure 23.1(c) requires that "[a]s early as practicable, and after considering the views of counsel, the Court shall issue an order scheduling all proceedings relating to the filing of the motion for class certification" *including class certification-specific discovery*. Plaintiff's suggestion that the policies underlying these rules and the PSLRA are somehow geared toward allowing securities class action plaintiffs early access to extensive merits discovery stands those policies on their collective head. In reality, they are intended to serve a gatekeeping function precisely in order to protect corporate defendants from plaintiffs gaining premature access to such wide-ranging discovery. In enacting the PSLRA, for example, Congress was prompted "by significant evidence of abuse in private securities lawsuits," including "*the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized [defendants]… to settle….*" H.R. Conf. Rep. No. 104-369, at 31 (1995). Thus, Congress created

---

"bear the burden of persuasion to prove a lack of price impact by a preponderance of the evidence at class certification." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S.Ct. 1951, 1958 (2021). If Defendants chose to oppose class certification on that basis and Plaintiff believed their grounds for doing so might be rebutted by internal documents, he could point that out as a matter of argument in his reply brief.

[12] Even if Defendants were seeking bifurcated discovery in the absence of a broader stay of proceedings (a very different proposition), Plaintiff's cases specifically recognize that, "where class certification is sought *courts often bifurcate between certification issues and those related to the merits of the allegations*," *In re Semgroup Energy Partners, L.P., Sec. Litig.*, 2010 WL 5376262, at *2 (N.D. Okla. Dec. 21, 2010), and that bifurcation is appropriate where, as here, it "serves the interests of 'fairness and efficiency.'" *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *2 (E.D. Pa. Nov. 29, 2004); *see also In re Groupon, Inc. Sec. Litig.*, 2014 WL 12746902, at *2 (N.D. Ill. Feb. 24, 2014) (considering factors including expediency and economy).

PSLRA's automatic discovery stay during the pendency of motions to dismiss federal securities class actions like this one.  For these reasons, and because they tend to involve decidedly less overlap with merits issues than other types of class actions (*e.g.*, antitrust cases), prioritization of an early class certification determination, prior to significant merits discovery, is routine in federal securities fraud class actions.  It makes all the more sense here, where similar fact discovery is proceeding and overlapping substantive issues are being litigated in a parallel action.  Unlike Plaintiff's ill-considered "all ahead full" approach, Defendants' proposal is both feasible and in line with what the applicable Rules contemplate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion. Defendants submit that the most reasonable path forward is to allow the DOJ Action to proceed while the parties in this action focus their efforts on the threshold issue of class certification.  This approach is consistent with public policy, the Federal Rules and this Court's Local Rules and will benefit the parties and the Court by allowing the factual record to be developed and preserved in the DOJ Action and this case to advance without potentially duplicative, unnecessary and wasteful proceedings.

Respectfully submitted,

Dated:  July 18, 2022

By:  */s/ Linda T. Coberly*
Linda T. Coberly
Daniel M. Blouin
35 West Wacker Drive, Suite 4700
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 (fax)
dblouin@winston.com
lcoberly@winston.com

James P. Smith III
Kerry C. Donovan

10

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
(212) 294-4700 (fax)
jpsmith@winston.com
kcdonovan@winston.com

Mathieu J. Shapiro
Melissa Blanco
OBERMAYER     REBMANN     MAXWELL     &
HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
215-665-3014
215-665-3165 (fax)
mathieu.shapiro@obermayer.com
melissa.blanco@obermayer.com

*Attorneys for Defendants*

11