# EXHIBIT A

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3150

_____

UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM;
IRONWORKERS LOCALS 40, 361 AND 417 UNION SECURITY FUNDS,
Individually and on Behalf of All Other Persons Similarly Situated

v.

LANNETT CO, INC.; ARTHUR BEDROSIAN;
MARTIN P. GALVAN,

Appellants

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-05932)
District Judge: Honorable Wendy Beetlestone

_____

Submitted under Third Circuit LAR 34.1(a)
on July 7, 2022

Before: SHWARTZ, KRAUSE and ROTH, <u>Circuit Judges</u>

(Opinion filed April 18, 2023)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, <u>Circuit Judge</u>

Generic-drug manufacturer, Lannett Company, Inc., asks us to vacate a district court order certifying a securities-fraud class. We decline to do so. For the reasons stated below, we conclude that the District Court properly certified the class under Federal Rules of Civil Procedure 23(a) and (b)(3).

**I.**

The University of Puerto Rico Retirement System (UPRRS) brought this putative securities-fraud class action against Lannett, Arthur Bedrosian (Lannett's former CEO), and Martin Galvan (Lannett's former CFO).[1] UPRRS claimed that it and other putative class members bought Lannett's common stock at artificially inflated prices because Lannett made false and misleading statements about generic-drug pricing, as well as about state and federal investigations into price-fixing in the generic-drug market.[2]

According to UPRRS, anticompetitive conduct among Lannett's competitors increased prices for five generic drugs that accounted for most of Lannett's sales from 2013 to 2016.[3] Lannett told shareholders that it received a subpoena and interrogatories from authorities investigating the anticompetitive conduct.[4] Lannett assured investors, however, that its past financial results were the product of a competitive market and that

---

[1] *Utesch v. Lannett Co., Inc.,* No. 16-cv-0532, 2021 WL 3560949, at *1 (E.D. Pa. Aug. 12, 2021). The District Court referred to Lannett, Bedrosian, and Galvan collectively as the "Defendants." *Id.* We will refer to them collectively as Lannett. We refer to the plaintiffs collectively as UPRRS.
[2] *Id.*
[3] *Id.*
[4] *Id.*

Lannett's pricing strategy and future results would not be affected by regulatory scrutiny of anticompetitive conduct in the industry.[5] Despite these assurances, Lannett's stock price fell.[6]

UPRRS moved to certify a securities-fraud class under Federal Rules of Civil Procedure 23(a) and (b)(3).[7] The District Court granted UPRRS' class-certification motion.[8] Lannett then appealed the District Court's order under Federal Rule of Civil Procedure 23(f). We agreed to hear this interlocutory appeal, in which Lannett raises two arguments. First, it contends that the District Court failed to address evidence of the lack of price impact, as required by the Supreme Court's 2021 decision in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*.[9, 10] However, it has forfeited that argument. Second, it asserts that the District Court erred in concluding that the Supreme Court's decision in *Comcast Corporation v. Behrend*,[11] did not bar class certification in this action;[12] it contends that because there was a mismatch between UPRRS' theory of liability and its theory of damages, a class action was improperly certified. We conclude, however, that the District Court properly evaluated UPRRS' theories of liability and

---

[5] *Id.*

[6] *Id.* at *2.

[7] *Id.* at *1, 13. The parties both filed *Daubert* motions to exclude each other's experts on market efficiency and damages methodology, which the District Court denied. Those orders are not before us on appeal.

[8] *Id.* at *1.

[9] 141 S. Ct. 1951 (2021).

[10] *Utesch*, 2021 WL 3560949, at *7.

[11] 569 U.S. 27 (2013).

[12] *Utesch*, 2021 WL 3560949, at *11–13.

damages under *Comcast*.  Thus, we will affirm the District Court's order certifying the

securities-fraud class.

## II. [13]

A party seeking class certification must satisfy the four requirements of Federal

Rule of Civil Procedure 23(a), and the requirements of either Federal Rule of Civil

Procedure 23(b)(1), (b)(2), or (b)(3).[14]  Under Rule 23(a),

(1) The class must be so numerous that joinder of all members is impracticable (numerosity);
(2) There must be questions of law or fact common to the class (commonality);
(3) The claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and
(4) The named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy).[15]

If a party meets Rule 23(a)'s four elements, the court then turns to Rule 23(b).  Here,

UPRRS is proceeding under Rule 23(b)(3), which requires proving that (1) questions of

law or fact common to class members predominate over individualized questions, (the

predominance requirement); and (2) the class action is superior to other methods of

resolving the claims, (the superiority requirement).[16]

"Class certification is proper only if the trial court is satisfied, after a rigorous

analysis that all of the necessary Rule 23 requirements have been fulfilled."[17]  The Rule

---

[13] The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under Federal Rule of Civil Procedure 23(f) and 28 U.S.C. § 1292(e).

