# Exhibit A

**Received Electronically**
**August 23, 2023**
**United States Court of Appeals**
**For the First Circuit**

# No. _____

## In the United States Court of Appeals
## For the First Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Respondent*,

v.

TEVA PHARMACEUTICALS USA, INC. and
TEVA NEUROSCIENCE, INC.,

*Defendants-Petitioners.*

Petition for Interlocutory Appeal
from the United States District Court for the District of Massachusetts
Case No. 1:20-cv-11548 (Hon. Nathaniel M. Gorton, presiding)

## PETITION FOR PERMISSION TO APPEAL

<table>
<tr><td>

MORGAN, LEWIS & BOCKIUS LLP
   Eric Sitarchuk
   Alison Tanchyk
   Harvey Bartle IV
   William T. McEnroe
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

SHAPIRO ARATO BACH LLP
   Alexandra A.E. Shapiro
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(202) 257-4881

</td><td>

MORGAN, LEWIS & BOCKIUS LLP
   William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

   James D. Nelson
1111 Pennsylvania Ave., NW
Washington, DC 20004
(202) 739-3000

</td></tr>
</table>

*Counsel for Petitioners*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendants Teva Pharmaceuticals USA, Inc. and Teva Neuroscience, Inc. (collectively "Teva") certifies as follows:

1. Teva Pharmaceuticals USA, Inc. is an indirect wholly-owned subsidiary of Teva Pharmaceutical Industries Ltd., which is publicly traded. Teva Pharmaceutical Industries Ltd. is the only publicly traded company that owns 10% or more of Teva Pharmaceuticals USA, Inc.

2. Teva Neuroscience, Inc. is owned by IVAX LLC, which in turn is owned by Teva Pharmaceuticals USA, Inc. Teva Pharmaceuticals USA, Inc. is an indirect wholly-owned subsidiary of Teva Pharmaceutical Industries Ltd., which is publicly traded. Teva Pharmaceutical Industries Ltd. is the only publicly traded company that owns 10% or more of Teva Pharmaceuticals USA, Inc.

Dated:  August 23, 2023

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ William R. Peterson
        William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
william.peterson@morganlewis.com

i

James D. Nelson
1111 Pennsylvania Ave., NW
Washington, DC 20004

Eric Sitarchuk
Alison Tanchyk
Harvey Bartle IV
William T. McEnroe
1701 Market Street
Philadelphia, PA 19103

SHAPIRO ARATO BACH LLP
Alexandra A.E. Shapiro
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036

***Counsel for Petitioners,
Teva Pharmaceuticals USA, Inc. and Teva Neuroscience, Inc.***

# TABLE OF CONTENTS

|  | **Page** |
|---|---|
| Corporate Disclosure Statement | i |
| Table of Contents | iii |
| Table of Authorities | v |
| Introduction | 1 |
| Question Presented | 4 |
| Facts Necessary to Understand the Question Presented | 5 |
| Reasons Why the Appeal Should be Allowed | 8 |

I. There Is Substantial Ground for Difference of Opinion on the Causal Standard Required to Show that a Claim Includes Items or Services "Resulting From" a Violation of the Anti-Kickback Statute. ........9

    A. The Sixth Circuit and Eighth Circuit Enforce the Plain Meaning of "Resulting From." ........10

    B. The Third Circuit Relied on Legislative History and Legislative Intent to Reach a Contrary Conclusion. ........11

    C. This Court Has Not Taken Sides in the Circuit Split. ........12

II. The Question Is a "Controlling Question of Law." ........14

III. Interlocutory Appeal May Materially Advance the Ultimate Termination of this Litigation ........17

IV. Other Factors Weigh in Favor of This Court Allowing Interlocutory Appeal. ........17

TABLE OF CONTENTS
(continued)

**Page**

Relief Sought.................................................................................................20

Certificate of Compliance ............................................................................21

Certificate of Service ...................................................................................22

iv

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litig.)*,
    673 F.2d 1020 (9th Cir. 1982) ...............................................................16

*In re Bailey*,
    592 B.R. 400 (B.A.P. 1st Cir. 2018)....................................................9

*Burrage v. United States*,
    571 U.S. 204 (2014)................................................................10, 11

*United States ex rel. Cairns v. D.S. Med. LLC*,
    42 F.4th 828 (8th Cir. 2022) .........................................................*passim*

*Camacho v. Puerto Rico Ports Auth.*,
    369 F.3d 570 (1st Cir. 2004)............................................................14

*Caraballo-Seda v. Municipality of Hormigueros*,
    395 F.3d 7 (1st Cir. 2005)..................................................................8

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)....................................................................11

*United States ex rel. Flanagan v. Fresenius Med. Care Holdings, Inc.*,
    No. 21-11627, 2022 WL 17417577 (D. Mass. Dec. 5, 2022) ...........................18

*United States ex rel. Greenfield v. Medco Health Sols., Inc.*,
    880 F.3d 89 (3d Cir. 2018) .........................................................*passim*

*Guilfoile v. Shields*,
    913 F.3d 178 (1st Cir. 2019).........................................................*passim*

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) .......................................................15, 17

*Knopick v. Downey*,
    963 F. Supp. 2d 378 (M.D. Pa. 2013)....................................................9

*United States ex rel. Martin v. Hathaway*,
    63 F.4th 1043 (6th Cir. 2023) .......................................1, 6, 11, 12, 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States ex rel. Martin v. Hathaway*,
No. 22-1463 (6th Cir. 2023) ...............................................................14

*Meijer, Inc. v. Ranbaxy Inc.*,
245 F. Supp. 3d 312 (D. Mass. 2017)...........................................9, 14

*Philip Morris Inc. v. Harshbarger*,
957 F. Supp. 327 (D. Mass. 1997)...............................9, 15, 16, 17

*Rodriguez v. Banco Cent.*,
917 F.2d 664 (1st Cir. 1990)...........................................................9, 12

