# EXHIBIT A

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-8050
_____

GERALD FORSYTHE, individually and on behalf of all
others
similarly situated
v.

TEVA PHARMACEUTICAL INDUSTRIES LTD; EREZ
VIGODMAN; EYAL DESHEH; ROBERT KOREMANS;
MICHAEL DERKACZ; KARE SCHULTZ; MICHAEL
MCCLELLAN; BRENDAN O'GRADY,
Petitioners
_____

On Petition for Permission to Appeal
Pursuant to Federal Rule of Civil Procedure 23(f)
from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-20-cv-04660
District Judge:  The Honorable Karen S. Marston
_____

Submitted Under Third Circuit L.A.R. 34.3

Before: SHWARTZ, CHUNG, and SMITH, *Circuit Judges*.

(Filed: May 16, 2024)

Melissa Blanco
Mathieu Shapiro
Obermayer Rebmann Maxwell & Hippel
1500 Market Street
Centre Square West, 34th Floor
Philadelphia, PA 19102

James P. Smith, III
Kerry C. Donovan
Winston & Strawn
200 Park Avenue
New York, NY 10166

Daniel M. Blouin, Esq.
Linda T. Coberly, Esq.
Winston & Strawn
35 W Wacker Drive
46th Floor
Chicago Il 60601
*Counsel for Defendants - Petitioners*

Robert W. Killorin
Faruqi & Faruqi
3565 Piedmont Road NE
Building Four
Suite 380
Atlanta, GA 30305

2

Timothy J. Peter
Faruqi & Faruqi
Suite 1550
1617 John F. Kennedy Boulevard
Suite 1550
Philadelphia, PA 19103

James M. Wilson, Jr.
Faruqi & Faruqi
685 Third Avenue
26th Floor
New York, NY 10017
*Counsel for Lead Plaintiff - Respondent Gerald Forsythe*

—————————————

## OPINION OF THE COURT

—————————————

**SMITH**, *Circuit Judge*.

Teva Pharmaceuticals Industries Ltd. and several of its officers ("Teva") seek our permission to appeal the District Court's Order granting class certification. Teva argues that interlocutory review is proper under Federal Rule of Civil Procedure 23(f)[1] because the Petition presents a novel legal

---

[1] Fed. R. Civ. P. 23(f) specifies that:

> A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the

issue, the resolution of which will advance the development of class certification jurisprudence in securities cases, and because the District Court erred in its predominance analysis with respect to Lead Plaintiff Gerald Forsythe's proposed class wide damages methodology. Because the securities issue does not relate directly to the requirements that must be met for class certification, and as we agree with the District Court's predominance analysis, interlocutory review is not appropriate. We will deny the Petition.

## I.     BACKGROUND

Forsythe asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of himself and a putative class of "all those who purchased or otherwise acquired Teva securities between" October 29, 2015, and August 18, 2020. Appendix ("A")-86-87, A-605. He alleged damages resulting from misstatements and omissions by Teva and its officers related to Copaxone, a drug manufactured by Teva which is used to treat multiple sclerosis.[2]

circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

[2] The allegedly false and misleading statements related to Copaxone's market share, Teva's supposed compliance with

As relevant to this petition, Teva's shares are dual listed on the New York Stock Exchange ("NYSE") and the Tel Aviv Stock Exchange ("TASE"). Shares purchased on the NYSE are referred to as "American Depository Shares" ("ADSs") and the shares purchased on the TASE are termed "ordinary shares." Pet. at 9; *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. CV 20-4660-KSM, 2023 WL 7285167, at *1 (E.D. Pa. Nov. 3, 2023). Each ADS is equivalent to one ordinary share.

Teva and its officers filed a motion to dismiss, which the District Court granted as to one individual officer and denied as to Teva and the remaining named officer-defendants. The Court then granted Forsythe's motion for class certification.[3] In doing so, and as relevant here, the Court

---

federal law, and a program which assists patients in obtaining insurance coverage for the drug.

[3] The District Court defined the class, A-605, as:

All persons or entities who purchased or otherwise acquired Teva securities between October 29, 2015 and August 18, 2020, inclusive, and were damaged thereby. Excluded from the Class are the Defendants; the officers, directors, and affiliates of Teva, at all relevant times; Teva's employee retirement or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired Teva securities through any such plan(s); any entity in which Defendants have or had controlling interest; immediate family members of any

5

analyzed *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247 (2010), and rejected Teva's assertion that the class definition should exclude purchasers of ordinary shares. The Court also rejected Teva's argument that Plaintiff could not satisfy Rule 23(b)(3)'s predominance requirement. Teva now petitions for permission to appeal pursuant to Rule 23(f).

