**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD.,**<br><br>Plaintiff,<br><br>*v.*<br><br>**TEVA PHARMACEUTICALS INDUSTRIES LIMITED, et al.,**<br><br>Defendants. | **CIVIL ACTION**<br><br>**NO. 20-4660-KSM** |

# MEMORANDUM

**Marston, J.** **August 30, 2024**

Lead Plaintiff Gerald Forsythe, individually and on behalf of all others similarly situated, alleges that Teva Pharmaceuticals Industries Limited ("Teva") and Teva executives Erez Vigodman, Eyal Desheh, Robert Koremans, Michael Derkacz, Kåre Schultz, Michael McClellan, and Brendan O'Grady (collectively, the "Individual Defendants," and together with Teva, "Defendants") violated Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 by making false and misleading statements and by failing to disclose material information about Teva's specialty drug, Copaxone. (Doc. No. 1.) Plaintiff also claims that the Individual Defendants violated Section 20(a) of the Exchange Act because they knew or recklessly disregarded that Teva was making materially false and misleading statements and material omissions. (*Id.* ¶¶ 249–254.) On August 2, 2022, the Court granted Defendants' motion to stay the case pending the resolution of an active enforcement action brought against Teva by the U.S. Department of Justice (the "DOJ Action"). (Doc. Nos. 86, 87.) Presently before the Court is Plaintiff's Motion for Reconsideration and to Lift the Stay

implemented by the Court's August 2, 2022 order (the "Motion"). (Doc. Nos. 120, 123.) Defendants oppose the Motion. (Doc. No. 122.) For the reasons discussed below, the Motion is granted.

## I. Background

Because the Court has previously described the factual background extensively in several memoranda (*see, e.g.*, Doc. Nos. 74, 115), the Court provides only limited background here. As relevant to this opinion, the background is as follows.

### A. Teva's Shared Solutions Program

Teva is a global pharmaceutical company that sells generic, specialty medicines, and over-the-counter products. (Doc. No. 64-2 at ¶ 27.) One of Teva's primary products is the specialty drug, Copaxone (glatiramer acetate injection), an injectable drug used to treat patients with multiple sclerosis. (*Id.* ¶¶ 28–29.) To increase patient access to Copaxone, Teva sponsored "Shared Solutions," which trained patients on how to inject the drug, offered patients injection devices to administer the drug, and assigned patients case managers who help patients secure insurance coverage for the drug. (*Id.* ¶ 41.) In 2006, in connection with the Shared Solutions program, Teva contracted with Advanced Care Scripts, Inc. ("ACS"), a specialty pharmacy. (*Id.* ¶ 42.) For the patients who did not already have Medicare Part D coverage, ACS assisted with the enrollment process. (*Id.*) And for the patients who already had Medicare Part D coverage and were eligible for co-pay coverage from a patient assistance program ("PAP"),[1] ACS helped them apply to a PAP for coverage. (*Id.*)

ACS referred Teva's Copaxone patients to two PAPs for co-pay assistance: the Chronic Disease Fund ("CDF") and The Assistance Fund ("TAF"). (*Id.*) Teva regularly donated to both

---

[1] A PAP is a charitable program that provides financial assistance to help patients cover Medicare Part D co-pays. (Doc. No. 57 ¶ 35.)

PAPs. (*Id.*) Under the applicable regulations, pharmaceutical companies may donate to PAPs; however, "the funds received through donations must be applied generally to all beneficiaries, and it is illegal for a Charitable PAP to apply the funds received to any particular drug." (*Id.* ¶ 35.) Teva allegedly ran afoul of those regulations because it did not intend its donations to CDF and TAF to cover co-payments for multiple sclerosis treatments generally; rather, it intended for its donations to CDF and TAF to only cover patients' co-pays on Copaxone. (*Id.* ¶ 48.)

