## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HALMAN ALDUBI PROVIDENT AND PENSION FUNDS LTD.,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-4660-KSM** |
| **TEVA PHARMACEUTICALS INDUSTRIES LIMITED, et al.,** | |
| Defendants. | |

## STIPULATION AND ORDER GOVERNING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

WHEREAS, the above-captioned action, brought by Lead Plaintiff Gerald Forsythe ("Plaintiff") against Defendants Teva Pharmaceuticals Industries Limited ("Teva"), Erez Vigodman, Eyal Desheh, Robert Koremans, Michael Derkacz, Kåre Schultz, Michael McClellan, and Brendan O'Grady ("Defendants" and, together with Plaintiff, the "Parties"), is pending before this Court;

WHEREAS, the Parties, through their undersigned counsel, have stipulated and agreed to give effect to this Stipulation and Order Governing the Production of Documents and Electronically Stored Information ("Protocol"), as set forth below, to facilitate discovery. This Protocol shall apply to the production of Documents and Electronically Stored Information (as defined herein) in this Action as follows:

### I.    PURPOSE

This Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the parties during the pendency of the above captioned litigation as a supplement to, but in no

circumstances should be construed as abridging, enhancing, or modifying the Parties' obligations under, the Federal Rules of Civil Procedure, the rules of the Eastern District of Pennsylvania and any other applicable orders and rules. Nor should any provision within this Protocol be construed to narrow or waive the protections provided by the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges or protections.

## II.    DEFINITIONS

a.  **"Action"** refers to the above-captioned action.

b.  **"Attachment"** means a physical file that is sent with an email or other electronic message or communication.

c.  **"Confidentiality Designation"** means the legend affixed to Documents or Discovery Material designated as determined by, and subject to, the terms of the Confidentiality Order, as defined herein, governing the use and disclosure of any non-public and confidential proprietary information in this Action.

d.  **"Confidentiality Order"** means the Parties' Confidentiality Stipulation and Proposed Protective Order (ECF No. 91-1), entered by the Court on April 12, 2022 (ECF No. 92).

e.  **"Discovery Material"** means items or information, regardless of the medium or manner in which it is generated, stored, or maintained that are produced or generated in responses to discovery in this Action.

f.  **"Document(s)"** has the same meaning as in in Rules 26 and 34(a)(1)(A) of the Federal Rules of Civil Procedure (the "Federal Rules").

g.  **"Document Family"** means a Document and all of its attachments.

h.  **"DOJ Litigation"** refers to the matter of *United States of America v. Teva Pharmaceuticals USA, Inc., et al.*, No. 20-cv-11548 (D. Mass.).

i.  **"Electronically Stored Information" or "ESI"** as used herein, has the same meaning as in Federal Rules 26 and 34(a)(1)(A), and includes electronic Documents or data, and computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or Media.

**j.** **"Extracted Text"** means the text extracted from a Native Format file (as defined below), and includes all header, footer, and Document body information when available.

**k.** **"Hard-Copy Document(s)"** means Documents existing in paper form at the time of collection.

**l.** **"Hash Value"** means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on the standard mathematical algorithms MD5, SHA-1, or SHA 256, applied to the characteristics of the data set.

**m.** **"Load File"** means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or Native Format files (as defined below), as well as the corresponding Extracted Text or OCR (as defined below) text files, and containing agreed-upon extracted or user-created Metadata, as well as information indicating unitization (*i.e.*, Document breaks and Document relationships such as those between an e-mail and its attachments) used to load that production into a Receiving Party's document review platform, and correlate its data within that platform. The Producing Party shall produce a Load File for all Documents that are not produced in hard copy, with each particular production in accordance with the specifications provided herein (*see* Appendix A).

**n.** **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

**o.** **"Metadata"** means structured information about ESI that is created by the file system or application, embedded in the Document and sometimes modified through ordinary business use. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and/or validity of the collected ESI. Metadata includes information created during the collection or processing of ESI.

**p.** **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

**q.** **"Optical Character Recognition" or "OCR"** means optical character recognition technology used to read the text within electronic images of paper Documents and create a file containing a visible, searchable text format of such Documents.