[14] *Ferreras v. American Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019).

[15] *Id.* at 182-83 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590–91 (3d Cir. 2012) (cleaned up)).

[16] *Id.* at 183 (citing FED. R. CIV. P. 23(b)(3)).

[17] *Id.* (cleaned up).

does not simply establish a pleading standard. Rather, "the decision to certify a class calls for findings by the court, not merely a threshold showing by a party, that each of the requirements of Rule 23 is met."[18]  A rigorous analysis requires a district court to make factual determinations by a preponderance of the evidence about each factor. The district court does, nevertheless, have broad discretion in making those determinations.[19]

## A.

We can quickly dispose of Lannett's first argument, because Lannett forfeited it in the District Court. One common method of proving securities fraud is the "fraud-on-the-market" theory: "the price of a security traded in an efficient market will reflect all publicly available information about a company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security."[20]  To invoke the theory, a plaintiff must prove that: "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."[21]

This presumption of reliance is, however, rebuttable.[22]  Indeed, a securities-fraud defendant can rebut the presumption at the class-certification stage with any "showing

---

[18] *Id.* (cleaned up).
[19] *Id.* (citing *Mielo v. Steak n' Shake Operations, Inc.*, 897 F.3d 467, 483–84 (3d Cir. 2018)).
[20] *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 458 (2013).
[21] *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 277–78 (2014).
[22] *Id.* at 268.

that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price."[23]  Recently, in *Goldman Sachs*, the Supreme Court reiterated that in "assessing price impact at class certification, courts should be open to all probative evidence on that question— qualitative as well as quantitative—aided by a good dose of common sense."[24]

Lannett contends that the District Court did not follow *Goldman Sachs* and ignored "extensive evidence showing that the alleged misstatements and their correction had no impact on Lannett's stock price."[25]  Put simply, Lannett says it rebutted the fraud-on-the-market presumption by showing a lack of price impact.

The problem, though, is that Lannett did not properly make this argument before the District Court.  "Whether an argument remains fair game on appeal is determined by the 'degree of particularity' with which it was raised in the trial court, . . . and parties must do so with 'exacting specificity.'"[26]  "Because of the important interests underlying the preservation doctrine, we will not reach a forfeited issue in civil cases absent truly 'exceptional circumstances.'"[27]

In its class-certification briefing in the District Court, Lannett focused on economic loss and purported deficiencies in UPRRS' damages model when contesting

---

[23] *Id.* at 269 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)) (cleaned up).

[24] 141 S. Ct. at 1960 (quoting *In re Allstate Corp. Securities Litig.*, 966 F.3d 595, 613, n.6 (7th Cir. 2020)) (cleaned up)

[25] Appellants' Br. at 34.

[26] *Spireas v. Comm'r of Int'l Rev.*, 886 F.3d 315, 321 (3d Cir. 2018) (quoting *United States v. Joseph*, 730 F.3d 336, 339, 341 (3d Cir. 2013)).

[27] *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001)).

the predominance factor. Lannett did discuss reliance in connection with atypical defenses and cited "price impact" cases there. Lannett, however, did not inject its price-impact argument into its discussion of predominance until the class-certification and *Daubert* hearings.

We have explained that an argument raised for the first time at oral argument is not properly preserved.[28] Because Lannett did not properly present its price impact argument in its class-certification briefing, the issue was not properly preserved. Accordingly, we find the issue forfeited and decline to evaluate the merits of Lannett's argument that a lack of price impact rebuts the presumption of reliance.

**B.**

We also conclude that the District Court did not err in its application of *Comcast* at the class-certification stage. Lannett contends that UPRRS' damages model is tied to its dismissed theory of liability (that Lannett itself was involved in anticompetitive price-fixing) rather than its operative theory of liability (that Lannett made misrepresentations about its competitors' alleged antitrust violations). According to Lannett, *Comcast* bars that mismatch. We do not agree.