*Slack Technologies, LLC v. Pirani*,
143 S. Ct. 1433 (2023)......................................................................12

*Smilovits v. First Solar Inc.*,
119 F. Supp. 3d 978 (D. Ariz. 2015) ...............................................15

*United States v. Regeneron Pharmaceuticals, Inc.*,
No. 20-11217, Dkt. 246 (D. Mass) ...................................................18

*Waters v. Day & Zimmermann NPS, Inc.*,
No. 19-11585, 2020 WL 4754984 (D. Mass. Aug. 14, 2020)............9

*Wray v. City of New York*,
490 F.3d 189 (2d Cir. 2007) ............................................................15

**Statutes**

28 U.S.C. § 1292(b) ...............................................................*passim*

31 U.S.C. § 3729(a)(1)(A) .............................................................4

42 U.S.C. § 1320a-7b(b)(2) ...........................................................8

42 U.S.C. § 1320a-7b(g) ....................................................1, 4, 6, 8

Controlled Substance Act ...............................................................10

vi

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

False Claims Act ....................................................................................*passim*

**Rules**

Fed. R. App. P.
   5(c) ...........................................................................................22
   32(a) .........................................................................................22
   32(a)(5) .....................................................................................22
   32(a)(6) .....................................................................................22
   32(f)...........................................................................................22

**Other Authorities**

Jeff Overly, *"Critically Sensitive" Kickback Issue Hurtles Toward*
   *High Court* (Apr. 7, 2023) ......................................................13

Jeff Overly, *FCA Chases "Shrewder" Kickbacks As 50-Year Hunt*
   *Intensifies* (May 10, 2023)......................................................17

**INTRODUCTION**

Petitioners Teva Pharmaceuticals USA, Inc. and Teva Neuroscience, Inc. (collectively, "Teva") respectfully petition for interlocutory appeal of the district court's order denying Teva's motion for summary judgment and granting the government's motion for partial summary judgment. Dkt. 195 (the "Order").

The Order addresses an important and recurring legal issue: whether a plaintiff seeking to prove that a claim is "false" under the False Claim Act because it includes "items or services *resulting from* a violation" of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(g) (emphasis added), must prove a *but-for* causal connection between the Anti-Kickback Statute violation and the items or services.

The district court correctly certified that this issue is "'a controlling question of law as to which there is a substantial ground for difference of opinion,' and an immediate appeal may 'materially advance the ultimate termination of th[is] litigation.'" Dkt. 235 (quoting 28 U.S.C. § 1292(b)).

There is a live circuit split on this important issue, and this Court has not yet weighed in. The Sixth and Eighth Circuits apply the plain meaning of "resulting from" and hold that plaintiffs must show but-for causation. *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1052 (6th Cir. 2023); *United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 836 (8th Cir. 2022).

1

The Third Circuit, in contrast, acknowledged that the statute's plain language referred to but-for causation, but relied on legislative history and purpose to gut the causation requirement. *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 96 (3d Cir. 2018). The correct causation standard is a pure question of law, and no review of the record is necessary.

This Court has not taken a position on the issue. In *Guilfoile v. Shields*, 913 F.3d 178 (1st Cir. 2019), a retaliation case, the Court observed that a plaintiff must demonstrate "a sufficient causal connection." *Id.* at 190. But it has not taken a position on *what* causal connection suffices—the issue that divides the circuits.

The resolution of this issue is "controlling" in this case. If the Court holds that the government must demonstrate but-for causation, Teva will be entitled to summary judgment because the government has not identified any specific claims for reimbursement that would not have been submitted absent the conduct at issue. *See* Dkt. 163 at 16. But even if Teva would not be entitled to full summary judgment, resolution of the causation standard will drastically alter the scope of evidence in this complex case, the length and complexity of trial—anticipated to last six weeks and involve more than two-dozen witnesses—and the jury instructions. If trial were conducted under the incorrect standard and Teva were to lose, a new trial would be necessary.

But if an interlocutory appeal is not permitted and Teva loses at trial, Teva faces a judgment that may exceed $10 billion, an enterprise-threatening amount that may render a post-judgment appeal impossible.  No substantial interest of the government will be prejudiced by an interlocutory appeal.

This Court should permit interlocutory appeal, avoiding the potential need for a retrial of this complex case and providing important guidance for the litigants in this case, throughout the circuit, and across the country.

## QUESTION PRESENTED

The False Claims Act imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). A 2010 amendment to the Anti-Kickback Statute provides that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim" for purposes of the False Claims Act. 42 U.S.C. § 1320a-7b(g) (the "2010 Amendment").

The question presented is:

Whether the phrase "resulting from" in the 2010 Amendment requires that the Anti-Kickback Statute violation be a *but-for* cause of the "items or services" included in the claim.

4

**FACTS NECESSARY TO UNDERSTAND THE QUESTION PRESENTED**

*Case Summary*

This Petition raises a pure question of statutory interpretation. The background facts and procedural history are provided only for context. In this case, the government alleges that Teva caused the submission of false claims to Medicare by making donations to charitable patient assistance foundations, which helped cover the co-pay obligations of Medicare beneficiaries who had been prescribed Teva's multiple sclerosis medication, Copaxone. Dkt. 1 ¶¶ 1-7; Dkt. 171 at 1. Specifically, the government alleges that from December 2006 through January 2017, Teva donated over $350 million to those charitable foundations with the intent to induce the filling of Medicare-covered Copaxone prescriptions. Dkt. 171 at 3-4. Those prescriptions were presented by patients to specialty pharmacies which, in turn, submitted claims for reimbursement to Medicare. *Id.* The government contends that these donations violated the Anti-Kickback Statute, thereby causing the presentation of false claims to the government in violation of the False Claims Act. *Id.* at 1; Dkt. 1 ¶ 1; *see id.* ¶¶ 121-32.