Teva first argues that the District Court's conclusion as to *Morrison* erroneously resolves a novel and unsettled question of law and "open[s] the door to courts . . . applying . . . U.S. securities laws extraterritorially" in a manner that will, "[a]t best, . . . sow significant confusion," and at worst, "call[] into question *Morrison*[] . . . itself." Pet. at 11. Teva also challenges the Court's predominance analysis, asserting that the Court's reasoning as to Forsythe's damages model would render leading case law "a nullity" and perpetuate existing "confusion among the lower courts." Pet. at 19.[4]

## II. DISCUSSION

Generally, we have jurisdiction only over appeals from final judgments. *See* 28 U.S.C. § 1291. There are, however,

---

excluded person; and the legal representatives, heirs, successors, or assigns of any excluded person or entity.

[4] The District Court had jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a), and 28 U.S.C. § 1331. We have "broad discretion to grant or deny timely petitions for interlocutory review under Rule 23(f) and 28 U.S.C. § 1292(e)." *Wolff v. Aetna Life Ins. Co.*, 77 F.4th 164, 171 (3d Cir. 2023).

exceptions to this general principle.[5] These exceptions are narrow, and the "very narrowness of appellate jurisdiction is designed to discourage piecemeal litigation." *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 575 (3d Cir. 2014) (internal citation omitted). Rule 23(f) provides a narrow avenue for parties seeking to appeal grants or denials of class action certification. But to understand the scope of Rule 23(f), one must first understand its historical evolution.[6]

Before the enactment of Rule 23(f), it was well settled that class certification decisions were not appealable final

---

[5] Consider: 28 U.S.C. §1292(a) (granting appellate jurisdiction over certain types of interlocutory orders); 28 U.S.C. § 1292(b) (allowing a district court to certify an order involving a "controlling question of law as to which there is substantial ground for difference of opinion" and where "immediate appeal from the order may materially advance the ultimate termination of the litigation"); Fed. R. Civ. P. 54(b) (permitting a district court to certify "a final judgment as to one or more, but fewer than all, claims or parties" for appellate review); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (permitting immediate appeal of an otherwise non-final collateral order under certain circumstances).

[6] As Chief Justice Warren aptly explained, appellate jurisdiction "is dependent upon authority expressly conferred by statute," and the "jurisdictional statutes prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction . . . [that] they have always been interpreted in the light of that history." *Carroll v. United States*, 354 U.S. 394, 399 (1957).

orders under 28 U.S.C. § 1291. *Sullivan v. Pacific Indem. Co.*, 566 F.2d 444, 445 (3d Cir. 1977). "Appellate courts were generally reluctant to grant interlocutory review of class certification orders," and those courts that did so granted review employing a variety of devices only in rare circumstances. *In re NFL*, 775 F.3d at 576.[7] Over time, however, and as class-action litigation developed after the 1966 adoption of modern Rule 23, it became clear that serious reforms were needed to permit appellate review of class-action certification decisions.[8]

Rule 23(f) represented a "sea change."[9] Added in 1998 to provide a form of interlocutory review over class-action certification decisions, Rule 23(f) was introduced because "the class-action certification decision [itself] is often decisive as a practical matter." *In re NFL*, 775 F.3d at 577 (internal citation

---

[7] One such example was the use of mandamus under the All Writs Act, 28 U.S.C. § 1651(a). *See In Re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995). Consider also the exercise of jurisdiction after a district court certified the non-final, interlocutory order for appellate review pursuant to 28 U.S.C. § 1292(b). *See Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996). Use of the writ was "extraordinary," and the invocation of § 1292(b) was "rare." *In re NFL*, 775 F.3d at 576.

[8] *See* Robert H. Klonoff, *The Decline of Class Actions*, 90 WASH. U. L. REV. 729, 739 (2013).

[9] ROBERT H. KLONOFF, CLASS ACTIONS AND OTHER MULTI-PARTY LITIGATION: CASES & MATERIALS 697 (4th ed. 2017).

and quotation marks omitted). Crucially, 23(f) was designed to permit appeal in the *sole discretion* of the court of appeals. This "unfettered discretion whether to permit the appeal [is] akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments). The Advisory Committee on Civil Rules envisioned that the courts of appeals would "develop standards for granting review that reflect the changing areas of uncertainty in class litigation." *Id.* Our Court did so.