**B. The DOJ Action**

On August 18, 2020, the U.S. Attorney's Office for the District of Massachusetts filed a complaint ("DOJ complaint") against Teva for alleged violations of the False Claims Act. (*Id.* ¶ 168.) In the DOJ complaint, the Government contends that Teva's payments to CDF and TAF were "kickbacks" that allowed the company to increase the price of Copaxone while leaving the "American taxpayers to shoulder the high prices that Teva set." (*Id.*) Plaintiff alleges that the DOJ complaint is the corrective disclosure which revealed Teva's Copaxone scheme to the market. (*Id.*) On July 14, 2023, following the close of discovery in the DOJ Action, the Honorable Nathaniel M. Gorton denied Teva's motion for summary judgment and granted the government's motion for partial summary judgment. *See* Mem. and Order (Doc. No. 195), *United States v. Teva Pharms. USA, Inc.*, Civil Action No. 1:20-cv-11548-NMG (D. Mass. July 14, 2023). Subsequently, on August 23, 2023, Judge Gorton allowed Teva's motion to certify the question of whether the government "must demonstrate a but-for causal connection between Teva's donations to CDF and TAF and the resulting co-pay assisted Copaxone claim that Medicare reimbursed," for interlocutory appeal. (Doc. No. 112-1 at 6.) Presently, this motion is fully briefed and is pending before the United States Court of Appeals for the First Circuit. *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. 2024).

But, on June 16, 2024, Teva filed an unopposed motion to hold the First Circuit appeal in abeyance because the parties are "actively engaged in settlement negotiations and Teva is optimistic that the parties can reach a resolution." *See* Motion to hold case in abeyance, *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. June 16, 2024). The First Circuit granted this motion, canceled the oral argument previously scheduled for July 22, 2024, and ordered the parties to file a status report on July 22, 2024 and at 30-day intervals thereafter advising the court of the outcome of the settlement discussions. *See* Order, *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. June 20, 2024). On July 22, 2024, the DOJ and Teva filed their first status report to the First Circuit, notifying the court that "[t]he parties remain actively engaged in settlement negotiations and will report further on the status of those negotiations on August 21, 2024, or earlier if a settlement is reached before that date." *See* Joint Status Report, *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. July 22, 2024). On August 21, 2024, the DOJ and Teva filed a nearly identical status report, informing the First Circuit that they would report on the status of negotiations in another 30 days. *See* Status Report, *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. August 21, 2024). As of this date, the parties to the DOJ Action have not filed notification of settlement discussion resolution.

### C. Procedural History

On September 23, 2020, Halman Aldubi Provident and Pension Funds Ltd. ("Halman Aldubi") commenced this lawsuit individually and on behalf of all others similarly situated.[2] (Doc. No. 1.) On August 2, 2022, the Court granted Defendants' motion to stay this matter, except as to class certification, pending resolution of the DOJ Action. (Doc. No. 87.) On

[2] On March 1, 2021, this case was reassigned from the calendar of the Honorable Jan E. DuBois to the docket of the undersigned. (Doc. No. 37.)

November 3, 2023, the Court granted Plaintiff's motion for class certification, (Doc. No. 116), and on November 22, 2023, the Court denied Plaintiff's motion to lift the stay in this matter pending the Third Circuit's determination to grant or deny Defendants' petition for leave to appeal pursuant to Federal Rule of Civil Procedure 23(f) the Court's decision granting class certification (Doc. No. 117). On May 16, 2024, the Third Circuit denied Defendants' petition for leave to appeal. *See* Order (Doc. No. 20), *Halman Aldubi Provident & Pension Funds Ltd v. Teva Pharm. Indus. Ltd., et al.*, 23-8050 (3d Cir. May 16, 2024). On May 22, 2024, Plaintiff filed the instant motion to lift the stay in this matter. (Doc. No. 120.) Defendants oppose the motion. (Doc. No. 122.)