**r.** **"Protected Material"** shall refer to any information that a Party reasonably believes in good faith to be subject to federal, state, or foreign data protect laws or other privacy obligations or responsibilities ("Data Protection Laws").

Protected Material constitutes highly sensitive materials requiring special protection.  Examples of such Data Protection Laws include, without limitation, The Health Insurance Portability and Accountability Act and the regulations thereunder (HIPAA), 45 CFR Part 160 and Subparts A and E of Part 164 (medical information); Genetic Information Non-discrimination Act of 2008 (GINA) (biometric information).

s.   **"Producing Party"** means any Party or non-party in the Action that produces Documents.

t.   **"Receiving Party"** means any Party in the Action that receives a production of Documents.

u.   **"Responsive Document"** means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitation set forth in the Federal Rules and Local Rules or Court order.

v.   **"Tagged Image File Format"** or **"TIFF"** means a computer file format for storing Documents electronically, including scanned Hard-Copy Documents.

w.   **"And" and "or"** shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, *e.g.*, "and" shall be construed to mean "and/or".

x.   **"Include" and "Including"** shall be construed to mean "include but not limited to" and "including, but not limited to."

y.   Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

### III.   SCOPE

a.   **General**.  The procedures and protocols outlined herein shall govern the production of Documents and ESI by the Parties.  The Parties will take reasonable steps to comply with this Protocol.  All productions made pursuant to this Protocol will be subject to the Confidentiality Order and any other protective orders or confidentiality agreements entered in this Action that govern Document production.  Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or Receiving Party.  Nothing in this Protocol establishes any agreement as to either the temporal or subject

matter scope of discovery in this Action.  Nothing in this Protocol establishes any agreement as to any search or review protocol, including which sources shall be searched for responsive documents or ESI, or how a Responsive Document is to be identified.

The production specifications in this Order apply to materials that are produced in the first instance in this Action.  To the extent any Party is required or agrees to re-produce materials in this Action that originally were produced in other cases or government investigations, such materials may be produced in the same format in which they originally were produced regardless of whether that format complies with the specifications provided herein, including as it relates to confidentiality designations.   The Parties will meet and confer in good faith regarding the extent to which re-produced materials are not reasonably usable in the format produced and reserve their rights in respect of same.

    **b.**    **Limitations and Non-Waiver.**  This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and all objections to the discoverability or admissibility of any Documents and ESI are preserved.  The Parties and their attorneys reserve the right to object to any discovery request on any grounds, and do not intend by this Protocol to waive their rights to the attorney-client privilege, the work-product doctrine, and any other privilege, protection, or immunity that may be applicable.

**IV.**    **PRESERVATION OF DATA**

    **a.**    The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

**b.**     The Parties agree that Data, including Protected Material, shall be preserved for only the time for which this litigation is pending or reasonably anticipated.  All Protected Material shall be maintained and destroyed pursuant to normal business practice and/or local Data Protection Laws at the completion of this litigation.

**c.**     The Parties are not required to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations. The Parties are not required to take any such backup media out of ordinary rotation.

## V.     IDENTIFICATION AND COLLECTION OF DOCUMENTS

Except as otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

a.  List of records custodians;

b.  Search methodology to be applied, including, but not limited to, search terms and date restrictions;

c.  Location of relevant sources including custodial and non-custodial; and

d.  Access to Protected Material and the means by which the Parties agree to preserve and collect relevant, unique, non-personal information.

## VI.    SEARCH AND IDENTIFICATION OF RESPONSIVE ESI

The Parties agree they will cooperate in good faith regarding the disclosure and formulation of an appropriate search methodology(ies).  If the Producing Party is filtering Documents using search terms, the Producing Party will disclose the list of search terms to the Receiving Party and provide the Receiving Party with the opportunity to provide additional terms, where needed.  The Producing Party shall provide the Receiving Party with information on hits generated by the proposed search terms in order for the Parties to better

assess any perceived unreasonable volume or burden issues. At the request of either the Producing or Receiving Party, the Parties shall meet and confer on the form or scope of search term hit reports to be used for search terms discussions. The Parties will cooperate in good faith to identify targeted search terms. In the event a Producing Party believes that a particular term generates an unreasonable number of nonresponsive Documents or creates an undue burden, the Parties shall use their good faith efforts to identify and/or propose an alternative term(s). The mere fact that a Document is hit or captured by the application of any agreed upon search terms does not mean that such Document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Each Party will review ESI for responsiveness and privilege prior to producing Documents to another Party.