In *Comcast*, subscribers to Comcast's cable-television services brought an antitrust action alleging that Comcast was engaged in a scheme to buy competitors in the greater Philadelphia market, enabling it to inflate cable prices.[29] The plaintiffs offered four

---

[28] *See, e.g.*, *Montrose Med. Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 783 (3d Cir. 2001) (citing *Warren G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 84 (3d Cir. 1999)).

[29] 569 U.S. at 29–30.

theories of antitrust impact, only one of which was accepted by the district court as capable of class-wide proof (and thus sufficient under Rule 23).[30] However, the plaintiffs' damages model "did not isolate damages resulting from any one theory of antitrust impact."[31] The Supreme Court explained the problem with this model:

> If [plaintiffs] prevail on their claims, they would be entitled only to damages resulting from reduced overbuilder competition, since that is the only theory of antitrust impact accepted for class-action treatment by the District Court. It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3). Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case . . ..[32]

The District Court correctly explained why *Comcast* was inapposite to UPRRS' claims against Lannett. In *Comcast*, the plaintiffs offered multiple theories of how the defendant's conduct violated the law, and the plaintiffs' damages model combined all those theories, in such a way that the model could not account for damages from one specific theory of wrongdoing. Here, however, UPRRS focused on a single theory of liability: Lannett made material misrepresentations or omissions, those misrepresentations or omissions artificially inflated Lannett's stock price, and Lannett's stock price dropped when the truth emerged.[33]

---

[30] *Id.* at 31.
[31] *Id.* at 32.
[32] *Id.* at 35 (cleaned up).
[33] *Utesch*, 2021 WL 3560949, at *12–13.

Lannett contends that UPRRS' damages theory is tied to a dismissed theory of liability, rather than, as the District Court found, to a changed theory of liability in the operative complaint. According to Lannett, *Comcast* bars class certification because of the mismatch.

We agree, however, with the District Court's interpretation of *Comcast*: it did not apply "because the numerical mismatch between damages model (one model) and liability theory (four theories) at issue in that case is not present here."[34] As we have explained, the out-of-pocket loss damages theory is the traditional measure of damages in a 10b-5 action.[35] Here, UPRRS' theory of liability is that Lannett's misrepresentations "artificially inflated Lannett stock, and that the stock price declined when the truth emerged causing financial loss to those who purchased at inflated prices"; its proposal to use the out-of-pocket method to measure loss is tied to this theory of liability.[36] Thus, the numerical mismatch of liability theories to damages theories present in *Comcast* is not

---

[34] *Utesch*, 2021 WL 3560949, at *13. To be clear, the District Court concluded that *Comcast*'s analysis with respect to the damages model/theory of liability mismatch did not apply. The District Court made clear that *Comcast*'s "central and uncontroversial premise – that '[t]he first step in a damages study is the transition of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*' – drives the predominance inquiry here." *Id.* at *18 (quoting *Comcast Corp.*, 569 U.S. at 38 (cleaned up, emphasis in *Comcast*)). The District Court found that UPRRS, through its expert, proposed the proper out-of-pocket damages method applicable class-wide: "the difference between the amount of fraud-induced inflation of Lannett's stock price at the time of purchase and sale." *Id.* at *19.

[35] *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991) (citing *Huddleston v. Herman & MacClean*, 640 F.2d 534, 555 (5th Cir. 1981), *modified on other grounds*, 459 U.S. 375 (1983); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1974); *Thomas v. Duralite Co. Inc.*, 524 F.2d 577, 586 (3d Cir. 1975); *Kaufman v. Mellon Nat'l Bank & Trust Co.*, 366 F.2d 326, 331 (3d Cir. 1966)).

[36] *Utesch*, 2021 WL 3560949, at *19.

9

present here.  The District Court correctly concluded that *Comcast* did not prevent class certification on that basis.

### III.

In sum, Lannett forfeited its argument about price impact with respect to the fraud-on-the-market presumption because it did not include the argument in its class-certification briefing before the District Court.  In addition, UPRRS properly asserted a single, long-accepted damages theory (the out-of-pocket loss theory) tied to a single theory of liability (Lannett's misrepresentations inflated its stock's value, and the value declined when the truth emerged).  The damages theory and the liability theory pair properly.  Thus, the District Court correctly concluded that *Comcast* was inapposite.  For these reasons, we will affirm the District Court's order certifying the class under Federal Rules of Civil Procedure 23(a) and (b)(3).