*Cross-Motions for Summary Judgment*

In April 2023, the parties cross-moved for summary judgment. Among other arguments, Teva contended that, under the 2010 Amendment, "the plain text of the AKS requires proof of 'but-for' causation," and thus "the government must prove

5

that the claims at issue 'would not have included particular items or services absent the illegal kickbacks.'" Dkt. 163 at 15 (alterations omitted) (quoting *Cairns*, 42 F.4th at 835); *see also id.* at 14 (citing *Martin*, 63 F.4th at 1052). As such, Teva was entitled to summary judgment because the government failed to present evidence of any Copaxone reimbursement claims "that, but for Teva's donations . . . would not have otherwise been submitted for reimbursement." *Id.* at 16.

The government cross-moved for partial summary judgment on several issues, including "the legal standard for FCA causation for claims 'resulting from' AKS violations under 42 U.S.C. § 1320a-7b(g)." Dkt. 161 at 1. The government argued that the Sixth and Eighth Circuits' "reasoning is flawed" and that the district court should instead adopt the position of the Third Circuit. *Id.* at 8 (citing *Greenfield*, 880 F.3d at 89). Because this Court once cited *Greenfield* in a False Claims Act retaliation case, *Guilfoile*, 913 F.3d at 190, the government argued that this Court had adopted the Third Circuit's position. Dkt. 161 at 9-10.

### *The District Court Adopted the Third Circuit's View But Certified the Order for Interlocutory Appeal*

On July 14, the district court denied Teva's motion and granted the government's. Dkt. 195. The district court agreed with the government and rejected the but-for causation requirement of the Sixth and Eighth Circuits, *id.* at 12-13, describing *Guilfoile* as "persuasive, if not binding" on this issue. *Id.* at 13.

6

Teva then moved for certification of the Order for interlocutory appeal under Section 1292(b) and a stay of the trial while the appeal is pending. Dkt. 196. Following briefing (dkts. 199, 229), the district court agreed with Teva "that the causation standard when a plaintiff seeks to prove falsity by relying on the 2010 Amendment to the Anti-Kickback Statute is 'a controlling question of law as to which there is substantial ground for difference of opinion,' and an immediate appeal may 'materially advance the ultimate termination of th[is] litigation.'" Dkt. 235 at 2 (quoting Section 1292(b)). The Court certified its July 14, 2023 order for interlocutory appeal and stayed trial pending resolution of the appeal. *Id*.

Teva respectfully petitions this Court for permission to appeal.

**REASONS WHY THE APPEAL SHOULD BE ALLOWED**

This Court may exercise its discretion to permit an interlocutory appeal from an order "(1) involving a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) for which an immediate appeal from the order may materially advance the termination of the litigation." *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (quoting 28 U.S.C. § 1292(b)) (alterations and quotation marks omitted). Interlocutory appeal is appropriate "where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *Id.* (quoting *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986); *McGillicuddy v. Clements*, 746 F.2d 76 n.1 (1st Cir. 1984)).

The Anti-Kickback Statute criminalizes "knowingly and willingly offer[ing] or pay[ing] any remuneration . . . to any person to induce such person" to recommend the purchase of a drug covered by a "Federal health care program." 42 U.S.C. § 1320a-7b(b)(2). Under the 2010 Amendment, "a claim that includes items or services *resulting from* a violation of this section constitutes a false or fraudulent claim for purposes of [the False Claims Act]." 42 U.S.C. § 1320a-7b(g) (emphasis added). The question presented in this petition—whether "resulting from" requires that the violation of the Anti-Kickback State was the but-for cause of the items or services—warrants interlocutory appeal under Section 1292(b).

8

**I.      There Is Substantial Ground for Difference of Opinion on the Causal Standard Required to Show that a Claim Includes Items or Services "Resulting From" a Violation of the Anti-Kickback Statute.**

"A substantial ground for a difference of opinion arises where an issue involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'" *Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 315 (D. Mass. 2017) (quoting *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997)).

"The clearest evidence of 'substantial grounds for difference of opinion' is where 'there are conflicting interpretations from numerous courts.'" *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013); *Waters v. Day & Zimmermann NPS, Inc.*, No. 19-11585, 2020 WL 4754984, at *3 (D. Mass. Aug. 14, 2020) ("Such a split [among district judges] clearly constitutes a substantial difference of opinion."), *interlocutory appeal granted*, 23 F.4th 84 (1st Cir. 2022).

This Court has recognized on multiple occasions that splits among the circuits create a substantial ground for difference of opinion. *See, e.g.*, *Rodriguez v. Banco Cent.*, 917 F.2d 664, 665 (1st Cir. 1990) (Breyer, J.) ("Because the circuits are divided about the proper answer to this question, and because the district court has followed the minority view, we agreed to answer this question."); *In re Bailey*, 592 B.R. 400, 411 (B.A.P. 1st Cir. 2018) (collecting cases granting interlocutory review given "stark division among" the circuits).

9

Here, there is no controlling authority from this Court, and the stark split among the other circuits necessarily demonstrates substantial ground for difference of opinion.

### A. The Sixth Circuit and Eighth Circuit Enforce the Plain Meaning of "Resulting From."

The Sixth and Eighth Circuits hold that a claim includes items or services "resulting from" a violation of the Anti-Kickback Statute only if the violation was the but-for cause of item or services included in the claim.

These circuits recognize, as Teva argued below, the phrase "resulting from" requires a but-for causal connection between the Anti-Kickback Statute violation and the allegedly false claim. In *Burrage v. United States*, 571 U.S. 204, 210 (2014), the Supreme Court held that the phrase "results from" in the Controlled Substance Act requires that the government prove but-for causation. The Court observed that "[a] thing 'results' when it '[a]rise[s] as an effect, issue, or outcome *from* some action, process or design.'" *Id.* at 204, 210-11 (emphasis original) (quoting 2 The New Shorter Oxford English Dictionary 2570 (1993)). "'Results from' imposes, in other words, a requirement of actual causality." *Id.* at 211. When Congress chose the phrase "resulting from," it chose language that has an "ordinary, accepted meaning," one that "imports but-for causality." *Id.* at 216.