In *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 163-69 (3d Cir. 2001), *as amended* (Oct. 16, 2001), we set forth broad principles to guide our interpretation of Rule 23(f), while also clarifying the standard under which we would review a decision granting or denying class certification. And in *Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013), we clarified the five circumstances under which appellate review of an order granting or denying class certification may be appropriate. These include: (1) when denial of certification effectively terminates the litigation because the value of each plaintiff's claim is outweighed by the costs of stand-alone litigation; (2) when class certification risks placing inordinate pressure on defendants to settle; (3) when an appeal implicates novel or unsettled questions of law; (4) when the district court's class certification determination was erroneous; and (5) when the appeal might facilitate development of the law on class certification. *Id.* at 376-77.

But interlocutory review is not appropriate in *every* circumstance "when an appeal implicates novel or unsettled questions of law." *Id.* at 377. It is true that this Court has exercised its discretion under Rule 23 using a "more liberal

9

standard" than other courts of appeals. *Laudato v. EQT Corp.*, 23 F.4th 256, 260 (3d Cir. 2022) (citing *Rodriguez*). However, the Advisory Committee made clear that though "[p]ermission to appeal may be granted or denied on [any] basis . . . the court . . . finds persuasive," such "[p]ermission is mostly likely to be granted when the *certification decision* turns on a novel or unsettled question of law." Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments) (emphasis added). This language clearly distinguishes such scenarios from those in which the *underlying litigation* turns on a novel or unsettled question of law. Those questions are usually best resolved through dispositive motions, including motions for partial summary judgment.

We thus reiterate that permission to appeal should be granted where the certification decision itself under Rule 23(a) and (b) turns on a novel or unsettled question of law, not simply where the merits of a particular case may turn on such a question. That approach is consistent with the narrow focus of interlocutory review intended by the drafters of Rule 23(f). It also adheres to the Supreme Court's guidance. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied") (citing, among others, Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C. App., p. 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.")

10

(alteration in original)). And it is also in line with approaches taken by our sister circuits.[10]

\*\*\*

We turn to Teva's petition. Teva first challenges the District Court's conclusion that the class definition should include purchasers of ordinary shares purchased on the TASE. Teva states that "the only way a holder of . . . ordinary shares could be part of the class would be if they engaged in a domestic transaction." Pet. at 9 (cleaned up). Further, Teva asserts that this case differs from other cases involving "holders of TASE-traded ordinary shares" because there is no corresponding claim asserted here "under . . . *Israeli* securities

---

[10] *See, e.g.*, *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1037 (8th Cir. 2018) (citing to *Amgen*); *Stockwell v. City and Cnty. of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014) ("[C]ourts must consider merits issues only as necessary to determine a pertinent Rule 23 factor . . . [and] the limitation on consideration of the merits to the relevant class certification questions is of jurisdictional significance."); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) ("[A] Rule 23 interlocutory appeal permits us to consider the merits of the class's claims only to the extent that they overlap with the Rule 23 factors."); *Regents of the Univ. of Cal. v. Credit Suisse First Boston*, 482 F.3d 372, 381 and 381 n.11 (5th Cir. 2007); *In re Lorazepam & Clorazepate Antitrust Litigation*, 289 F.3d 98, 106 (D.C. Cir. 2002) ("[R]eview is inappropriate [where] arguments . . . are unrelated to class certification."); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293-294 (1st Cir. 2000); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1275-76 (11th Cir. 2000).

11

laws . . . alongside Exchange Act claims." Pet. at 10. Teva contends that, in deciding the issue of whether to "include TASE purchasers in class actions against Israeli issuers absent an Israeli law claim," the District Court "opened the door to courts . . . applying the U.S. securities laws extraterritorially to transactions involving securities of a foreign issuer on a foreign exchange based on the extent to which" the foreign securities regime "defers to or mirrors the U.S. law[,]" rather than on "whether or not any domestic transaction is involved." Pet. at 10-11. Doing so, according to Teva, risks "sow[ing] significant confusion" and may "call[] into question *Morrison*'s holding itself[.]" Pet. at 11.