## II. Analysis

### A. Legal Standard

The Court has broad discretion to stay proceedings. *See Bechtel Corp. v. Local 215, Laborer's Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering whether to stay a case pending a related criminal or civil enforcement action, courts in this district consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal [or civil enforcement] litigation.

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980).

**B. Discussion**

On August 2, 2022, the Court previously granted the stay in this matter because (1) although Plaintiff does have an interest in proceeding expeditiously, he did not sufficiently demonstrate how a stay would prejudice him; (2) Defendants would face a great burden because they would be forced to undergo two parallel discovery processes in complex cases; (3) a stay promoted judicial efficiency because it could narrow the issues to be resolved in this action and the outcome of the DOJ action could incentivize Defendants to settle this action; (4) nonparty interests were served by a stay because it was preferable to avoid coordination of responses to simultaneous, complex discovery processes; and (5) the public interest would be best served to allow the DOJ Action to proceed smoothly and without distraction from this matter. (*See* Doc. No. 86.)

Plaintiff now argues that the stay should be lifted because a continuation of a stay pending resolution of the DOJ Action will severely prejudice Plaintiff and the class, no dispositive action in the DOJ Action will occur in the near future, there is no prospect of parallel discovery since discovery in the DOJ Action concluded in March 2023, and the legality of Teva's charitable donation scheme does not control Plaintiff's claims. (Doc. No. 120-1 at 5–7.) Defendants respond that the DOJ case is proceeding apace and is not delayed because the parties are in active settlement negotiations and oral argument before the First Circuit was calendared prior to the request to hold the appeal in abeyance. (Doc. No. 122 at 6.) Additionally, if the appeal in the DOJ case is denied, Defendants argue the Government would presumably seek a prompt trial date in district court. (*Id.* at 7.) Defendants further argue that Plaintiff has not identified any additional prejudice, whereas Defendants could face a great burden of having to endure both a trial and discovery simultaneously, with now more than 20 people listed as

witnesses in both this matter and the DOJ Action. (*Id.* at 8.) Finally, Defendants argue that the stay still helps avoid the risk of inconsistent adjudications, and the interests of third parties and the public still favor a stay. (*Id.* at 8–9.)

For the reasons discussed below, the Court grants Plaintiff's motion and lifts the stay.

**1. Plaintiff's Interest in Proceeding Expeditiously and Prejudice to Plaintiff if the Stay Continues**

Regarding the first factor—Plaintiff's interest in proceeding expeditiously and prejudice if the stay continues—we previously stated that a stay is unlikely to prejudice Plaintiff because the stay was likely to be of a *limited* duration, since dispositive motion practice was set to begin in March 2023 and a trial was scheduled for September 2023. (Doc. No. 86 at 8.) But the September 2023 trial date in the DOJ Action came and went without any movement in that case. *See generally*, *United States v. Teva Pharms. USA, Inc*., Civil Action No. 1:20-cv-11548-NMG (D. Mass. July 14, 2023). Instead, the DOJ Action has been pending on appeal from Judge Gorton's decision on summary judgment, and that appeal is now being held in abeyance by the First Circuit. *See* Order, *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. June 20, 2024). Although Defendants are optimistic that settlement negotiations are proceeding apace and the DOJ Action will quickly resolve (Doc. No. 122 at 6), the July 22, 2024 and August 21, 2024 status reports filed by those parties—both virtually identical—do not provide any indication as to how much time will transpire before there is a resolution to the settlement negotiations. *See* Joint Status Report, *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. July 22, 2024); Status Report, *United States v. Teva Pharms. USA, Inc.*, No. 23-1958 (1st Cir. August 21, 2024). In the meantime, this action in the Eastern District of Pennsylvania has been stayed for over two years. As Plaintiff argues, Plaintiff will suffer prejudice if the stay continues because the risk of witnesses' fading memories, witness deaths, change in witness