If at any time a Party intends to use predictive coding/Technology Assisted Review ("TAR") tools and/or processes to exclude Documents from review and production, the Party shall disclose it to the other Party prior to employing TAR tools and/or processes, and if the other Party objects, the Parties shall meet and confer regarding the scope of the TAR that will be employed.

Regardless of the search methodology(ies) employed, the Parties will meet and confer concerning categories of documents that can be located without the use of search terms or TAR tools.

If the Receiving Party believes in good faith that categories of Documents are missing from the Documents that have been produced, the Parties agree to meet and confer regarding such concerns.

## VII.    PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

**a.    General Production Formats.**  The Parties shall, to the extent reasonably feasible, produce paper Documents and ESI according to the specifications provided herein. The Parties agree that all Documents maintained originally in electronic, Native Format and collected for this Action are to be produced in an "imaged" file format, where reasonably feasible, with a corresponding Load File containing OCR or Extracted Text, and Metadata, as described below and in Appendix A.

**b.  Paper Records.**

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

(1)    TIFFs.  All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for documents requiring higher resolution or different page size.  Each image file should have a unique file name which shall be the Bates number of the page.

(2)    Documents are to be produced as they are kept in the ordinary course of business. In scanning paper Documents, distinct Documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  In the case of an organized compilation of separate Documents—for example, a binder containing several separate Documents behind numbered tabs—the Document behind each tab should be scanned separately, but the relationship among the Documents in the binder should be reflected in proper coding of the beginning and ending Document and attachment fields.  Pages with Post-It notes shall be scanned both with and without the Post-It, with the image of the page with the Post-It preceding the image of the page without the Post-It. To the extent reasonably feasible, original Document orientation (i.e., portrait to portrait and landscape to landscape) shall be maintained.  Should a situation arise where there are improperly unitized Documents, the Receiving Party shall notify the Producing Party and the Producing Party will resolve the issue, where feasible.  If the Producing Party cannot properly unitize the Documents, it shall notify the Receiving Party and the Parties shall meet and confer on the issue.

(3)    Objective Coding Fields.  The following objective coding fields should be provided, if applicable:  (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) source location/custodian; (6) number of pages in the Document; (7) confidentiality treatment if assigned pursuant to any applicable protective order or stipulation; (8) "physical" to denote that these are Hard-Copy Documents that have been scanned and converted to an electronic image; and (9) a "redacted" field that will include "yes" for redacted Documents and "no" for unredacted Documents.

(4)    OCR Text Files.  Document level OCR should be provided as a separate text file.  The file name of each text file should correspond to the file name of the first image file of the document with which it is associated.  The text files will not contain the redacted portions of the documents. OCR software should be set to a reasonably high-quality during processing. Documents containing foreign language text will be OCR'ed using the appropriate settings for that language, *e.g.*, OCR of German Documents will use settings that properly capture umlauts. To the extent reasonably feasible, settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**c.  Electronically Stored Information**

The Parties will produce ESI in TIFF format according to the following specifications:

(1)    TIFFs of ESI shall convey the same information and image as the original Document, including all commenting, versioning, and formatting that is visible in any view of the Document in its native application.  To the extent reasonably feasible, all hidden text will be expanded, extracted, and rendered in the TIFF file, and the Producing Party will instruct its vendor to force off any auto date function. All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size. As set forth below, certain ESI will be produced in Native Format with Metadata intact, except where this is not reasonably practicable.  In this event, the Producing Party will promptly notify the Receiving Party of the issue, and the Parties will agree upon an alternative format that is acceptable to the Receiving Party. If a Party asserts that a particular Document or category of Documents warrants a different production format than otherwise provided for herein, the Parties agree to meet and confer regarding the production format.