The Sixth and Eighth Circuits gave effect to the plain meaning of "resulting from" in interpreting the 2010 Amendment to the Anti-Kickback Statute. *See*

10

*Martin*, 63 F.4th at 1052 ("The ordinary meaning of 'resulting from' is but-for causation." (citing *Burrage*, 571 U.S. at 210-11)); *Cairns*, 42 F.4th at 836 ("[T]he phrase 'resulting from,' as we have already explained, is unambiguously causal." (citing *Burrage*, 571 U.S. at 211-13)).  Under the rule from these circuits, "when a plaintiff seeks to establish falsity or fraud through the 2010 amendment, it must prove that a defendant would not have included particular 'items or services' but for the illegal kickbacks."  *Cairns*, 42 F.4th at 836.

### B.    The Third Circuit Relied on Legislative History and Legislative Intent to Reach a Contrary Conclusion.

Both *Martin* and *Cairns* considered and rejected the contrary view of the Third Circuit in *Greenfield*.  The Third Circuit disregarded the plain meaning of the statute's text, erroneously turning instead (as the Eighth Circuit explained) to "legislative history and 'the drafters' intentions' to interpret the statute."  *Cairns*, 42 F.4th at 836 (quoting *Greenfield*, 880 F.3d at 96); *see also Martin*, 63 F.4th at 1054 ("[T]he Third Circuit's contrary conclusion offers little assistance because it turns primarily on legislative history[.]").  The Third Circuit held that only "[a] 'link' is required," and a plaintiff is not required to prove but-for causation.  *Greenfield*, 880 F.3d at 98.

In its briefing on the merits of the appeal, Teva will demonstrate that the Third Circuit erred and that this Court should follow the Sixth and Eighth Circuits.  "[L]egislative history is not the law," *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612,

1631 (2018), and "policy and purpose" cannot overcome the plain meaning of statutory text. *Slack Technologies, LLC v. Pirani*, 143 S. Ct. 1433, 1441 (2023). Not only was the Third Circuit wrong to disregard the statute's plain text, but its analysis of the legislative history was flawed. For this Petition, however, it is sufficient that the live, stark circuit split shows a substantial ground for difference of opinion. "[T]he circuits are divided about the proper answer to this question" and "the district court has followed the minority view." *Rodriguez*, 917 F.2d at 665 (allowing appeal for that reason).

### C. This Court Has Not Taken Sides in the Circuit Split.

This Court has not analyzed the meaning of "resulting from" or weighed in on the split. In *Guilfoile*, a decision reversing dismissal in a False Claims Act retaliation case, this Court held only that there must be "a sufficient causal connection" between the violation of the Anti-Kickback Statute and the submitted claim. 913 F.3d at 190.

In its briefing below, the government argued that *Guilfoile* established the "law of the circuit" on the causation standard. Dkt. 199 at 3. The government pointed to the fact that *Guilfoile*, which was decided after *Greenfield* but before *Cairns* and *Martin*, cited *Greenfield* with a parenthetical explaining that *Greenfield* had "discuss[ed] [the] causal connection issue." 913 F.3d at 190.

But *Guilfoile* expressly declined to "assess the full implications of the AKS provision [Section 132a-7b(g)]," 913 F.3d at 190, and never attempted to define what constitutes "a sufficient causal connection," the issue now in dispute. Indeed, the Court was careful to note that "the issue [was] not the standard for *proving* an *FCA violation* based on the AKS but rather the requirements for *pleading* an FCA *retaliation* claim." *Id.* (emphases in original).

Neither the Sixth nor the Eighth Circuit understood *Guilfoile* to be on the other side of the circuit split. Both courts acknowledged that their interpretation of the 2010 Amendment created a split with the Third Circuit's decision in *Greenfield.* *Martin*, 63 F.4th at 1054; *Cairns*, 42 F.4th at 836. But neither cited *Guilfoile* as contrary authority.

Indeed, despite this important circuit split receiving significant media attention, *e.g.*, Jeff Overly, *"Critically Sensitive" Kickback Issue Hurtles Toward High Court*, LAW360 (Apr. 7, 2023), https://www.law360.com/ employmentauthority/articles/1570462 (discussing "recent appellate decisions addressing whether there has to be a direct link between alleged kickbacks and billing claims"), to Teva's knowledge, no article or commentator has ever identified this Court as adopting the Third Circuit's position. The reason is simple: it has not done so.

The government's position that *Guilfoile* established the causation standard under the 2010 Amendment also conflicts with its own characterization of the circuit split in an amicus brief it submitted last year to the Sixth Circuit. In that brief, the government string-cited cases that had "address[ed] whether the 'resulting from' language requires but-for causation." Brief for the United States as Amicus Curiae, at 19, *United States ex rel. Martin v. Hathaway*, No. 22-1463 (6th Cir. 2023). Its list did not include *Guilfoile*. *Id.* If the government believed that this Court had already adopted its position on causation, it would surely have informed the Sixth Circuit in its amicus brief.

The causation standard is an "open question" in this Circuit, *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004), and the live circuit split demonstrates substantial grounds for differences of opinion.

## II.    The Question Is a "Controlling Question of Law."

The correct interpretation of the 2010 Amendment is a question of law, "a pure legal principle that can be resolved without extensive consultation to the record." *Meijer*, 245 F. Supp. 3d at 315 (citing *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, No. 15-13069, 2016 WL 3064054, at *2 (D. Mass. May 31, 2016)). Here, the question concerns the meaning of a statutory provision. That question involves no facts and requires no review of the record.