The Supreme Court concluded in *Morrison* that Section 10(b) does not provide an extraterritorial cause of action. 561 U.S. at 267 (a plaintiff can allege a Section 10(b) violation based only on "transactions in securities listed on domestic exchanges, and domestic transactions in other securities"). But *Morrison* did not consider the applicability of Section 10(b) to dual-listed securities, and the District Court acknowledged as much. *See* A-566-68 ("[f]ew courts have addressed whether *Morrison* should apply to cases involving the dual-listing arrangement with Israel's TASE in the traditional class certification context," and "*Morrison* did not consider the applicability of Section 10(b) . . . [to] a security dual-listed between the United States and Israel"); *Halman Aldubi Provident & Pension Funds Ltd.*, 2023 WL 7285167, at *8-9.

Here, Teva's challenge amounts to a request to define — at the class certification stage — the reach of Section 10(b) of the Securities Exchange Act with respect to dual-listed securities. But "to ask what conduct § 10(b) reaches . . . is a merits question." *Morrison*, 561 U.S. at 254. Novel as it may

12

be, any question of whether or how Section 10(b) applies to dual-listed securities does not directly relate to the requirements of Rule 23(a) or (b), and thus need not be decided at the class certification stage. Review under 23(f) is therefore not appropriate.

Teva also challenges the District Court's predominance analysis. In essence, Teva argues that Forsythe's proposed class wide damages methodology is inconsistent with its theory of liability. *See* Pet. at 15 (contending that "the [D]istrict [C]ourt certified a class based on a methodology that measures damages as a whole, without attributing damages to any one particular theory") (cleaned up). We disagree.

Under Rule 23(b)(3), damages must be "susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). This means that, at "the class-certification stage . . . any model supporting a plaintiff's damages case must be consistent with its liability case[.]" *Id.* (internal citation and quotation marks omitted). The plaintiff in *Comcast* provided one integrated damages model that encompassed four theories of liability. *Id.* at 37. But the plaintiff could not parse out the damages attributable to the only theory remaining in the case. *Id.* Because that remaining theory raised class wide questions that were not relevant to the other three theories of injury, the plaintiff's damages model did not match the remaining theory and the Court reversed the certification of the class. *Id.* at 37-38.[11]

---

[11] We recently applied *Comcast* in the securities context, albeit in a non-precedential ruling. *See Univ. of Puerto Rico Ret. Sys. v. Lannett Co.*, No. 21-3150, 2023 WL 2985120, at *4 (3d Cir.

Here, the District Court concluded that Forsythe's proposed damages model was consistent with his theory of liability. The Court reasoned that the three "categories of misstatements identified by [Forsythe] ultimately reach the same theory of the case," namely that "[d]efendants made material misrepresentations and omissions[,] that [these] misrepresentations [artificially inflated] Teva's stock price[,] and [that] the stock price declined when the truth emerged[,] causing financial loss to [Forsythe] and the class." A-594 (cleaned up) (internal citation omitted); *Halman Aldubi Provident & Pension Funds Ltd.*, 2023 WL 7285167, at *21. The Court concluded that the proposed damages model — an event study — is consistent with this theory, and noted that any questions of "loss causation" or the "disaggregati[on of] confounding factors to prove economic loss" need not be determined at the class certification stage. A-598-99 (internal citation omitted).

We agree with the District Court. As a starting point, "[d]efendants agree that [a model] like the one proposed by [Forsythe] is a common methodology in securities cases." A-598. And we perceive no error in the Court's assessment of Forsythe's proposed damages model and its relation to the

_____

Apr. 18, 2023) (unpublished). Unlike the *Comcast* plaintiff, the *Lannett* plaintiff had only one liability theory and one damages theory, *id.* at *3-4, and this liability theory "pair[ed] properly" with the "single, long-accepted damages theory," *id.* at *4. We therefore affirmed the District Court's order certifying the class.

proposed theory of liability.[12] We also stress that *Comcast* poses a low bar to class certification. *See, e.g.*, *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015) ("it is important for the [d]istrict [c]ourt to remember that an inability to calculate damages on a class wide basis will not, on its own, bar certification[,]" and a court "errs when it holds a plaintiff seeking class certification to a higher standard of proof than proof by a preponderance of the evidence").[13]

For all of the foregoing reasons, we will deny the Petition.

---

[12] We reject petitioner's attempt to recast the asserted categories of misstatements as distinct theories of liability. The District Court properly determined that even though it dismissed one of three categories of misstatements which "reach[ed] the same theory" of liability, "those misstatements [were] part of the same, single theory of liability" and said theory remained viable. A-594, A-596.

[13] *See also Strougo v. Barclays PLC*, 312 F.R.D. 307, 313 (S.D.N.Y. 2016) ("Issues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases.") (citations omitted).