locations, and lost evidence grows every day. (Doc. No. 120-1 at 6.) For this reason, the Court finds that this factor now weighs in favor of lifting the stay. *See In re Univ. Health Servs.*, No. 17-2187, 2018 U.S. Dist. LEXIS at *1 n.1 (E.D. Pa. Dec. 10, 2018) (denying motion for stay in shareholder derivative suit because "[t]o allow such an indefinite stay in this case would 'unduly prejudice or present a clear tactical disadvantage' to Plaintiffs. There is at least a fair possibility that Plaintiffs will be harmed by an indefinite stay because of potential loss of evidence. As time goes on, memories fade and witnesses may become unavailable, irrevocably impeding the discovery process"); *cf. Resco Prods. V. Bosai Minerals Grp. Co.*, No. 06-235, 2010 U.S. Dist. LEXIS 54949, at *16–20 (W.D. Pa. June 4, 2010) (holding that "[a]ny prejudice to plaintiff caused by *such a short delay* [of six to twelve months] is outweighed by the minimization of separation of powers concerns raised by the [related] proceedings") (emphasis added).

**2. Burden on Defendants if the Case Proceeds**

As to the second factor—burden on Defendants if the case proceeds—the Court previously granted the stay because Teva would face a great burden of juggling two massive discovery processes simultaneously, especially because it would likely spread thin the time of certain key individuals at Teva. (Doc. No. 86 at 8–9.) However, discovery in the DOJ Action has concluded, so any concern regarding simultaneous discovery has been extinguished. *See* Docket, *United States v. Teva Pharms. USA, Inc.*, Civil Action No. 1:20-cv-11548-NMG (D. Mass. July 14, 2023). Moreover, since there is some overlap in the factual matter of this case and the DOJ Action, it is likely that Defendants' burden in responding to discovery will be reduced, as many relevant documents have already been reviewed and produced in the DOJ Action. (Doc. No. 120-1 at 6.)

Although Defendants argue that this case will proceed swiftly to trial if Teva's appeal is

denied by the First Circuit (Doc. No. 122 at 8), the Court finds that the risk of an impending trial is too far attenuated; the parties are presently negotiating a settlement and even if those settlement conversations fall through, any such trial would likely not take place for an extended period of time, during which time the parties in this matter could endeavor to complete fact discovery. In the first hypothetical scenario, if the parties in the DOJ Action are successful in settling the case, there is no risk of simultaneous burden on Defendants at all. In the second, if the parties fail to resolve this case, the First Circuit will resume its consideration of Teva's appeal of Judge Gorton's summary judgment decision. It is unclear how many weeks and months it will take for the parties to conclude negotiations, and following that, it is unclear how many weeks and months it will take for the parties to reschedule oral argument before the First Circuit and for the First Circuit to rule on the interlocutory appeal.[3] And, only after the First Circuit issues its decision can Judge Gorton consider when to schedule the DOJ Action for trial.[4] As such, given the likelihood that the DOJ Action may not move forward at the District Court level for many months, the Court finds that engaging in fact discovery at this time will not unduly burden Defendants and this factor weighs in favor of lifting the stay. *Cf. In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 653, 636 (E.D. Pa. 2010) ("At this time, the criminal grand jury investigation is still in its infancy. Because no criminal proceeding has been initiated, and may never be initiated, defendants are asking for a stay of an undetermined, but possibly

---

[3] Plaintiff suggests that the median time from filing Notice of Appeal to Last Opinion or Final Order in the First Circuit is 14.5 months, whereas Defendants suggest that the median time from oral argument to last opinion or final order in the First Circuit is 3.9 months. (Doc. No. 120-1 at 6 n.3, Doc. No. 122 at 6 n.1.) Under either timeline, the parties will have adequate time to complete fact discovery.