(2)    An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

(3)     All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction on a document level. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. To the extent the Producing Party deems it not reasonably feasible, the Producing Party shall notify the Receiving Party for what categories of documents or document types it is not feasible for each production. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

    a.     Each text file shall be named according to the Bates number of the first page of the corresponding image files (*e.g.*, BATES000001.TXT).

    b.     In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.  To the extent such information exists but is not reasonably available and has not otherwise been provided to the Receiving Party in the metadata fields, the Producing Party shall notify the Receiving Party for what categories of documents or document types the information has not been provided for each production.

(4)     Each imaged version of an electronic document will be created directly from the original electronic document.

(5)     Excel and other spreadsheet-type files, PowerPoint and other presentation-type files, as well as audio and video files, shall be produced in native format. ESI shall also be produced with available Metadata as defined herein and specified below, and extracted Searchable Text. However, Parties are not obligated to populate manually any of the below fields if such fields cannot be extracted from a document, with the exception of the SOURCE, CUSTODIAN, BEGBATES, and ENDBATES fields, which the Parties will still be obligated to populate. Redacted ESI will likewise be produced as TIFFs with applicable Metadata and OCR'ed Searchable Text. Spreadsheets and XLS files may be redacted in TIFF format or natively at the Producing Party's discretion. Hard- Copy Documents will

be scanned and produced as TIFFs, with applicable Metadata as set out in Attachment B, and OCR'ed Searchable Text. To the extent any party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith accordingly.

(6)     Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension. To the extent practicable, images of redacted Documents that contain comments, deletions, and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user entered Data that the source application can display to a user will be processed such that all that Data is visible in the image. The Producing Party has no obligation to investigate whether documents it is producing present imaging or formatting problems prior to the production of the documents.

(7)     **TIFFs of Redacted ESI**. TIFFs of redacted ESI shall convey the same information and image as the original Document, including all non-redacted elements and formatting that are visible in any view of the Document in its native application.

(8)     **Attachments**. Email attachments will be mapped to their parent by attachment range within the Load File.

(9)     **Embedded Objects**. Subject to claims of privilege and immunity, as applicable, Object Linking and Embedding (OLE) embedded objects (embedded Microsoft Office files and .RTF files etc.) shall be extracted as separate files and produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Protocol to the extent doing so is technologically possible and proportional to the needs of the case. For the avoidance of doubt, a party shall have no obligation to search for or produce OLE objects that reside outside of the Microsoft Office 365 Environment, provided that the party currently has a license to Office 365 that allows for the identification and collection of such linked objects. In no event shall a party be required to purchase additional functionality within Microsoft Office 365 in order to satisfy this provision. Images embedded in emails need not be extracted and produced separately, but shall instead be produced as part of the email.

(10)    **Load Files**. All ESI will be produced in electronic format with file suitable for loading into a compatible litigation support review database. All productions will include both image and Metadata load files. The Parties agree to coordinate in good faith regarding the most practicable specific production format.

(11)    **Electronic Text Files**. Along with the native or image files and Metadata, a single text file shall be provided for each Document. The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the Document was redacted, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs). In these instances, and in the case of imaged Hard-Copy Documents, a text file created using OCR will be produced in lieu of extracted text.  Where feasible, if the Producing Party has access to extracted text from electronic Document files, the Receiving Party shall receive extracted text as well, instead of OCR text generated from an image file.  If such conversion is unduly burdensome or renders the Document unusable, the Producing Party may produce the Document in any reasonably usable form as may be agreed upon by the respective Parties. Extracted text shall be provided in UTF-16LE or UTF-8 with Byte Order Mark format text where possible. To the extent practicable, extracted text shall include all comments, revisions, tracked changes, speaker's notes, and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows.  The Parties shall meet and confer regarding any disputes relating to the availability of extracted text.

(12)    **Text Extracted from Emails.** Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"); (2) the author of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the date and time of the email; and (6) the names of any attachments.