14

The question is also "controlling." "A question of law is 'controlling' if reversal of the district court's order would terminate the action." *Philip Morris*, 957 F. Supp. at 330 (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)). Summary judgment orders presenting discrete questions of law that might avoid the need for protracted trials are particularly appropriate for interlocutory appeal under Section 1292(b). *See, e.g.*, *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 981, 992 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752-53 (9th Cir. 2018) (certifying causation issue to Ninth Circuit because "two competing lines of cases" dictated wholly opposite summary judgment outcomes and upcoming trial would be "lengthy and expensive"); *Wray v. City of New York*, 490 F.3d 189, 191 (2d Cir. 2007) (on interlocutory review of decision denying summary judgment, reversing and remanding for entry of judgment in favor of defendants).

Resolving the causation question in Teva's favor would, on this record, entitle Teva to summary judgment. The government offered no evidence connecting the alleged violations of the Anti-Kickback Statute to any specific claims. Dkt. 163 at 16-18. The government identified only broad categories of evidence relating to Teva's alleged overall intent and knowledge regarding the likely effects of its actions. Dkt. 199 at 6.

Moreover, even if Teva would not obtain summary judgment on all or a portion of the claims, the causation standard has vast practical significance to the conduct of the trial.   A question is "controlling," even if it will not dispose of the entire case, when it is "serious to the conduct of the litigation, either practically or legally."  *Philip Morris*, 957 F. Supp. at 330 (citation omitted); *see also Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litigation)*, 673 F.2d 1020, 1026 (9th Cir. 1982) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court.").  Here, causation is a key element of the government's burden of proof that will significantly affect the scope and presentation of evidence, the length and complexity of trial, and the instructions to the jury.  Indeed, prior to the entry of the stay, the government moved to preclude evidence of causation.  *See* Dkt. 211.

Trial is anticipated to last six weeks and involve more than two dozen witnesses.  If trial is conducted under the incorrect causation standard and Teva loses, then a new trial will eventually be necessary, wasting the time and resources expended on the first trial.  *See Cairns*, 42 F.4th at 831 ("The district court did not instruct the jury along these lines, so we reverse and remand for a new trial.").

16

## III. Interlocutory Appeal May Materially Advance the Ultimate Termination of this Litigation.

"[T]he requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Philip Morris*, 957 F. Supp. at 330 (internal quotation marks omitted).

As detailed above, resolution of the question in favor of Teva would likely resolve all or part of the claims through summary judgment. Resolving the issue now on interlocutory appeal will avoid the risk of an expensive and time-consuming retrial, as occurred in *Cairns*.

## IV. Other Factors Weigh in Favor of This Court Allowing Interlocutory Appeal.

In addition to the requirements for certification under Section 1292(b), other factors weigh in favor of this Court exercising its discretion to allow interlocutory appeal.

Given the frequency with which the issue arises, the "system-wide costs and benefits of allowing the appeal" favor allowing the appeal. *Klinghoffer*, 921 F.2d at 24. Numerous False Claims Act cases are based on the Anti-Kickback Statute. *See, e.g.*, Jeff Overly, *FCA Chases "Shrewder" Kickbacks As 50-Year Hunt Intensifies*, LAW360 (May 10, 2023), https://www.law360.com/employment-authority/articles/1564033/fca-chases-shrewderkickbacks-as-50-year-hunt-intensifies. District courts

17

throughout the circuit (and beyond) would benefit from this Court's guidance on this recurring issue.

The causation issue is presently pending in at least one other case in this circuit. *See United States v. Regeneron Pharmaceuticals, Inc.*, No. 20-11217, Dkt. 246 (D. Mass) (seeking summary judgment based on "resulting from" language in 2010 Amendment). The presiding judge in that case has previously suggested that proof of but-for causation is required. *United States ex rel. Flanagan v. Fresenius Med. Care Holdings, Inc.*, No. 21-11627, 2022 WL 17417577, at *18-19 (D. Mass. Dec. 5, 2022). Without interlocutory appeal of the Order, there is a very real prospect that *Regeneron* and this case could be tried using conflicting causation standards, necessarily requiring reversal of one of the two and a new trial when this Court eventually addresses the issue. This Court can avoid that waste of judicial resources by allowing interlocutory appeal.

Moreover, interlocutory appeal may well be the only way for this Court to address the question. If an interlocutory appeal is not permitted and Teva loses at trial, Teva faces a judgment that may exceed $10 billion, an enterprise-threatening amount that may prevent Teva from proceeding with a post-judgment appeal. Given the potential liability that Teva faces at trial, without an interlocutory appeal, this Court may not be able to provide guidance on this unsettled, important, and recurring question.

18

19

Guidance now on this question from this Court would not only benefit the parties to this case but would benefit litigants throughout the circuit and, potentially, across the country.

# RELIEF SOUGHT

For these reasons, Teva respectfully requests that this Court grant its petition for interlocutory appeal pursuant to Section 1292(b).

Dated:  August 23, 2023

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:  */s/ William R. Peterson*
  William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
william.peterson@morganlewis.com

  James D. Nelson
1111 Pennsylvania Ave., NW
Washington, DC 20004

  Eric Sitarchuk
  Alison Tanchyk
  Harvey Bartle IV
  William T. McEnroe
1701 Market Street
Philadelphia, PA 19103

SHAPIRO ARATO BACH LLP
  Alexandra A.E. Shapiro
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036

*Counsel for Petitioners,*
*Teva Pharmaceuticals USA, Inc. and Teva Neuroscience, Inc.*

20

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c) because this brief contains 3,768 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Petitioners,*
*Teva Pharmaceuticals USA, Inc. and*
*Teva Neuroscience, Inc.*