[4] Additionally, if the First Circuit rules in favor of Teva on an issue that Defendants argue could be outcome determinative, then the DOJ Action would quickly end. (Doc. No. 122 at 7.) Although Defendants suggest that this possibility should counsel in favor of keeping the stay in place, the Court notes that this hypothetical scenario suggests that this Court should not wait months for the outcome of the First Circuit opinion if it would only be a needless delay.

prolonged, period of time. . . . [T]he potential prejudice to defendants and third-parties is, at this pre-indictment period of time, speculative.”).

**3. Efficient Use of Judicial Resources**

The third factor—efficient use of judicial resources—weighs slightly against lifting the stay. As we stated in our opinion initially granting the stay, a settlement in the DOJ Action could incentivize the parties to settle this matter as well. (*See* Doc. No. 86 at 11.) Furthermore, as we noted previously, if Teva is found “not liable” in the DOJ Action, Plaintiff may be foreclosed from arguing that Defendants made false statements or could be precluded from establishing materiality. (*Id.*) However, and importantly, the outcome of the DOJ Action has no *direct* impact on this matter, since the legality or illegality of Teva’s actions, central to the DOJ Action, has no bearing on the validity of Plaintiff’s claims here. (*See* Doc. No. 74 at 20 (“[I]t is largely immaterial whether Teva’s actions were illegal because Plaintiff does not argue that Teva was required to disclose this scheme merely because it may have been illegal; rather, Plaintiff argues that Teva was required to disclose this scheme because it is what made Copaxone so successful.”).) Thus, because this Court will still be required to efficiently and timely adjudicate this matter regardless of the outcome of the DOJ Action, an indefinite delay harms our interest in quick resolution, and the Court finds that this factor only slightly weighs against lifting the stay. *See In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d at 636 (“The judiciary’s interests are furthered by the ‘just, speedy, and inexpensive determination of every action and proceeding,’ a policy at odds with a stay of indeterminate length.”) (citing Fed. R. Civ. P. 1).

**4. Interests of Non-Parties**

The fourth factor—interests of non-parties—also weighs in favor of lifting the stay. We previously granted the stay because several nonparties were potential witnesses in both actions

and could be burdened by simultaneous third-party discovery processes. (Doc. No. 86 at 12.) Now that discovery has concluded in the DOJ Action, the nonparties will not be burdened by simultaneous discovery, and as discussed *supra*, any potential trial in the DOJ Action where such witnesses could be expected to testify is too far attenuated to warrant further stay of this matter.[5]

**5. Interest of the Public**

Finally, the fifth factor—the public's interest in the pending litigation—weighs in favor of lifting the stay. We previously held that the public interest would be served by permitting the DOJ Action to proceed smoothly and without distraction from this matter. (Doc. No. 86 at 12.) But, since the DOJ Action appeal is being held in abeyance, and will be pending on appeal if the settlement negotiations fail, there is no real "distraction" to the trial proceedings at this time. Additionally, "the public's interest in the enforcement of [shareholder derivative] laws is furthered by the expeditious resolution of this class-action lawsuit." *In re Blood Regents Antitrust Litig.*, 756 F. Supp. 2d at 636 (citation omitted).

* * *

Weighing these factors together, the Court finds it appropriate to lift the stay in this matter. The Court recognizes that Defendants seek to avoid any undue burden from engaging in discovery in this matter simultaneously with trial preparation in the DOJ Action–however, any burden is likely to be limited because the DOJ Action is unlikely to resume in federal district court at least for several more months. Additionally, as this matter has already been stayed for over two years, Plaintiff is suffering ongoing prejudice as witnesses' memories fade and the risk of lost evidence increases. Considering these factors together, we find a stay is no longer

[5] To the extent a non-party is unduly burdened by overlapping timing of third-party witness depositions in this matter and trial testimony in the DOJ Action, this Court will entertain a motion for extension of discovery deadlines.

warranted in this action.

## III. Conclusion

For the reasons discussed, Plaintiff's Motion is granted, and the stay implemented by this Court's August 2, 2022 Order (Doc. No. 87) is lifted. An appropriate Order follows.