(13)    **Date Fields Time Zone**. All Documents shall be processed so as to show fielded dates and times in UTC.

(14)    **Explanation of Unproduced Metadata**. If the Receiving Party believes that Metadata for a particular field or ESI Document has been erroneously omitted, it may send written notice (email is sufficient) asking for an explanation why the information was missing from the Document production. The Parties shall then meet and confer to attempt to resolve the problems.

(15)    **Native File Image Placeholders**. A Bates-stamped placeholder TIFF, bearing the legend "This Document has been produced in Native Format" shall be provided for ESI produced in Native Format; these placeholders will be Bates numbered in the same way as any other TIFF, and the Bates

number of that single page shall be used as the BegBates and EndBates of the associated Document.

(16)    **Audio Visual Files**. Audio and video files are to be produced in the native file format in which they were maintained in the ordinary course of business.

(17)    **Databases, Structured, Aggregated or Application Data.** The Parties will meet and confer to address the production and production format of any responsive Data contained in a database or other structured or aggregated Data source or otherwise maintained by an application. Prior to any such meet and confer, the Producing Party will provide sufficient information to enable the non-producing party to evaluate the best method and format of production, including such information as the database or Data store name, business purpose, database or Data source owner, database schema, tables, column/field definitions, standard reports, export capabilities, and administrator, programmer, and user manuals. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

(18)    **Lost, Destroyed or Irretrievable ESI**. If a producing party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the producing party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

(19)    **Proprietary Software**. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

(20)    **Confidentiality Treatment**.  The Confidentiality Order between the Parties specifies confidentiality treatment for use in this Action.

i.    The confidentiality treatment for any item will be provided with the created Data for that item, in the field entitled "Confidentiality Treatment," as well as the DAT file. For items

with no confidentiality requirements, the field will be left blank.

ii. The Producing Party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number.

(21) **Thread Suppression**. The Parties may use email thread suppression to reduce duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, provided that the To/From/CC/SentDate/SentTime/Subject fields appear for each email in the thread, where possible. Where this information does not appear, Plaintiff may request that Defendants produce constituent emails to the extent responsive. If an email thread splits into two separate threads, then both threads shall be included in the production. If an email has an attachment and subsequent replies omit that attachment, then the original email with the attachment shall also be included in the production.

(22) **Encrypted or Password-Protected ESI**. For any ESI that exists in encrypted format or is password-protected, the producing party will reasonably attempt to produce such materials in a format that permits the Receiving Party to access the contents of those materials, or, if practicable, will provide the propounding party a means to gain access to those native files (for example, by supplying passwords). No extraordinary means need be taken by the producing party to permit the Receiving Party to access the contents of those materials.

(23) **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved.  Responsive non-privileged email attachments should be consecutively produced with the parent email record.  Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as if they are attachments in order after the document in which they were referenced by link.

(24) **Delivery of Document Productions**. Document productions shall be made through secure file transfer protocol ("FTP") or similar secure or encrypted electronic transmission. Where a document production is sufficiently large, the document production may be transmitted via hard drive, USB flash drive, or other secure physical means. To maximize the security of information in transit, any Media on which documents are

produced may be encrypted. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted Media.

(25)    **Write Protection and Preservation**. All computer Media that is capable of write protection should be write-protected before production.