Dated: August 23, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Petition for Permission to Appeal with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on August 23, 2023.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| | |
|---|---|
| Jamie A. Yavelberg | Abraham R. George |
| Andy J. Mao | Evan D. Panich |
| Douglas J. Rosenthal | Diane C. Seol |
| Nelson D. Wagner | *Assistant United States Attorneys* |
| *Attorneys, Civil Division* | 1 Courthouse Way, Ste. 9200 |
| United States Department of Justice | Boston, MA 02210 |
| 175 N St. NE, Room 10.129 | Phone: (617) 748-3100 |
| Washington, DC 20002 | abraham.george@usdoj.gov |
| Phone: (202) 305-2073 | evan.panich@usdoj.gov |
| douglas.j.rosenthal@usdoj.gov | diane.seol@usdoj.gov |

*Counsel for Plaintiff United States of America*

/s/ William R. Peterson
William R. Peterson
*Counsel for Petitioners,*
*Teva Pharmaceuticals USA, Inc. and*
*Teva Neuroscience, Inc.*

Dated: August 23, 2023

22

# EXHIBIT A

**United States District Court**
**District of Massachusetts**

```
                              )
United States of America,     )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No.
                              )    20-11548-NMG
Teva Pharmaceuticals USA, Inc., )
and Teva Neuroscience, Inc.,  )
                              )
        Defendants.           )
                              )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The United States ("the government" or "plaintiff") brings this action against Teva Pharmaceuticals USA, Inc. and Teva Neuroscience, Inc. (collectively "Teva" or "defendant") for alleged violations of the Anti-Kickback Statute ("AKS") and the False Claims Act ("FCA").  The government alleges that defendant caused the submission of false claims to Medicare by virtue of kickbacks Teva paid in the form of illegal co-pay subsidies in connection with the sale of its multiple sclerosis drug, Copaxone.

Pending before the Court is Teva's motion for summary judgment and the government's motion for partial summary

-1-

judgment on materiality, causation and damages under the FCA. For the reasons that follow, Teva's motion for summary judgment will be denied and the government's motion for partial summary judgment will be allowed.

## I.    Background

### A.    False Claims Act and Anti-Kickback Statute

The FCA imposes civil liability for anyone who

> knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

31 U.S.C. § 3729(a)(1)(A), (a)(1)(B).

The AKS imposes criminal liability on anyone who

> knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to purchase . . . or arrange for or recommend purchasing . . . any good . . . for which payment may be made in whole or in part under a Federal health care program[.]

42 U.S.C. § 1320a-7b(b)(2).  In 2010, Congress amended the AKS through the Patient Protection and Affordable Care Act, Pub. L. No. 1110148, 124 Stat. 119 (2010), to state that "a claim that includes items or services resulting from a violation of this

section constitutes a false or fraudulent claim for purposes of [the FCA.]" 42 U.S.C. § 1320a-7b(g).

### B.    Fact History

The government contends that Teva violated the AKS and caused the submission of false claims to Medicare under the FCA by knowingly and willfully paying Copaxone co-pays of Medicare patients via two contracted vendors and two foundations.

In late 2006, after Medicare Part D prescription drug coverage went into effect, Teva contracted with the specialty pharmacy Advanced Care Scripts, Inc. ("ACS").  Teva referred Medicare-eligible Copaxone patients to ACS for help obtaining Medicare Part D coverage and enrolling in co-pay patient assistance programs ("PAPs").  ACS then referred those Medicare-eligible Copaxone patients to two foundations, Chronic Disease Fund ("CDF") and The Assistance Fund ("TAF") which operated PAPs that provided Copaxone co-pay assistance.  Later, in 2014, Teva also contracted with AssistRx, Inc. ("AssistRx") for help in enrolling Copaxone patients at TAF.

The government alleges that, from December, 2006 through January, 2017, Teva donated over $350 million to CDF and TAF to cover Medicare co-pay obligations of Copaxone patients.  During that decade, Teva raised the wholesale acquisition cost of

Copaxone, that is, the price paid by wholesalers such as pharmacies to the manufacturer, from about $17,000 per year to over $85,000 per year, nearly 20 times the rate of inflation. The government stresses that Teva paid CDF and TAF with the intent of inducing Medicare-reimbursed Copaxone claims which, in turn, yielded Teva enormous revenue from Medicare's Copaxone reimbursements.

### C. Procedural History

This action was purportedly filed in August, 2020 as a result of a three-year government civil investigation into Teva's co-pay donations. Defendant's motion to dismiss with respect to the unjust enrichment claim was allowed in September, 2021, but the motion was denied as to the three counts alleging FCA violations.

In April, 2023, Teva moved for summary judgment and the government moved for partial summary judgment on three questions of law it contends are likely to arise at trial. Trial is scheduled to begin on September 18, 2023.

## II. Motions for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a

-4-

genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." <u>Anderson</u> v. <u>Liberty Lobby</u>, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is warranted if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material

fact exists and that the moving party is entitled to judgment as a matter of law.

### B.     Teva's Motion for Summary Judgment

Teva advances two arguments in support of its motion for summary judgment on all counts.  First, Teva argues that the government cannot prove that a kickback was the "but for" cause of any particular false claim because there is no evidence that but for Teva's donations to CDF and TAF, any claims submitted to Medicare for Copaxone that were funded by CDF or TAF would not have otherwise been submitted for reimbursement.  Second, Teva contends that the government cannot prove scienter, i.e. "willfully" under the AKS or with "knowledge," "deliberate ignorance" or "reckless disregard" under the FCA.

### 1.    Causation

With respect to Teva's first argument, the standard of causation for AKS-based false claims is also the subject of the government's motion for partial summary judgment and thus is discussed here as well as in greater detail below.

The First Circuit has previously stated that

> if there is a sufficient causal connection between an AKS violation and a claim submitted to the federal government, that claim is false within the meaning of the FCA.

Guilfoile v. Shields, 913 F.3d 178, 190 (1st Cir. 2019) (citing United States ex rel. Greenfield v. Medco Health Sols., Inc., 880 F.3d 89, 96-98 (3d Cir. 2018). The government must prove a "causal connection" between Teva's contributions to CDF and TAF and the resulting co-pay-assisted Copaxone claims that Medicare reimbursed. Guilfoile, 913 F.3d at 190.

To establish causation, the government proffers four categories of evidence, including that Teva intended to induce Copaxone prescription fills and Medicare Copaxone patients told Teva they needed financial assistance to afford the drug. Furthermore, the government cites contemporaneous Teva employee emails and other documents that demonstrate that Teva knew it would have lost Copaxone sales if it did not provide co-pay assistance.

For example, in a November, 2008 email, a Senior Director of Finance and Planning at Teva writes, "[w]e would lose most of these patients if we didn't provide coverage through the [Medicare] doughnut hole." In a "Teva Neuroscience 2012-2014 Workplan" presentation created in October, 2011, a slide titled "Patient Assistance Program" states that the program "[d]emonstrated significant ROI; result of not funding directly impacts top line revenue." Teva's documents indicate that Teva

understood it was profitable to provide co-pay assistance to generate sales.

Government experts also reviewed Teva's payments to CDF and TAF and enrollments of and disbursements for Copaxone patients of those funds.  In particular, government data analysis expert Ian Dew reviewed data from Teva, CDF, TAF, ACS and AssistRx to identify Medicare claims for which CDF and TAF paid some or all of the beneficiary's co-pay for Copaxone.  He further identified 345,970 matched Medicare claims for Copaxone, with a total paid amount of $1.49 billion, for patients who were 1) referred by Teva to ACS or AssistRx and 2) enrolled for assistance at CDF or TAF by ACS or AssistRx following a Teva payment to the responsive foundation.

Resolving every doubt in favor of the government as the non-moving party and construing the evidence in the light most favorable to it, the factual evidence is more than sufficient to withstand Teva's summary judgment motion on the issue of causation. See O'Connor, 994 F.2d at 907.  The government has established evidence of "a sufficient causal connection" between Teva's payments to CDF and ATF and the resulting Medicare Copaxone claims.