(26)    The following Metadata fields associated with each electronic (and paper to the extent applicable) Document will be produced, to the extent applicable.  Such Metadata fields will be produced only to the extent that they are readily available in the Metadata of the source file, except that they may be suppressed or redacted if privileged or otherwise protected from disclosure.  The Parties recognize that the completeness of the "Duplicate Custodian" and "Duplicate Filepaths" fields may not be completely populated until all data is collected (i.e., when document collections and document productions are done on a rolling basis and overlap).  The Parties may concatenate the values for date and time into a single field.  The Parties agree to meet and confer if additional fields of Metadata are needed.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | x | x |
| Duplicate Custodian **(if globally deduplicated)** | Name of duplicate custodian(s) of email(s) or file(s) produced | x | x |
| BegBates | Beginning Bates# (including Prefix) | x | x |
| EndBates | Ending Bates# (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | x | x |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | x | x |
| AttachCount | Number of attachments to an email | x | |
| PgCount | Number of pages in the Document | x | x |
| FileSize | File size | x | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Applicat | Commonly associated application for the specified file type | x | x |
| MsgID | Email system identifier assigned by the host email system.  This value is extracted from parent message during processing | x | |
| Folder | Folder location of the email within the PST/OST | x | |
| From | From field extracted from an email message | x | |
| Author | Author field extracted from the metadata of a non-email document | | x |
| To | To or Recipient extracted from an email message | x | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | |
| EmailSubject | Subject line extracted from an email message | x | |
| Filename | File name — Original name of file as appeared in original location | | x |
| Title | Title field extracted from the metadata of a non-email document | | x |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateCreated | Date that a non-email file was created  (mm/dd/yyyy format) | | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| DateLastModified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | |
| Email Outlook Type | Type of Outlook item, *e.g.*, email, calendar item, contact, note, task | x | x |
| File Extension | File extension of a document | x | x |
| File Path | File path storage location of the document or email if the source application allows for the creation of folders | x | x |
| Native Link (if natives are exchanged) | Relative path to any files produced in native format | x | x |
| Text Link (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | x | x |
| Hash Value | MD5 or SHA-1 hash value used to deduplicate the data | x | x |
| Confidentiality Designation | Confidentiality Designation of the document | x | x |
| Title | Title provided by user within the Document | | x |
| Document Type | Descriptor for the type of Document: "E-document" for electronic Documents not attached to emails; "Email" for all emails; "E-attachment" for files that were | x | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| | attachments to emails; and "Physical" for hard copy physical Documents that have been scanned and converted to an electronic image | | |
| Redacted | Descriptor for Documents that have been redacted.  "Yes" for redacted Documents; "No" for un-redacted Documents | x | x |
| ProdVol | Unique identifier for each document production served. | x | x |
| Duplicate Filepaths | Original file/path of the locations where the unproduced duplicate items were located at the time of collection.  This should include location, file name, and file source extension.  Multiple values should be separated by semi-colons. | X | x |

d.  **Color**

Documents containing color need not be produced in color.  However, if any Party deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer to determine whether the Producing Party must produce the Document as JPEG file, or as a color image in TIFF or PDF format or in native format.  The Parties shall not make categorical or wholesale requests for color images, and such requests are deemed invalid.  Requests for re-production of specific Documents in color will not be unreasonably denied.

e.  **Bates Numbering and other Unique Identifiers.**

Documents produced in Native Format will be named with a Bates Number, and the original file name will be identified in the Load File.  For image files (*i.e.*, TIFF images), each page of a produced Document shall have a Bates Number electronically stamped onto the TIFF

image in such a manner that information from the source Document is not obliterated, concealed, or interfered with.   There shall be no other legend or stamp placed on the Document image unless a Document qualifies for confidential treatment pursuant to the Confidentiality Order or has been redacted in accordance with applicable law or Court order.  In the case of confidential materials as defined in the Confidentiality Order, or materials redacted in accordance with applicable law or Court order, a designation may be electronically stamped onto the Document's image at a location that does not obliterate or obscure any information from the source Document, other than material being redacted.

### f.   Redacted Files

The Producing Party can redact Documents to the extent it contains Protected Material, privileged material, other highly sensitive personal information, such as social security numbers or personal bank account information, or if non-responsive, Highly Confidential information (as set forth below).  If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding the other kinds of information before any such redactions are made.  To the extent that a Document is produced in redacted form, any redactions shall be clearly indicated on the face of the Document.

Extracted text will ***not*** be provided for electronic Documents that have been redacted—*e.g.*, for privilege or trade secrets—because the extracted text would reveal the redacted information.  Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

To the extent practicable in light of applicable privilege assertions, Metadata fields will be provided and will include as much nonredacted Data as practicable without waving

any privilege claims. Documents redacted for privilege shall be identified as such in the load file provided with the production.  The Parties recognize that the redaction of certain information may lead to the inability to produce certain Metadata fields in the interests of protecting privilege and confidentiality assertions.