### 2.   Scienter

Teva next argues that it is entitled to summary judgment because the government has failed to show that its officers and employees acted with requisite scienter, meaning they did not "knowingly" violate the FCA or "willfully" violate the AKS.

The FCA defines "knowingly" as three alternative mental states: the person has 1) "actual knowledge of the information," 2) "acts in deliberate ignorance of the truth or falsity of the information" or 3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A); United States ex rel. Schutte v. SuperValu Inc., 143 S. Ct. 1391, 1400-01 (2023).  To establish a knowing violation, defendant must have acted voluntarily and deliberately, not "by mistake or by accident or even negligently." United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 33 (1st Cir. 1989)

To establish a violation of the AKS, defendant must have acted both knowingly and willfully. See United States ex rel. Gohil v. Sanofi U.S. Servs. Inc., No. CV 02-2964, 2020 WL 4260797, at *13 (E.D. Pa. July 24, 2020) ("The AKS's scienter element is harder to meet than the FCA's scienter standard."). The First Circuit defines "willfully" as

-9-

to do something purposely, with the intent to violate the law, to do something purposely that law forbids.

Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d at 33.

Teva submits that the government cannot prove that any Teva employee knew his or her conduct was illegal or intended to violate the law. Again, construing the evidence in the light most favorable to the non-moving party, see O'Connor, 994 F.2d at 907, the Court finds that the government has proffered sufficient evidence from which a jury could reasonably conclude that Teva's employees acted both knowingly and willfully.

For example, Teva's 30(b)(6) deposition testimony confirms that Teva's employees knew the AKS prohibited Medicare patients from participating in patient assistance programs. In 2010, the president of CDF sent Teva a "legal analysis of the risks associated with a Medicare Only PAP," prepared by Kevin McAnaney, the Chief of the Industry Guidance Branch of HHS-OIG from 1997 through 2003. That analysis stated:

> As a threshold matter, any knowing payments by a pharmaceutical manufacturer or other provider to satisfy a federal health care program enrollee's cost sharing obligations would almost certainly violate the federal anti-kickback statute.

Moreover, in May, 2012, a Teva employee circulated a 2008 presentation from Sidley Austin LLP titled "Legal Considerations in Developing Patient Assistance Programs" which emphasized that

> PAPs present all of the usual risks of fraud and abuse associated with kickbacks [and] the independent charity PAP must not function as a conduit for payments by the pharmaceutical manufacturer to patients.

The documents and testimony cited in the parties' statements of facts demonstrate that the government has gathered sufficient evidence, beyond the examples recited above, to defeat Teva's motion for summary judgment based on a lack of scienter.

### C.   The Government's Motion for Partial Summary Judgment

The government moves for partial summary judgment as to three questions of law it anticipates will arise at trial: 1) the materiality of violations of the AKS, 42 U.S.C. § 1320a-7b(b)(2), under the FCA, 31 U.S.C. §§ 3729-33; 2) the legal standard for FCA causation for claims "resulting from" AKS violations under 42 U.S.C. § 1320a-7b(g) and 3) the measure of damages applicable to the government's AKS-based FCA claims.

#### 1.   Materiality

The government, citing 42 U.S.C. § 1320a-7b(g) and Guilfoile, 913 F.3d at 190, submits that claims submitted to Medicare that include items or services resulting from kickbacks under the AKS are per se materially false or fraudulent for

-11-

purposes of the FCA.  The Court agrees.  Indeed, the plain language of the 2010 amendment to the AKS states that

> a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA].

42 U.S.C. § 1320a-7b(g).  The First Circuit has held that "[a]n AKS violation that results in a federal health care payment is a per se false claim under the FCA." Guilfoile, 913 F.3d at 190.

With respect to claims that predate the 2010 AKS amendment, the First Circuit examined the legislative history and observed that the 2010 AKS amendment "essentially codifies the long-standing view that AKS violations are 'material' in the FCA context." Id. at 191; see also United States ex rel. Bawduniak v. Biogen Idec Inc., No. 12-cv-10601-IT, 2022 WL 2438971, at *2-3 (D. Mass. July 5, 2022).

Thus, the Court finds that a violation of the AKS is per se material for FCA purposes.

### 2.   Causation

As addressed above, this Court will follow the First Circuit's guidance as to the legal standard for FCA causation for claims "resulting from" AKS violations.  The government need not prove "but for" causation.  Rather, the First Circuit, citing the Third Circuit, has held that

-12-

> if there is a sufficient causal connection between an
> AKS violation and a claim submitted to the federal
> government, that claim is false within the meaning of
> the FCA.

Guilfoile, 913 F.3d at 190 (citing Greenfield, 880 F.3d at 96-98).

Teva vehemently disagrees with that standard and urges the Court to follow guidance of the Sixth and Eighth Circuits which adopt a "but for" standard.  Teva argues that because Guilfoile only addressed whether plaintiff had adequately pled an FCA retaliation claim rather than an FCA violation, the First Circuit did not fully address the issue of what constitutes a "sufficient causal connection."

As other courts in this district have noted, however,

> that the First Circuit analyzed the statute at the
> pleading stage rather than at summary judgment or at
> trial is itself of no moment, where the meaning of the
> statute is the same at all stages of the proceedings.

Bawduniak, No. 12-cv-10601-IT, 2022 WL 2438971, at *2. Moreover, the analysis of the First Circuit focused "singularly on the text and legislative history of the AKS" and failed to note any relevant difference between a retaliation claim and a direct FCA claim. Id.  The Court finds the First Circuit's analysis persuasive, if not binding. Id.

### 3.    Damages

The government, citing United States v. Rogan, 517 F.3d 449 (7th Cir. 2008), asserts that the correct measure of damages for the government's AKS-based FCA claims in this case is the entirety of the government's expenditures for claims resulting from the illegal kickbacks.  Although the government concedes that the First Circuit has yet to rule directly on the measure of damages for AKS-tainted false claims, it encourages the Court to apply its approach to damages here, contending that "every court that has considered" the measure of damages has adopted that method.

Upon a careful review of the caselaw presented in the pleadings of both parties, the Court will continue to apply the government's damages standard which has been proffered in prior rulings in this case. See United States v. Teva Pharms. USA, Inc., No. CV 20-11548-NMG, 2022 WL 6820648, at *5 (D. Mass. Oct. 11, 2022).

As United States Magistrate Judge Jennifer C. Boal previously stated in her June, 2022 order in this case, the Seventh Circuit explained the basis for its measure of damages for AKS-based false claims in Rogan as follows:

-14-

> [Defendant] did not furnish any medical service to the
> United States. The government offers a subsidy (from
> the patients' perspective, a form of insurance), with
> conditions. When the conditions are not satisfied,
> nothing is due. Thus the entire amount that
> [defendant] received on these . . . claims must be
> paid back.

Rogan, 517 F.3d at 453. The rationale here is that the
government simply would not have paid those Medicare claims had
it known they were submitted in violation of certain Medicare
requirements such as the AKS or the Stark Law, 42 U.S.C.
§ 1395nn. See, e.g., Yates v. Pinellas Hematology & Oncology,
P.A., 21 F.4th 1288, 1304 (11th Cir. 2021) ("In the context of
Medicare claims, . . . courts have measured damages as the
difference between what the government paid and what it would
have paid had the defendant's claim been truthful and
accurate."); United States ex rel. Drakeford v. Tuomey, 792 F.3d
364, 386 (4th Cir. 2015) ("Compliance with the Stark Law is a
condition precedent to reimbursement of claims submitted to
Medicare. When [defendant] failed to satisfy that condition,
the government owed it nothing."); United States v. Mackby, 339
F.3d 1013, 1019 (9th Cir. 2003) ("Had [the defendant] been
truthful, the government would have known that [it] was entitled
to nothing.").

Thus, the Court will measure damages in this case as the entirety of the government's payments for the claims resulting from the illegal kickbacks.

### ORDER

For the foregoing reasons, Teva's motion for summary judgment (Docket No. 159) is **DENIED** but the government's motion for partial summary judgment (Docket No. 160) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: July 14, 2023

# EXHIBIT B

**United States District Court**
**District of Massachusetts**