**g. Data Load Files/Cross-Reference Files.**

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats: either standard Concordance (DAT) or comma delimited (CSV).

**h. Deduping Documents and Most Inclusive Email Productions**

The parties may dedupe globally (*i.e.*, across all custodians).  This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Other Custodians" or "Duplicate Custodians" field.  The parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents.  De-duplication shall not break apart families.

**i. Non-Responsive Attachments and Non-Responsive Redactions.**

**a. Document Families.**

If one document in a Document Family is responsive and one or more other Documents in the same Document Family are not responsive, only the Documents that are responsive need be produced. If one or more Document(s) in a Document Family is responsive, the parent email must be produced along with the responsive child attachments. Any non-responsive Documents within Families that are not produced shall be replaced with a Bates-stamped slip sheet stating "Non-Responsive Document Withheld."

The Parties shall meet and confer regarding any objections to the withholding of non-responsive attachments. If the Parties are unable to reach a resolution, any Party may bring the dispute to the Court's attention, in which case the Producing Party shall make the withheld attachment available for in camera inspection.

**b. Redaction of Non-Responsive Materials.**

To the extent a responsive document contains non-responsive information that is Highly Confidential, as that term is defined in the Confidentiality Order, the Producing Party may redact the Highly Confidential, non-responsive portion(s) of the document provided that the redactions do not obscure the meaning of the relevant portions of the document. All such redactions shall be clearly marked on the face of the documents and shall bear a designation indicating that non-responsive, Highly Confidential material has been redacted.

The Parties shall meet and confer regarding any objections to redactions of non-responsive material. If the Parties are unable to reach a resolution, either Party may bring the dispute to the Court's attention, in which case the Producing Party shall make an unredacted version of the document available for in camera inspection.

**VIII.   NON-PARTY DISCOVERY**

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that the third party produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a third-party subpoena to all other Parties. Nothing in this Protocol is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

The Parties reserve the right to modify any practice or procedure set forth herein by mutual agreement.

### IX.    OBJECTIONS TO ESI AND DOCUMENT PRODUCTION

**a.**    The Parties shall meet and confer in good faith on any issue regarding ESI, as necessary. If there is a dispute concerning the scope of a Party's preservation or collection efforts, the burden is on the Receiving Parties to explain their reasons, in person, in writing (including email) or by telephone, for believing that additional efforts are reasonable and proportionate. In particular, before initiating discovery about preservation and collection, a Party shall confer with the other Party concerning the specific need for such discovery, including its relevance to claims and defenses, and the suitability of alternative means for obtaining the information.  Discovery into such matters may be compelled only on a showing of good cause.

**b.**    Similarly, if a Receiving Party has good cause to believe there is a deficiency in the Producing Party's productions, the Receiving Party must raise the issue with the Producing Party, explaining the basis for its belief.  The Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts or to identify additional production criteria to cure the deficiency.  Nothing in this section is intended to modify the Parties' rights or obligations under the Rules.

**c.**    If in-house or outside counsel for the Producing Party learns that after the duty to preserve arose, responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the Party's document retention policies, the

Producing Party shall explain where and when the ESI was last retrievable in its original format, and disclose the circumstances surrounding the change in status of that ESI, and whether any backup or copy of such original ESI exists, along with the location and custodian thereof. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

## X.    MISCELLANEOUS

**a.    On Site Inspections.** On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good-faith showing by the Receiving Party of good cause and specific need or upon agreement of the Parties. As appropriate, the Court may condition on-site inspections of ESI as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate by the Court.

**b.    No Designation of Discovery Requests.** Production of Hard-Copy Documents and ESI in the reasonably usable form set out in this Protocol need not include any reference to the requests to which a Document or ESI may be responsive.

**c.    English Language.** To the extent any Documents exist in more than one language, the Documents shall be produced in English, if available. If no English version of a Document is available, the Producing Party does not have an obligation to produce an English translation of a Document, unless the English translation was maintained in the ordinary course of the Producing Party's business.