```
                                )
United States of America,       )
                                )
          Plaintiff,            )
                                )
          v.                    )    Civil Action No.
                                )    20-11548-NMG
Teva Pharmaceuticals USA, Inc., )
and Teva Neuroscience, Inc.,    )
                                )
          Defendants.           )
                                )
```

**ORDER**

Pending before the Court is the motion of Teva Pharmaceuticals USA, Inc. and Teva Neuroscience, Inc. (collectively "Teva" or "defendant") to certify for interlocutory appeal the order of this Court entered July 14, 2023 (Docket No. 195) denying Teva's motion for summary judgment and allowing the motion of the United States ("the government" or "plaintiff") for partial summary judgment.

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal only if it is satisfied that such an order

> [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the

-1-

order may materially advance the ultimate termination
of the litigation . . . .

28 U.S.C. § 1292(b).  Teva contends that the causation standard
when a plaintiff seeks to prove falsity by relying on the 2010
Amendment to the Anti-Kickback Statute is "a controlling
question of law as to which there is substantial ground for
difference of opinion," and an immediate appeal may "materially
advance the ultimate termination of th[is] litigation." See id.
The Court agrees that certification is warranted.

Accordingly, defendant Teva's motion to certify the Court's
July 14, 2023 order for interlocutory appeal to the United
States Court of Appeals for the First Circuit and stay trial
pending resolution of that interlocutory appeal (Docket No. 196)
is **ALLOWED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated: August 14, 2023

-2-