**d.    Non-Waiver.** The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests. Nothing in this Protocol will require disclosure of materials that a Party contends are not discoverable.

Additionally, nothing in this Protocol will be deemed to waive or limit any Party's right to object to the production of certain Documents or information, or move for an appropriate order on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the Documents' production.  Nothing in this Protocol is intended to or shall serve to limit a Party's right to conduct a review of Documents, ESI, or information (including Metadata) for relevance, responsiveness, privilege, or protected information before production.  Further, nothing contained in this Protocol is intended to reduce the time frame provided to the Producing Party to complete its review should it choose to do so.  Similarly, nothing in this Protocol is intended to limit a Party's proportionality and burden arguments specifically related to the costs to conduct a review of Documents, ESI, or information (including Metadata).

       **e.**    **Variance.**  Any practice or procedure set forth herein may be varied by written agreement of the Parties or by Order of the Court, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI.  Any party added or joined to this Action, and any party to actions that may be consolidated with the above-captioned matter after the date of this Protocol, may produce Documents in the format outlined in this Protocol or, if the party wishes to produce in another format, it may meet and confer with the Parties regarding another reasonably useable format

       **g.**    **Good Faith.**  The Parties shall make their best good faith efforts to comply with and resolve any differences concerning compliance with this Protocol, or the parties' obligations thereunder.  If a Producing Party cannot comply with any material aspect of this Protocol, such Party shall inform the Receiving Party as to why compliance with this Protocol is unreasonable or not possible within five business (5) days after so learning.  If the

Parties are unable to reach resolution regarding any dispute concerning the interpretation of

this Protocol or compliance with same, such disputes may be presented for judicial

resolution.  No Party may seek judicial relief concerning this Protocol unless it first has

conferred with the applicable Producing or Requesting Party.

Dated: November 21, 2024

*s/ Timothy J. Peter*                      *s/ James P. Smith III*

| | |
|---|---|
| Timothy John Peter | James P. Smith III |
| Faruqi & Faruqi LLP | Kerry C. Donovan |
| 55 W. Monroe Street, Suite 3200 | WINSTON & STRAWN LLP |
| 1617 John F. Kennedy Boulevard | New York, New York 10166 |
| Suite 1550 | (212) 294-6700 |
| Philadelphia, PA, 19103 | (212) 294-4700 (fax) |
| 215-277-5770 | jpsmith@winston.com |
| Fax: 215-277-5771 | kcdonovan@winston.com |
| Email: tpeter@faruquilaw.com | |
| | Linda T. Coberly |
| Robert W. Killorin | Daniel M. Blouin |
| Faruqi & Faruqi LLP | WINSTON & STRAWN LLP |
| 3975 Roswell Rd Suite A | 35 West Wacker Drive, Suite 4700 |
| Atlanta, GA 30342 | Chicago, Illinois 60601 |
| 404-847-0617 | (312) 558-5600 |
| Email: rkillorin@faruqilaw.com | (312) 558-5700 (fax) |
| | DBlouin@winston.com |
| James M. Wilson, Jr. | lcoberly@winston.com |
| Faruqi & Faruqi LLP | |
| 685 Third Avenue, 26th Floor | Mathieu J. Shapiro |
| New York, NY 10017 | Melissa Blanco |
| 212-983-9330 | OBERMAYER, REBMANN, MAXWELL |
| Email: jwilson@farquilaw.com | & HIPPEL, LLP |
| | Centre Square West |
| *Attorneys for Lead Plaintiff* | 1500 Market Street, Suite 3400 |
| | Philadelphia, PA 19102 |
| | 215-665-3014 |
| | 215-665-3165 (fax) |
| | mathieu.shapiro@obermayer.com |
| | melissa.blanco@obermayer.com |
| | |
| | *Attorneys for Defendants* |

**IT IS SO ORDERED.**

DATED: November 25, 2024

/s/ Karen Spencer Marston
_____
KAREN SPENCER MARSTON, J.